# EXHIBIT

# A

Electronically Filed
05/10/2017 08:47:09 AM

CLERK OF THE COURT

COM

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiff

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * * *

RAYMOND GARCIA, as a member, and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka SEIU 1107, a non-profit cooperative corporation,

Plaintiff,

vs.

SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; MARY K. HENRY, in her official capacity as Union President; EXECUTIVE BOARD OF THE NEVADA SERVICE EMPLOYEES UNION, in official capacity; STEVE URY, individually; DOES; and ROE CORPORATIONS 1-20, inclusive,

Defendants.

CASE NO.: A-17-755270-C

VIII

**PLAINTIFFS' VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER (WITH NOTICE) AND MOTION FOR PRELIMINARY INJUNCTION ON ORDER SHORTENING TIME**

**(EXEMPT FROM ARBITRATION, DECLARATORY RELIEF REQUESTED)**

COMES NOW, Plaintiff, RAYMOND GARCIA, as a member and representative of the CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYES UNION, aka SEIU 1107, by and through his attorney of record, MICHAEL MCAVOYAMAYA, ESQ., and hereby complains and alleges as follows:

//

//

//

## I. PARTIES

1. Plaintiff Raymond Garcia is, and was at all times relevant hereto, a resident of the County of Clark, State of Nevada.

2. Plaintiff Clark County Public Employees Association, dba Nevada Service Employees Union aka SEIU 1107 (hereinafter "the Local Union"), is and was at all times relevant herein a domestic non-profit cooperative corporation, having its main and principal office in Clark County, State of Nevada.

3. Defendant Service Employees International Union (hereinafter referred to as ("the International Union") is and was at all times relevant herein a nonprofit corporation with headquarters in Washington D.C. with sufficient contacts with the Local Union in Clark County, State of Nevada to confer personal jurisdiction.

4. Defendant Luisa Blue (hereinafter the "Trustee"), at all times relevant herein is and was present in Clark County, State of Nevada, to confer personal jurisdiction.

5. Defendant Executive Board of the Local Union (hereinafter "the Board"), on information and belief, are and were at all times relevant herein residents of the County of Clark, State of Nevada.

6. Defendant Steve Ury, Esquire, on information and belief, is and was at all times relevant herein present and residing in Clark County, Stated of Nevada, sufficient to confer personal jurisdiction.

7. The true names of DOES 1 through 20, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and therefore alleges, that each of the Defendants, designated as DOES 1 through 20, are or may be legally responsible for the events referred to in this action, and caused damages to the Plaintiff, as herein alleged, and Plaintiff will ask leave of this Court to amend the Complaint to insert the true names and capacities of such Defendants, when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

8. That the true names and capacities of Defendants named herein as DOE AGENCIES 1 through 20 and ROE CORPORATIONS 1 through 20, inclusive, are unknown to the Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE AGENCIES and/or ROE CORPORATION Defendant is responsible for the events and happenings referred to and proximately caused damages to the Plaintiff as alleged herein. Plaintiff will ask leave of the Court to amend the Complaint to insert the true names and capacities of DOE AGENCIES 1 through 20 and ROE CORPORATIONS 1 through 20, inclusive, when the same have been ascertained, and to join such Defendants in this action.

## II. JURISDICTION AND VENUE

9. This Court has personal jurisdiction over the Defendants and claims, as set forth herein pursuant to NRS 14.065, that such jurisdiction is not inconsistent with the Nevada Constitution or the United States Constitution.

10. Venue is proper in this Court pursuant NRS 13.010 et seq. because, among other reasons, the Local Union operates its principal place of business in Clark County, Nevada. Furthermore, this action arises out of the Contract between the Local Union and International Union, which was entered into and performed in Clark County, State of Nevada.

## III. ALLEGATIONS COMMON TO ALL CLAIMS

11. On July 1, 1987, the Local Union entered into a valid, binding "Affiliation Agreement" (hereinafter the "Contract") with the International Union setting out the terms of association.

12. That under Paragraph 18 of the Contract, the International Union expressly waived "[t]he provisions of Article VIII, Section 7(a-f) and Article XII, Section 3 of the SEIU Constitution regarding trusteeship . . . except for the purpose of enforcing this agreement

pursuant to Paragraph 21 below or with the approval of the PEA Board of Representatives." See Affiliation Agreement, attached as **Exhibit "1,"** at 9.[1]

13. On October 29, 2016, the President of the International Union, Mary K. Henry ("Ms. Henry"), upon receipt of numerous complaints from members of the Local Union, ordered a hearing to determine the validity of charges against members of the Board. International Vice President, Carol Nieters, was appointed as hearing officer.

14. On April 26, 2017, Ms. Neiters submitted a Report and Recommendation that Cherie Mancini and Sharon Kisling be removed from their respective positions as President and Executive Vice President of the Local Union for charges stemming from the complaints of Local members. Ms. Neiters's report also recommended that, based on circumstances presented at the hearing, the imposition of an emergency trusteeship was justified. See Neiters Report and Recommendation, attached as **Exhibit "2,"** at 2.

15. That same day Ms. Henry sent out a letter to the Local Union's members informing them that she was invoking her power as the International Union's President to remove Ms. Mancini and Ms. Kisling from their positions as President and Executive Vice President of the Local Union pursuant to the International Union Constitution Article XVII, Section 2(f). Ms. Henry further informed the members that she was sending "International Executive Vice President Neal Bisno and Deputy Chief of Staff Deedee Fitzpatrick to attend the Local Union's Executive Board meeting" scheduled that evening, April 26, 2017. See Henry Letter, attached as **Exhibit "3,"** at 2.

16. On the evening of April 26, 2017, the Board of the Local Union met in a closed session with Mr. Bisno, Mr. Fitzpatrick, and the International's Associate General Counsel Steve Ury. Due to lack of notice of the hearing, only 29 of the more than 40 Board members were present. Mr. Ury advised the Board that because the Local Union's Constitution did not contain

---

[1] Plaintiffs understands that it is not customary to file exhibits with a Complaint, however, because fraud must be stated with particularity, Plaintiffs have included numerous exhibits to support the allegations contained herein.

provisions for what to do in the event that the President and Vice President positions were simultaneously vacant, they had no choice other than to request the International Union place them into a Trusteeship. Believing there was no other option than to move forward, due to Mr. Ury's representations, the Board voted to request that the International Union place the Local Union into Trusteeship.

17. On April 28, 2017, Ms. Henry entered and disseminated an "Order of Emergency Trusteeship" to the Local Union "[p]ursuant to [her] authority under Article VIII, Sections 7(a) and 7(f), of the SEIU Constitution and Bylaws." See Trusteeship Order, attached as **Exhibit "4,"** at 1.

18. On April 28, 2017, the managing staff of the Local Union were told to stay home. The Local Union's operations have ceased since the date of the trusteeship.

19. On May 1, 2017, the Trustee canceled a contract for employment of a staff member who was scheduled to start work that day.

20. On May 4, 2017, the Trustee terminated the employment of the Local Union's finance and communications directors.

21. On May 8, 2017, the Trustee announced that the lead negotiator for the pending collective bargaining agreement with the County would be replaced by Michael Urban, Esq., the Local Union's prior negotiator whose services were terminated due to excessive fees and inability to negotiate agreements in a satisfactory time period. The Local Union's current collective bargaining agreement expires on June 30, 2017, and if negotiations are not finalized by that date, the members of the Local Union's employment contracts will expire, and the County will be barred by law from providing any members of the Local Union with compensation or benefits. See Senate Bill 241 (2015), at 6. The Board members have since expressed concern over the legality of the International Union's coercive tactics, lack of notice regarding the trusteeship hearing, and misrepresentations made to the Board regarding the necessity of the emergency trusteeship, which relinquished all control of the Local Union to the International Union.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – The Board)**

22. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

23. That the Local Union entered into the Contract with the International Union expressly exempting the provisions on the International Constitution that granted the International Union the power to impose involuntary trusteeship on the Local Union. See **Ex. 1** at 9:18.

24. That the Constitution and Bylaws of the Local Union are a contract between members of the Local Union. See Johnson v. International of United Bhd., C. J., 52 Nev. __, 412, 288 P. 170, 173 (Nev. 1930).

25. That the Board, as the governing body of the Local Union, had a contractual and fiduciary duty under the Local Union's Constitution "to take all lawful actions **consistent with the Constitution and Bylaws of this Local Union**." See Local Union Constitution, attached as **Exhibit "5,"** at 17.

26. That "[l]he Constitution and Bylaws of th[e] Local Union shall be interpreted by the Local Union Executive Board." Id. at 54.

27. That the Local Union's Constitution specially provides that the Local Union's Constitution is subordinate to the provisions of the International Union's Constitution "except in the case of specific exemptions provided in the affiliation agreement between the parties." Id. at 64.

28. That the Local Union's Constitution does not provide the Board with authority or procedure for the Board to hold a vote to turn over control and management of the Local Union to the International Union via the expressly exempted trusteeship provisions of the International Union Constitution. See generally id.

29. That the Local Union Constitution does provide that "[i]f the Executive Vice President's position is vacant, and if more than one hundred and eighty (180) calendar days remain on the term of office for Executive Vice President, then there shall be a special election for the office of Executive Vice President." Id. at 38.

30. That more than one hundred and eighty (180) calendar days were left in the term of office of Executive Vice President Kisling, mandating that the Board hold a special election to fill the Executive Vice President vacancy. Id. at 40. Once filled, the new Executive Vice President would subsequently and immediately assume the role of President of the Local Union, and order a second special election be held to fill the Executive Vice President vacancy. Id.

31. That the Board breached their contractual and fiduciary duty under the provisions of the Local Union Constitution to initiate the special election process to fill the vacancy of the Executive Vice President pursuant to the Local Union Constitution.

32. That the Board, in contravention and without authority granted by the Local Union Constitution and Bylaws, voted in a closed meeting to transfer all property and governing control of the Local Union to the International Union via the trusteeship provisions of the International Union's Constitution, in violation of the Local Union's Constitution and Bylaws and express waiver provision of the Contract.

33. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees' travel and lodging expenses to facilitate the transition of control and

management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

34. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Breach of Contract – International Union)**

35. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

36. That on July 1, 1987, the Local Union and International Union entered into the Contract for association which contained an express waiver of the involuntary trusteeship provisions of the International Union's Constitution contained in Article VIII, Section 7. See **Ex. 1** at 9:18**;** see also International Constitution, attached as **Exhibit "6,"** at 19-21.

37. That the International Union breached the waiver provision of the Contract when it recommended and began initiating the process pursuant to Article VIII, Section 7 of the International Union Constitution to place the Local Union in trusteeship in contravention of the waiver clause of the Contract, and without first consulting and advising the board regarding their rights and the existence of the waiver clause contained in the Contract. See **Ex. 2;** see also **Ex. 3;** see also **Ex. 4.**

38. That the International Union breached its fiduciary duty owed to the Local Union when they sent their counsel, Mr. Ury, to make misrepresentations to the Board that they were required, pursuant to the International Union's Constitution, to authorize the International Union

to place the Local Union in trusteeship in contravention of the Contract and the Local Union's Constitution. See Board Member Statements, attached as **Exhibit "7(a-c)."**

39. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

40. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

## THIRD CAUSE OF ACTION
## (Breach of Implied Covenant of Good Faith and Fair Dealing)

41. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

42. That the Local Union and International Union entered into a contract of association on July 1, 1987, which contained an express waiver of the trusteeship provision of the International Union Constitution.

43. That the executive board and President of the International Union, as the parent association of the Local Union, owed the members of the Local Union a fiduciary duty under the

Contract and the International Union Constitution to fairly and adequately apprise the Local Union of its rights under the Contract and to deal fairly with the Local Union.

44. That the International Union Officers attended the April 26, 2017 Local Union Board meeting and were in a superior or entrusted position after the removal of the Local Union's President and Vice President to assist the Local Union. See Great Am. Ins. Co. v. General Builders, Inc., 113 Nev. 346, 355, 934 P.2d 257, 263, 1997 Nev. LEXIS 36, *14 (Nev. Mar. 6, 1997).

45. That the International Officers engaged in grievous and perfidious misconduct breaching their duty of good faith when they engaged in misconduct by misrepresenting to the Board of the Local Union that they had no choice after the removal of the Local Union's President and Vice President but to place the Local Union in trusteeship, divesting governing authority and control of the Local Union's members, in contravention of the Contract and the Local Union's Constitution. See id.

46. That the Board of the Local Union justifiably relied on the misrepresentations of the International Union Officers, voting to divest control of the Local Union from the Board to the International Union by placing the Local Union in trusteeship.

47. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic

governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

48. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Fraudulent Misrepresentation)**

49. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

50. That Steve Ury, Esq., Neal Bisno, and Deedee Fitzpatrick (collectively as the "International Officers"), as representatives of the International Union, attended the Local Union's Board meeting held on April 26, 2017.

51. That Ms. Henry, as President of the International Union, had decided prior to the meeting that the Local Union would be placed in trusteeship.

52. That Ms. Henry knew of the waiver clause in the Contract, and intentionally instructed the International Officers to attend the Board meeting and misrepresent to the Board that emergency trusteeship was the only way for the Local Union to move forward, given the supposed emergency situation created by the removal of the Local Union's President and Vice President.

53. That the International Officers made false representations of fact, to wit: that the Board was required to grant the International Union a trusteeship because the Local Union's Constitution did not provide for a process to fill simultaneous vacancies of the President and Vice President positions of the Local Union.

54. That the International Officers' representations were intended to induce the Board to act by granting control of the Local Union to the International Union via trusteeship.

55. That the members of the Board justifiably relied on the misrepresentations of the International Officers believing they were acting on the interests of the Local Union.

56. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

57. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

58. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

59. That the International Union, in the course of acting to remove the Local Union President and Vice President, and to place the Local Union in trusteeship, to which they have a

pecuniary interest, failed to exercise reasonable care or confidence in obtaining or communicating to the Board their rights under the Contract and the Local Union Constitution.

60. That Plaintiffs justifiably relied on the misrepresentations of the International Union Officers regarding the necessity and obligation of the Board to place the Local Union in trusteeship in control of the International Union.

61. That the International Union's misrepresentations induced the Board to grant the International Union trusteeship.

62. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

63. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(Legal Malpractice)**

64. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

65. That Steve Ury, Esq. is not, and has never been licensed to practice law in the State of Nevada.

66. That Mr. Ury, attended the Local Union Board meeting under his official capacity as counsel for the International Union.

67. That Mr. Ury represented to the Board that there was an attorney client relationship between him and the Board, and the Local Union, and that he was there to render legal advice to the Board, thereby establishing the reasonable expectation that an attorney client relationship existed between Mr. Ury and the Board. See **Ex. 7(a-c)**.

68. That Mr. Ury gave legal advice to the Board regarding their rights under the Contract, which was entered into in Nevada, and the Local Union's Constitution, which was also entered into in Nevada, constituting unauthorized practice of law in violation of NRS 7.285. Id.

69. That based on his representations, Mr. Ury owed a duty to Plaintiff members of the Local Union to use skill, prudence, and diligence in representing the Local Union's interests. Id.

70. That Mr. Ury breached his duty owed to Plaintiffs when he failed to disclose the conflict of interest in his representing both the International Union and Local Union at a hearing that resulted in the Local Union's property, governance and control being granted to the International Union via trusteeship. Id.

71. That Mr. Ury breached the duty owed to Plaintiffs when he made misrepresentations of material fact regarding the rights of the Board, and the members of the Local Union under the Contract and Local Union's Constitution.

72. That Mr. Ury's misrepresentations have directly and proximately caused Plaintiffs harm by divesting authority and control of the Local Union from the Board, and its members to the International Union via trusteeship.

73. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

74. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

75. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

76. That the International Union owed the Plaintiffs, as members of the Local Union, a fiduciary duty.

77. That the International Officers, as representatives and agents of the International Union, breached the fiduciary duty owed to the Local Union by making misrepresentations of fact regarding the rights of the Board, and the members of the Local Union under the Contract and Local Union's Constitution.

78. That International Officers' misrepresentations have directly and proximately caused Plaintiffs harm by divesting authority and control of the Local Union from the Board and its members to the International Union via trusteeship.

79. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

80. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION
**(Temporary Restraining Order and Preliminary and Permanent Injunction)**

81. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

82. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief pursuant to Article 6, Section 6 of the Nevada Constitution, NRS 33.010 et seq., and NRCP 65, as Plaintiff is entitled to the relief demanded, there is a substantial likelihood

Plaintiff will succeed on the merits, and such relief consists of restraining the International Union from commission and continuance of the acts complained of now and in the future.

83. Defendants' conduct in breach of the Contract, the Local and International Constitutions, and Nevada law threaten irreparable injury to Plaintiff, and other members of the Local Union for the following reasons:

a. Clark County and the Local Union have been engaged in employment and collective bargaining negotiations for several months, and the deadline to finalize the employment agreement is fast approaching.

b. The negotiations must be finalized and approved before June 30, 2017 to avoid expiration of the employment agreement.

c. SB241, passed by the Nevada legislature in 2015, repealed the "evergreen clause" provisions of NRS chapter 288, which provide that if the parties do not come to an agreement before the current contract lapses, all benefits and gains of the last contract automatically continue as binding and enforceable. See Senate Bill 241 (2015). Thus, upon expiration of the current agreement, if no successor agreement becomes effective, the local government employer is barred from providing compensation or benefits to any member of the collective bargaining unit. See Senate Bill 241 (2015), at 6.

d. The International Union has already disrupted negotiations and is in the process of terminating the lead negotiator, Peter Nguyen, for the Local Union employment contract with the County, and appointing Michael Urban, Esq. to proceed with negotiations.

e. On information and belief, Mr. Urban's past services to the Local Union were terminated because of his charging excessive fees of approximately $500,000, and his failure to complete negotiations in a timely manner, taking approximately two (2) years to complete the last collective bargaining agreement. Failure to finalize the collective bargaining agreement on time will put all members of the Local Union employment with Clark County in jeopardy.

f. The current contract between the Local Union and Clark County lapses June 30, 2017. The International Union replacing the lead negotiator at such a crucial time in the negotiations will result in an immediate and irreparable injury, loss, or damage to Local Union members, as their employment will effectively terminate upon expiration of the current agreement, and there must be time for the Clark County Labor Board to receive a finalized agreement and approve it.

84. The Defendants will not be prejudiced by maintaining the status quo to ensure that negotiations with Clark County are not disturbed.

85. A preliminary and permanent injunction is warranted to restore democratic self-governance of the Local Union, and to ensure no further injury to Plaintiffs as a result of Defendants unlawful conduct.

86. Accordingly, Plaintiff is entitled to a temporary restraining order barring the International Union from replacing the lead negotiator, or otherwise disrupting the time sensitive negotiation process, and a preliminary and permanent injunction restoring all property, rights, powers and control of the Local Union its Executive Board.

WHEREFORE, the Plaintiff, REYMOND GARCIA, as a representative member of the Local Union requests the following:

1. That this Court determine and adjudicate the rights and obligations of the International and Local Union and the Board with respect to the Contract of association, the Local Union Constitution and the International Union Constitution. See NRS 30.060.
2. That this Court determine and declare that, due to the Contract's express waiver of the trusteeship provisions of the International Constitution, that the process for placing the Local Union under trusteeship was invalid and in breach of the Contract and the Local Union's Constitution. See NRS 30.040.
3. That this Court determine and declare that the Board's vote to submit to involuntary trusteeship invalid pursuant to the Contract and the Local Union's Constitution. Id.
4. That this Court order immediate relinquishment of all property, rights, powers and control of the Local Union to the Board pursuant to the Contract, the Local Union Constitution, and Nevada law. See Hickman v. Kline, 71 Nev. 55, 57, 279 P.2d 662, 664, 1955 Nev. LEXIS 59, *1, 27 Lab. Cas. (CCH) P68,991 (Nev. 1955); see also NRS 30.060.
5. That this Court issue a Temporary Restraining Order enjoining the Defendants from terminating the lead negotiator, or otherwise disrupting pending negotiations with Clark County, which pose the threat of immediate and irreparable injury to the Local Union. NRS 33.010; NRCP 65.
6. That this Court schedule a hearing for Plaintiffs' Motion for Permanent Preliminary Injunction enjoining the Defendants from attempting to interfere with the Local Union's Board meetings and decisions, or otherwise attempting to usurp control of the Local Union from the Board. Id.
7. For compensatory damages in an amount greater than $10,000 including all expenses and wages paid from the Local Union's property to compensate the International Union's Officers and employees currently residing in Clark County during the

transition to trusteeship, and any other expense that would not otherwise have been paid by the Local Union,

8. For punitive damages justifiably warranted for Defendants' egregious conduct; and
9. That this Court award Plaintiffs any such other and further relief as may be necessary to do justice.

Dated this 9th day of May, 2017.

/s/ Michael J. Mcavoyamaya

MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiff

**DECLARATION OF MICHAEL J. MCAVOYAMAYA, ESQ. REGARDING NOTICE, AND IN SUPPORT OF PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF ON AN ORDER SHORTENING TIME**

STATE OF N EVADA )
) ss
COUNTY OF CLARK )

I, MICHAEL J. MCAVOYAMAYA, ESQ. do hereby swear, under penalty of perjury, that the following assertions are true to the best of my knowledge and belief:

1. I am an attorney licensed to practice law in the State of Nevada and am counsel for Plaintiff, RAYMOND GARCIA, and the NEVADA SERVICE EMPLOYEES UNION (hereinafter, the "Local Union").

2. This Declaration is offered pursuant to EDCR 2.26, and NRCP 65 in support of Plaintiffs' Application for Temporary Restraining Order With Notice and Motion for Preliminary Injunction and Order Shortening Time.

3. I declare and certify that on May 8, 2017, I contacted the offices of the Nevada Service Employees Union to attempt to give notice to Trustee Louisa Blue and Deputy Trustee Martin Manteca of the filing of the above Temporary Restraining Order. I left a message with the receptionist and was told that one of the trustees would get back to me.

4. On May 9, 2017, I sent a copy of the Verified Complaint and Application for Temporary Restraining Order and a copy of the Motion for Permanent Injunction on an Order Shortening Time the International Union's retained counsel, Glenn Rothner, Esq., of Rothner Segall, & Greenstone and informed them of Plaintiffs' intent to seek temporary restraining order and preliminary and permanent injunction against Defendants.

5. Mr. Rothner requested that I wait to file the Complaint until they could speak with local counsel, which they later informed me was Evan James, Esq., of Christensen James & Martin. I spoke with Mr. James and provided notice of Plaintiffs' intent to seek temporary restraining order against Trustee Luisa Blue, and the other Defendants.

6. As such, Plaintiffs' Ex Parte Application for Temporary Restraining Order is made with notice to Defendants' counsel in this matter.

7. Plaintiff seeks a temporary restraining order enjoining and restraining Defendants from terminating the employment of Peter Nguyen, the lead negotiator on the pending collective bargaining agreement, and replacing him with Michael Urban, Esq.

8. Plaintiff further seeks this Court's order enjoining Defendants from further directing, managing and controlling the Local Union's affairs, making hiring and appointment decisions, or participating in negotiations on behalf of the Local Union in violation of the Contract and the Local Union's Constitution.

9. Plaintiff further seeks an order mandating that Defendants restore all property, rights, powers, and control of the Local Union to the Board to permit the Board to reinstate democratic self-governance in accordance with the Contract, the Local Union's Constitution, and Nevada law.

10. In order to mitigate irreparable harm to Plaintiffs, pursuant to Defendants' unlawful, fraudulent conduct, Plaintiffs respectfully request that this Court grant an Order Shortening Time for hearing on the instant motion.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 9th day of May, 2017.

/s/: Michael J. Mcavoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiff

78. That International Officers' misrepresentations have directly and proximately caused Plaintiffs harm by divesting authority and control of the Local Union from the Board and its members to the International Union via trusteeship.

79. That once given trusteeship, the International Union's trustee has engaged in actions that have directly and proximately harmed Local Union and its members including: refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, breaching local union contracts, entering into contracts, violating local union law, and dissipating local union funds without accounting in excess of $10,000 for International Union officials and employees travel and lodging expenses to facilitate the transition of control and management of the Local Union, usurping the Local Union's right of independent democratic governance, and disrupting the bargaining process for pending employment contract negotiations that will irreparably harm the members of the Local Union.

80. Due to the Defendants' continued unlawful conduct, Plaintiff is entitled, against all Defendants, to such relief as the Court deems proper, including but not limited to declaratory relief, compensatory damages believed to be in excess of $10,000, injunctive relief, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION
## (Temporary Restraining Order and Preliminary and Permanent Injunction)

81. Plaintiff restates all the preceding and subsequent allegations as though fully set forth herein.

82. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief pursuant to Article 6, Section 6 of the Nevada Constitution, NRS 33.010 et seq., and NRCP 65, as Plaintiff is entitled to the relief demanded, there is a substantial likelihood

Plaintiff will succeed on the merits, and such relief consists of restraining the International Union from commission and continuance of the acts complained of now and in the future.

83. Defendants' conduct in breach of the Contract, the Local and International Constitutions, and Nevada law threaten irreparable injury to Plaintiff, and other members of the Local Union for the following reasons:

a. Clark County and the Local Union have been engaged in employment and collective bargaining negotiations for several months, and the deadline to finalize the employment agreement is fast approaching.

b. The negotiations must be finalized and approved before June 30, 2017 to avoid expiration of the employment agreement.

c. SB241, passed by the Nevada legislature in 2015, repealed the "evergreen clause" provisions of NRS chapter 288, which provide that if the parties do not come to an agreement before the current contract lapses, all benefits and gains of the last contract automatically continue as binding and enforceable. See Senate Bill 241 (2015). Thus, upon expiration of the current agreement, if no successor agreement becomes effective, the local government employer is barred from providing compensation or benefits to any member of the collective bargaining unit. See Senate Bill 241 (2015), at 6.

d. The International Union has already disrupted negotiations and is in the process of terminating the lead negotiator, Peter Nguyen, for the Local Union employment contract with the County, and appointing Michael Urban, Esq. to proceed with negotiations.

e. On information and belief, Mr. Urban's past services to the Local Union were terminated because of his charging excessive fees of approximately $500,000, and his failure to complete negotiations in a timely manner, taking approximately two (2) years to complete the last collective bargaining agreement. Failure to finalize the collective bargaining agreement on time will put all members of the Local Union employment with Clark County in jeopardy.

f. The current contract between the Local Union and Clark County lapses June 30, 2017. The International Union replacing the lead negotiator at such a crucial time in the negotiations will result in an immediate and irreparable injury, loss, or damage to Local Union members, as their employment will effectively terminate upon expiration of the current agreement, and there must be time for the Clark County Labor Board to receive a finalized agreement and approve it.

84. The Defendants will not be prejudiced by maintaining the status quo to ensure that negotiations with Clark County are not disturbed.

85. A preliminary and permanent injunction is warranted to restore democratic self-governance of the Local Union, and to ensure no further injury to Plaintiffs as a result of Defendants unlawful conduct.

86. Accordingly, Plaintiff is entitled to a temporary restraining order barring the International Union from replacing the lead negotiator, or otherwise disrupting the time sensitive negotiation process, and a preliminary and permanent injunction restoring all property, rights, powers and control of the Local Union its Executive Board.

WHEREFORE, the Plaintiff, REYMOND GARCIA, as a representative member of the Local Union requests the following:

# EXHIBIT 1

## (Affiliation Agreement)

# AFFILIATION AGREEMENT

Service Employees International Union, AFL-CIO

Clark County Public Employees Association

This agreement of affiliation is entered into between the SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC, an unincorporated International Labor Union, hereinafter referred to as SEIU, and the Clark County Public Employees Association, hereinafter referred to as PEA.

WHEREAS, SEIU and PEA have the common objectives and purpose: to benefit their members and improve their conditions by every legal means; and more particularly to advance the social, economic, and educational welfare of their members through organization; to promote justice, peace, and security; and to advance and strengthen the rights of workers in accordance with all applicable laws; and to better represent their members in their employee-employer relations on hours, wages, and other terms and conditions of employment; to represent their members and workers in collective bargaining with Clark County, Nevada (including the Clark County Sanitation District) to obtain collective bargaining agreements providing for better wages, hours, and working conditions; and

WHEREAS, it is expressly understood that SEIU endorses the objectives, functions, aims and goals of PEA particularly as they are stated in the By-Laws of PEA; and

WHEREAS, SEIU one of the largest International Unions in the AFL-CIO and represents hundreds of thousands of public employees as members throughout the United States and has the facilities and policy of aiding local unions in negotiations and grievances with public employers through a research staff, publications, communications, organizing, staff representatives; and

WHEREAS, PEA, as an affiliated local union of SEIU will have the benefit of such affiliation in SEIU and with the AFL-CIO and the use of such facilities to aid the members, officers, and staff of PEA; and

WHEREAS, PEA and SEIU desire to enter into an agreement of affiliation whereby SEIU will charter PEA as a local union of SEIU consisting of members of PEA.

THEREFORE, PEA and SEIU agree to the following terms for affiliation of PEA with SEIU:

1. SEIU recognizes that PEA is an incorporated non-profit association and is, therefore, subject to the laws of the State of Nevada including Nevada revised statutes 81 and 288 and to its By-Laws as it presently exists and as it may from time to time be amended.

2. This agreement shall become effective July 1, 1987 upon approval by a plurality vote of the PEA members voting in a secret ballot election to be conducted as soon as possible after approval of this agreement by the Board of Representatives of PEA, and upon approval of the SEIU Executive Board. The SEIU Executive Board is passing upon the question of the approval of this agreement is acting under its authority provided by Article X and Article XIII and all other related provisions of the Constitution and By-Laws of SEIU.

3. SEIU shall charter PEA as Local Union ~~711~~ 1107 of SEIU.

4. All of the assets, real and personal, tangible and intangible, wherever situated, which are currently the property of PEA, including appreciation of existing property and any accretion, addition or accumulation thereto, are acknowledged to be the property of PEA and shall remain its property in the event of cessation, dissolution, or disaffiliation. At all times the funds and property of PEA shall remain under the direction and control of the properly constituted officers of PEA in accordance with its Constitution.

5. At all times, PEA shall retain its identity consistent with its own principles and policies and shall have full autonomy as a local union in accordance with the provisions of the International Constitution and By-Laws of SEIU. PEA's autonomy shall include, but is not limited to, the right to retain its own Constitution and By-Laws, its own dues structure, elect its own officers, select its own staff, vote, make its own decisions regarding contract demands and negotiations, including joining coalitions for bargaining purposes, engage in political activity on behalf of local union members, retain professional services including accountants and attorneys, as well as make policy determinations concerning PEA. In that regard, SEIU hereby waives the provisions of Article VIII, Section 1(f) insofar as it pertains to the authority of the President of SEIU to negotiate a collective bargaining agreement for PEA.

6. The exclusive jurisdiction of PEA shall extend to all employees of Clark County and shall include all current members of PEA. SEIU agrees not to conduct or allow any of its local unions to conduct any organizing attempts within PEA's exclusive jurisdiction, except in cooperation with PEA. PEA shall also have jurisdiction to organize all public employees within the boundaries of Clark County, Nevada.

7. Upon implementation of this agreement, PEA agrees to pay the full per capita payments to SEIU in accordance with Article XII of the Constitution and By-Laws of SEIU on behalf of all regular members of PEA. No initiation fee shall be required by SEIU to be paid by PEA on any regular members represented by PEA. Article XIV, Section 6 (minimum dues) is hereby waived.

8. PEA will not be obligated to pay any per capita tax to SEIU on behalf of any associate or retired members of PEA, except those participating in the SEIU associate members benefit program.

9. Upon implementation of this agreement SEIU agrees to grant PEA a per capita rebate in an amount as set forth below on each regular member of PEA on whom per capita tax is received by SEIU in accordance with Paragraph 7 of this agreement:

a. The entire per capita tax payment less $.50 per month, per member on whom per capita tax is received by SEIU during the first twelve months of this agreement.

b. The entire per capita tax payment less $1.00 per month, per member on whom per capita tax is received by SEIU during the second twelve months of this agreement.

c. The entire per capita tax payment less $2.00 per month, per member on whom per capita tax is received by SEIU during the third twelve months of this agreement.

d. The entire per capita tax payment less $3.00 per month, per member on whom per capita tax is received by SEIU during the fourth twelve months of this agreement.

e. Beginning with the fifth twelve months of this agreement no rebates will be made. PEA will be paying full per capita tax in accordance with Section 7 of this agreement.

The above rebates shall constitute all rebates payable to PEA, including any regularly scheduled rebate of fund provided for in the International Constitution or by action of the International Executive Board.

10. SEIU will assign at its cost including salary, benefits, and expenses a full-time organizer to PEA for 48 months. PEA shall provide office space and reasonable administrative support for the organizer. Administrative support includes routine office supplies, incidental photo copying, local telephone and secretarial services.

It is agreed that from time to time the organizer may be assigned to PEA to perform representational services to members provided that such assignment does not interfere with the organizer's organizing responsibilities.

It is agreed and understood that organizing new members both in existing bargaining units and new units will be the primary responsibility of the organizer. In that regard, it is agreed that when PEA membership reaches 2,200 members, per capita rebates on each regular member above 2,200 on whom per capita tax is received by SEIU shall be as set forth below.

a. The entire per capita tax payment less $.50 per month, per member on whom per capita tax is received by SEIU during the first twelve months of this agreement.

b. The entire per capita tax payment less $1.50 per month, per member on whom per capita tax is received by SEIU during the second twelve months of this agreement.

c. The entire per capita tax payment less $2.50 per month, per member on whom per capita tax is received by SEIU during the third twelve months of this agreement.

d. The entire per capita tax payment less $3.50 per month, per member on whom per capita tax is received by SEIU during the fourth twelve months of this agreement.

11. SEIU shall make available on a periodic basis at its cost and when requested, skilled negotiators to assist PEA in the negotiation of collective bargaining agreement and contract administration. Research support including budget analysis, wage and benefit comparability studies, and cost analysis will also be provided when requested.

12. SEIU will conduct on a periodic basis at its cost and when requested, steward training for PEA. SEIU will provide the instruction and materials.

13. SEIU shall provide assistance on a periodic basis at its cost when requested by PEA in the area of legislation, political action, communications, and publications.

14. In addition to the specific services identified in Sections 10, 11, 12, and 13, SEIU will provide PEA with the full range of services customarily provided to all SEIU Locals.

15. The members of PEA on whom per capita tax is paid to SEIU shall be entitled to full membership in SEIU under the Constitution and By-Laws of SEIU, with the calculation of length of good standing commencing with the first month per capita payments are attributable.

16. PEA as an affiliated local union of SEIU shall have all rights, benefits, and privileges of any fully affiliated local union of SEIU including affiliation with the AFL-CIO. SEIU shall pay to the AFL-CIO the required per capita tax on each regular member represented by PEA. In addition to paying the required AFL-CIO per capita tax as stated above, SEIU agrees to assure that at all times PEA meets the requirements for protection under Article XX of the AFL-CIO Constitution.

17. Any agreements negotiated by PEA with any public agency shall be in the name of PEA only and SEIU as an International Union shall not be a signatory to such agreements.

18. The provisions of Article VIII, Section 7(a-f) and Article XII, Section 3 of the SEIU Constitution regarding trusteeship are hereby waived except for the purpose of enforcing this agreement pursuant to Paragraph 21 below or with the approval of the PEA Board of Representatives.

19. This agreement shall be interpreted in accordance with the laws of the State of Nevada.

20. This agreement shall be signed by the representatives of SEIU and PEA upon approval by a plurality of the members of PEA provided, however, this agreement shall go into effect July 1, 1987.

21. Any disputes concerning the meaning and application of the terms of this agreement, shall upon the request of either party, be referred to final and binding arbitration before an arbitrator mutually selected by the parties in accordance with Nevada revised statute 38. The costs of any such arbitration shall be borne equally by the parties.

22. In the event any provision of this agreement, except Paragraph 23, is held to be invalid under any court in a final judgement, such illegally held provisions of the agreement shall be severed from the rest of the agreement, and all other provisions of the agreement shall remain in full force and effect. In the event Paragraph 23 is held to be invalid, the parties agree to immediately negotiate a new agreement of affiliation and further agree that if within thirty (30) days after the date of said final judgement a new agreement is not agreed upon, PEA shall revert to independent status.

23. PEA at any time during the period beginning with the effective date of this agreement and ending with the 48th month shall have the right to disaffiliate from SEIU and revert to independent status. The decision to disaffiliate shall be made by the membership voting in a secret ballot election conducted in the same manner as the vote to affiliate. Such vote may be taken twice during the term of the agreement. Before such a vote is taken, SEIU will be given ninety (90) days notice and will be provided with the opportunity to meet with the PEA Board and to communicate with the membership of PEA.

24. Terms of agreement: Unless otherwise specifically stated herein, all provision of this agreement shall remain in effect until and unless modified, amended, or terminated by mutual agreement of the parties or by operation of law.

SERVICE EMPLOYEES INTERNATIONAL UNION
AFL-CIO, CLC

DATED: Aug 4, 1987 ______________________

______________________

CLARK COUNTY PUBLIC EMPLOYEES
ASSOCIATION

DATED: July 8, 1987 ______________________

______________________

# SERVICE EMPLOYEES INTERNATIONAL UNION

AFL-CIO, CLC

Grants this

# CHARTER

To FRITZ L. REESE, RUTH J. DAY, PATTIE BERRY, LORRAINE REESE,
JOHN CAHILL, TOM MARONEY, DAVID YANCY, SYVELLA KALIL, JAN JENKINS,
VICTORIA M. SANCHEZ, DOUGLAS KURDZIEL, RICK LOOP, MARY JANE MCDONALD,
ADELLA L. LOGAN, JACQUELINE NEWMAN, NANCY AITKEN, PENNY PERKINS, JIM ROSASCHI,
JUDY VANDEVER, MARK SCHOFIELD, ALVIN COLEMAN, JR., NOLA N. MULKEY, JOANN A. STEWART

*This Charter* **issued by the Service Employees International Union does grant to the herein named organization power to establish and be a Local Union of this International to be located in**

LAS VEGAS, NEVADA

**to be known and designated as**

CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION

**Local Union No.________ of the**

**SERVICE EMPLOYEES INTERNATIONAL UNION.**

*By This Charter* **this Local Union is granted all the powers and assumes all the obligations provided for by the Constitution and Bylaws of this International Union or any amendments hereafter made thereto.**

*In Witness Whereof* we have hereunto set our hands and the seal of the Service Employees International Union this 1ST day of JULY, 19 87.

# EXHIBIT 2

## (Report and Recommendation of International Executive Vice President Neiters)

**SERVICE EMPLOYEES INTERNATIONAL UNION**

| | | |
|---|---|---|
| **In the Matter of the Internal Needs of SEIU Local 1107** | ) ) ) ) | **Carol Nieters, SEIU Vice President Hearing Officer** |

**REPORT AND RECOMMENDATIONS TO THE**
**INTERNATIONAL PRESIDENT ON THE INTERNAL NEEDS OF SEIU LOCAL 1107**

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Pursuant to Article VIII, Section 7(g) of the SEIU Constitution and Bylaws, I was appointed by SEIU International President Mary Kay Henry as Hearing Officer to hear and make recommendations on the internal needs of SEIU Local 1107 ("Local 1107," "Local Union" or "Local"), and on what, if any, remedial actions should be implemented by the International Union to ensure effective democratic governance at the Local, promote and protect the interests of Local 1107 members, and build power for working people in Nevada. The hearing was conducted on October 29, 2016. (Hearing Officer Exh. 3).[1] The hearing was open to Local 1107's officers, Executive Board members, and members. Twenty-four witnesses presented testimony in person and several people submitted post-hearing statements on the internal needs of the Local Union. In formulating the recommendations contained in this report, I also considered relevant evidence that I received in connection with the hearing that I conducted on internal charges filed against several Local 1107 members on October 29-30, 2016, as requested by President Henry pursuant to her authority under Article XVII, Section 2(f) of the SEIU Constitution.[2]

President Henry appointed me as Hearing Officer to conduct a hearing on the internal needs of Local 1107 after she received numerous communications from Local 1107 members during the summer and fall of 2016 indicating that the democratic process and basic governance of Local 1107 had broken down, that the Local Executive Board was incapable of functioning and that divisions among various factions in the Local were impeding the Local's essential work. At the hearing and in the correspondence received

---

[1] Exhibits entered into the record during the internal needs hearing are identified as: "Hearing Officer Exh. __" or "[Member's Last Name] Exh. ___." References to the transcript of the internal needs hearing are identified as "Tr. Day 1 at [page number(s)]".

[2] My Report and Recommendations to the International President on the Local 1107 Internal Charges is incorporated herein by reference. References to the transcript of the internal charges hearing are identified as "Tr. Internal Charges Day 1 at [page number(s)]" or "Tr. Internal Charges Day 2 at [page number(s)]" as appropriate. Exhibits entered into the record during the internal charges hearing are identified as: "Hearing Officer Exh. __ (Internal Charges)" and exhibits submitted with written charges or responses thereto are identified by charge number and the party submitting them, for example, "Charge 1 Chg Ex. 3." "Chg" refers to Charging Party; "Chd" refers to Charged Party.

from Local 1107 members in advance of the hearing, Local members requested guidance and assistance from the International Union with the problems being experienced at the Local. (Hearing Officer Exh. 3).

It was clear from both the internal needs and internal charges hearings that Local 1107 has suffered a breakdown in internal union governance and democratic procedures that has interfered with its ability to serve its members and properly negotiate and enforce its collective bargaining agreements. Without immediate intervention, the Local Union will remain in crisis at the expense of its membership. Because the circumstances as they were presented to me at the hearing fully justify the imposition of an emergency trusteeship, I recommend that President Henry consult with counsel and consider that course of action.

## II. FINDINGS OF FACT

Local 1107 is a local union with passionate, engaged members and elected representatives, with a proud history, and with immense potential for success. The twenty-four members who spoke during the internal needs hearing expressed their deep concerns regarding the internal governance and current functioning of the Local, but they also forcefully expressed their pride in and passion for their Local and a desire to see it flourish.

### A. Serious Breakdown in Internal Union Governance and Democratic Procedures

The record clearly demonstrates that there has been an on-going and serious breakdown in internal union governance and democratic procedures at Local 1107 for some time, stemming from conflicts among warring factions on the Local Executive Board.[3] While different views were expressed about who bears ultimate responsibility for the current conflicts, all parties seem to agree that the persistent infighting has been interfering with the Executive Board's ability to function in a democratic manner for some time. Moreover, the inability to maintain order and resolve even routine conflict prevents Local 1107's leaders from completing the core work that Local 1107's members have elected them to do.

The hearing record indicates that Local 1107's Executive Board meetings regularly deteriorate into chaotic, bitter confrontations; indeed, name calling and shouting matches appear to be commonplace. At other times, elected leaders on one side or the other of a dispute have chosen to leave a board meeting in order to deprive the remaining Board members with whom they disagree of a quorum to vote on an issue in dispute. This pattern not only hobbles the governance of the Local but also deprives Local 1107 members of meaningful participation in the business of their union. During the hearing, Local 1107 members testified about the extensive dysfunction that characterizes the Local's Executive Board Meetings and how it harms the Local and its members. Some of that testimony is detailed below.

---

[3] These factions appear to be divided along sector lines, with one side consisting of public sector members and leaders and the other of healthcare sector members and leaders.

Brenda Marzan, a current Local 1107 Executive Board member who has been a member of the Local since 1988, testified that in many months the Board cannot complete its meetings, preventing the Local from managing its business and, ultimately, harming the members:

> The inability to get through our monthly Executive Board meetings [is] preventing us from doing the business of the local. The meetings have become abusive. There is profanity, name calling across the table, interruptions throughout each report and such a tug-of-war on each item that what should be a simple discussion and vote turns into a 30-minute war. I do not believe that over the last year we've gotten through an entire agenda. This demonstrates our inability to govern ourselves. The members' needs are not being fulfilled. ...
>
> When we are not fulfilling the obligation of the representation to our members, and human resources and management reach out to the officers asking for our help, it is a very bad day. When over 50 percent of the hearings are rescheduled due to the inability to communicate between the hall and elected officials and stewards, we're doing an injustice, and not only to the members needing our help, but to the Local as well. I have never been involved with a more unprofessional organization. I'm begging for help. Unfortunately, I have looked a lot at trusteeship, and I think that's the only answer to this at this point.

(Tr. Day 1 at 35-37).

Sheila Grain, a Clark County employee and elected Treasurer of Local 1107, testified about the chaos at Board meetings. She said that meetings deteriorate to the point of shouting and emotionally charged interactions between Board members. For example, at the July 2016 Board meeting, the Board did not complete its business because of the meeting's lack of order, which Sister Grain explicitly attributed to Local 1107 President Cherie Mancini's failure to control the Board meetings. In addition, at the October 2016 Board Meeting, the financial reports were not reviewed or approved because of chaos and confusion and failure to adhere to the meeting agenda. (Tr. Day 1 at 12-14).

Patricia Greaux, Chief Steward of Ancillary at University Medical Center ("UMC"), testified to the "unprofessionalism" of Board members and asserted that President Mancini has participated in and instigated such behavior:

> At this E-Board, it's been totally unprofessional. You have people wanting to fight each other, cussing each other out, in each other's faces, which is totally unprofessional. And you have the President of Local 1107 also participating in that type

> of behavior. How can she run any local when she's part of that problem also? ...
>
> As E-Board members, we have forgotten that we were the elected officials to represent every shop that is part of Local 1107. And that's why I'm asking for this to be trusteed from the International.

(Tr. Day 1 at 22-23).

Even President Mancini, who chairs the Executive Board meetings, admitted that at "[t]he last E-Board meeting, when the people who stood up here and talked didn't like what [they] heard, they decided they would get up and leave." Although President Mancini denied that this amounted to dysfunction because a quorum remained, the incident is part of a pattern that makes effective self-governance impossible—as shown by meeting minutes submitted by President Mancini following the hearing. (Tr. Day 1 at 73:20-26). For example, the October 28, 2015 Board Meeting Minutes reflect that there was no quorum to vote on Delores Boadie's contract. And the August 31, 2016 Meeting was not adjourned by motion, rather it dissipated and collapsed due to what the minutes describe as "situations."[4]

### B. Leadership Conflicts Cause Instability and Interfere with Local 1107's Ability to Carry Out its Collective Bargaining Responsibilities Properly and Effectively

The leadership conflicts in the Local are at the root of a pattern of instability and uncertainty that interferes with Local 1107's ability to carry out its most basic collective bargaining responsibilities properly and effectively. President Mancini's supervision of bargaining at UMC, one of Local 1107's largest and most significant employers, with over 3,000 represented workers, best exemplifies the breakdown in the Local's collective bargaining. The testimony showed that in July 2016, when Local 1107 members working at UMC were preparing to ratify the renewal of their collective bargaining agreement, President Mancini, who had not actively participated in the months-long bargaining process in spite of her constitutional obligation to do so,[5] nonetheless abruptly and unilaterally canceled the ratification vote by posting the cancellation on a public website. She did so without consulting the Bargaining Committee, and without regard for the fact

[4] President Mancini did not submit meeting minutes for all of the Board meetings between October 28, 2015 and September 28, 2016. No minutes were submitted for the March 2016, Board meeting. Additionally, some of the Board meeting minutes submitted were not dated.

[5] Under Article 16, Section 6 of the Local Constitution, the "authority to bargain collectively... [is] vested in a Bargaining Committee," and under Article 6, Section 6.B.5, the President, as spokesperson, is required to "actively take part in and stay informed of bargaining in all areas and to participate with the bargaining committees." (Hearing Officer Exh. 2).

that the affected members had already been notified of the date for the vote. (Tr. Day 1 at 19-23; Tr. Internal Charges Day 2 at 71-72). This episode is set forth in detail in my Report and Recommendations regarding the internal union charges against President Mancini.

In her cancellation notice, President Mancini announced that there would be an investigation into charges that the UMC Bargaining Committee had breached their fiduciary duty and failed to represent their members by agreeing to contract language that President Mancini found objectionable. (Tr. Day 1 at 28-29). In addition to violating her Constitutional duties as a member as set forth in my Report on the internal union charges, her conduct undermined the bargaining team's authority. President Mancini's unilateral actions caused bargaining unit members to question the judgment of the Bargaining Committee members, thereby damaging their reputations,[6] and her actions harmed all bargaining unit members by potentially delaying the implementation of hard-earned raises and longevity bonuses as provided for in the CBA that members were prevented from ratifying at that time.

Importantly, President Mancini's conduct signals to employers the union's lack of unity, thereby weakening the union's stature and damaging its ability to effectively advocate for and represent its members. Finally, although President Mancini eventually relented under pressure from members and leaders at UMC and the contract was ratified, the delay in ratification meant delayed longevity pay and raises for Local 1107 members. (Tr. Day 1 at 24).

The hearing record creates little doubt that the conflicts between the public and healthcare factions, which have been simmering for many years, have reached a boiling point, and have culminated in a set of actions and a pattern of conduct that is preventing the union from carrying out its most basic representational and collective bargaining duties.

### C. Failure to Adequately Communicate with the Membership Interferes with Local 1107's Collective Bargaining Responsibilities

In addition to the problems caused by conflicts among leadership, a wider communication breakdown in the Local has interfered with the ability of members and leaders to carry out their collective bargaining duties properly. The Chief Steward at Dignity Health, Krystal Shen, complained that the lack of effective communication in the Local has impeded her ability to perform her steward duties:

---

[6] One bargaining team member, Elizabeth Bolhouse, testified that President Mancini's public cancellation of the vote "was an embarrassment to me and also defamed me." (Tr. Day 1 at 28). She said that, as an attorney licensed to practice in Nevada, she was particularly nervous that President Mancini's claim that the bargaining team had breached their duty to represent their members would put team members at risk legally. (Id.)

> It's pretty much the same complaints that I have had for so long, a lack of communication. I actually find out more from my members than I do from my union. The information comes to the union. It's their responsibility to let us know, and it's just not happening. When I complain, I'm met with hostility and retaliation. It got so bad where I actually started sending members to the hall to let them tell their story because they didn't want to listen to me. I even had to have a meeting with members present to let them know what was going on with one of the staff members in which a roomful of members came to that meeting with [the] previous president, Martin [Bassick], to tell them that there was no support....
>
> I'm left at my shop basically with no help. I can't get any help from people at the union. I don't get a call back. If I write an e-mail or complaint, I get no response. So I've been left to pretty much just write grievance after grievance after grievance. ... [W]hen you have validity to the complaints, something needs to be done. I mean, there's paper trails, but they don't go anywhere. And instead, we're just left by ourselves, not able to give a presentation to the members because we have no support.

(Tr. Day 1 at 29-31).

To support her claims, Sister Shen submitted e-mails showing that she had attempted to communicate with leaders of the union, but did not receive responses adequate to enable her to execute her representation responsibilities. (Shen Exh. 1). And, although the union continued to hire more staff, Sister Shen di not get the help she needed to represent herself and her colleagues. She did say, however, that Executive Vice President Sharon Kisling offered to help her work through grievances. (Tr. Day 1 at 29-31).

Sister Shen submitted for the record a letter from a member in her bargaining unit (Catherine McKendrick) in which Sister McKendrick complained that, during a contract ratification vote held last year, she learned about the vote only when she happened to see handmade signs about it hanging on the walls at work; she had not received an e-mail or any other notification of the vote. She said that when she asked to review the proposed contract, she was told that she could not take a copy of it with her because the language had not been finalized and, when she read the contract, she found errors in the proposal pertaining to raises:

> The percentages listed were much higher than what was actually negotiated. ... I am sure that many people voting did not know this and took the contract at face value. It was nearly a year later before we actually got a copy of the final contract. During this time there [were] no contracts available to

> determine seniority for reduction in force situations, among other things. I am dismayed that our local leaders asked us to vote on a fluid document and then did not even insist on the final version for almost a year. … [Shen's] efforts to represent members are met with contempt. … Why do our senior union leaders act so threatened by someone who is concerned about preserving the rights of our members?

(Shen Exh. 1).

Sister Marzan, long-term member and Executive Board member, testified about not receiving information about the job classifications within the bargaining unit that she represents or receiving information so late that it resulted in the untimely performance of her duties as a steward. (Tr. Internal Charges Day 2 at 149-153, 155-156; Charge 2 Chg Exh. 6; Charge 2 Chg Exh. 7; Charge 4 Chg Exh. 3). Sister Marzan testified and submitted evidence regarding difficulty that she had communicating with union leadership, especially President Mancini. (Charge 4, Chg Exhs. 3, 5, 7 (Email from UMC stating that they had tried several times to reach President Mancini regarding the cancellation of the CBA ratification vote), 13 (emails between Patricia Greaux and President Mancini regarding UMC)).

In addition, Sister Grain, the local Treasurer, testified that President Mancini unilaterally changed the location of steward meetings without notifying all of the stewards, which prevented stewards from participating in monthly meetings as required by the Constitution and Bylaws. (Tr. Day 1 at 12).

### D. Inadequate Communication Impeded Staff Oversight and the Work of the Local, and Runs Afoul of Democratic Procedure

The record also shows that inadequate communication has caused confusion and impeded staff oversight. Christina Breeden, who worked at the Local's front desk performing administrative functions, testified that she worked for the Local until August 10, 2016 when she "received an e-mail letter from Cherie Mancini that said that I would no longer be needed at the hall. I was asked to do work for Sharon Kisling after that, which was not uncommon for me to do. And I did that for two weeks following that. I have not received a termination letter. So I'm still not aware of what my status is with SEIU, and I have not received my last check." (Tr. Internal Charges Day 1 at 186:7-14).

She also testified that "Peter kept saying I was a terminated employee, and there was a later e-mail that Cherie had sent to me that acknowledged that I was still an employee. And I never had an understanding that I was not an employee. That's what really led to this big escalation." (Tr. Internal Charges Day 1 at 193:15-23).

Maleisa Britt-Williams, who also worked at the Local's front desk performing administrative functions, testified that it was not clear from whom she was to receive instructions. "Direction came from just about everyone else that was full time. So as a part-time staff, your direction came from everyone. And your consequences came from

everyone. I didn't feel like there was a governing system as far as [a standard operating procedure], so I didn't necessarily know how I was protected so, yeah." (Tr. Internal Charges Day 1 at 216:1-7).

Indeed, neither President Mancini nor Executive Vice President Sharon Kisling denied the communication breakdowns in the Local. And some of their testimony demonstrated how they each have contributed to the dysfunction, and demonstrated that it extended to staff oversight as well. Some examples are given below.

President Mancini admitted to instructing all Local officers to seek approval from her before giving Local staff direction or an assignment. (Tr. Internal Charges Day 2 at 43).

> [On] July 14th . . . I provided an interoffice memo in regards to direction given by staff. And that's based upon the fact that Sharon Kisling was calling in every day to the part-time people and basically giving them instruction in what she wanted them to do. …
>
> [The July 14] memo was "effective immediately, any direction given by an officer of the union must be approved by the President before the assignment is completed."
>
> [T]his was just based upon the fact that there was extra duties being done that were tak[ing] away from what the duties were of the hall.

(Tr. Internal Charges Day 2 at 43).

Sister Mancini explained that, in her estimation, this instruction was given in response to Sister Kisling assigning Local staff extra duties that were detracting from the union's business. (Id.). Sister Kisling routinely tried to direct and assign staff so that, in her contrary estimation, work to meet the needs of the members would get accomplished. Sister Mancini, rather than working with her sister officer to resolve this recurring conflict, attempted to regain control by sending the aforementioned email to all staff on July 14th.

According to Trustee Clara Thomas, "[Staff] are told not to do anything or answer any questions from elected officials unless President Mancini or Peter [Nyugen] gives permission." (Tr. Internal Charges Day 1 at 128:25–129:4).

For her part, Sister Kisling admitted to calling an emergency Executive Board meeting while President Mancini was on vacation (Tr. Internal Charges Day 2 at 197-202), which I concluded in my Report on the internal union charges she lacked the constitutional authority to do.

Adequate and effective communication is necessary for the proper and efficient functioning of the Local. Without such, staff are left without clear direction on the work

duties they are required to perform, to whom they should report, and from whom they will receive feedback. This type of confusion detracts from staff expending resources and energy working towards the goal of serving the membership.

Equally important, as I have set forth elsewhere, a leader attempting to funnel all activity of the Local through one individual runs counter to the democratic processes that the membership preserved in their Constitution and Bylaws. Indeed, as a practical matter, if officers are not allowed to direct staff without the President's authorization, one may fairly presume that when the President is unavailable for any amount of time, no work at all may be performed on behalf of a local's members.

The testimony outlined above demonstrates the utter breakdown in communication within the leadership and the chaos and confusion that that breakdown created with respect to staff supervision and effective and efficient operation. A local's democratic processes and governance cannot and should not function in this way.

### E. Executive Vice President Usurped Constitutional Authority of President

As detailed in my Report on the internal union charges, Sister Kisling violated the Local Union Constitution by usurping President Mancini's authority to hire and fire Local staff when she attempted to terminate a Local staff person while the President was on vacation, further undermining democratic governance in the Local.

The running undercurrent of discord concerning staff came to a head on August 17, 2016, while Sister Mancini was on a two-week vacation in Hawaii. That afternoon in the union hall, Sister Kisling sought out Peter Nguyen, the Director of Organizing, and demanded to meet with him about certain issues she had with his job performance. The meeting, which was witnessed by at least seven staff members, began as a confrontation and escalated to the point of where Brother Nguyen was terminated and law enforcement was summoned.

There is no debate that the Local 1107 Constitution and Bylaws provides the President with authority to hire, fire, assign and direct the Local's staff, in consultation with the EVP and subject to the staffing levels and policies set by the Executive Board. (Article 15(A)(4) and (5); Article 8(2)(B) and (C)). Sister Kisling does not dispute the authority of the President to terminate an employee, but she relies on Article 7 Section 7(B)(3), which authorizes the EVP to "serve in the absence of the President and perform Presidential duties at such time," to justify her assuming the role of President on August 17.

It must be emphasized that the "absence" of the President in this instance was a two-week vacation. No rational reading of the Constitution and Bylaws can stretch this provision to allow the second-in-command to assume full authority over the operations of the Local every time a President steps away from her office for a matter of days. Where a President is unable to perform her duties for an extended period of time – whether due to death, disability, or resignation-the provision would make more sense as a means of ensuring continuity and order in the Local's operations. However, that rationale does not

justify a transfer of authority away from the President simply because she is on a scheduled vacation. Further, in this case, it was clear that Sister Mancini was accessible by phone and email and, indeed, was in contact with the Local as needed during her vacation.

Nor can Sister Kisling claim that any emergency or exigent circumstances compelled her to act on termination at that precise time instead of waiting a few days for the return of Sister Mancini. It appears instead that Sister Kisling seized the opportunity of Sister Mancini's vacation for the purpose of removing Brother Nguyen, on whom Sister Mancini relied to carry out her policies in the Local and with whom Sister Kisling had long been at odds. In doing so, Sister Kisling created confusion and uncertainty about who in fact was the rightful president of the Local Union.

Further, the manner in which Sister Kisling conducted herself during this incident compounded the disruption in the Local. According to the Charge that was filed by Executive Board member Amelia Gayton, at least seven officers and staff members, including Brother Nguyen, described Sister Kisling as "out of control" and behaving so belligerently that local law enforcement was called to the office to restore the peace. (Tr. Internal Charges Day 2 at 177, 187). In their own words, the witnesses observed Sister Kisling "yelling," "shouting," verbally attacking Brother Nguyen, approaching "within inches" of him, putting her finger in his face, swinging her arms around, stomping, following him from one conference room to another to his office, trying to force herself into the room he occupied, and ordering him to "get out of my union hall." Sister Gayton twice physically inserted herself between the combatants out of fear that Sister Kisling would do violence to Brother Nguyen. Before it was over, three staff members, two trustees, and Sister Gayton had tried to intervene. Sister Kisling began to calm down after Brother Nguyen started recording her on his phone video, but she maintained that he was no longer working for the Local, confiscated his keys, phone and computer, and saw him escorted from the premises by the police she had called. (Charge 3 Chg Exh. 1).

The following day, Trustees Clara Thomas and Alfredo Serrano called an all staff meeting to discuss the incident. It does not seem to have allayed the fear and suspicion that had developed among the staff.

Meanwhile, with Sister Mancini still on vacation, Sister Kisling - again relying on her assertion that she had the authority to perform the duties of the President in Sister Mancini's absence - called an "emergency meeting" of the Executive Board for August 20. (Article 7, Section 6(B)(2) authorizes the President to call "special meetings" of the Board "as necessary.") (Charge 3 Chg Exh. 4). If Sister Kisling intended to obtain the Board's agreement that the EVP had the authority to terminate an employee while the President was on vacation, she was acting too late, having already moved to terminate Brother Nguyen's employment. Moreover, it is difficult to locate any "emergency" that required a meeting the day before Sister Mancini was due back.

Members of the Board were understandably confused about the purpose of the "emergency meeting" and the emergency that justified it. It was protested by some of the Board members and described as a "hijacking of the Executive Board" by one. In what was

clearly a contentious and chaotic meeting, no agenda was presented, no business conducted, and no minutes taken before the meeting disbanded. (Charge 3 Chg Exh. 3).

There is no justification, in the Local's Constitution or elsewhere, for the events of August 17 and 18.

And the subsequent "emergency" board meeting seems to have made matters worse. No resolution of the question of Sister Kisling's authority or shared understanding of why the Board was called into session was reached; hostilities between Sister Kisling and Sister Mancini were fully on display; and the meeting only heightened the divisions within the Board and unsettled the democratic underpinnings of the local's functioning.

Several staff members described the events of August 17 and 18 as "frightening," "shocking" and "appalling." (Charge 3 Chg Exh. 1). Four or five grievances were filed by staff members against Sister Kisling, and Brother Nguyen successfully sought a protective order that barred Sister Kisling from entering the Local Union's office or being within a certain distance from him personally. It is hard to imagine how the needs of the members can be served in a local that has lost its way so fundamentally and is as demoralized and destabilized as Local 1107 is described by its members.

The attempted usurpation of August 17, 2016, and its aftermath contributed to a breakdown of democratic procedure and instability in the Local. Indeed, it is plain that the Executive Board is at times so entrenched in the Mancini versus Kisling camps that it cannot conduct business or even see its required meetings through to successful completion. It further appears that Local staff are substantially divided into the same camps and are at a loss to know who is in charge of what or accountable to whom.

As detailed elsewhere in this report and in my Report on the internal union charges, President Mancini believed that it was appropriate to require all work of the staff be authorized and supervised by her alone and that she could run the Local single-handedly or, at best, with a small cadre of favored staff. For her part, EVP Kisling believed she could exercise the full authority of the presidency if the President was on vacation but in contact with the Local, and attempted to seize the occasion of the President's vacation to accost and attempt to terminate an employee she disliked, resulting in a thoroughly demoralized staff and a court order preventing a key local leader and staff member from even being in the same room with each other.

### F. Local Constitution and Bylaws Contains Conflicting Provisions

While not an excuse for the conduct discussed here and in my Report and Recommendations on internal union charges, it is clear that the often conflicting provisions of the Local's Constitution and Bylaws concerning exactly what authority is held by the various Local officers and Executive Board members significantly contribute to the confusion around governance and democratic procedures. During the hearing, several members commented on the inadequacy of the Constitution and Bylaws. (Tr. Day 1 at 16). Even a superficial reading of the Constitution and Bylaws confirms this observation.

For instance, one constitutional provision states that the Executive Board approves staffing levels, compensation, and terms and conditions of employment for staff. Another provision states that the President shall hire and fire staff with prior consultation with the Executive Vice President and shall assign and direct staff. Yet another provision states that the Local President shall assign and direct staff "with prior consultation with the Executive Vice President on budgetary matters." A fourth provision provides that "[a]ll staff of the Local Union will work under the direction of the President, who has the authority to hire, fire, assign and supervise their work, pursuant to any staff-related policies adopted by the Executive Board."[7]

The existence of multiple, conflicting provisions on this subject is not unique; it is a problem that exists on multiple topics throughout the Local Constitution. A Constitution should be a local union's "rules of the road" for self-governance. In this instance, the rules not only do not help to clarify answers to important questions, they actually contribute to the ongoing conflict and confusion within the local. In an ideal circumstance, the elected leaders of the local union could embark on a project to revise and clarify their governing documents with the input of and in service to their members. Since the governing body of this Local can scarcely complete its regular business in executive board meetings, it is hard to imagine how it can engage in the kind of work, together and with SEIU members, to revise and improve its Constitution and Bylaws.

Further, the Local Executive Board does not, apparently, make use of the tools at its disposal to navigate conflicts that arise during Executive Board meetings. Specifically, the Local's Constitution incorporates Robert's Rules of Order as a procedural framework for conducting Executive Board meetings, but a review of Board meeting minutes shows that the Board does not rely on those rules to conduct their meetings.[8]

While they are not always "user friendly," Robert's Rules of Order, when deployed during a contentious meeting, can help to resolve some of the ambiguities and conflicts that arise from time-to-time in every democratic organization. (Tr. Day 1 at 33). It is not unusual, nor is it problematic, for a local union's elected leadership to express differing views, even in a heated and passionate manner, during an Executive Board meeting. But in the heat of disagreement, having a system by which the conversation is moderated can contain conflict before it reaches a boiling point and up-ends the entire gathering, as it apparently does so often at Local 1107.

## III. RECOMMENDATIONS AND CONCLUSION

Having carefully reviewed the hearing record, I have concluded that immediate intervention in the Local – ideally in the form of an International Union trusteeship – is

---

[7] SEIU Local 1107 Constitution, Article 8, Section 2 and Article 15, Sections 2, 4 and 5 (Hearing Officer Exh. 2).

[8] (Id. at Article 8, Section 8).

necessary to assure the performance of Local Union collective bargaining duties and functions, restore effective democratic procedures in the Local, protect the interests of the Local and the membership, and otherwise carry out the legitimate objects of the International Union.

It is clear from the testimony and evidence presented at the internal needs and the internal charges hearings that Local 1107 is a union in crisis. Because of the internal conflicts that have spilled over into the Local's governance and collective bargaining processes, the Local is not functioning effectively and is not carrying out its collective bargaining and other representational duties properly. In short, it is not able to conduct itself in a manner that protects the most basic interests of SEIU Nevada membership.

In addition, as detailed in my Report on internal union charges, local union officers and some Executive Board members appear to operate outside of established constitutional requirements. If Local 1107 members cannot rely on the structures and procedures created in the Local Constitution, there is no way for them to exercise their rights, participate in the democratic governance of the Local Union, and properly engage in the collective bargaining process with their employers.

The failure and inability of Local 1107 to function properly has had a negative impact on its membership. For instance, Sister Marzan lamented that responding to the crisis in the Local and preparing for the internal needs and internal charges hearings had distracted her from focusing on the impending elections and the union's political program:

> The members' needs are not being fulfilled. We are in the middle of an election that can make or break us. I, for one, am spending so much time on these hearings, e-mails, trying to take care of union business, covering the butt of the local, inciting [sic] with other members of the local and staff, that I extend no time phone banking, walking for candidates, canvassing, et cetera. This is itself is a disservice to the working class. We are not protecting our membership. ... Our lack of a political program is a grave concern for me.

(Tr. Day 1 at 35-36).

It is my firm belief that without immediate and drastic intervention, the Local Union will remain in crisis at the expense of its membership. The circumstances fully justify the imposition of an emergency trusteeship, and I recommend that President Henry consult with counsel and consider that course of action. It is my belief that nothing short of a trusteeship can restore effective governing procedures in the Local, assure the performance of the Local's collective bargaining duties and functions, protect the interests of the Local and the membership, and allow the Local to become a high-functioning, democratic organization with leadership that encourages healthy discourse while moving Local 1107 forward.

I acknowledge that this is a very serious remedy that is warranted in cases, such as this, where elected leaders have seriously lost their way and are not able to protect their members from attacks on their union representation, advance their interests with employers, and/or conduct the business of the local union in conformity with the democratic principles of self-governance that its members have adopted.

I am confident in the resilience and resourcefulness of Local 1107's members. It is clear that they have built an incredible local of which they are very proud, and I believe they deserve the opportunity to engage with their union in the critical fights of our day – for justice and dignity in their workplaces and in our country – rather than being captive to leadership conflicts that overshadow their needs. It is my recommendation that a trusteeship be imposed to restore their ability to participate in a democratic local union and protect the standard for which they have fought so hard over the past several decades.

Respectfully submitted,

Carol Nieters /dl

Carol Nieters, Hearing Officer

Dated: April 26, 2017

# EXHIBIT 3

## (International President Mary K. Henry's Letter to Membership)

SEIU
Stronger Together

MARY KAY HENRY
International President

GERRY HUDSON
International Secretary-Treasurer

NEAL BISNO
Executive Vice President

LUISA BLUE
Executive Vice President

HEATHER CONROY
Executive Vice President

SCOTT COURTNEY
Executive Vice President

LESLIE FRANE
Executive Vice President

VALARIE LONG
Executive Vice President

ROCIO SÁENZ
Executive Vice President

SERVICE EMPLOYEES
INTERNATIONAL UNION
CTW, CLC

1800 Massachusetts Ave., NW
Washington, DC 20036

202.730.7000

www.SEIU.org

April 26, 2017

**Via Electronic and First-Class Mail**

Cherie Mancini, President
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
cmancini@seiu1107.org

Sharon Kisling, Executive Vice President
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
skisling@seiu1107.org

Amelia Gayton, Exec. Board Member
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
ameliagayton@yahoo.com
agayton@seiu1107.org

Brenda Marzan, Exec. Board Member
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
bmarzan@seiu1107.org
bmarzan@aol.com

Patricia Greaux, Exec. Board Member
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
luvyliness@cox.net

Richard Hodgson
SEIU Local 1107
2250 S. Rancho Drive # 165
Las Vegas, NV 89102
rhodgson331@gmail.com

Alfredo Serrano, Trustee
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
tfjas@aol.com

Clara Thomas, Trustee
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
11cithom@gmail.com

Deb Springer, Trustee
SEIU Local 1107
2250 S. Rancho Drive #165
Las Vegas, NV 89102
Dspringly@aol.com

James Kirkpatrick
SEIU Local 1107
2250 S. Rancho Drive # 165
Las Vegas, NV 89102
jkirk101756@gmail.com

Dear Sisters and Brothers:

Hearing Officer Carol Nieters submitted the attached Reports and Recommendations to me concerning the internal charges filed against SEIU Local 1107 President Cherie Mancini, Executive Vice President Sharon Kisling, Executive Board Member Patricia Greaux, Trustees Alfredo Serrano and Deb Springer, and member Richard Hodgson, and the internal needs of Local 1107. I assumed original jurisdiction over all of the internal charges, pursuant to Article XVII, Section 2(f) of the SEIU Constitution and Bylaws,

and Hearing Officer Nieters conducted a consolidated hearing in this matter on October 29 and 30, 2016. I hereby adopt Hearing Officer Nieters' Reports and Recommendations in their entirety.

Pursuant to my authority under Article XVII, Section 2(f) of the SEIU Constitution, I hereby remove Sister Cherie Mancini from her position as Local 1107 President, bar her from holding office for one (1) year, and suspend her from membership in SEIU for six (6) months, effective April 26, 2017. Further, pursuant to my authority under Article XVII, Section 2(f) of the SEIU Constitution, I hereby remove Sister Sharon Kisling from her position as Local 1107 Executive Vice President, bar her from holding office for one (1) year, and suspend her from membership in SEIU for six (6) months, effective April 26, 2017.

With regard to the Hearing Officer's Report and Recommendation on Internal Needs, I am taking her recommendation under advisement and I have asked International Executive Vice President Neal Bisno and Deputy Chief of Staff Deedee Fitzpatrick to attend the Local 1107 Executive Board meeting scheduled for this evening, April 26, 2017, in order to discuss how the Local can move forward in the way that best serves its members. I would ask that you accommodate this request and allow Brother Bisno to address the Executive Board in executive session.

Further, given the removal of local union officers, and pursuant to my authority under Article VIII, Section 7(g) of the SEIU Constitution, I am appointing International staff members Kathy Eddy and Steve Ury as Monitors to assist Local 1107 leaders, staff and members with carrying out the Local's priorities and commitments. The Monitors must be given notice of and access to all leadership and membership meetings at Local 1107, access to information and records at their request, and will be available to meet with Local 1107 officers, Executive Board members, staff and members.

In solidarity,

Mary Kay Henry
International President

Enclosures (2)

cc: Carol Nieters, Hearing Officer
Neal Bisno, Executive Vice President
Heather Conroy, Executive Vice President
Leslie Frane, Executive Vice President
SEIU Local 1107 Executive Board
Deedee Fitzpatrick, Deputy Chief of Staff
Nicole Berner, General Counsel
Kathy Eddy, SEIU Local 1107 Monitor
Steve Ury, SEIU Local 1107 Monitor

# EXHIBIT 4

(International President Mary K. Henry's
Trusteeship Order)

SEIU
Stronger Together

# ORDER OF EMERGENCY TRUSTEESHIP APPOINTING A TRUSTEE AND DEPUTY TRUSTEE TO TAKE CHARGE AND CONTROL OF THE AFFAIRS OF SEIU LOCAL 1107, CTW, CLC

**TO: All Members and Former Officers and Executive Board Members of SEIU Local 1107, CtW, CLC**

Pursuant to my authority under Article VIII, Sections 7(a) and 7(f), of the SEIU Constitution and Bylaws, I have determined that an emergency situation exists within SEIU Local 1107, CtW, CLC (hereinafter "Local 1107," "Local Union" or "Local"), and that the interests of Local 1107 and the membership require the immediate appointment of a Trustee and Deputy Trustee to preserve the Local Union's status as collective bargaining representative and the performance of its representational duties and functions, restore democratic procedures at the Local, protect the interests of the Local and its members, and otherwise carry out the legitimate objects of the International Union.

In the summer and fall of 2016, I received complaints from Local 1107 members that democratic governance at Local 1107 had broken down, that the Local Executive Board was incapable of functioning properly and that divisions among various factions in the Local leadership were impeding the Local's work. In light of these concerns, pursuant to my authority under Article VIII, Section 7(g) of the SEIU Constitution, I appointed SEIU Vice President Carol Nieters to conduct a hearing on the internal needs of Local 1107 and on what, if any, remedial steps should be taken by the International Union to ensure effective democratic governance at Local 1107, promote and protect the interests of Local 1107 members, and build power for working people in Nevada. Local 1107 members were invited to appear at the hearing to share their views regarding these issues. Hearing Officer Nieters conducted the hearing on October 29, 2016, in Las Vegas, Nevada.

On April 26, 2017, Hearing Officer Nieters submitted her Report and Recommendations to me on the internal needs of Local 1107. Based on Sister Nieters' findings and recommendations, and based on a request that I received from Local 1107's Executive Board that I place the Local into an emergency trusteeship, I have determined that there is justification to place Local 1107 into an emergency trusteeship, and that there is justification to place Local 1107 into trusteeship without first holding a hearing.

The specific circumstances that make this Order of Emergency Trusteeship necessary include the following:

MARY KAY HENRY
International President

GERRY HUDSON
International Secretary-Treasurer

NEAL BISNO
Executive Vice President

LUISA BLUE
Executive Vice President

HEATHER CONROY
Executive Vice President

SCOTT COURTNEY
Executive Vice President

LESLIE FRANE
Executive Vice President

VALARIE LONG
Executive Vice President

ROCIO SÁENZ
Executive Vice President

SERVICE EMPLOYEES
INTERNATIONAL UNION
CTW, CLC

1800 Massachusetts Ave., NW
Washington, DC 20036

202.730.7000

www.SEIU.org

- There has been an on-going and serious breakdown in internal union governance and democratic procedures at Local 1107, stemming from warring factions on the Local Executive Board. The persistent conflict interferes with the Executive Board's ability to function in an orderly and democratic manner. Executive Board meetings regularly deteriorate into chaotic, bitter confrontations, name calling and shouting matches. The inability to maintain order and resolve even routine conflict prevents Local 1107's leaders from completing the work that the Local's members have elected them to do.

- Leadership conflicts and in-fighting in Local 1107 have caused great instability in the Local and interfered with its carrying out its collective bargaining responsibilities properly and effectively. For example, when Local 1107 members working at the University Medical Center ("UMC") were preparing to ratify a collective bargaining agreement last year, Local 1107's then-President, who had not actively participated in the bargaining process in spite of her constitutional obligation to do so, abruptly and unilaterally canceled the ratification vote by posting the cancellation notice on a public website. In the public notice, she announced that there would be an investigation into charges that the bargaining team had breached their fiduciary duty and failed to represent their unit members properly. In addition to undermining the bargaining team's authority, the former President's conduct signaled to employers the Local's lack of unity, thereby weakening the union's stature and damaging its ability to effectively advocate for and represent its members. Although the former President eventually relented under pressure from UMC members and leaders and the contract was ratified, the delay in ratification meant delayed longevity pay and raises for Local 1107.

- Local 1107's failure to communicate adequately with the Local membership interferes with its collective bargaining responsibilities. Members and stewards complained that difficulty getting the information and assistance from the Local that they need to represent themselves and their colleagues has impeded their ability to perform their representational duties properly.

- In addition, the communication breakdown in the Local impeded staff oversight, leaving Local staff without clear direction on the work they are required to perform, to whom they should report and from whom they will receive feedback. This confusion impedes the proper and efficient functioning of the Local and detracts the staff from expending resources and energy toward serving the membership.

- Local 1107's former Executive Vice President usurped the former President's constitutional authority to hire and fire Local staff by attempting to terminate a staff member while the former President was on vacation, undermining democratic governance in the Local.

- Several conflicting provisions in Local 1107's Constitution and Bylaws pertaining to the authority of the Local's officers and Executive Board members contribute to the conflict and confusion in the Local. The existence of multiple, conflicting provisions on a subject is not unique in the Local Constitution; it is a problem that exists on multiple topics throughout the Constitution. In addition, Local Executive Board does not make use of tools

at its disposal to navigate conflicts that arise during Executive Board meetings, such as Robert's Rules of Order.

- On April 26, 2017, the Local 1107 Executive Board voted to request that the International Union place the Local into an emergency trusteeship.

Therefore, in light of the situation facing Local 1107, and based the request received from the Local's Executive Board, I have this date placed Local 1107 into an emergency trusteeship, and appointed Luisa Blue as Trustee of Local 1107 and Martin Manteca as Deputy Trustee of Local 1107, with all of the powers that they are entitled to assume under the SEIU Constitution and Bylaws and applicable law, for the purposes of preventing disruption of contracts, assuring that the Local Union performs its duties as collective bargaining representative, restoring democratic procedures, protecting the interests of Local 1107 and its membership, and otherwise carrying out the legitimate objects of the International Union. The Trustee and Deputy Trustee shall assume responsibility for Local 1107 on April 28, 2017. In addition, I have determined that an emergency exists that justifies the pre-hearing appointment of a Trustee and Deputy Trustee at the Local Union.

Local 1107's Constitution and Bylaws are suspended for the period of the trusteeship. In addition, in accordance with Article VIII, Section 7(f) of the SEIU Constitution and Bylaws, I will request that the International Executive Board appoint a hearing officer and that a Notice of Hearing, Appointment of Hearing Officer and Rules of Procedure be issued in the very near future. Further, consistent with this notice, a hearing regarding the imposition of an emergency trusteeship over Local 1107 will be held.

Further, pursuant to Article VIII, Section 7(b) of the SEIU Constitution, I hereby remove all Local 1107 officers, Executive Board Members, trustees and representatives from their positions as such, and all trustees of trust funds over which the Local Union has the power of appointment.

Consistent with the requirements of Article VIII, Section 7(f) of the SEIU Constitution, I will request that the International Executive Board appoint a hearing officer and that a notice of hearing be issued in the near future. Pursuant to that provision of the SEIU Constitution, a hearing regarding the SEIU's imposition of an emergency trusteeship over Local 1107 shall be held within thirty (30) days from the imposition of this trusteeship.

I request that all members and employees of Local 1107 cooperate with the Trustee and Deputy Trustee in every respect. All former officers, Executive Board members, trustees, representatives and employees of Local 1107 shall immediately make available to the Trustee and Deputy Trustee all books, records, funds and other property of the Local Union in their possession and control.

Dated this 28th day of April, 2017.

Mary Kay Henry
International President

cc: Gerald Hudson, International Secretary-Treasurer
Neal Bisno, Executive Vice President
Heather Conroy, Executive Vice President
Leslie Frane, Executive Vice President
Carol Nieters, Hearing Officer
Luisa Blue, SEIU Local 1107 Trustee
Martin Manteca, SEIU Local 1107 Deputy Trustee
Former Officers and Executive Board Members, SEIU Local 1107
Deedee Fitzpatrick, Deputy Chief of Staff
Nicole G. Berner, General Counsel
LaRell Purdie, Managing Counsel

# EXHIBIT 5

## (Nevada Service Employees Union aka SEIU 1107 Constitution)

SEIU
NEVADA

# Service Employees International Union

SEIU Local 1107
3785 E. Sunset Road, Suite 1
Las Vegas, NV 89120

## Constitution and Bylaws

## As Amended April 2010 and January 2012

# Summary of Contents

## Contents

Summary of Contents .......... 1
PREAMBLE .......... 3
ARTICLE 1 .......... 3
NAME .......... 3
ARTICLE 2 .......... 3
MISSION STATEMENT .......... 3
ARTICLE 3 .......... 4
OBJECTIVES AND PURPOSES .......... 4
ARTICLE 4 .......... 5
JURISDICTION .......... 5
ARTICLE 5 .......... 6
MEMBERSHIP .......... 6
ARTICLE 6 .......... 7
MEMBERSHIP OBLIGATIONS .......... 7
ARTICLE 7 .......... 9
OFFICERS .......... 9
ARTICLE 8 .......... 17
EXECUTIVE BOARD .......... 17
ARTICLE 9 .......... 22
STEWARDS .......... 22
ARTICLE 10 .......... 23
BARGAINING UNITS .......... 23
ARTICLE 11 .......... 26
CHAPTERS .......... 26
ARTICLE 12 .......... 29
MEMBERSHIP MEETINGS .......... 29
ARTICLE 13 .......... 32
ELECTIONS .......... 32
ARTICLE 14 .......... 39
COMMITTEES .......... 39
ARTICLE 15 .......... 43
LOCAL PRESIDENT AND UNION STAFF .......... 43
ARTICLE 16 .......... 46
COLLECTIVE BARGAINING .......... 46
ARTICLE 17 .......... 48
REVENUES AND PROPERTIES .......... 48
ARTICLE 18 .......... 52
INTERPRETATIONS .......... 52
ARTICLE 19 .......... 52
RECALL .......... 52
ARTICLE 20 .......... 54
INITATIVE AND REFERENDUM .......... 54
ARTICLE 21 .......... 55
TRIALS AND APPEALS .......... 55

ARTICLE 22 ........ 60
LITIGATION ........ 60
ARTICLE 23 ........ 60
STRIKES ........ 60
ARTICLE 24 ........ 61
AFFILIATIONS ........ 61
ARTICLE 25 ........ 61
DISSOLUTION ........ 61
ARTICLE 26 ........ 61
AMENDMENTS ........ 61
ARTICLE 27 ........ 62
INTERNATIONAL CONSTITUTION AND BYLAWS ........ 62
ARTICLE 28 ........ 62
SAVINGS PROVISION ........ 62
ARTICLE 29 ........ 63
CONSTITUTIONAL CONVENTIONS ........ 63
RESPONSIBILITIES IN THE LOCAL UNION ........ 67
SEIU MEMBER BILL OF RIGHTS ........ 69
AND ........ 69
RESPONSIBILITIES ON THE JOB ........ 69
POLICIES AND PROCEDURES ........ 70

**ATTACHMENT 1 CHANGES IN APRIL 2010 AMENDMENT**
**ATTACHMENT 2 CHANGES IN JANUARY 2012 AMENDMENT**

# PREAMBLE

As almost every improvement in the condition of working people has been accomplished by the efforts of organized Labor and as the welfare of wage, salary, and professional workers can best be protected and advanced by their united action in one International Union, we have organized this Local Union and are affiliated with the Service Employees International Union and have adopted the following Constitution and Bylaws:

# ARTICLE 1

## NAME

The name of this Local Union shall be the Nevada Service Employees Union (NSEU), SEIU Local 1107, affiliated with the Service Employees International Union, CTW, CLC (also referred to herein as the "International" or the "International Union"), and shall hereinafter be referred to as the "Local Union" or the "Union".

The name of the Local Union shall not be used publicly by any person or organization, including any member, other than by members for use on their membership cards for identification purpose, without express written permission of the Executive Board. This shall not restrict the Officers, appointees or agents of the Local Union in the use of the name to carry out the purpose and business of the Local Union.

# ARTICLE 2

## MISSION STATEMENT

We are public and private sector and healthcare employees in Nevada. We are taxpayers, parents property owners and renters, community activists and leaders. We believe workers are the most valuable resource of any organization and we are committed to excellence in the services we provide and in improving our communities.

We are affiliated with the Service Employees International Union, united by the belief in the dignity and their families and creating a more just and humane society.

We are the public workers, healthcare workers, building service workers, office workers, professional workers, and industrial and allied workers. We seek a stronger Union to build power for ourselves and to protect the people we serve.

Women and men of every race, ethnicity, religion, age, physical ability and sexual orientation, we are the standard-bearers in the struggle for social and economic justice begun nearly a century ago by janitors who dared to dream beyond their daily hardships and to organize for economic security, dignity and respect.

On vision is of a society:

Where all workers and their families live and work in dignity.
Where work is fulfilling and fairly rewarded.
Where workers have a meaningful voice in decisions that affect them.
Where workers have the opportunity to develop their talents and skills.
Where the collective voice and power of workers is realized in democratic and progressive unions.

Where Union solidarity stands firm against the forces of discrimination and hate and the unfair employment practices of exploitative employers.
Where government plays an active role in improving the lives of working people.

To achieve this vision:

We must organized workers, extending to them the gains of unionism while securing control over our industries and labor markets.
We must build political power to ensure that workers' voices are heard at every level of government to create economic opportunity and foster social justice.
We must provide meaningful paths for member involvement and participation in strong, democratic unions.
We must develop highly trained and motivated leaders at every level of the Union who reflect the membership in all its diversity.
We must bargain contracts that improve wages and working conditions, expand the role of workers in workplace decision-making, and build a stronger Union.
We must build coalitions and act in solidarity with other organizations who share our concern for social and economic justice.
We must engage in direct action that demonstrates our power and our determination to win.

To accomplish these goals we must be unified – inspired by a set of beliefs and principles that transcends our social and occupational diversity and guides our work.
We believe we can accomplish little as separate individuals, but that together we have the power to create a just society.
We believe unions are the means by which working people build power – by which ordinary people accomplish extraordinary things.
We believe our strength comes from our unity, and that we must not be divided by forces of discrimination based on gender, race, ethnicity, religion, age, physical ability or sexual orientation.
We believe our power and effectiveness depend upon the active participation and commitment of our members, the development of our leaders and solidarity with each other and our allies.
We believe we have a special mission to bring economic and social justice to those most exploited in our community – especially to women and workers of color.
We believe our future cannot be separated from that of workers in other parts of the world who struggle for economic justice, a decent life for their families, peace, dignity and democracy.
We believe unions are necessary for a democratic society to prevail, and that unions must participate in the political life of our society.
We believe we have a moral responsibility to leave the world a better place for our children – and everyone's children.

## ARTICLE 3

## OBJECTIVES AND PURPOSES

**Section 1. Objective and Purpose of this Constitution and Bylaws**

The objective and purpose of this Constitution and Bylaws is to provide rules not in conflict with any higher authority and to govern the Local Union. The sole intent of this Constitution and Bylaws is to establish rules of acceptance self-government.

**Section 2. Objective and Purposes of the Local Union**

The objectives and purposes of the Nevada Service Employees Union are to benefit its members and improve their working conditions by all means, including but not limited to the following:

1. Organize and unite all workers within our jurisdiction;
2. Achieve recognition and respect;
3. Assure that all workers are treated equally and fairly, with dignity and respect, and have a true voice in the workplace;
4. Secure workplace democracy;
5. Promote and protect our economic and social interests;
6. Secure and improve wages, hours, benefits and working conditions through organization, collective bargaining, legislative and political action, united action and the utilization of other lawful means;
7. Protect and enhance civil liberties by exposing and fighting all forms of bigotry, prejudice, intolerance and discriminatory practices;
8. Expand our strength and influence;
9. Support legislative and political actions to ensure that workers' voices are heard at every level of government;
10. Protect and preserve the Local Union as an institution;
11. Foster a better understanding between our membership and the general public;
12. Join with the rest of Organized Labor in Solidarity in all efforts to achieve a better life for working men and women everywhere;
13. By engaging in all such civic, social, political, legal, economic, cultural, educational, charitable, and other activities, whether on local, national, or international levels, as will advance this Union's standing in the community and the labor movement and further the interest of this organization and its membership, directly or indirectly; and
14. By affiliating workers in independent organizations through agreements which recognize the long history, unique needs and traditions, and successes of such organizations, and making every effort possible to provide such organizations the same types of services which have benefited our existing members.

## ARTICLE 4

## JURISDICTION

The jurisdiction of this Local Union shall be all public and private sector and healthcare employees in Nevada, and any additional private and public sector jurisdictions as may be authorized by the Service Employees International Union, CTW, CLC.

# ARTICLE 5

# MEMBERSHIP

## Section 1. Definitions of Employee Members

### A. Public Sector Employee Member

A public sector employee member is a member who is a public sector employee as defined by the Nevada Revised Statues (NRS), Chapter 288, as amended, or any other applicable law.

### B. Private Sector Employee Member

A private sector employee member is a member who is a private sector employee as defined by the National Labor Relations Act (NLRA), as amended, or any other applicable law.

## Section 2. No Discrimination

There shall be no discrimination or advocating of discrimination against any member or applicant for membership for reason of race, color, gender, gender expression, creed, national origin, disability, religion, ancestry, political opinion, affiliations, age, sexual orientation citizenship status or marital status.

## Section 3. Membership Categories

### A. Regular Member.

Bargaining unit eligible employees in Bargaining Units represented by the Local Union are eligible to be Regular Members of the Local Union, with full membership rights and benefits, by signing, completing and submitting to the Local Union a membership application and dues deduction agreement card, and by timely payment of the appropriate and correct amount of dues, maintaining a member in good standing status. Probationary employees are eligible for regular membership. Although they may not be covered by all provisions of the applicable Collective Bargaining Agreement, including but not limited to just cause job protection, until they are off of and have completed probation, probationary employees may nevertheless choose to become a Regular Member of this Local Union at any time during their probation by payment of dues.

### B. Associate Member.

Union staff, former or prospective members, who are not employed in Bargaining Units represented by this Local Union may become Associate Members by signing, completing and submitting to the Local Union a membership application and dues deduction agreement card and by timely payment of the appropriate and correct amount of dues, which shall be the same as the dues of regular members, maintaining a member in good standing status. Associate Members will be allowed to attend membership meetings of the Local Union, as the Executive Board deems appropriate, but shall have no voting rights at such meetings nor the right to nominate or run for Union office.

C. **Retired Member.**

A Regular Member, as described in Section 3 (A), who retires from employment and who has been a member in continuous good standing for at least one (1) year prior to retirement, is eligible for membership as a Retired Member. Retired Members shall have the right to vote in Local Union elections, but may not run for office nor nominate any candidate for office. Retired Members shall pay appropriate dues, which shall be one-third (1/3) the dues that Regular Members pay.

D. **Life Member.**

Retired members who are 75 years of age or older, and who have been paying dues continuously to the Local Union, either as regular members or retired members, for at least ten (10) years immediately prior thereto, shall be considered to be Life Members and shall have no continuing dues obligations, but they shall nonetheless be eligible to enjoy all the benefits and privileges of retired members in the International Union.

E. **Probationary Employee Member**

Probationary employees, provided they are bargaining unit eligible in a bargaining unit represented by the Local Union, are eligible for regular membership. Although they may not be covered by all provisions of the applicable Collective Bargaining Agreement, including but not limited to just cause job protection, until they are off of and have completed probation, probationary employees may nevertheless choose to become a regular member of this Local Union at any time during their probation by timely payment of the appropriate and correct amount of dues. By signing, completing and submitting to the Local Union a Membership Application and Dues Deduction Agreement card, whether or not such a probationary employee member pays dues or not, they are allowed to vote in Union elections, including Officer elections.

F. **Organizing/Prospective Member.**

Any employee in a jurisdiction in which this Local Union is organizing may become an organizing/prospective member of the Local Union by signing, completing and submitting to the Local Union a Membership Application and Dues Deduction Agreement card and no dues shall be collected by this Local Union for newly organized/prospective members who sign a membership application and dues deduction agreement authorization card until the first Collective Bargaining Agreement is ratified by the membership of the newly organized jurisdiction and is in place between this Local Union and the employer. In continuation of the past practice of the Local Union, such organizing/prospective members do not have the right to run for or nominate for any office or position in the Local Union or to vote on any election in the Local Union until their first Collective Bargaining Agreement is ratified.

## ARTICLE 6

## MEMBERSHIP OBLIGATIONS

**Section 1. Observation of the Constitution and Bylaws**

Members of this Local Union pledge to faithfully observe the Constitution and Bylaws of this Local Union and of the Service Employees International Union, CTW, CLC (The International). Members promise never to discriminate against another member nor see another wronged if in their power to prevent it.

**Section 2. Exclusive Bargaining Agent**

Every member in a Bargaining Unit of this Local Union, by virtue of his/her membership in this Local Union, authorizes this Local Union, as directed by the General Membership, to act as the exclusive bargaining agent and representative with full and exclusive power to execute agreements with members' employers governing terms and conditions of employment. Such member further authorizes this Local Union to act for all members, including the individual member, and have final authority in presenting, processing and adjusting any individual or group grievance, difficulty or dispute arising under his/her Collective Bargaining Agreement or out of his/her employment with such employer, in such manner as this Local Union determines.

**Section 3. Terms and Conditions**

Each member shall adhere to the terms and conditions of his/her respective Collective Bargaining Agreement or other applicable agreements and shall refrain from any conduct that would interfere with the performance by this Local Union of its contractual obligations.

**Section 4. Non Disestablishment**

No member shall be a party to any activity to secure the disestablishment of this Local Union as the collective bargaining agent for any employee or group of employees.

**Section 5. Use of Name, Union Letterhead, Union Logo, Etc.,**

The name, Union letterhead, Union logo, etc., of the Local Union shall not be used publicly by any person, member, steward, Officer, committee, or staff person, without express written permission of the Executive Board, the President, or the Executive Vice President. This shall not restrict the Officers, appointees, agents or staff of the Local Union in the use of the name, letterhead, logo, etc., to carry out the purpose and business of the Local Union.

**Section 6. Collective Bargaining Agreement Enforcement**

It is the responsibility and the right of every member to enforce the Collective Bargaining Agreement however, members, including Officers, and staff, shall not have any authority in any manner, either directly or indirectly, to make any change in wages, hours or working conditions, or grant any new demands that are contrary or in any way different to the wage, hours or working conditions in existence pursuant to the applicable Collective Bargaining Agreement and any past practices.

**Section 7. Organizational Authority And Agency**

Every member has the right to be active in the Local Union, however, a member shall not make any representation on behalf of the Local Union or vote on any issue or have authority that would bind

and hold responsible the Local Union without the prior written permission of the Executive Board, or the permission of any two of the following: the President, the Executive Vice President.

## ARTICLE 7

## OFFICERS

### Section 1. Officers

The Officers of this Local Union shall be a President, an Executive Vice President, a Secretary, a Treasurer, and three (3) Trustees. The Officers shall also include a Vice President from each Bargaining Unit (or employer jurisdiction if two or more Bargaining Units have the same employer) and at least one (1) Chief Steward from each Chapter. The succession of Officers shall be the following Officers which are elected by the membership at large:

The President
The Executive Vice President

### Section 2. Electorate

The President, Executive Vice President, Secretary, Treasurer, and three (3) Trustees shall be elected by the membership at large. The Vice Presidents shall be elected by the members of their respective Bargaining Units (or employer jurisdiction if two or more Bargaining Units have the same employer). The Chief Stewards shall be elected by the members of their respective Chapters.

### Section 3. Qualifications For and Terms of Office

A. **Qualifications for Office**

No person who has been convicted of a felony as defined in Section 504 of the Landrum-Griffen Act (or an indictable offense in Canada) shall, in accordance with applicable law, be eligible to hold office in this Local Union. No person shall be eligible for nomination as an Officer or for any other elected position of the Local Union who has not been a member in continuous good standing in regard to dues paying requirements, in the Local Union for at least two (2) years immediately preceding the nomination. In cases of newly represented jurisdictions (less than two years), the nominee must have been a member for the entire time the jurisdiction has been represented by the Local Union.

B. **Terms of Office**

All Officers of this Local Union shall serve three (3) year terms (except if elected to serve the remainder of a term for a vacant Officer position in accordance with Article 13 of this Constitution and Bylaws or except if elected as an additional/second Chief Steward in accordance with this Constitution and Bylaws) and may serve any number of consecutive terms.

### Section 4. Duty to Attend and Report at Executive Board Meetings and Membership Meetings.

A. **Attendance**

All Officers of this Local Union have the duty to attend Executive Board meetings. If an Officer has two (2) unexcused absences at Executive Board meetings in a twelve (12) calendar month period, the Secretary of this Local Union shall send a written letter to that Officer, and the other Officers from the same Bargaining Unit, that if he/she has a third unexcused absence in a twelve (12) calendar month period at Executive Board meetings, he/she will be charged with failure to perform the duties of the office and may be removed from the office pursuant to Article 21 – Trials and Appeals. An Officer of this Local Union may be removed from office by the Trial Body after a trial when the Officer has three (3) unexcused absences in a twelve (12) calendar month period at Executive Board meetings. The Secretary of this Local Union shall notify the Executive Board and the Officer involved when any Officer has three (3) unexcused absences in a twelve (12) calendar month period from Executive Board meetings of the trial and possible removal of the Officer.
All Officers of this Local Union are also expected to attend membership meetings (as provided for in Article 12 – Membership Meetings) when held.

**B. Reports**

All Officers of this Local Union have the duty to report, both orally and in writing, their activities at Executive Board meetings and at Membership meetings (as provided for in Article 12).

**Section 5. Expenses**

In recognition of the responsibilities of the office, the Officers of the Local Union may be paid an expense allowance as determined by the Executive Board.

**Section 6. The President**

**A. Accountability**

The President of this Local Union shall be accountable to all the members of this Local Union and to the Executive Board and shall report to the Executive Board.

**B. Duties**

The President shall be the presiding Officer of the Local Union. The duties of the President shall include, but not be limited to:

1. Preside at all meetings of the Executive Board and at membership meetings, conference,
   conventions and other Union functions, as necessary;
2. Call special meetings of the Executive Board, membership or specific committees and other bodies of the Union, as necessary;
3. Participate and support in the organizing efforts for new members of this Local Union by visiting the work sites of the membership at large from time to time;
4. Sign all Collective Bargaining Agreements as the Local Union's official representative after ratification by the membership and signatures of the appropriate negotiating committees and/or staff;
5. Serve as an ex-officio member of all bargaining committees of the Local Union and it is the very important duty and responsibility of the President to actively take part in and

stay informed of bargaining in all areas and to participate with the bargaining committees (see Article 16 – Collective Bargaining, Section 6 – Bargaining Committee);
6. Coordinate policies and act as liaison to the Local department Directors;
7. Serve as the Local Union's first delegate to the SEIU International Convention and to all other conferences and conventions for which the Local Union is eligible to participate;
8. Serve as an ex-officio member of all committees of the Local Union;
9. Make appointments to any vacant position(s) with the advice and consent of the Executive Board, as consistent with the provisions of this Constitution and Bylaws;
10. Appoint Stewards with the advice and consent (input and approval) of either the Vice President of that Bargaining Unit or the Chief Steward of that Chapter;
11. Co-sign all checks, vouchers, orders on funds, contracts and agreements of the Local Union, subject to the policies of the Executive Board and the Constitution and Bylaws;
12. Perform other duties as may be assigned by the Executive Board; and
13. Preside over the Local Union's Constitutional Conventions

In recognition of all of the duties of the office of President, the importance of the office, the goal of being available for and with all the members, and that the President is the highest ranking elected Officer of this Local Union, it shall be a continuing goal of this Local Union that the President be granted from his/her employer forty (40) hours release time each week with pay including premiums and the accrual of the earned benefits to accomplish Union business, and that when an employee has completed their service as President, they shall be returned to their previous position without loss of any status or benefit governed by the applicable Collective Bargaining Agreement. Where this exists in a Collective Bargaining Agreement, it shall be vigorously defended, and where this does not exist in a Collective Bargaining Agreement, it shall be a major goal of the respective bargaining committee to achieve. In all cases, the objective is to have an available and working President responsive to all the members, and that the President be able to achieve this while incurring no economic harm. This Local Union shall make reasonable efforts to ensure no financial loss to the member during their term of office as President.

## Section 7. Executive Vice President

### A. Accountability

The Executive Vice President shall be accountable to all the members of the Local Union and to the Executive Board and shall report to the President of this Local Union.

### B. Duties

The duties of the Executive Vice President shall include, but not be limited to:

1. Report to the President on his/her activities;
2. Coordinate the organizing and recruitments of new members;
3. Serve in the absence of the President and perform Presidential duties at such time;
4. Complete the term of the President should be President be unable to complete it; and
5. Perform other duties as may be assigned by the President.

## Section 8. Secretary

**A. Accountability**

The Secretary shall be accountable to all the members of this Local Union and to the Executive Board and shall report to the President of this Local Union.

**B. Duties**

The duties of the Secretary shall include, but not be limited to:

1. Keep an accurate record of proceedings and attendance of all Executive Board and Membership
   meetings (as provided for in Article 12), and keep an accurate record and file of all written reports by Officers, and record the actions and minutes of the meetings of the Executive Board and general membership, and the minutes of the last Executive Board meeting and the agenda of the next Executive Board meeting (which may be subject to change) shall be transmitted and mailed or delivered prior to the next Executive Board meeting to each Officer no later than fifteen (15) calendar days from the previous Executive Board meeting and shall be available to the membership at large upon request;
2. Furnish the chairperson of each committee a copy of such resolutions as may be adopted by the Local Union, applicable to that committee's respective duties;
3. The Secretary shall send a written letter to an Officer, and to the other Officers from the same Bargaining Unit, if the Officer has two (2) unexcused absences at Executive Board meetings in a twelve (12) calendar month period. The letter shall warn the Officer that if he/she has a third unexcused absence at Executive Board meetings in a twelve (12) calendar month period, he/she will be charged with failure to perform the duties of the office and may be removed from office pursuant to Article 21 – Trials and Appeals. The Secretary shall notify the Executive Board and the Officer involved when any Officer has three (3) unexcused absences at Executive Board meetings in a twelve (12) calendar month period of the Trial and possible removal of the Officer; and
4. In the case where the office of Treasurer is declared vacant, the Secretary shall assume the duties of the office of Treasurer until the office is no longer vacant (until a newly elected Officer fills the vacant position).

**Section 9. Treasurer**

**A. Accountability**

The Treasurer shall be accountable to all the members of this Local Union and to the Executive Board and shall report to the President and Trustees of this Local Union. The Treasurer will work with the President of this Local Union.

**B. Duties**

The duties of the office of Treasurer shall include, but not limited to:

1. Co-sign all checks drawn against Local Union accounts, whenever possible;
2. Attend all meetings of the Finance Committee;

3. Co-sign all checks, vouchers, orders on funds, contracts and agreements of the Local Union, subject to the policies of the Executive Board and the Constitution and Bylaws of this Local Union;
4. Submit a monthly financial report of the Local Union of the Trustees and the Executive Board of the previous month's actual income and actual Expenses versus budgeted Income and Expenses, and prepare a short, less than one page, narrative describing the highlights of the Local Union's budget, to be submitted at each Executive Board meeting;
5. In conjunction with the Finance Committee and the President, prepare and present a proposed annual budget to the Executive Board;
6. As appropriate, make recommendations for the investment and/or deposition of Union funds and
7. In the case where the office of Secretary is declared vacant, the Treasurer shall assume the duties of the office of Secretary until the office is no longer vacant (until a newly elected Officer fills the vacant position).

## Section 10. Trustees

### A. Duties

Trustees shall be elected from the membership at large and shall have duties which include, but are not limited to:

1. Act as guardians of the welfare of the Local Union;
2. See that the Officers fulfill their duties and obligations and that the Local Union Constitution and Bylaws are followed and that parliamentary procedure is adhered to;
3. Examine all bills presented and report on them to the Executive Board; and
4. Examine the books of the Local Union and, with the approval of the Executive Board, arrange for a financial review once every year and an independent audit once every three (3) years (but not necessarily both), of financial records of the Local Union, and at periods of time deemed appropriate by the Trustees, as approved by the Executive Board. At the conclusion of a review or independent audit, a report on same shall be made by the Trustees to the Executive Board. Therefore, there shall be a financial review once every year, and once every three years there shall be an independent audit of the financial records of the Local Union. The independent audits should be conducted in a time period to coincide with the elections of Officers and when their term of office would start and with the end of the fiscal year. A financial review or are independent audit shall take place following the month of June. Thus, an independent financial audit shall be conducted after June of 2001. A financial review shall be conducted after June of 2002, and after June 2003. In the year of 2004, an independent financial audit shall be conducted, and this cycle will continue into the future. The Executive Board may request a financial review or an independent audit at any time it deems appropriate.

## Section 11. Vice Presidents

### A. Jurisdiction

There shall be one Vice President from each Bargaining Unit represented by the Local Union (e.g., Addus, AMR, Southern Nevada Regional Housing Authority, Clark County Non-Supervisory Unit, Clark County Supervisory Unit, Southern Nevada Health District, Desert Springs Hospital, Las Vegas Convention and Visitors Authority Non-Supervisory, Las Vegas

Convention and Visitors Authority Supervisory, Valley Hospital, St Rose Hospitals, Southern Hills Hospital, Sunrise Hospital, Mountain View Hospital, Renown Medical Center, North East Nevada Regional Hospital (Elko), Regional Transportation Commission and University Medical Center of Southern Nevada). Vice Presidents shall be elected by the members of the Local Union employed by the Bargaining Units they represent.

In the event that two (2) or more Bargaining Units have the same employer, one (1) Vice President shall be elected from the employer jurisdiction that is made up of the Bargaining Units for each of the supervisory and non-supervisory units when applicable.

### B. Accountability

Vice Presidents shall be accountable to the membership which elected them to office and to the Executive Board and shall report to the President of this Local Union. The Vice Presidents will work with the Local Union Field Staff Representative(s).

### C. Duties

Vice Presidents shall have duties which include, but not limited to:

1. Coordinate the organizing and recruitment of new members within their areas;
2. If from the Bargaining Unit that is in collective bargaining negotiations, automatically serve on the Bargaining Committee; and furthermore, if an election for office occurs while bargaining is in process and not reelected to office, shall still retain position on and continue to serve on the Bargaining Committee (see Article 16 – Collective Bargaining, Section 6 – Bargaining Committee);
3. Resolve disputes between Chapters and/or Chief Stewards, Stewards, and members, within the Bargaining Units they represent;
4. Attend any meetings with administrators or executive management in their respective Bargaining Units;
5. Give advice and consent (input and approval) to the President on the appointment of Stewards; and
6. If the Chief Steward is unavailable, for any reason, for an extended period of time, for example, due to illness, vacation, etc; then the Vice President shall perform the Chief Steward duties in the workplace until the Chief Steward returns and is available, and in the case of a vacant Chief Steward Officer position, until a new Chief Steward is elected.
7. Have such powers and perform such other duties as may be assigned by the Executive Board.

## Section 12. Chief Stewards

### A. Jurisdiction

There shall be at least one (1) Chief Steward in each Chapter of each Bargaining Unit represented by this Local Union. If, at any time, a Chapter has one thousand five hundred (1,500) or more dues paying Union members, and that Chapter has a Union membership level based on the applicable bargaining unit number of employees of sixty-five percent (65%) or greater, then that Chapter shall be entitled to an additional/second Chief Steward. The nomination and election shall occur at this time in accordance with this Constitution and

Bylaws. Chief Stewards shall be elected by the members of the Local Union employed by the Chapters they represent.

## B. Accountability

Chief Stewards shall be accountable to the membership that elected them to office and to the Executive Board and shall keep the Vice President of the Bargaining Unit that they are from and represent informed of their actions. The Chief Stewards will work with the Local Union Field Staff Representative(s).

## C. Duties

The Chief Stewards duties and obligations shall include, but not limited to, the following:

1. Serve as communication link between the Local Union Executive Board and the Stewards;
2. Distribute directly to Stewards and members any material and information which must be dispensed to members in a timely manner;
3. Distribute "New Member" packets to members and/or Stewards for distribution to new members;
4. Keep all Stewards and members at the work location informed of Local Union activities through regular meetings, updated bulletin boards, and timely distribution of special information;
5. Serve as an organizer and recruit new members for this Local Union at his/her work location;
6. Assist in contract action campaigns and keep members informed during contract negotiations;
7. If from the Bargaining Unit that is in collective bargaining negotiations, automatically serve on the Bargaining Committee, if he/she chooses to do so (if a Chapter has two (2) Chief Stewards, then only (1) shall automatically serve on the Bargaining Committee, and this shall be decided amongst the Chief Stewards, however, if a decision is unable to be reached then the Chief Steward who received the most votes will serve on the Bargaining Committee, and in the event of a tie, then a coin toss shall determine the outcome); and, furthermore, if an election for office occurs while bargaining is in process and not reelected to office, shall still retain position on and continue to serve on the Bargaining Committee, if he/she chooses to do so (see Article 16 – Collective Bargaining, Section 6 – Bargaining Committee);
8. Assist the Stewards with Grievances and keep stewards informed and involved about grievances in their work areas;
9. Enforce the Collective Bargaining Agreement, however, Chief Stewards shall not have any authority in any matter, either directly or indirectly, to make any change in wages, hours or working conditions, or grant any new demands that are contrary or in any way different to the wage, hours or working conditions in existence pursuant to the applicable Collective Bargaining Agreement;
10. Receive and, as appropriate, process grievances, and report them within three (3) working days to the Field Representative and give copies of all grievances to the Field Representative. Investigations of every problem or incident must be fair and complete. Each member must be kept informed about each step taken on his/her behalf and there is to be coordination between the Chief Steward and Field Representative on grievances;

11. Within thirty (30) days of being elected, appoint a member to each standing committee;
12. Visit the Local Union office at least once a week to check your mail and receive new information;
13. Notify the Local Union office in a timely manner of any Steward resignations or requests for appointments;
14. Give advice and consent (input and approval) to the President on the appointment of Stewards;
15. Honor your commitments to any and all meetings and committees;
16. Listen to and communicate with your Stewards;
17. Participate in, and encourage and recruit your members to become involved with the various Local Union activities;
18. Attend Steward Training and mandatory monthly Steward meetings;
19. Work with all to establish a strong and unified workplace;
20. As important as any of these duties, put personal agendas aside, and shall in all instances work for the greater good of all members.

### D. Additional Chief Steward

In the event that a Chapter has one thousand five hundred (1,500) or more dues paying Union members, and that Chapter has a Union membership level of sixty-five percent (65%) or greater based on the applicable bargaining unit employees, then such a Chapter shall be entitled to an additional or second Chief Steward. The nomination and election for this office shall take place in accordance with this Constitution and Bylaws. If this provision is met at the time of a nomination meeting, then the second Chief Steward shall be elected along with all other Officers. However, if this provision is met during the three (3) year elected term of office cycle for all other Officers, then this second Chief Steward shall be nominated and elected accordingly at such time, but the term of office shall not be three (3) years, rather, it shall be to the end of the three (3) year elected cycle as if the second Chief Steward was elected along with all other Officers of this Local Union. In the event the second Chief Steward office becomes vacant, the provisions of Article 13 of this Constitution and Bylaws control. In the event the Chapter duly elects a second Chief Steward and subsequently falls below the threshold membership level which entitles the Chapter to a second Chief Steward, and at the time of the next nomination meeting the Chapter is below the threshold membership level which entitles the Chapter to a second Chief Steward, then that second Chief Steward office position will no longer exist, but shall be nominated and elected again when the Chapter obtains the required membership level.

## Section 13. Convention Delegates

All Officers of this Local Union who were in conformity with all applicable statues shall, by virtue of such election, be considered to be eligible delegates to any International Convention which may take place during their term of office.

If a number less than all the Officers of the Local Union are authorized to attend an International, due to budgetary constraints or delegate/alternate limitation, the order in which the Officers are designated shall be as follows: President, Executive Vice President, Secretary, Treasurer, and Trustees (the order of Trustees who attend conventions, if less than three, shall be determined by their years of service in SEIU.) If a number more than all the Officers of this Local Union is authorized to attend, then nominations and a secret ballot election of additional delegates and alternates shall be conducted by the Executive Board of this Local Union consistent with the

provisions of this Constitution and Bylaws (i.e., nominated at a Special Membership Meeting or by a petition signed by a t least fifty (50) members in good standing).

# ARTICLE 8

# EXECUTIVE BOARD

## Section 1. Definition

The Executive Board is the governing body of this Local Union and is authorized and empowered to take all lawful actions consistent with the Constitution and Bylaws of this Local Union. Actions of the Executive Board shall become effective immediately and shall be considered the action of the Local Union. The actions of the Executive Board shall be decided by a majority vote of those members present, unless otherwise required by any other provision of this Constitution and Bylaws.
The Executive Board shall meet monthly, unless it decides, by a majority vote of those members present, to meet more or less frequently.
The actions and minutes of the meetings of the Executive Board shall be recorded in minutes by the Secretary. The minutes and Agenda (which may be subject to change) shall be transmitted and mailed or delivered prior to the next Executive Board meeting to each Officer within fifteen (15) calendar days from the previous Executive Board meeting and shall be made available to the membership at large upon request.
The Executive Board shall consist of elected Officers (See Article 7, Section 1) (at-large and representative).

## Section 2. Authority

Authority of the Executive Board includes, but is not limited to:

A. The establishment of plans, policies and procedures that are required for the direction and operation of the Local Union and the carrying out of decisions of the membership;

B. Approval of a budget, including the establishment of staffing levels, and ensuring that annual financial reviews occur and independent audits occur once every three (3) years. The Executive Board may, at its discretion, request a financial review and/or an independent audit at any time and shall ensure that the mandate of Article 7, Section 10 (4) is met;

C. Approve the compensation, terms and conditions of employment for the staff of the Local Union; and approval of all contracts for service rendered such as legal, auditing or payroll services member benefit programs or office leases;

D. Supervise the handling of Local Union funds, including approval of budgets and authorizing investment of Local Union funds;

E. Determine when a group of members is considered a functioning Chapter for the purpose of representation on the Executive Board;

F. Assume responsibility for the legislative and political activities of the Local Union; and

G. Establish such committees as are necessary and consistent with the achievement of the purposes of the Local Union.

**Section 3. Disapproval of Executive Board Action**

See Article 20, Initiative And Referendum

**Section 4. Attendance and Vacancies**

All elected Officers shall attend Executive Board meetings. Any member of the Executive Board who cannot appear at a Board meeting shall notify the President that they will be absent and state the reason for such absence. The President may excuse the Officer subject to the approval of the Executive Board. In the event any member of the Executive Board fails to attend three (3) meetings, of the Executive Board, without excuse, in a twelve (12) calendar month period, the Trial Body, pursuant to Article 21 – Trials And Appeals, may declare that Officer's seat vacant after a trial.

All Officers of this Local Union have the duty to attend Executive Board meetings. If an Officer has two (2) unexcused absences at Executive Board meetings in a twelve (12) calendar month period, the Secretary of this Local Union shall send a written letter to the Officer, and the other Officers from the same Bargaining Unit, that if he/she has a third unexcused absence in a twelve (12) calendar month period at Executive Board meetings, he/she may be removed from office. An Officer of this Local Union may be removed from office by the Trial Body when the Officer has three (3) unexcused absences in a twelve (12) calendar month period at Executive Board meetings. The Secretary of this Local Union shall notify the Executive Board and the Officer involved when any Officer has three (3) unexcused absences in a twelve (12) calendar month period from the Executive Board meetings of the trial and possible removal of the Officer.

**Section 5. Quorum**

The Executive Board shall have a quorum when fifty percent (50%) plus one of the Executive Board is present (excluding vacant offices, as defined in Article 13).

**Section 6. Membership Appearance Before The Executive Board**

Upon request to the President, members shall have the right to address the Executive Board on issues of unresolved problems in accordance with reasonable procedural guidelines which shall be established by the Executive Board.
The Executive Board of this Local Union, on March 30, 1994, duly6 adopted the following:
Policy – Membership Appearances before the Executive Board
In furtherance of the objectives contained in Article 8, Section 6 of the Constitution and Bylaws of NSEU, SEIU Local 1107, the Executive Board hereby adopts a membership appearance policy.

1. It is the policy of the Executive Board to provide an opportunity to individual members to raise their concerns and bring those concerns to the attention of the Executive Board.
2. In order to effectuate an appearance before the Board, the member shall contact, either verbally or in writing, the President of the Local Union no later than ten (10) days before the scheduled Board meeting for which they desire to make an appearance. The ten (10) day limit referred to herein may be waived by the President for good cause.
3. Good cause shall include, but not be limited to, the seriousness of the issue and if the time constraint would render the issue to be raised moot.

4. Membership presentations to the Board shall be limited to fifteen (15) minutes, with a period thereafter reserved to provide the Board the opportunity to direct any questions to the member concerning the issue. The time limits referred to herein may be waived by the Executive Board on a case-by-case basis.

**Section 7. Membership Complaints and Hearings**

The Executive Board shall act, or refer to the Ethics Committee to act, as a hearing board for complaints (not charge) of individual members who wish to contest actions of members, Officers, Chapters or employees of this Local Union. In the event that individual members are not satisfied with the ruling of the Executive Board or its delegated committee, the members may further appeal according to the provisions of the SEIU International Constitution and Bylaws. Any charge brought by or against any member or Officer of this Local Union shall be handled pursuant to the procedures and provisions of Article 21 – Trials and Appeals.

**Section 8. Rules of Order**

Executive Board meetings shall be governed by Robert's Rules of Order, as revised, and this Constitution and Bylaws, which shall also control in the event of any conflict. A Parliamentarian shall be appointed by the President of the Local Union, subject to confirmation by the Executive Board. The Parliamentarian shall rule on questions of order.

**Section 9. Suggested Agenda**

The following is the suggested agenda to be followed at Executive Board meetings, however, it is subject to change upon a vote on a motion by the Executive Board.

**Agenda**

**Executive Board Meeting**

Date: Usually The Last Wednesday Of The Month

Time: 5:30 P.M.

Place: Union Office, 3785 E. Sunset Road

| | | |
|---|---|---|
| 1. | A. Call To Order | President |
| | B. Roll Call of Officers | President |
| | C. Approval Of Agenda | Vote By Executive Board |
| 2. | Approval Of Minutes of Last Executive Board Meeting | |
| | Date of Previous Meeting | Vote By Executive Board |

3. **Reports**

**A. President's Report**
**B. Executive Vice President's Report**

**C. Communications/Secretary's Report**
**D. Financial/Treasurer's Report**
**E. Trustees' Reports**

1) Trustee Receiving The Most Votes
2) Trustee Receiving The Second Most Votes
3) Trustee Receiving The Third Most Votes

**F. Vice President's Reports**

1) Addus
2) AMR
3) Clark County Non-Supervisory
4) Clark County Supervisory
5) Desert Springs Hospital
6) Las Vegas Convention And Visitors Authority (LVCVA) Non-Supervisory
7) Las Vegas Convention And Visitors Authority (LVCVA) Supervisory
8) Mountain View
9) North Eastern Nevada Regional Hospital (Elko)
10) Regional Transportation Commission (RTC)
11) Renown Hospital (Reno)
12) Southern Hills Hospital
13) Southern Nevada Health District
14) Southern Nevada Regional Housing Authority
15) St Rose Hospitals
16) Sunrise Hospital
17) University Medical Center (UMC)
18) Valley Hospital

**G. Chief Stewards' Reports**

1) Addus
2) AMR
3) Clark County Non-Supervisory, General Unit
4) Clark County Non-Supervisory, Dept of Aviaiton
5) Clark County Non-Supervisory, DFS/DJJS
6) Clark County Non-Supervisory, WRD
7) Clark County Supervisory
8) Desert Springs Hospital, Ancillary
9) Desert Springs Hospital, Nursing
10) Las Vegas Convention And Visitors Authority (LVCVA) Non-Supervisory
11) Las Vegas Convention And Visitors Authority (LVCVA) Supervisory
12) Mountain View
13) North Eastern Nevada Regional Hospital (Elko), Ancillary
14) North Eastern Nevada Regional Hospital (Elko), Nursing
15) Regional Transportation Commission (RTC)
16) Renown Hospital (Reno)
17) Southern Hills Hospital, Ancillary
18) Southern Hills Hospital, Nursing
19) Southern Nevada Health District
20) Southern Nevada Regional Housing Authority

21) St Rose Hospitals, De Lima Campus
22) St Rose Hospitals, San Martin Campus
23) St Rose Hospitals, Siena Campus
24) Sunrise Hospital, Ancillary
25) Sunrise Hospital, Nursing
26) University Medical Center (UMC), Ancillary
27) University Medical Center (UMC), Nursing
28) University Medical Center (UMC, Off Site
29) Valley Hospital

**H. Standing Committee Reports**

1) Organizing
2) Bylaws
3) Civil And Human Rights
4) Collective Bargaining Agreements Review
5) Committee On Political Education (COPE) Political Action Committee (PAC) / Legislative Committee
6) Communications
7) Election
8) Ethics
9) Finance
10) Health And Safety
11) Healthcare Oversight Committee
12) Senior And Retired Members

**I. Ad Hoc Committee Reports**
**J. Field Staff Reports**

4. Old Business
5. New Business

A. Bargaining Update
B. Organizing Update

6. Membership Appearances
7. Good And Welfare Of Local Union
8. Adjourn

**Next Executive Board Meeting – Usually The Last Wednesday Of Next Month**

# ARTICLE 9

## STEWARDS

Stewards are the vital life stream of any Local Union. Stewards have no greater rights than any other member, but many more responsibilities. Not the least of these is to put personal positions aside and work for the greater good of all members.

**Section 1. Role**

As a Steward of this Local Union, this job involves much, much more than handling grievances.

Grievances are important. They are often the most visible and dramatic aspects of the Union's presence. Sometimes they will take up most of the Steward's time.

But grievances should never be confused with your most important responsibility as a Steward: To build a united, organized and involved membership in the workplace of the Steward.

Without this involvement and solidarity, no Union in the world can protect and serve its members.

As a leader in the workplace, the Steward will have his/her hands full. That is because Stewards are organizers, problem solvers, educators, communicators and work site leaders.

**Section 2. Duties**

The Steward's duties and obligations are many and shall include the following:

A. Serve as an organizer and recruit new members for this Local Union at his/her work location;
B. Assist the Chief Steward in organizing and recruiting new members for this Local Union at the work site;
C. Get to know all the workers in the work site;
D. Assist the Chief Steward in keeping all members at the work location informed of Local Union activities through regular meetings, updated bulletin boards, and timely distribution of special information;
E. Assist in contract action campaigns and keep members informed during contract negotiations;
F. Participate in and recruit members' participation in activities of this Local Union;
G. Attend Steward training and mandatory monthly Steward meetings;
H. Enforce the Collective Bargaining Agreement, however, Stewards shall not have any authority in any matter, either directly or indirectly, to make any change in wages, hours or working condition, or grant any new demands that are contrary or in any way different to the wages, hours or working conditions in existence pursuant to the applicable Collective Bargaining Agreement;
I. Receive and, as appropriate, process grievances, and report them immediately and give copies to the Chief Steward. Investigations of every problem or incident must be fair and complete. Each member must be kept informed about each step taken on his/her behalf. Do not lose a grievance because a time limit ran out. Cases must be based on facts and merit, not personalities, nor be arbitrary, capricious or subjective;

J. Act as the first line of contact with management on the work site; and
K. Honor your commitments to all meetings and committees.

**Section 3. Accountability**

Stewards are accountable and shall report to the Chief Steward of his/her respective Chapter.

**Section 4. Qualifications For and Terms of Office**

**A. Qualifications for Office**

No person who has been convicted of a felony as defined in Section 504 of the Landrum-Griffen Act (or an indictable offense in Canada) shall, in accordance with applicable law, be eligible to be a Steward in this Local Union.

No person shall be eligible for nomination as a Steward of the Local union who has not been a member in continuous good standing in regard to dues paying requirements, in the Local Union, for at least six (6) months immediately preceding the Nomination. In cases of newly represented jurisdictions (less than six (6) months), the nominee must have been a member for the entire time the jurisdiction has been represented by the Local Union.

**B. Terms of Office**

All Stewards of this Local Union shall serve three (3) year terms from July 1st of the general election year to June 30th of the next general election year if elected during the general election. If appointed during off election years a steward shall serve until June 30th of the next general election year. Stewards may serve any number of consecutive terms.

**Section 5. Nominations, Elections or Appointments**

Stewards shall be nominated, elected or appointed to office in accordance with written procedures established by the Executive Board or by Chapters with approval by the Executive Board.
The President of the Local Union may, with the advice and consent of either the Vice President of the Bargaining Unit or the Chief Steward or the Chief Steward of the respective Chapter, appoint Stewards if any portion of a term remains, whenever there is a vacancy.

Elections for Stewards shall be in June. Nominations for Stewards shall be received by this Local Union no later than fourteen (14) calendar days after the Stewards/Membership Meeting of the Chapter in the month of April preceding the election.

## ARTICLE 10

## BARGAINING UNITS

**Section 1. Definition**

A Bargaining Unit is that group of employee members that a Collective Bargaining Agreement governs as to their wages, hours and terms and conditions of employment, and that is negotiated by and legally binding between this Local Union and the respective employer.

## Section 2. Bargaining Units

A. Listing

Bargaining Unit
1) ADDUS Home Care
2) AMR Ambulance Service
3) Clark County - Non Supervisory
4) Clark County – Supervisory
5) Desert Springs Hospital
6) Las Vegas Convention and Visitors Authority (LVCVA) – Non Supervisory
7) Las Vegas Convention and Visitors Authority (LVCVA) – Supervisory
8) Mountain View
9) North Eastern Nevada Regional Hospital (NeNRH) (Elko)
10) Regional Transportation Commission (RTC)
11) Renown Hospital (Reno)
12) Southern Hills Hospital
13) Southern Nevada Health District (SNHD)
14) Southern Nevada Regional Housing Authority (SNHRA)
15) St. Rose Hospitals
16) Sunrise Hospital
17) University Medical Center (UMC)
18) Valley Hospital

The membership of this Local Union shall be organized into Chapters that are divisions of Bargaining Units of this Local Union (refer to Article 11 – Chapters).

The following Bargaining Units currently exist for this Local Union:

### B. Additions And/Or Changes

These may be added to and/or changed, as needed, from time to time, or as required, without the need to list the changes and print a new Constitution of Bylaws unless the Constitution and Bylaws are amended substantively subsequently thereof.

## Section 3. Chapters Within Bargaining Units

### A. Listing

The following Chapters currently exist, compose and fall under the following respective Bargaining Units:

| Bargaining Unit | Chapter |
|---|---|
| 1) ADDUS Home Care | All ADDUS workers |
| 2) AMR Ambulance Service | All AMR workers |
| 3) Clark County - Non Supervisory | 1) Department of Aviation<br>2) Department of Family Services and Department of Juvenile Justice |

| | |
|---|---|
| | 3) General Unit<br>4) Water Reclamation District |
| 4) Clark County – Supervisory | All Clark County supervisors |
| 5) Desert Springs Hospital | 1) Ancillary<br>2) Nursing |
| 6) Las Vegas Convention and Visitors Authority (LVCVA) – Non Supervisory | All non supervisory LVCVA workers |
| 7) Las Vegas Convention and Visitors Authority (LVCVA) – Supervisory | All LVCVA supervisors |
| 8) Mountain View | All Mountain View workers |
| 9) North Eastern Nevada Regional Hospital (NeNRH) (Elko) | 1) Ancillary<br>2) Nursing |
| 10) Regional Transportation Commission (RTC) | All RTC workers |
| 11) Renown Hospital (Reno) | All Renown workers |
| 12) Southern Hills Hospital | 1) Ancillary<br>2) Nursing |
| 13) Southern Nevada Health District (SNHD) | All SNHD workers |
| 14) Southern Nevada Regional Housing Authority (SNHRA) | All SNHRA workers |
| 15) St. Rose Hospitals | 1) De Lima Campus<br>2) San Martin Campus<br>3) Siena Campus |
| 16) Sunrise Hospital | 1) Ancillary<br>2) Nursing |
| 17) University Medical Center (UMC) | 1) Ancillary<br>2) Nursing<br>3) Off Site |
| 18) Valley Hospital | All Valley workers |

The following definitions shall apply in terms of defining the membership of the Chapters at University Medical Center (UMC) and who the respective electorate will be insofar as electing Officers recognizing that the below is for UMC at it exists in August of 1999, and Chapter status may be addressed through Article 11 of this Constitution and Bylaws and an Executive Board vote at subsequent dates. Further, the following definitions shall be a guideline, but not determinative, in assisting the Executive Board in determining what, if any, Chapters to grant to any other current or future healthcare institutions that have membership within our Local Union.

The Ancillary Chapter is defined as all employees of the hospital who are not part of the Nursing Chapter and who are employed at the main facility (located on Charleston and Shadow Lane).

The Nursing Chapter is defined as those employees who are licensed or certified or who fall within the jurisdiction of the Nevada Nurse Practice Act, Nevada Revised Statues (NRS) and Nevada Administrative Code (NAC), Chapter 632, and the Nevada State Board of Nursing, namely Registered Nurses (RNs), Licensed Practical Nurses (LPNs) and Certified Nursing Assistants (CNAs), and who are employed at the main facility (located on Charleston and Shadow Lane).

The Off-Site Chapter is defined as all employees, whether they would have been in the Ancillary or Nursing Chapter at the main facility, who work at any satellite, Quick Care, clinic, rehab facility, etc., UMC location not physically connected to or located with the main hospital facility.

**B. Additions And/Or Changes**

There may be added to and/or changed, as needed, from time to time, or as required, without the need to list the changes and print a new Constitution and Bylaws unless the Constitution and Bylaws are amended substantively subsequently thereof.

**Section 4. Collective Bargaining**

Each Bargaining Unit shall elect a Bargaining Committee, pursuant to the provisions and procedures as contained in Article 16 – Collective Bargaining, and any other relevant Articles of this Constitution and Bylaws.

**Section 5. Vice President**

Each Bargaining Unit shall elect a Vice President, to serve on the Local Union Executive Board, every three (3) years pursuant to the provisions and procedures as contained in this Constitution and Bylaws.

In the event that two (2) or more Bargaining Units have the same employer, then one (1) Vice President shall be elected from the Bargaining Units (employer jurisdiction).

**Section 6. Additional Bargaining Units**

Additional Bargaining Units may be added to this Local Union and, as such, will be incorporated by reference and subject to the criteria contained herein in this Article and be subject to the Constitution and Bylaws of this Local Union, without the need to print a new Constitution and Bylaws unless the Constitution and Bylaws are amended substantively subsequently thereof.

## ARTICLE 11

## CHAPTERS

**Section 1. Definition**

The membership of this Local Union shall be organized into Chapters by employer, department, function or occupation as determined by this Constitution and Bylaws, or subsequently, by the Executive Board. In continuation of past practice of this Local Union, Chapter status is given to a group of members by the Executive Board because such group of members are representative of a unit defined on a geographic, craft, shift, or similar basis.

Chapters are divisions of Bargaining Units of this Local Union. A Bargaining Unit is that group of employee members that a Collective Bargaining Agreement governs as to their wages, hours and terms and conditions of employment, and that is negotiated by and legally binding between this Local Union and the respective employer.

## A. Current Chapters - Listing

The following Chapters are established and currently exist for this Local Union:

| | |
|---|---|
| 1) ADDUS Home Care | All ADDUS workers |
| 2) AMR Ambulance Service | All AMR workers |
| 3) Clark County - Non Supervisory | 1) Department of Aviation<br>2) Department of Family Services and Department of Juvenile Justice<br>3) General Unit<br>4) Water Reclamation District |
| 4) Clark County – Supervisory | All Clark County supervisors |
| 5) Desert Springs Hospital | 1) Ancillary<br>2) Nursing |
| 6) Las Vegas Convention and Visitors Authority (LVCVA) – Non Supervisory | All non-supervisory LVCVA workers |
| 7) Las Vegas Convention and Visitors Authority (LVCVA) – Supervisory | All LVCVA supervisors |
| 8) Mountain View | All Mountain View workers |
| 9) North Eastern Nevada Regional Hospital (NeNRH) (Elko) | 1) Ancillary<br>2) Nursing |
| 10) Regional Transportation Commission (RTC) | All RTC workers |
| 11) Renown Hospital (Reno) | All Renown workers |
| 12) Southern Hills Hospital | 1) Ancillary<br>2) Nursing |
| 13) Southern Nevada Health District (SNHD) | All SNHD workers |
| 14) Southern Nevada Regional Housing Authority (SNHRA) | All SNHRA workers |
| 15) St. Rose Hospitals | 1) De Lima Campus<br>2) San Martin Campus<br>3) Siena Campus |
| 16) Sunrise Hospital | 1) Ancillary<br>2) Nursing |
| 17) University Medical Center (UMC) | 1) Ancillary<br>2) Nursing<br>3) Off Site |
| 18) Valley Hospital | All Valley workers |

## B. Additions And/Or Changes

These may be added to and/or changed, as needed, from time to time, or as required, without the need to list the changes and print a new Constitution and Bylaws unless the Constitution and Bylaws are amended substantively subsequently thereof.

## C. Requesting Chapter Status

Any group of employees seeking representation by this Local Union shall have the right and responsibility to request Chapter status of the Executive Board. If so requested by any such group of employees, the President shall have the right to appoint a steering committee to act in

behalf of any group preceding presentation of a request to the Executive Board for Chapter status. Only Chapters as approved by the Executive Board shall have official Chapter status in this Local Union. Each Chapter shall be responsible for all activities of the Chapter in representing its members within its jurisdiction.

## Section 2. Responsibilities and Authority

### A. Requirements

Chapters must meet the following requirements:

1. Hold a Stewards/Membership meeting at least every month;
2. The minutes of the monthly Stewards/Membership meeting shall be posted on Union bulletin boards at the work site within fifteen (15) working days and a copy shall be given or mailed to the Secretary of the Local Union;
3. Elect Stewards every three (3) years;
4. Notify the Local Union Secretary of any dissenting action taken on the minutes of the Executive Board within sixty (60) days of the Executive Board action;
5. Have minutes of the meeting of the Chapter available upon request of the Local Union.

### B. Chapter Bylaws, Policies and Procedures

Chapters may adopt bylaws, policies and procedures relating to their governance and operation if in accordance with this Constitution and Bylaws. Such bylaws, policies and procedures must be filled with the Secretary of the Local Union. Any bylaws of any Chapter shall at all times be subordinate to the Constitution and Bylaws of this Local Union, as amended. If any conflict arises between the bylaws of a Chapter, or any amendments thereto, and the Constitution and Bylaws of this Local Union, or any amendments thereto, the provisions of the Constitution and Bylaws of this Local Union shall control. Any Chapter bylaws, or any amendments thereto, shall and must be submitted for approval to the Executive Board of this Local Union before presentation to and vote upon by the appropriate respective membership and before becoming operational. The Executive Board may act as a whole or refer to the Bylaws Committee any consideration and review upon proposed Chapter bylaws or amendments thereto, and the Executive Board as a whole shall vote on any proposed Chapter bylaws, or amendments thereto.

### C. No Financial Authority

No Chapter shall be empowered to contract financial obligations for which any liability would attach to the Local Union. No Chapter may hire staff to conduct the business of the Local Union, the Bargaining Unit or the Chapter.

### D. Chapters Without Chapter Bylaws

Chapters functioning without Chapter bylaws shall be governed by this Local Union Constitution and Bylaws and adoption of such policies as are consistent with this Local Union Constitution and Bylaws and the Constitution and Bylaws of the Service Employees International Union.

## Section 3. Chief Steward

Each Chapter shall elect a Chief Steward, to serve on the Local Union Executive Board, every three (3) years, pursuant to the provisions and procedures as contained in this Constitution and Bylaws. There shall be at least one (1) Chief Steward in each Chapter of each bargaining unit represented by this Local Union. If at any time, a Chapter has one thousand five hundred (1,500) or more dues paying Union members, and that Chapter has a Union membership level of sixty-five (65%) or greater based on the applicable bargaining unit employees, then that Chapter shall be entitled to an additional Chief Steward. The nomination and election shall occur at this time in accordance with this Constitution and Bylaws.

# ARTICLE 12

# MEMBERSHIP MEETINGS

## Section 1. Schedule

### A. Bi-Annual Dates, Nominations

Membership meetings will be held at least twice a year, in April and September. Nominations for all Local Union Officers will be taken at the April meeting. The dates of the meetings will be set by the Executive Board and notice of the meeting dates will be announced at least (30) calendar days prior to the meeting.

### B. Additional Meetings

Additional meetings may be called by a majority vote of the Executive Board or by petition to the Executive Board of at least fifteen percent (15%) of the membership at large.

## Section 2. Rules of Order, Quorum and Agenda

### A. Rules of Order

Meetings will be conducted in accordance with Robert's Rules of Order, as revised.

### B. Quorum

Membership meetings shall have a quorum when fifty (50) regular members are present.

### C. Agenda

The regular order of business for the general membership meetings, subject to waiver upon proper notice, shall be:
The following is the suggested agenda to be followed at general membership, nomination or Executive Board meetings, however, it is subject to change upon a vote on a motion by the Executive Board or the membership.

# Agenda

## General Membership Meeting

Date: To Be Announced

Time: To Be Announced

Place: Union Office, 3785 E. Sunset Road

| | |
|---|---|
| **1. A. Call To Order** | President |
| B. Roll Call Of Officers | President |
| C. Quorum Check | Signing In By Membership |
| D. Approval Of Agenda | Vote By Membership |

**2. Approval of Minutes Of Last General Membership Meeting**

| | |
|---|---|
| Date of Previous Meeting | Vote By Membership |

**3. Reports**

**A. President's Report**

**B. Executive Vice President's Report**

**C. Communications/Secretary's Report**

**D. Financial/Treasurer's Report**

**E. Trustees' Report**

1) Trustee Receiving the Most Votes
2) Trustee Receiving the Second Most Votes
3) Trustee Receiving the Third Most Votes

**F. Vice Presidents' Reports**

1) Addus
1) AMR
2) Clark County Non-Supervisory
3) Clark County Supervisory
4) Desert Springs Hospital
5) Las Vegas Convention And Visitors Authority (LVCVA) Non-Supervisory
6) Las Vegas Convention And Visitors Authority (LVCVA) Supervisory
7) Mountain View
8) North Eastern Nevada Regional Hospital (Elko)
9) Regional Transportation Commission (RTC)
10) Renown Hospital (Reno)
11) Southern Hills Hospital
12) Southern Nevada Health District
13) Southern Nevada Regional Housing Authority

14) St Rose Hospitals
15) Sunrise Hospital
16) University Medical Center (UMC)
17) Valley Hospital

**G. Chief Stewards' Report**

1) Addus
2) AMR
3) Clark County Non-Supervisory, General Unit
4) Clark County Non-Supervisory, Dept of Aviaiton
5) Clark County Non-Supervisory, DFS/DJJS
6) Clark County Non-Supervisory, WRD
7) Clark County Supervisory
8) Desert Springs Hospital, Ancillary
9) Desert Springs Hospital, Nursing
10) Las Vegas Convention And Visitors Authority (LVCVA) Non-Supervisory
11) Las Vegas Convention And Visitors Authority (LVCVA) Supervisory
12) Mountain View
13) North Eastern Nevada Regional Hospital (Elko), Ancillary
14) North Eastern Nevada Regional Hospital (Elko), Nursing
15) Regional Transportation Commission (RTC)
16) Renown Hospital (Reno)
17) Southern Hills Hospital, Ancillary
18) Southern Hills Hospital, Nursing
19) Southern Nevada Health District
20) Southern Nevada Regional Housing Authority
21) St Rose Hospitals, De Lima Campus
22) St Rose Hospitals, San Martin Campus
23) St Rose Hospitals, Siena Campus
24) Sunrise Hospital, Ancillary
25) Sunrise Hospital, Nursing
26) University Medical Center (UMC), Ancillary
27) University Medical Center (UMC), Nursing
28) University Medical Center (UMC, Off Site
29) Valley Hospital

**H. Standing Committee Reports**

1) Organizing
2) Bylaws
3) Civil And Human Rights
4) Collective Bargaining Agreements Review
5) Committee On Political Education (Cope) / Political Action Committee (PAC)/Legislative Committee
6) Communications
7) Election
8) Ethics
9) Finance
10) Health And Safety
11) Healthcare Oversight Committee

12) Senior And Retired Members

**H. Ad Hoc Committee Reports**

**I. Field Staff Reports**

**4. Old Business**
**5. New Business**

A. Nominations For Officers (If Applicable) — Election Committee
B. Bargaining Update
C. Organizing Update

**6. Membership Appearances**
**7. Good And Welfare Of Local Union**
**8. Adjourn**

**Next General Membership Meeting – To Be Announced**

---

## ARTICLE 13

## ELECTIONS

### Section 1. Term of Office

#### A. Officers

The Officers of this Local Union shall be elected every three (3) years. The term of office for all Officers shall commence July 1 of the election year, (except if elected to serve the remainder of a term for a vacant Officer position in accordance with Article 13 of this Constitution and Bylaws or except if elected as an additional/second Chief Steward in accordance with this Constitution and Bylaws), and end on the last calendar day of the month of June which ends the elected term of office.

#### B. Stewards

Each Chapter shall elect their respective Stewards every three (3) years during the general election, and their term of office shall commence July 1 of the election year. If a steward is appointed in off election years then the term of office is until June 30th of the next general election year.

### Section 2. Nominations for Officers and Convention Delegates

#### A. When and How Made – At a Nomination Meeting

Nominations for all Local Union Officers shall be made at a Nomination meeting of the

Local Union held in April of the general election year. At least thirty (30) calendar days' notice shall be given to the membership prior to the nomination meetings. Nominations shall be from the floor at the nomination meetings, sent via fax by the close of the nomination meeting (containing the name of the nominee, position, name and signature of the nominator), or by petition signed by at least fifty (50) members in good standing of the bargaining unit or chapter being represented within ten days after the nomination meeting (if not nominated at the nomination meeting.) All nominations shall be presented to the Election Committee no later than fourteen (14) calendar days from the regular nomination meeting. For the purpose of nominations, no quorum requirement may be imposed. The nominations must include the name of the nominee, the office to which nominated, and the names of the member(s) making the nomination. At the nomination meeting, oral nominations will be accepted from the floor. Any regular member in good standing as of the day of the nomination meeting is eligible to nominate candidates. The eligibility of nominators must be checked at the nomination meeting in order to allow an eligible member to make the nomination if the original nominator is not in good standing.

Nominations require one (1) eligible member to make the nomination, and do not require a second. Self-nominations are permitted. A candidate must accept or decline nomination if present at the nomination meeting. If a candidate is not present at the nomination meeting he or she must accept or decline the nomination no later than fourteen (14) calendar days from the nomination meeting.

### B. Applicant Form Must Be Submitted

To have his/her name placed on the ballot, a nominee for office of this Local Union must submit, no later than fourteen (14) calendar days from the nomination meeting at which nominations for that office were submitted to the Election Committee, a completed Applicant's Form which shall include his/her Candidate Statement, which must be no greater than two hundred (200) words. The Election Committee shall determine whether to mail to the membership a Candidate Statement, and in all cases, whether Candidate Statements are or are not mailed to the membership, all candidates shall be treated equally.

### C. Ineligible To Be Candidate For More Than One Officer Position

No member shall be a candidate for more than one Local-wide office at a time (but may hold other non-Officer positions).

### D. Unopposed Election

If a nominee is unopposed after this Local Union has provided reasonable opportunity for nominations in accordance with this Constitution and Bylaws, then that position shall not be included on the ballot. If nominees for all offices are unopposed under these circumstances, no election is necessary. In any election of this Local Union, including but not limited to Officer elections, Steward elections and Bargaining Committee elections, if any election is unopposed, then, at the determination of the Election Committee, no election is necessary.

## Section 3. Bargaining Unit or Chapter Elections

### A. Eligibility

A person shall be eligible for nomination and serve as an elected position of a Bargaining Unit or Chapter, including as a Steward or a Bargaining Committee member, who has been a member in continuous good standing in the Local Union for at least six (6) months immediately preceding the nomination and who has during all that time paid the full dues required for working members of the Local Union within each month when due. If a nominee is found not to be in good standing status because the employer has failed to remit dues to the Union, that nominee may pay all dues owed to regain in good standing status and eligibility status for the officer position as long as that nominee was a member in good status at the beginning of the eligibility time requirement.

### B. Position On Executive Board

However, any person nominated for a Chapter position which holds an automatic seat on the Local Union Executive Board must be a member in continuous good standing in the Local Union for two (2) years immediately preceding the nomination. If a nominee is found not to be in good standing status because the employer has failed to remit dues to the Union, that nominee may pay all dues owed to regain in good standing status and eligibility status for the officer position as long as that nominee was a member in good status at the beginning of the eligibility time requirement.

If the Chapter has not been in existence the time herein required, a candidate for Officer must have been a member in continuous good standing for the entire period of time since the Chapter was affiliated with the Local Union.

### C. Nominations For Stewards – When Made And Received

Nominations for Stewards shall be made at the general election nomination meeting held in the month of April of the election year.

### D. Appointment Of Stewards

The President of the Local Union may, with the advice and consent of either the Vice President of the Bargaining Unit or the Chief Steward of the respective Chapter, appoint Stewards if any portion of a Term remains, whenever there is a vacancy.

### E. Elections For Stewards – When Held

Elections for Stewards shall be in conjunction with the general election of officers..

## Section 4. Election Committee

### A. Authority

In elections for Officers of this Local Union, or Delegates to International Conventions or SEIU Western Conference Conventions, the Election Committee shall exercise reasonable authority in regard to preparing statements for mailing and may submit questionable material to legal counsel for an opinion as to potential liability upon the Local Union. All material sent out by the Local Union shall contain the following disclaimer:

"This material is distributed through the offices of the Local Union, Nevada Service Employees Union, SEIU Local 1107, for purposes of equal access and accommodation in the democratic election process. The Local Union, Nevada Service Employees Union, SEIU Local 1107 does not endorse any candidate nor vouch for the accuracy of his/her statement."

### B. Duties

The duties of the Election Committee shall be to:

1. Conduct the affairs of the elections;
2. Validate the qualifications of the nominee;
3. Act as initial judge in all matters arising from the election procedures;
4. Be responsible for the tabulation of the results of the election; and
5. Certify the results of the election.

### B. Committee Ineligible To Be Candidate For Officer Or Delegate

No member of the Election Committee may be a candidate for Officer of this Local Union or Delegate to International Conventions or SEIU Western Conference Conventions. Members not satisfied with a ruling of the Election Committee concerning eligibility may petition the International President within fifteen (15) days after the act complained of, or may petition the International Executive Board within fifteen (15) days after the action of the International President thereon, to review the action of the Election Committee, pursuant to provisions of the International Constitution and Bylaws.

### C. Procedures For Election Of Stewards

The written procedures for the election of Stewards shall be established by the Executive Board or by Chapters with the approval of the Executive Board.

## Section 5. Ballots And Voting

### A. Officers and Delegates

Balloting for all Officers of this Local Union, stewards of Chapters of this Local Union, or Delegates to International Conventions or SEIU Western Conference Conventions may be conducted through a site election (polling place(s) or conducted by mail, including a three (3) week period for voting and ballots must be received by the Local Union, through the United States mail in our post office box, no later than 11:00 A.M. on the last Saturday of June, or by the end of a three (3) week period (for Delegates). In a mail election, ballots must be mailed to the Local Union's post office box and may not be delivered to the Union in any other manner. Ballots, together with a postage prepaid return envelope, shall be mailed to the entire membership by the Local President or designee. The ballot package shall be a double envelope with signature and printed name required to insure fairness and secrecy. Ballots shall be retained in a safe place for one (1) year. The Election Committee, in creating the voting rules and procedures, will decide whether the balloting and voting for Officers or Delegates will be by mail or a site election (polling place(s).

**B. Stewards**

Draft ballots for election of Stewards shall be created by the Election Committee in conjunction with ballots for officers during general elections.

**C. Write-In Candidates and Proxy Voting Not Permitted**

Write-in candidates and proxy voting shall not be permitted for any purpose in any election for any office or position of this Local Union, including any election for an Officer, Delegate, Steward or any other office in this Local Union.

**D. Plurality Needed For Election**

The candidate receiving the highest number (plurality) of the votes cast for that office or position shall be declared elected.

**E. Trustees**

This Local Union has three (3) Trustees. The three (3) candidates receiving the most votes for the office of Trustees shall be elected as the three (3) Trustees of this Local Union.

**E. Safeguards For Fair Election**

Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the counting of the ballots.

**Section 6. No Discrimination**

The Local Union shall refrain from discriminating in favor of or against any candidate. No Local Union funds (including campaigning on time paid for by the Union), resources or mailing lists will be used to assist any member's candidacy. No employer funds (including facilities, equipment, supplies, and campaigning on time paid for by the employer) to support any person's candidacy in a Union Office election is allowed and is not to be accepted. Thus, this prohibits the use of any Union or employer funds to promote the candidacy of any person in a Union Officer election. This prohibition applies to the use of cash, facilities, equipment, vehicles, office supplies, etc., of this Local Union, and any other union, and of employers whether or not they employ this Local Union's members. Union Officers and employees may not campaign on time paid for by the Union. Candidates (including a prospective candidate) or supporters for any office in this Local Union or affiliated body may solicit or accept financial support or any other direct or indirect support of any kind from members of this Local Union, SEIU affiliated unions and the International Union. Candidates must be treated equally regarding the opportunity to campaign and all members may support the candidates of their choice without being subject to penalty, discipline or reprisal of any kind.

## Section 7. Election Mailings

The Local Union will not provide a membership list to a candidate running to become an Officer of this Local Union; however, the Local Union will mail literature from a candidate and this Local Union will honor any reasonable request by a candidate to distribute campaign literature to the electorate members at the candidate's expense. Such request must be made in writing to the Union office in care of the Chairperson of the Election Committee, or the President. Requests will be honored in the order received. Candidates will be provided the opportunity, should they choose, to send mailings to the Local Union's membership that represents the electorate that is voting in the election for the office for which the candidate is running. Thus, candidates may furnish the designated mailing service with envelopes already sealed and stuffed with the candidate's literature. The candidate may use a postcard or computer art or printing, provided that such work is done by the candidate or through the mailing service. Candidates will bear all costs associated with production of any mailings of their own campaign literature sent via the mailing service. The Local Union will only be responsible for placing the mailing labels containing the members' (electorate) names and addresses on the pre-packaged and sealed envelopes or postage-approved mailer. Thus, the Local Union will in no way censor the contents of any such mailing. The Local Union staff will deliver the mailing list to the mailing house. The candidate, or his/her designee, may accompany the Local Union staff in delivering the mailing list to the mailing house.

## Section 8. Filling Vacancies

### A. Positions, Including Stewards, Other Than Officers

Vacated positions, including Stewards, but other than Officers of this Local Union, shall be filled by appointment of the President, with the advice and consent of either the Vice President

of the Bargaining Unit or the Chief Steward of the respective Chapter, regardless of the length of term that remains.

**B. Officer**

When an Officer position of this Local Union is vacant, the following shall occur:

**C. President**

If the President's position is vacant, the Executive Vice President shall become President. If more than one hundred and eighty (180) calendar days remain on the term of office for Executive Vice President, then there shall be a special election for the office of Executive Vice President. If one hundred and eighty (180) calendar days or less remain on the term of office for Executive Vice President, then the office shall be declared vacant by the Executive Board.

**D. Executive Vice President**

If the Executive Vice President's position is vacant, and if more than one hundred and eighty (180) calendar days remain on the term of office for Executive Vice President, then there shall be a special election for the office of Executive Vice President. If one hundred and eighty (180) calendar days or less remain on the term of office for Executive Vice President, then the office shall be declared vacant by the Executive Board.

**E. Secretary, Treasurer or Trustee**

If the Secretary, Treasurer or Trustee position is vacant, and if more than one hundred and eighty (180) Calendar days remain on the term of office for Secretary, Treasurer or Trustee, then there shall be a special election for the respective office, if one hundred and eighty (180) calendar days or less remain on the respective term of office for the office of Secretary, Treasurer or Trustee, then the office shall be declared vacant by the Executive Board. In the case where the office of either the Secretary or Treasurer is declared vacant, the remaining Officer shall assume the duties of the vacant office until the office is no longer vacant (until a newly elected Officer fills the vacant position). In the case where the office of Trustee is declared vacant, the other Trustees shall continue to perform the duties and obligations of Trustees as proscribed under and consistent with this Constitution and Bylaws.

**F. Vice President of a Bargaining Unit or Chief Steward of a Chapter**

If the Vice President of a Bargaining Unit or Chief Steward of a Chapter position is vacant, and if more than ninety (90) calendar days remain on the term of office for Vice President of a Bargaining Unit or a Chief Steward of a Chapter, then there shall be a special election for the respective office involved. If ninety (90) calendar days or less remain on the term of office for

Vice President of a Bargaining Unit or Chief Steward of a Chapter, then the office shall be declared vacant by the Executive Board.

**G. Measurement of Terms of Office**

Terms of office are to be measured from the date when the Officer took office (July 1 of election year).

**H. Special Elections**

Special elections shall be conducted consistent with the provisions and terms of this Constitution and Bylaws. The Election Committee shall be responsible for the conduct of any special elections.

**Section 9. Financial Contributions**

No candidate (including a prospective candidate) for any Office or position, including a Steward, in this Local Union or affiliated body or supporter of a candidate may solicit or accept financial support or any other direct or indirect support of any kind from any non-member of the International Union.

**Section 10. Protests**

Any member wishing to protest the election of any Officer (Executive Board members), Steward, Bargaining Committee, or any election of this Local Union, must file a written, signed protest with the chairperson of the Election Committee, or the President, within seven (7) calendar days after the election.

## ARTICLE 14

## COMMITTEES

**Section 1. Committees**

All committees of this Local Union shall be advisory to the Local Union's Executive Board. No action shall be taken by any committee without prior authorization or approval from the Executive Board.

**Section 2. Standing Committees**

**A. Definition and Responsibility**

The Standing Committees of this Local Union shall include, but not be limited to, the following:

1. Organizing Committee

The Organizing Committee will assist the Executive Board by formulating and actively supporting programs to recruit members to this Local Union.

2. Bylaws Committee
The Bylaws Committee will assist the Executive Board by reviewing and making recommendation on the Local Union Bylaws and any Chapter Bylaws which shall and must be submitted for approval to the Executive Board before presentation to and vote upon by the appropriate respective membership and before becoming operational. The Bylaws Committee will also assist the Executive Board by review of and recommendation on all bylaws of this Local Union and its Chapters at least every three (3) years.

3. Civil and Human Rights Committee
The Civil and Human Rights Committee will assist the Executive Board in carrying out the Civil and Human Rights programs and policies of both the International and Local Union.

4. Collective Bargaining Agreements Review Committee
The Collective Bargaining Agreements Review Committee will assist the Executive Board and the Bargaining Committees of this Local Union by representing and bringing forward all recommendations made to the Committee by the membership and by constantly reviewing all the Collective Bargaining Agreements of this Local Union and making recommendations for improvement on such agreements.

5. Committee On Political Education (Cope) / Political Action Committee (PAC) /Legislative Committee
The Committee On Political Education (COPE) / Political Action Committee (PAC) / Legislative Committee will assist the Executive Board in carrying out a program of political education and action and will encourage members to register and vote. The committee will define, investigate and recommend legislation of interest to the members. This committee will also make recommendations to the Executive Board for endorsements of candidates for elective offices and positions regarding ballot measures of interest to the members. In making recommendations to the Executive Board for endorsement of or any action with respect to any candidate or incumbent elected official, this committee will hold accountable a candidate or elected official in how they have interacted with the membership, including but not limited to, by how they voted on a Collective Bargaining Agreement, conducted themselves during bargaining and had labor relations with the membership.

6. Communications Committee
The Communications Committee will assist the Executive Board in communications to the membership and public relations for the Local Union.

7. Election Committee
The Election Committee will assist the Executive Board in the conduct of Local Union elections through the recommendation of rules and procedures for such elections and the monitoring and conduct of elections.

8. Ethics Committee

The Ethics Committee will assist the Executive Board in guaranteeing all members the right to a full and fair hearing on any charges or complaints against any member or Officer. Any charge brought by or against a member or Officer of this Local Union shall be governed under the policies and procedures of Article 21 – Trials And Appeals.

9. Finance Committee
   The Finance Committee will include the Treasurer, President and Trustees, and will assist the Executive Board in the development of a budget for the Local Union and monitoring and making recommendations concerning the finances of the Local Union.

10. Health and Safety Committee
    The Health and Safety Committee will assist the Executive Board in protecting the health and safety interests of the members of this Local Union.

11. Healthcare Oversight Committee
    The Healthcare Oversight Committee will assist the Executive Board in monitoring and reviewing issues that involve patient care, that affect or impact upon healthcare workers, and has a mission the goal of protecting and promoting quality and safe patient care. The Healthcare Oversight Committee will work in conjunction with the Committee On Political Education (COPE) in the monitoring, reviewing and making recommendations to the Executive Board on any healthcare laws, regulations, proposed bills, legislative or political agencies, committees or issues, etc.

12. Senior and Retired Members Committee
    The Senior and Retired Members Committee will assist the Executive Board in developing a program for senior and retired members.

## B. Appointments

Appointments to Standing Committees shall be made in the following manner, unless otherwise determined by the Executive Board.

1. President:
   The President shall appoint one (1) member of the Executive Board to each Standing Committee.
2. Chief Steward:
   The Chief Steward from each Chapter shall name one (1) member to each Standing Committee.
3. Members May Volunteer And Be Appointed:
   Members of the Local Union may volunteer to serve on any Standing Committee but must be appointed to such Committee by the Executive Board.

## C. Chairpersons

Chairpersons of Standing Committees and their tenure shall be selected by the members of each Standing Committee.

## D. Notification To International Union

The International Secretary-Treasurer shall be notified promptly by this Local Union of the

composition of all the Standing Committees of this Local Union. This shall be done at least once a year, during the month of January.

## Section 3. Ad Hoc Committees

### A. Definition and Responsibilities

Ad Hoc Committees may be appointed to meet specific needs or address particular issues facing the Local Union, and shall be advisory to the Executive Board. The Ad Hoc Committee will automatically cease to exist when the need or issue is resolved or as determined by the Executive Board.

### B. Appointments

Ad Hoc Committees will be appointed in the following manner, unless otherwise determined by the Executive Board:

1. President:
   With the approval of the Executive Board, the President may appoint members to Ad Hoc Committees.
2. Chief Steward:
   The Chief Steward from each Chapter will appoint one (1) member to the Ad Hoc Committee.
3. Members May Volunteer And Be Appointed:
   Members may volunteer to serve on Ad Hoc Committees but must be appointed to such Committees by the Executive Board.

### C. Chairpersons

Chairpersons of Ad Hoc Committees and their tenure shall be selected by the members of each Ad Hoc Committee.

## Section 4. Operating Rules And Quorum

In continuation of the past practice of the Local Union, it is the decision of each individual Standing or Ad Hoc committee to decide and determine its operating rules, quorum requirements (if any) and how it will conduct its business and meetings.

## Section 5. Reports To The Executive Board

The chairperson of each Standing or Ad Hoc committee, or designee, shall report to the Executive Board, both orally and in writing, at each Executive Board meeting, the members who are part of the committee, the attendance and participation at committee meetings or functions, what its activities and actions have been since the last Executive Board meeting, what the committee plans to do in the future, and make any recommendations to the Executive Board. Each committee should furnish to the Union office a list of its members, the minutes and agenda from each meeting and any other relevant items.

# ARTICLE 15

# LOCAL PRESIDENT AND UNION STAFF

## Section 1

### A. Duties of the President

It shall be the Local President's duty to administer the affairs of the Local Union and to implement the policies established by the Executive Board and the membership of the Local Union on a day-to-day basis. The Local President's duties shall include, but are not limited to:

1. Comply with the mandates of all membership votes and/or decisions of the Executive Board;

2. Report to the Executive Board, both orally and in writing, on a monthly basis or at each Executive Board meeting, whichever is more frequent, on each bargaining unit or jurisdiction that this Local Union represents or is organizing, with the following information: the number of bargaining unit (Union eligible) employees, the number of Union members, the number of non-Union members, and the percentage of membership. The goal is to receive from each employer, on a monthly basis, the following information on all bargaining unit (Union eligible) employees: employee's name, address, city, state, zip code, job classification or title, status (full time, part time, per diem, probationary or other), department/unit, shift, hourly salary, benefit status, and a list of all new hires and separations or terminations with the above information furnished, and any other relevant or required information. In the event the above is not possible with respect to certain employers because of the applicable respective Collective Bargaining Agreement with a particular employer or employers, then it is the direction from the Executive Board that the next negotiation of such a particular Collective Bargaining Agreement have as a major and primary objective to obtain the allowance of the above. Of all the duties listed herein, this is arguably the most important;

3. Cooperate with the Officers of the Local Union to assist them in the performance of their duties, on matters affecting the Local Union, including but not limited to bargaining, organizing activities, political action, and Community interaction.

4. Hire and fire with prior consultation with the Executive Vice President, assign and direct the Local Union's staff in accordance with any applicable bargaining agreement, rules, laws and regulations regarding discrimination and pursuant to any staff-related policies adopted by the Executive Board, and it is recognized and understood that it is the authority and responsibility of the President to implement the direction of the Executive Board and the membership with respect to the daily affairs and business of the Local Union and to manage and supervise any and all staff;

5. Assign and direct, with prior consultation with the Executive Vice President on budgetary matters, the Local Union's staff within an operating budget approved by the Executive Board;

6. Monitor the status of all grievances and subject to review by the Executive Board, handle complaints, grievances and arbitrations in as timely a manner as possible and report his/her activities regarding same to the Executive Board;

7. When required, and when possible, along with the Executive Vice President, represent the Local Union in the community, in the media and at meetings, conferences or conventions of organizations with which the Local Union is affiliated and keep the President apprised of such activities;

8. Together with the Finance Committee, present an annual budget to the Executive Board for its review, discussion and final adoption; and further, on a monthly basis, or at each Executive Board meeting, together with the finance committee and the treasurer, present to the Executive Board a monthly income and expense report (profit and loss report) and a list of all outstanding accounts payable (bills) and a balance sheet that includes all bank account balances and reserved moneys. The above monthly information shall also be furnished to the Executive Board with respect to any committee or other financial situations, including but not limited to the committee on Political Education (COPE) Political Action Committee (PAC). Such shall be made available to the finance committee before the next Executive Board meeting and the reports mailed out to Executive Board Officers before the next Executive Board meeting. Administer the financial affairs of the Local Union in accordance with Executive Board and finance committee policies and procedures, and further, any extraordinary exceptions to the normal budget, will require the finance committee's review and recommendation prior to any Executive Board action and vote, except in emergency situations as approved by the Executive Board;

9. Collect all dues and such other moneys as may be due the Local Union and in cooperation with the Treasurer, deposit the funds to the accounts of the Local Union. Keep an accurate accounting of all receipts and disbursements of all moneys in bank(s) approved by the Executive Board. Co-sign checks and drafts to pay the bills of the Local Union;

10. Report monthly to the Executive Board on income and expenses for the previous months and report orally and in writing to the Executive Board on his/her activities, and forward to Executive Board Officers, as far in advance as reasonably before the next Executive Board meeting, the reports for the next Executive Board meeting;

11. Provide membership accessibility to the financial records and Executive Board minutes. The Executive Board shall adopt reasonable rules and procedures for this process that shall not abridge the rights of the membership;

12. Issue correspondence as directed by the Executive Board on behalf of the membership;

13. Publish the Local Union newspaper and regular membership communications;

14. Attend all meetings of the Executive Board and General Membership, unless excused for cause by the Executive Board;
15. Prepare an agenda for the Executive Board and provide copies of the agenda to the Executive Board, along with notice of the meeting;
16. Maintain a file of minutes and correspondence for presentation upon request to the Executive Board of the Local Union or the International Union, or its representatives;

17. Secure and maintain surety bonds in the amounts and the form required by applicable statues and/or the International Union;

18. Notify the International Union in writing when any collective bargaining negotiations or memoranda of understanding have been concluded, including the number of employees covered, and sending copies of such agreements and contracts to the Research Department of the International Union;

19. Forward copies of the Annual Financial Review, and any Audit conducted, including the audit conducted every three (3) years, and other required filings to the International Union and any other authorities as may be required by statute, and ensure that the mandate of Article 7 Section 10 (4) is adhered to;

20. Forward to the International Union the correct names and addresses (including zip codes) of all Local Union members each month as well as all changes of address and the names, addresses and social security numbers of all new members; of all other persons from who revenue is collected and of those suspended for non-payment of dues or for any other cause; and a correct list of those who take transfer or withdrawal cards;

21. Notify the International Union of all those elected to Local Union office within fifteen (15) days of their election;

22. Turn over all records to a successor at the time a successor is selected and the Trustees have audited such records;

23. Provide and/or coordinate training of Stewards and staff and any other training of members that may be appropriate or needed, including, but not limited to the following: Organizing, Collective Bargaining, Representation And Grievances And Arbitration, Political And Legislative, and Health and Safety;

24. Appoint all members to committees which are comprised of both Labor and Management representatives, with the exception of the Contract Bargaining Committees (as provided for in Article 16 – Collective Bargaining); and

25. Perform such additional duties as the Executive Board may direct and report other relevant activities to the Executive Board and the membership.

## Section 2. Union Staff

### A. Authorization

The Executive Board shall authorize the number of staff positions and their compensation, after consultation with the President.

### B. Direction

All staff of the Local Union will work under the direction of the President, who has the authority to hire, fire, assign and supervise their work, pursuant to any staff-related policies adopted by the Executive Board.

# ARTICLE 16

# COLLECTIVE BARGAINING

## Section 1. The Right to Collective Bargaining

The right of employees to engage in collective bargaining is a matter of national and safe policy contained in the laws of the nation and the State of Nevada. The National Labor Relations Act, Section 7, states that: "Employees shall have the right to self-organization, to form, or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection..." The Nevada Revised Statutes, Chapter 288, states that collective bargaining, "means a method of determining conditions of employment by negotiation between representatives of the local government employer and employee organizations, entailing a mutual obligation of the local government employer and the representative of the local government employees to meet at reasonable times and bargain in good faith with respect to:

1. Wages, hours and other terms and conditions of employment;
2. The negotiation of an agreement;
3. The resolution of any question arising under a negotiated agreement; or
4. The execution of a written contract incorporating any agreement reached if requested by either party..."

## Section 2. Definition and Purpose

Collective bargaining is a primary activity of this Local Union. Our fundamental purpose is to negotiate a legally binding contract (Collective Bargaining Agreement) that secures and improves the wages, hours, benefits and working conditions of those members covered by that Agreement.

## Section 3. Grievance Procedure

A Collective Bargaining Agreement creates a framework of rules which are legally binding between the employer and the Local Union and has a grievance procedure for dispute resolution if a problem arises as to the meaning of the contract or its application.

## Section 4. Member Involvement

Collective bargaining is intended to involve members directly and actively in determining their wages, hours and working conditions.

## Section 5. Success In Collective Bargaining

We achieve success in collective bargaining through organization, united action, legislative and political activity and the use of creative strategies and tactics.

## Section 6. Bargaining Committee

The size and method of selecting a Bargaining Committee will vary based on factors such as the number of facilities; the number of departments/units and shifts; variety of classifications, job duties

and titles; the demographics of the members; the geography of the work force and its locations; and other factors that should be considered in assembling a committee that reflects the needs and diversity of the members. The authority to bargain collectively for this Local Union shall be vested in a Bargaining Committee elected/selected under written procedures determined by the individual Bargaining Unit and/or the Executive Board. The Local President, or designee, shall be the chief spokesperson for this Local Union in all collective bargaining with any employer. The President of this Local Union shall serve as an ex-officio member of all bargaining committees of the Local Union and it is the very important duty and responsibility of the President to actively take part in and stay informed of bargaining in all areas and to participate with the Bargaining Committees. The Vice President of the Bargaining Unit and the Chief Steward(s) of the Chapter(s) in the Bargaining Unit (if the Chief Steward(s) chooses to do so, however no more than one (1) Chief Steward from a Chapter, in accordance with Article 7) shall automatically serve on the Bargaining Committee by virtue of their position and their importance in enforcing and understanding the contract. If an election for office occurs while bargaining is in process and any Officer referenced in the preceding sentence (namely the Vice President of the Bargaining Unit and the Chief Steward(s) of the Chapter(s) in the Bargaining Unit) is not reelected to office, the ex-Officer(s) shall still retain his/her position on and continue to serve on the Bargaining Committee, and the newly elected officer(s) shall not automatically serve on the Bargaining Committee, but shall serve on the Bargaining Committee if elected to the Bargaining Committee during elections for the Bargaining Committee.

**Section 7. Survey of Members**

The Local President, or designee, shall survey the members of the Bargaining Unit about their desires concerning the wages, hours and working conditions to be incorporated into the Collective Bargaining Agreement four (4) months prior to the expiration of the Collective Bargaining Agreement.

**Section 8. Exclusive Bargaining Agent**

This Local Union is the exclusive Bargaining Agent for all employees of all Bargaining Units that are represented by this Local Union.

Every member of this Local Union authorizes this Local Union to act as the exclusive Collective bargaining agent and representative with full and exclusive power to execute agreements with his or her employer governing wages, hours, terms and conditions of employment, subject to ratification of the membership, and to have final authority to settle any grievance or dispute arising under any Collective Bargaining Agreement.

**Section 9. Ratification**

The results of any Collective bargaining sessions of a Bargaining Unit shall be subject to a ratification vote by the members of that Bargaining Unit, with sufficient notice given to the membership and in accordance with other policies and procedures as determined by the Bargaining Committee, the Executive Board and the President of this Local Union. A Bargaining Unit is that group of employee members that a Collective Bargaining Agreement governs as to their wages, hours and terms and conditions of employment. If a contract is to be ratified at a meeting, that meeting should be scheduled as much in advance as possible under the circumstances. Affected members (of the Bargaining Unit) shall be given at least twenty-four (24) hours notice of such meeting. Ratification of any Collective Bargaining Agreement requires a majority vote by secret ballot of the affected members (of the Bargaining Unit) who vote. A member may waive his/her confidentiality in

accordance with the policies and procedures created to govern the Collective Bargaining Agreement ratification vote.

**Section 10. Reimbursement of Bargaining Committee**

The Executive Board shall establish written policies regarding the reimbursement of lost wages and "out-of-pocket" expenses by members of a Bargaining Committee.

**Section 11. Notification to International Union**

The International Union shall be notified in writing when any Collective bargaining negotiations or Agreements have been concluded, including the number of employees covered, and a copy of the Agreement shall be forwarded immediately to the International Union. A true copy of all Collective Bargaining Agreements entered into by this Local Union shall, immediately upon execution, be filed with the Department of Research of the International Union and be maintained in this Local Union's office and copies shall be available to members upon request.

## ARTICLE 17

## REVENUES AND PROPERTIES

**Section 1. Dues**

**A. Initiation Fee (None)**

There is no initiation fee to join this Local Union.

**B. Organizing/Prospective Member**

No dues shall be collected by this Local Union for newly organized/prospective members who sign Membership Application And Dues Deduction Agreement authorization cards until the first Collective Bargaining Agreement is ratified by the membership of the newly organized jurisdiction and is in place between this Local Union and the employer. In continuation of the past practice of the Local Union, such organizing/prospective members do not have the right to run for or nominate for any office or position in the Local Union or to vote on any election in the Local Union until their first Collective Bargaining Agreement is ratified.

**C. Regular Members**

Membership dues shall be recommended by the Executive Board, but shall not be less than the minimum dues required by the Constitution and Bylaws of the Service Employees International Union for regular working members, unless proper waiver of such provisions is secured from the International President.

**D. Retired Members**

Retired Members shall pay membership dues, which shall be one-third (1/3) the dues that regular members pay, but not less than is required by the Constitution and Bylaws of the

Service Employees International Union for retired members, unless proper waiver of such provision is secured from the International President.

**E. Associate Members**

Associate Members shall pay a fee, which shall be the same dues that regular members pay.

**F. Member In Good Standing**

For a member to remain in good standing, dues must be paid on time and in full on or before the last day of the two week period in which they are due.

**G. Local Union Responsibility to Pay Per Capita Tax**

This Local Union shall pay per capita tax to the International Union for any person from whom the Local Union receives revenue, whether called dues or otherwise. This Local Union shall likewise pay any other obligation due to the International Union, and it shall have no right to pay any bills before it pays its full obligation to the International Union each month.

**H. Financial Records**

All record of this Local Union pertaining to income, disbursements and financial transactions of any kind must be kept for a period of at least six (6) years, or longer if required by applicable law. It shall be the responsibility of the President to ensure that the records are properly archived. This Local Union shall promptly forward to the International Secretary-Treasurer copies of all annual financial reviews and any audit reports and copies of all financial reports setting forth a statement of assets and liabilities and a statement of receipts and disbursements which are required by law.

**E. Reinstated Members**

Members who are disciplined for more than thirty (30) days, including termination and are represented by this Local Union and subsequently reinstated with back pay, shall be required to pay appropriate back dues and fees.

**F. Ratification of Dues By Membership At Large**

With the exception of those required by the International Union, dues may only be changed (ratified) by a majority vote by secret ballot of the members in good standing by the membership at large who vote, voting pursuant to procedures prescribed by the Executive Board.

The procedure to change (ratify) dues shall be as follows:

Any increase in the rate of dues or the levying of any general or special assessment, which have not been mandated by a Convention of the International Union, shall when required by applicable law, be made only in accordance with the following procedure:

(I) Reasonable notice shall be given by the Secretary to the membership at large at least fifteen (15) days prior to the meeting at which the membership at large

consider the question of whether or not such dues or general or special assessment shall be changed
or levied. The notice shall indicate that an increase or assessment is to be voted on. Such meeting may be regular or special.

(II) At the regular or special meeting called as provided in this Section, voting shall be by secret ballot of the members in good standing.

(III) A majority vote by secret ballot of the members in good standing voting at such meeting shall decide the issue.

(IV) The Executive Board may refer the vote to a mail ballot vote by the membership at large conducted by secret ballot requiring a majority vote of the membership at large who vote to decide the issue.

### G. Membership Dues Payable Through Payroll Deduction

Membership dues are payable through payroll deduction. It shall be the responsibility of the individual member to notify the Union of any change in their employment status which might require an adjustment in their dues obligation.

### H. Member On Leave Without Pay

In order to remain a member in good standing, any member on leave without pay for more than thirty (30) days, or on layoff, shall pay the minimum dues as required by the International Union.

### I. Laid-Off Or Striking Employees

When a member is laid-off from employment or is absent from work due to employer lockout or Union-authorized strike for more than twenty (20) days in any calendar month, such member will be credited for membership dues for the period of unemployment but not to exceed six (6) months in any calendar year.

### J. Withdrawal of Membership

Members of this Local Union agree and understand that by virtue of their membership that they cannot withdraw their membership except by a signed written notice to this Local Union delivered by U.S. mail to the Local Union or delivered in person to the Local Union by the member withdrawing membership in the Local Union.
For all members both public and private, the Union will make every effort to secure language in all collective bargaining agreements eliminating employer decision making pertaining to the member's payment of dues.

## Section 2. Fee Schedule for Non-Members

The Executive Board of this Local Union, in September 1994, duly adopted the following fee schedule for non-members of this Local Union. The fee schedule was amended and clarified by the Executive Board in January 1997. The fees expressed apply to public sector employees only who are non-members and do not apply to members or any workers in a private sector bargaining unit.

| | |
|---|---|
| Grievance Consultation | Sixty Dollars the first hour or fraction thereof. |

| | |
|---|---|
| | Additional hour(s) prorated accordingly. (No charge if steward is on release time.) |
| Any Step of the Grievance Procedure | Same as above |
| Pre-Termination Hearings | Same as above |
| Post Termination Hearings | Same as above |
| FMCS/AAA Arbitrations | Same as above |
| Arbitrator Fees | One Hundred percent of what the Union would be required to pay per the applicable collective bargaining agreement. |
| Hearing Officer Fees | One hundred percent of what the Union would be required to pay per the applicable collective bargaining agreement. |
| Union Attorney Fees | One hundred percent of billed fee. |

- ❖ The above fee schedule was challenged by non-member employees of the University Medical Center, and on January 19, 1996, the Local Government Employee Management Relations Board (EMRB) ruled the fee schedule did not violate the Nevada Revised Statutes (NRS) or the Right to Work Statute in the State of Nevada.

- ❖ On August 22, 1996, Eighth Judicial District Court Judge Nancy Becker upheld the EMRB decision, ruling that the Union has a right to charge fees to non-members.

A non-member may utilize said Local Union services (Local Union field staff and Local Union attorneys) provided they sign a non-member fee schedule agreement. This Local Union shall receive payment in full from the non-member for each service provided before rendering additional services or assistance.

A non-member who requests assistance and services from this Local Union by the field staff or Union attorney may join this Local Union if he/she so desires. A retainer of $500.00 is required at the initial representation during the grievance process. If the cost is over $500.00, the non-member is required to pay another $500.00 retainer fee. If the case is moved to arbitration, the non-member is required to pay a $10,000.00 retainer. However, the non-member shall pay for any and all assistance and services rendered pursuant to the fee schedule as expressed above, if the issue(s)/grievance(s) arose from an act of occurrence that was before the date the non-member chose to become a member of this Local Union. All unused retainer fees shall be refunded to the non-nonmember.

**Section 3. Properties**

**A. Officers**

All Officers shall deliver to their respective successors, at the conclusion of their term of office, all property in their possession belonging to this Local Union. All funds and property of the Local Union shall be deemed held in trust for the benefit of the members, to be used in accordance with the direction of the membership and the Executive Board.

**B. Property Rights**

The title of and to all property, funds and other assets of this Local Union shall at all times be vested in the Local Union Executive Board for joint use of the membership of this Local Union. Membership in this organization shall not vest any member with any right, title or interest in or

to the property of this Local Union, including the funds of the Local Union. No member shall have any severable proprietary right, title or interest therein. Under no circumstance shall the Local Union distribute its funds, property or assets individually among the membership. Membership in this organization shall not vest any member with any right, title or interest in or to the funds, property or other assets of this Local Union, now owned and possessed, or that may hereafter be acquired, and each member of this Local Union hereby expressly waives any rights, titles or interest in or to the property of this Local Union, including the funds, and other assets of this Local Union.

**C. Bonds**

All Officers and employees handling any moneys of this Local Union shall be bonded by a licensed surety company for such amount as the Executive Board may deem sufficient to fully protect the Local Union in accordance with the requirements of applicable statutes. The cost of the bond is to be paid by the Local Union. It shall be the responsibility of the President to ensure the adequacy and timeliness of these bonds. The International Secretary-Treasurer of the International Union may direct the increase or decrease in the amount of the bond when he/she deems advisable and may direct bonding of any Local Union not required by statute to obtain or secure a bond.

**D. Signatory Authority And Power**

The authority and power to authorize and sign any and all checks, disbursements or payments on behalf of the Local Union, or any committee or sub-set of the Local Union, shall be restricted to the following: the President and the Treasurer. Checks disbursements or payments on behalf of the Local Union require two (2) signatures from the appropriate and authorized representatives. With respect to committees or sub-sets of the Local Union, it is permissible that the chairperson of the committee have signatory authority and power with respect to that committee's funds, but in all instances such a check, disbursement or payment must be counter-signed by either the President or the Treasurer.

## ARTICLE 18

## INTERPRETATIONS

The Constitution and Bylaws of this Local Union shall be interpreted by the Local Union Executive Board. Any member shall have the right to appeal from the decision of the Executive Board, pursuant to Article 20 – Initiative And Referendum, or in accordance with the provisions of the International Constitution and Bylaws. The decision of the Executive Board shall be deemed final unless the individual(s) affected follows the provisions of Article 20 of this Constitution and Bylaws. All such appeals shall be processed in accordance with the applicable provisions of this Constitution and Bylaws or those of the International, whichever controls.

## ARTICLE 19

## RECALL

**Section 1. Definition**

All elected Officers and Stewards may be recalled by a vote of the constituency that elected them to office.

## Section 2. Rules and Process

### A. Timeline, Submission, Verification and Percent Needed

A vote to recall shall be held within sixty (60) days of submission of a petition to the Executive Board, at an Executive Board meeting, or to the President, individually, signed (name printed and signed, clearly legible in order to be verified) by at least fifteen percent (15%) of the membership in good standing of the constituency that elected the Officer or Steward.

### B. Title and Specificity

A recall petition must be titled "Recall Petition", must clearly identify the petitioner(s) (the party(s) behind or originating the petition) and must designate the Officer or Steward to be recalled and the Office or position held.

### C. Signatures Dated and Timely

All signatures shall be dated and shall be no more than ninety (90) days old at the time of submission In order to be considered valid.

### D. Election Committee

The Election Committee shall conduct the recall election pursuant to the provisions for elections contained in this Constitution and Bylaws.

### E. Filling Vacancies

If an Officer or Steward is recalled, the office shall be declared vacant and shall be filled in accordance with provisions contained in this Constitution and Bylaws.

### F. General or Stewards' Election Time Bar

Recall elections shall not be scheduled if a petition is received within 120 days of a general or Stewards' election.

### D. Recall Vote Time Bar

If a recall vote is not approved by a majority of those voting in the recall election, no petition for the recall of that Officer or Steward shall be considered if received prior to one (1) year from the date of certification of the recall election results.

### E. Recalled Officer/Steward Time Bar To Run For Office

Any Officer or Steward recalled shall not be permitted to run for any Union office for a period of two (2) years from the date of certification of the recall election results.

# ARTICLE 20

# INITATIVE AND REFERENDUM

## Section 1. Definition

The initiative and referendum process is a means by which the membership may overturn decisions of the Executive Board, or bring to the attention of the membership and take action on other issues of concern.

## Section 2. Rules and Process

### A. Signed Petition, Percent Needed and Submission

An initiative or referendum may be originated by a petition signed (name printed and signed, clearly legible in order to be verified) by at least fifteen percent (15%) of the membership at large in good standing, submitted to the Executive Board, at an Executive Board meeting, or to the President, individually.

### B. Automatic Placement On Agenda and Voting Process

After an initiative or referendum has been received by the Executive Board, at an Executive Board meeting, or to the President, individually, the Executive Board shall automatically place the subject matter of the initiative or referendum on the agenda of the next Executive Board meeting for reconsideration. If the Executive Board votes to uphold the action taken which is the subject matter of the initiative or referendum, then the Executive Board shall refer to the matter to the membership at large by secret ballot, which shall be decided by a two-thirds (2/3) vote of the votes received, or may call a special membership meeting of the Local Union within thirty (30) days of the presentation of the petition. The call announcing the meeting shall state clearly and fairly the matters and issues raised by the initiative. No other business may be raised at such meeting.

### C. Special Membership Meeting and Voting Process

The special membership meeting may itself decide the issue(s) raised by the initiative by a two-thirds (2/3) vote of those voting, or may, by a two-thirds (2/3) vote, refer the issue(s) to mail referendum, which shall be decided by a two-thirds (2/3) vote of the votes received.

### D. Decision Followed By Officers and Committees and Time Bar

After the issue(s) raised in the initiative are decided, all Officers and committees shall be guided thereby and shall administer the affairs of the Local Union accordingly. No issue dealt with through this process shall be subject again to initiative or referendum for at least a twelve (12) month period.

### E. Title, Specificity and Signatures Dated and Timely

All initiative and referendum petitions must be submitted on a form, titled "Initiative and Referendum", clearly identifying the petitioner(s) (the parties behind or originating the petition)

clearly stating the decision of the Executive Board or the issue that is involved and must be dated. No petition more than ninety (90) days old at the time of submission shall be considered valid.

**F. Executive Board Reconsiders – Rescinds, Revises or Reaffirms**

In the event the Executive Board reconsiders and rescinds or revises its prior action, pursuant to Paragraph (B) of this Section, the action of the Executive Board up to the date of its reconsideration shall be considered as valid action of the Local Union. If the Executive Board, upon reconsideration, reaffirms its original action, then the decision of the Executive Board shall be final subject to the procedures of this Article.

## ARTICLE 21

## TRIALS AND APPEALS

In order to ensure members' protection from the filing of frivolous charges, the following procedures shall apply:

### Section 1. Governed By Constitution and Bylaws of The International Union and The Local Union

All charges and the basis for charges, and trials, of members and Officers of this Local Union, and in the event disciplinary action is taken against the accused, an appeal may be made in accordance with and, shall follow and be governed by the procedures and provisions as set forth in the Constitution and Bylaws of the Service
Employees International Union and in the Constitution and Bylaws of this Local Union.

### Section 2. Obligation To Exhaust Remedies

Subject to the provisions of applicable statues, every member or Officer of this Local Union against whom charges have been preferred and disciplinary action taken as a result thereof, or who has a grievance, charge, claim or dispute against the Local Union, a member or any Officer, or who claims to be aggrieved as a result of adverse rulings or decisions rendered, agrees, as a condition of membership or affiliation, to exhaust all remedies provided for in the Constitution and Bylaws of the International Union and this Local Union, and further agrees not to file or prosecute any action in any court, tribunal or any agency until all those remedies have been exhausted. In recognition of the serious nature associated with the filling of a charge, before a trial and appeal (hearing) will be held, the filing member or members must first have an informal meeting with the member or members against whom the charges are brought and the President and/or a Trustee in an attempt to reach a possible solution. This meeting must be held within thirty (30) calendar days of the request of the charging member. After this meeting, if any resolution is not satisfactory to the charging member, then he/she may proceed to bring forth charges in accordance with this Article.

### Section 3. Bases of Charges For Trials

The Local Union, its Officers and members may be charged with:

1) Violation of any specific provision of this Constitution and Bylaws or the Constitution and Bylaws of the International Union;
2) Violation of an oath of office;
3) Gross disloyalty or conduct unbecoming a member;
4) If an Officer, gross inefficiency which might hinder and impair the interests of the Local Union or the International Union, or failure to perform the duties of the office;
5) Financial malpractice;
6) Engaging in corrupt or unethical practices or racketeering;
7) Advocating or engaging in dual unionism or secession;
8) Violation of democratically and lawfully established rules, regulations, policies or practices of the Local Union or the International Union;
9) The wrongful taking or retaining of any money, books, papers or any other property belonging to the International Union or Local Union; or the wrongful destruction, mutilation or erasure of any books, records, bills, receipts, vouchers, or other property of the International Union or the Local Union;
10) Working as a strikebreaker or violating wage or work standards established by the International Union or the Local Union;
11) The bringing of false charges against a member or Officer without good faith or with malicious intent. Charges must be specific and in writing.

## Section 4. Filing Charges

### A. Filing and Service of Charges

Charges against any member or Officer of this Local Union shall be filed in duplicate with the Secretary of this Local Union, who shall serve a copy thereof on the accused either personally or by registered or certified mail, directed to the last known address of the accused, at least ten (10) calendar days before the hearing (trial) upon the charges.

### B. Specificity Requirement

The charges must be in writing and specify the events or acts which the charging party believes constitute a basis for charges, the date, time and place of occurrence, and must state which subsection(s) of Section 3 of this Article the charging party believes has been violated. If the charges are not specific, the Trial Body (the Executive Board) may dismiss the charges either before or at the hearing, but the charging party shall have the right to re-file more detailed charges which comply with this Section.

### C. Time Limitations On Filing

No charges may be filed more than six (6) months after the charging party learned, or could have reasonably learned, of the act or acts which are the basis of the charges.

## Section 5. Trial Procedure

### A. Trial Body

The Executive Board of this Local Union shall act as the Trial Body.

### B. If More Than One-Half of Executive Board Charged

In the event more than one-half of the Executive Board members are charged with the same or substantially similar charge(s) that result in the same trial, the remainder of the Executive Board may act as the Trial Body or may appoint a disinterested third party to act as the Trial Body (see Section 6 of this Article – Conduct Of Trials).

### C. Rights of Accused

The accused may appear in person and with witnesses to answer the charges against him/her and shall be afforded a full and fair hearing. The accused may select a member of the Local Union, or an attorney, to represent him/her in the presentation of a defense.

### D. Trial Timeline

The trial shall take place and be placed on the agenda at the next regularly scheduled Executive Board meeting, if all other time limits of this Article are met. In any event, the trial shall take place within thirty (30) calendar days of the filing of the charges.

### E. Notification Of Accused

The accused shall be notified by registered or certified mail of the trial date, time and location.

### F. Continuance

A continuance may be granted, for cause, at the discretion of the Trial Body (Executive Board).

### G. Charging Party Requirements

The charging party is required to appear in person to substantiate the charges and to produce such witnesses and/or documents to prove the charges to be true.

### H. Accused Right To Appear and Right To Assistance

The accused may appear in person with witnesses and documents to answer the charges against them and may be assisted by a member of this Local Union or an attorney at their defense.

### I. Evidence Presented At Trial

All evidence shall be presented at the trial.

### J. Notification Of All Parties Of Interest

All parties of interest shall be notified at least ten (10) calendar days before the trial is to be held, of the date, time and location of the trial.

### K. Class Action

If more than three (3) charging parties present the same or substantially similar charge against a member or Officer, then the Trial Body (Executive Board) may request that the charging

parties choose three (3) representatives from among the charging parties. The charging parties may then proceed on a class basis and may call witnesses as needed and as are relevant.

### L. Transcript

A transcript may be taken, however, the party that requests the transcript is responsible for payment of any and all related charges and shall furnish a copy to the other party and to the Trial Body (Executive Board). The Trial Body (Executive Board) may, on its own motion, have a transcript taken, and be responsible for expenses for the same and provide copies of the transcript to both parties.

### M. Closed Hearing

The accused has a right to a closed hearing, if desired.

### N. Written Decision

The Trial Body (Executive Board) shall issue a written decision within thirty (30) business days after the close of the trial, and shall forward a copy of the decision to the accused, the charging party and the International Union.

## Section 6. Conduct Of Trials

### A. If An Officer Files Charges Or Is Charged

In all trials provided for herein, if the member filing charges or being charged is a member of the Trial Body (Executive Board), he/she may appear and be heard in support of or in defense against the charges, but shall be ineligible to participate in the consideration of or the decision on such charges.

### B. If More Than One-Half Of Executive Board Charged

In the event more than one-half (fifty percent (50%) plus one) of the Executive Board members are charged with the same or substantially similar charges(s) brought against them that results in the same trial, then the remainder of the Executive Board may act as the Trial Body or may appoint a disinterested third party to act as the Trial Body.

### C. Defense In Writing or Lack Of Defense

If the accused is unable or unwilling to be present at any hearing (trial) provided for herein, a defense may be presented in writing. In default of appearance or defense, the Trial Body (Executive Board) shall proceed with the hearing regardless of the absence of the accused.

## Section 7. Authority Of Trial Body (Executive Board)

The Trial Body (Executive Board) shall have full power to call witnesses and request documents to aid in its hearing on a charge. All members of this Local Union are expected to cooperate with the Trial Body (Executive Board) as requested.

**Section 8. Trial Body (Executive Board) Decision Is Final Decision Of This Local Union**

The decision of the Trial Body (Executive Board) is the final decision of this Local Union as to any charge against any member or Officer of this Local Union.

**Section 9. Possibility Of Penalties**

The Trial Body (Executive Board), after requisite due process has been afforded, may impose such penalty as it deems appropriate and as the case requires. Any such penalty or action to be taken requires a two-thirds (2/3) vote of the Trial Body (Executive Board) with a quorum voting.

**Section 10. Judgment And Discipline**

If the charges, or any portion thereof, are sustained, then the Trial Body (Executive Board) shall render judgment and impose disciplinary action as provided for in this Constitution and Bylaws. Violation of any subsection(s) of Section 3 of this Article is punishable by, but not limited to, one or more of the following: reprimand, suspension or expulsion. If the charges are not sustained, the same shall be dismissed and the accused restored to full rights of membership or office in the Local Union.

**Section 11. Reporting Trial Results**

Unless a closed hearing (trial) is requested by the accused, the decision of and any action taken by the Trial Body (Executive Board) shall be reported to the next regular membership meeting of the Local Union. In the event a closed hearing is requested by the accused, the decision of or any action taken by the Trial Body (Executive Board) shall be reported to the next regular membership meeting of the Local Union in such a manner as to protect the confidentiality of the accused.

**Section 12. Appeals**

An appeal to the International Executive Board may be taken by either the accused or the member filing charges from any final decision of the Local Union with respect to such charges. Any such appeal shall be filed in writing with the International Secretary-Treasurer, by registered or certified mail, within fifteen (15) days after the decision. No specific form or formality shall be required, except that such appeal shall clearly set forth the decision being appealed and the grounds for appeal. During the pendency of any appeal, the decision appealed from shall remain in full force, unless it is stayed by the International Executive Board.

**Section 13. SEIU Member Bill Of Rights And Responsibilities**

The SEIU Member Bill of Rights and Responsibilities in the Local Union shall be enforced exclusively through the procedures provided in this Article and any decision rendered pursuant to the procedures provided for herein, including any appeals, shall be final and binding on all parties and not subject to judicial review.

# ARTICLE 22

# LITIGATION

Subject to applicable law, no member shall bring any action against the Local Union or any Officers staff, agents, appointees or members thereof, with respect to any matter arising out of the affairs of the Local Union unless he or she has exhausted all procedures available under this Constitution and Bylaws and the laws promulgated thereunder. Only the elected Officers of the Local Union are authorized to be its agents for service of process. General organizers, staff members, employees and members of the Local Union are not authorized to be agents of the Local Union for service of process under any circumstances.

# ARTICLE 23

# STRIKES

## Section 1. Public and Private Sector Distinctions

### A. Public Sector Employee Members:

There will be no strikes against any public employer, that public sector employee members work for, by any public sector employee member of this Local Union. Every public sector employee member of this Local Union, by virtue of his/her membership in this Local Union, agrees to the No Strike Pledge against his/her respective public sector employer. This is pursuant to and as under the Nevada Revised Statutes, Chapter 288, as amended, which makes it illegal for a public sector employee union to strike against a public sector employer with which it has public sector employee members governed under a Collective Bargaining Agreement or for a public sector employee Union member to strike against his/her public sector employer.

### B. Private Sector Employee Members

There may be a strike against any private sector employer, that private sector employee members work for, by any private sector employee member of this Local Union, provided that all the requirements of this Article are met. This is pursuant to and as under the National Labor Relations Act, as amended, which makes it legal for a private sector employee union to strike against a private sector employer with which it has private sector employee members governed under a Collective Bargaining Agreement or for a private sector employee union member to strike against his/her private sector employer.

## Section 2. Mandatory Approval By Membership (Prerequisite)

No strike shall be initiated by this Local Union against any private sector employer without the prior approval by a vote of the affected respective membership of that employer with which there exists the labor dispute. In order to have a strike, two-thirds (2/3) of all the affected respective membership of that employer where the labor dispute exists must vote to authorize the strike.

**Section 3. Strike Notification Requirement To The International Union**

In case of a dispute between this Local Union and an employer or employers, this Local Union shall immediately notify the International President of the International Union immediately. This Local Union shall not strike without previous notification to the International President, or where prior notice is not practicable, without notification as soon as possible after commencement of the strike, in which notice this Local Union will state that it has complied with all applicable notice requirements. If this Local Union fails to give such notice, the International President may withhold sanction for the strike called by the Local Union.

Initial notification to the International Union may be oral or by fax, and shall be followed by writer notification sent by the President.

## ARTICLE 24

## AFFILIATIONS

In accordance with the International Union's Constitution and Bylaws, this Local Union shall affiliate with the Central Labor body and the State Federation of Labor, where these exist, and with the appropriate Service Employees Joint Council, Conference, Division or Service Council, as determined by the International Union.

## ARTICLE 25

## DISSOLUTION

This Local Union cannot dissolve, secede or disaffiliate while there are seven (7) dissenting members. The International Union shall be notified, by the President, or his/her designee, by registered or certified mail of any meeting scheduled by this Local Union for the purpose of taking a vote on disaffiliating from the International Union at least 60 (sixty) days prior to the date of such scheduled meeting, and a representative of the International Union shall be afforded an opportunity to speak at such meeting. The International President shall direct whether the membership vote shall be conducted by secret ballot at a membership meeting and/or by mail referendum, and, if appropriate, a separate method by which dissenting Local Union members may assert their dissent. The vote shall be countedby an independent neutral party. In the event of secession, dissolution or disaffiliation, all properties, funds and assets, both real and personal, of this Local Union shall become the property of the International Union. Under no circumstances shall this Local Union distribute its funds, assets or properties individually among its membership.

## ARTICLE 26

## AMENDMENTS

**Section 1. Proposed Amendments**

Proposed amendments to this Constitution and Bylaws may be originated during the tri-annual Constitutional Convention (See Article 29) or may be originated by a two-thirds (2/3) vote of the Executive Board, or by a petition signed (name printed and signed, clearly legible in order to be verified) by at least fifteen percent (15%) of the membership at large in good standing. Signatures shall be on a form, dated and titled "Proposed Amendment(s)", clearly identifying the petitioner(s) (the parties behind or originating the petition) and clearly stating the proposed amendment and its intent. Signatures must be dated no more than ninety (90) days prior to submission to the Executive Board, at an Executive Board meeting, or to the President, individually.

### Section 2. Vote For Amendments At Membership Meeting

The Constitution and Bylaws of this Local Union may be amended by a two-thirds (2/3) vote of those voting at a regular or special membership meeting, provided notification to all members at large has been given at least fifteen (15) days prior to the membership meeting at which action is to be taken. Such meeting requires a quorum of five percent (5%) of the membership at large.

### Section 3. Recording Amendments And Background/Informational Additions And/Or Changes

All amendments to this Constitution and Bylaws shall be found in Attachment 1 for five (5) years following its update, unless the Executive Board determines otherwise. Any additions and/or changes to information that is for background, historical or informational purpose shall be updated in the Constitution and Bylaws following a majority vote of the Executive Board and reasonable efforts made to publicize such to the members (for example, updating "Our History…Our Future" or adding to the current bargaining unit list, etc.)

### Section 4. Mail Ballots

The Executive Board may choose to refer proposals for amendments to a mail ballot. A two-thirds (2/3) vote of at least five percent (5%) of the membership at large in good standing is required to amend this Constitution and Bylaws. A mail ballot shall include the opportunity for written arguments for and against the proposed amendments, and shall be governed by written rules developed by the Election Committee and approved by the Executive Board.

## ARTICLE 27

## INTERNATIONAL CONSTITUTION AND BYLAWS

The Constitution and Bylaws of this Local Union shall at all times be subordinate to the International Constitution and Bylaws, as amended. If any conflict shall arise between the Constitution and Bylaws of this Local Union or any amendments thereto, and the International Constitution and Bylaws, or any amendments thereto, the provisions of the International Constitution and Bylaws shall control, except in the case of specific exemptions provided in the affiliation agreement between the parties.

## ARTICLE 28

## SAVINGS PROVISION

If any provision of this Constitution and Bylaws shall be modified or declared invalid or inoperative by any competent authority of the executive, judicial or administrative branch of a federal, state or local government, the Executive Board shall have the authority to suspend the operation of such provision during the period of its invalidity or modification and to substitute in its place and stead a provision which will meet the objections to its validity and which will be in accord with the intent and purposes of the invalid or modified provision. If any Article or Section of this Constitution and Bylaws should be modified or held invalid by operation of law or any tribunal of competent jurisdiction, the remainder of this Constitution and Bylaws or the application of such Article or Section to persons or circumstances, other than those as to which it has been held invalid or modified, shall not be affected thereby. If any provision of this Constitution and Bylaws or any application of this Constitution and Bylaws to any person or persons covered herein be found contrary to federal law or Nevada Revised Statutes, then this provision or application shall be deemed invalid except to the extent permitted by law, but all other provisions and applications thereof shall continue in full force and effect.

## ARTICLE 29

## CONSTITUTIONAL CONVENTIONS

**Section 1: Purpose**

The Local Union will hold a Constitutional Convention every three years in order to keep the Constitution and By Laws current with the needs of the membership of the Local Union.

**Section 2: Schedule**

The Constitutional Convention will be held in September of the year following the general election of Local Union Officers and Stewards. Upon a majority vote of the Executive Board additional Constitutional Conventions may be scheduled in order to make emergency updates to the Constitution and By Laws of the Local Union.

**Section 3: Committees**

1) Three committees will be selected by the President to plan and organize the Constitutional Convention. The committees are 1) Rules Committee, 2) Credentials Committee and 3) Amendment Committee. Each committee will consist of equal numbers of public and private sector members in good standing with the Rules Committee having four (4) members, the Credentials Committee having (4) members and the Amendment Committee having eight (8) members. Members serving on these committee must be members in standing (for the purpose of receipt of dues) for three (3) months.

2) The responsibilities of the Rules Committee are:

1. To be familiar with Roberts Rules of Order as revised.
2. To insure the Constitutional Convention follows the Roberts Rules of Order as revised.

3. To answer procedural questions before, during or after the Constitutional Convention as to the meeting process.

3) The responsibilities of the Credentials Committee are:

1. To insure all delegates are members in good standing (for the purpose of receipt of dues) for three (3) months.
2. To notify delegates of eligibility status at least two (2) weeks prior to the Constitional Convention.
3. To notify the Executive Board that one or more replacement delegates must be appointed if one or more delegates are found to be ineligible.

4) The responsibilities of the Amendment Committee are:

1. Prepare initial draft amendments to the Constitution and By Laws for the convention delegates to review.

2. Track changes to the draft amendments to the Constitution and By Laws.

3. Prepare the final draft amendments to the Constitution and By Laws.

4. Update the Constitution and By Laws with adopted amendments upon completion of the Constitutional Convention.

**Section 4: Selection of Delegates to the Constitutional Convention:**

1). The At Large Officers of the Local Union President, Executive Vice President, Secretary, Treasurer, and three Trustees by virtue of their office are delegates to the Constitutional Convention. Each of these officers selects one additional delegate who is a member in good standing (for the purposes of receipt of dues) for three (3) months for the Constitutional Convention from the general membership of the union.

2) Each Vice President and Chief Steward member of the Executive Board may appoint one delegate to the Constitutional Convention. These officers may appoint themself or a member in good standing (for the purposes of receipt of dues) for three (3) months from the bargaining unit/chapter that officer represents as a a delegate to the Constitutional Convention.

**Section 5: Agenda**

The Agenda will be determined by the committees prior to Constitutional Convention.

SEIU
NEVADA

# SEIU MEMBER BILL OF RIGHTS AND RESPONSIBILITIES IN THE LOCAL UNION

## Section 1. Bill Of Rights

The right to have opinions heard and respected, to be informed of Local Union activity, to be educated in Union values and Union skills.

The right to choose the leaders of the Local Union in a fair and democratic manner.

The right to a full accounting of Local Union dues and the proper stewardship over Local Union resources.

The right to participate in the Local Union's bargaining efforts and to approve Local Union contracts.

The right to have members' concerns resolved in a fair and expeditious manner.

Subject to reasonable application, no provision of this Constitution and Bylaws, rule of parliamentary procedure or action by the Local Union or its Officers, shall be administered in such a way as to deprive individual members of the following rights:

The right to nominate candidates or vote in elections or referendums of the Local Union;

The right to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings;

The right to meet and assemble freely with other members and to express views, arguments or opinions; and to express at meetings views upon candidates in an election of the Local Union or upon any business properly before the meeting; and

The right to information concerning the conduct of Local Union business.

## Section 2. Bill Of Responsibilities

The responsibility to help build a strong and more effective labor movement, to support the organizing of unorganized workers, to help build a political voice for working people, and to stand up for all workers.

The responsibility to be informed about the internal governance of the Local Union and to participate in the conduct of the Local Union's affairs.

The responsibility to contribute to the support of the Local Union.

The responsibility to treat all workers and members fairly.

The responsibility to offer constructive criticism of the Local Union.

Every member by virtue of membership in this Local Union is obligated to abide by this Constitution and Bylaws and the International Constitution and Bylaws with respect to rights, duties, privileges and

immunities covered by them. Each member shall faithfully carry out such duties and obligations and shall not interfere with the rights of fellow members.

Every member by virtue of membership in this Local Union authorizes this Local Union to act as the exclusive bargaining agent and representative with full and exclusive power to execute agreements with the employer governing terms and conditions of employment and to set for the member and have final authority in presenting, processing and adjusting any grievance, difficulty or dispute arising under any Collective Bargaining Agreement or out of employment with such employer, in such manner as the Local Union or its Officers or agents deem to be in the best interest of the Local Union. The Local Union and its Officers, Business Representatives and agents may decline to process any such grievance, complaint, difficulty or dispute, if in their reasonable judgment such grievance, complaint or dispute lacks merit.

All claims of contract violation must be reported in writing or orally to the Local Union within the time limits as set forth within the Collective Bargaining Agreement, from the date of the violation or from the time the member knew or should have known of the violation, whichever is later.

No member shall Interfere with the elected Officers or agents or Business Representatives of this Local Union in the performance of their duties and each member shall, when requested, render such assistance in support in the performance of such duties as may be required of them, provided that this does not interfere with their individual rights as members. Each member and Officer shall adhere to terms and conditions of the relevant and respective Collective Bargaining Agreements and shall refrain from any conduct that would interfere with the performance by this Local Union of its legal or contractual obligations.

No member shall espouse a disaffiliation in the course of any meeting, nor shall any member slander or libel the Local Union, its members or its Officers or agents or employees, or be a party to any activity to secure the disestablishment of the Local Union as the Collective bargaining representative for any employee.

No member shall be permitted at any Local Union meeting or assembly to engage in any of the conduct hereinbefore described.

Every member shall follow the rules of order at all meetings of the Local Union.

# SEIU MEMBER BILL OF RIGHTS

# AND

# RESPONSIBILITIES ON THE JOB

## Section 1. Bill of Rights

The right to have work that is worthwhile to society, personally satisfying, and which provides a decent standard of living, a healthy and safe workplace, and the maximum possible employment security.

The right to have meaningful and protected voice in the design and execution of one's work and in the long-term planning by one's employer as well as the training necessary to take part in such planning.

The right to fair and equitable treatment on the job.

The right to share fairly in the gains of the employer.

The right to participate fully in the work of the Local Union on the scope, content and structure of one's job.

## Section 2. Bill Of Responsibilities

The responsibility to participate in the Local Union's efforts to establish and uphold collective principles and values for effective workplace participation.

The responsibility to recognize and respect the interests of all Local Union members when making decisions about Local Union goals.

The responsibility to be informed about the industry in which one works and about the forces that will affect the condition of workers in the industry.

The responsibility to participate fully in the Local Union's efforts to expand the voice of workers on the job.

The responsibility to give fully and fairly of one's talents and efforts on the job and to recognize the legitimate goals of one's employer.

## POLICIES AND PROCEDURES

This Local Union has policies and procedures on a number of issues that have been and will be adopted pursuant to votes by the Executive Board. All members are encouraged to request and receive a copy of the current policies and procedures, with the understanding that the policies and procedures may be amended or changed from time to time, pursuant to votes by the Executive Board, and as such, the policies and procedures will need to be updated and changed.

**ATTACHMENT 1**

## CHANGES IN APRIL 2010 AMENDMENT

The 22 pages containing changes are adjustments changing Executive Director to President and are omissions relating to the merging the Executive Director's duties with the President's duties:

INDEX


| | |
|---|---|
| Page 9 | Page 11 |
| Page 13 | Page 18 |
| Page 19 | Page 31 |
| Page 34 | Page 35 |
| Page 37 | Page 38 |
| Page 40 | Page 41 |
| Page 42 | Page 43 |
| Page 44 | Page 45 |
| Page 46 | Page 47 |
| Page 51 | Page 54 |
| Page 59 | Page 60 |


On Page 49 – Article 17, Section N: add a second paragraph:

For all members both public and private, the Union will make every effort to secure language in all collective bargaining agreements eliminating employer decision making pertaining to the member's payment of dues.

# ATTACHMENT 2

## CHANGES IN JANUARY 2012 AMENDMENT

The following 12 pages containing changes are clean up of obsolete changes to the Constitution and Bylaws such as changing AFL-CIO to CTW and current listing of bargaining units and chapters.

Article 1, page 3
Article 4, page 5
Article 6. page 7
Article 7, page 12, 14
Article 8, pages 19, 20
Article 10, pages 24, 25
Article 11, pages 27
Article 12, pages 30, 31

Article 13 Elections has been completely revised.
A new Article 29 Constitutional Conventions has been added.

The following articles have been changed as indicated:

Summary of Contents – added Article 29, Constitutional Conventions
Article 7, page 10 – added president presides over the Constitutional Convention
Article 7, page 4 – changes the Chief Steward reports to the Vice President to the Chief Steward keeps the Vice President informed of their actions.
Article 9, page 22 – Clarifies term of office for stewards
Article 17, pages 50, 51 Clarifies fees charged for representation of non-member public sector employees.
Article 17, page 50 Ends the drop month in October. States process for member notifying the union of a membership drop.
Article 19, page 53 – changes recalled officers cannot run for the same office for two years to recalled officers cannot run for any union office for two years.
Article 26, page 61 includes a reference to Article 29 and Constitutional Conventions.

Changes made by SEIU International on review of January 2012 amendments:
Article 5, Section 2 – additions to anti-discrimination clause
Article 7, Section 13 – changes to conform with SEIU International Constitution and Bylaws; elimination of the SEIU Western Conference Convention; and change in the seniority determination for Trustees attending the SEIU International Convention as delegates.
Article 9, Section 4B – correct omission of end of term of office date for Stewards.
Article 25 – revised to comply with SEIU International Constitution and Bylaw.

# SEIU Nevada Local 1107

# Nevada Service Employees Union

**SEIU, Local 1107, CTW**
3785 E. Sunset Road., Suite 1
Las Vegas, NV 89120
Phone (702) 386-8849
Fax (702) 386-4883

# EXHIBIT 6

## (Service Employees International Union Constitution)

# SEIU 2016 CONSTITUTION AND BYLAWS

AS ADOPTED at the SEIU 2016 Convention




SEIU
Stronger Together

Service Employees International Union, CTW, CLC

# CONTENTS

| Article | | Page |
|---|---|---|
| | Preamble | 5 |
| | SEIU Mission Statement | 5 |
| I | Name | 7 |
| II | Objects and Purposes | 7 |
| III | Jurisdiction and Membership | 8 |
| IV | Convention—Representation Therein | 10 |
| V | Election of Officers | 13 |
| VI | Officers | 14 |
| VII | Filling Vacancies | 16 |
| VIII | International President—Duties and Powers | 17 |
| IX | Duties of the International Secretary-Treasurer | 21 |
| X | Duties of the Executive Vice Presidents | 22 |
| XI | Duties of the International Executive Board | 22 |
| XII | Strikes and Lockouts | 25 |
| XIII | Revenue | 26 |
| XIV | Issuance of Charters | 29 |
| XV | Duties of Local Unions | 30 |
| XVI | Members' Interests and Transfers | 36 |
| XVII | Trials and Appeals | 36 |
| XVIII | Affiliations with Intermediate Bodies | 40 |
| XIX | Payments in Connection with Deaths of Members | 41 |
| XX | Pension Fund for Officers and Employees of Local Unions and Affiliated Bodies | 42 |
| XXI | Local Enforcement of International Constitution | 45 |
| XXII | Nonliability of International Union | 45 |
| XXIII | Litigation | 45 |
| XXIV | Amendments | 46 |
| XXV | Dissolution | 46 |
| XXVI | Savings Provision | 47 |
| APPENDIX A: | SEIU Member Bill of Rights and Responsibilities in the Union | 48 |
| APPENDIX B: | SEIU Member Bill of Rights and Responsibilities on the Job | 48 |
| APPENDIX C: | SEIU Code of Ethics and Conflict of Interest Policy | 49 |
| APPENDIX D: | Manual of Common Procedure | 61 |

# CONSTITUTION AND BYLAWS

## PREAMBLE

As almost every improvement in the condition of working people has been accomplished by the efforts of organized labor and as the welfare of wage, salary, and professional workers can best be protected and advanced by their united action in one International Union, we have organized the Service Employees International Union and have adopted the following Constitution:

## SEIU MISSION STATEMENT

We are the Service Employees International Union, an organization of more than 2.1 million members united by the belief in the dignity and worth of workers and the services they provide and dedicated to improving the lives of workers and their families and creating a more just and humane society.

We are public workers, health care workers, building service workers, office workers, professional workers, and industrial and allied workers.

We seek a stronger union to build power for ourselves and to protect the people we serve.

As a leading advocacy organization for working people, it is our responsibility to pursue justice for all. We believe in and will fight for a just society where all workers are valued and people respected, where all families and communities thrive, and where we leave a better and more equal world for generations to come.

People of every race, ethnicity, religion, age, physical ability, gender, gender expression, and sexual orientation, we are the standard-bearers in the struggle for social and economic justice begun nearly a century ago by janitors who dared to dream beyond their daily hardships and to organize for economic security, dignity, and respect.

Our vision is of a union and a society:

Where all workers and their families live and work in dignity.

Where work is fulfilling and fairly rewarded.

Where workers have a meaningful voice in decisions that affect them and have the opportunity to develop their talents and skills.

Where the collective voice and power of workers is realized in democratic, equitable and progressive unions.

Where union solidarity stands firm against the forces of discrimination and hate, against structural racism, and against the unfair employment practices of exploitative employers.

Where working people can live in safe and healthy communities.

Where government plays an active role in improving the lives of working people.

To achieve this vision:

We must organize unorganized service workers, extending to them the gains of unionism, while securing control over our industries and labor markets.

We must build political power to ensure that workers' voices are heard at every level of government to create economic opportunity and foster social justice.

We must provide meaningful paths for member involvement and participation in strong, democratic unions.

We must develop highly trained, motivated and inclusive leaders at every level of the union who reflect the diversity of the membership and the communities where we organize.

We must bargain contracts that improve wages and working conditions, expand the role of workers in workplace decision-making, build a stronger union, and build stronger and healthier communities.

We must build coalitions and act in solidarity with other organizations who share our concern for social, environmental, racial, and economic justice.

We must engage in direct action that demonstrates our power and our determination to win.

We must hold corporations and capital accountable for the common good.

We must commit to dismantling structural racism which holds us back from achieving the unity and strength we need.

We must pave the way for immigrant justice.

We must always be open to change that enables us to adapt and be more effective in an ever changing world.

To accomplish these goals we must be unified—inspired by a set of beliefs and principles that transcends our social and occupational diversity and guides our work.

We believe we can accomplish little as separate individuals, but that together we have the power to create a just society.

We believe unions are the means by which working people build power—by which ordinary people accomplish extraordinary things.

We believe our strength comes from our unity, and that we must not be divided by forces of discrimination based on gender, race, ethnicity, religion, age, physical ability, sexual orientation, or immigration status.

We believe our power and effectiveness depend upon the active participation and commitment of our members, the development of inclusive SEIU leaders, and solidarity with each other and our allies.

We believe we have a special mission to bring economic and social justice to those most exploited in our community—especially to women

and workers of color —and to dismantle structural racism against Black Americans.

We believe our future cannot be separated from that of workers in other parts of the world who struggle for economic justice, a decent life for their families, peace, dignity and democracy.

We believe unions are necessary for a democratic society to prevail, and that unions must participate in the political life of our society.

We believe we have a moral responsibility to leave the world a more just, healthy and safe place for our children—and everyone's children.

## Article I
## NAME

*Name and organization*

This organization shall be known as the Service Employees International Union, affiliated with Change to Win and the Canadian Labour Congress, and shall consist of an unlimited number of Local Unions chartered by it, and the membership thereof, and such affiliated bodies as may be established from time to time. In order to add the strength of this great union to the efforts of its members at every level of the Union, the name of every Local Union and affiliated body shall begin with "SEIU."

## Article II
## OBJECTS AND PURPOSES

*Goals of the union*

The objects and purposes of this International Union shall be to benefit its members and improve their conditions by every means, including but not limited to:

*Economic advantages*

**A.** By securing economic advantages, including better wages, hours and working conditions, through organization, collective bargaining, legislative and political action, and the utilization of other lawful means;

*Organizing*

**B.** By organizing and uniting in this International Union all working men and women eligible for membership herein;

*Wide range of activities*

**C.** By engaging in all such civic, social, political, legal, economic, cultural, educational, charitable, and other activities, whether on local, national, or international levels, as will advance this International Union's standing in the community and in the labor movement and further the interests of this organization and its membership, directly or indirectly;

*Collective bargaining*

**D.** By advancing and strengthening the rights of working men and women to bargain collectively, and introducing innovative ways to carry out this work;

*Benefits*

**E.** By providing benefits and advantages to individual union members, officers, and employees through education, training, access to new technology, member resource centers, a 21ST century communications system, pensions, and death and welfare benefits;

*Cooperation among Local Unions*

**F.** By helping Local Unions to share experiences, pool resources, learn from each other's best practices, and be accountable to each other;

*Cooperation with other organizations*

**G.** By cooperating with and assisting, by moral, monetary or other means, other labor organizations, whether or not affiliated with this International Union, or any other groups or organizations, having objectives which are in any way related or similar to those of this International Union, or which are of a nature beneficial to this International Union or to its members, directly or indirectly;

*Safeguarding the union*

**H.** By strengthening and safeguarding this International Union by every lawful means so that it may carry out its purposes, objects and obligations;

*Financial goals*

**I.** By utilizing, in every lawful way, including but not limited to every kind of use, expenditure and investment, the property and funds of this International Union, in order to achieve its purposes and objects and perform its obligations, and for such other purposes directly or indirectly furthering the interests of this International Union and its members;

*Affiliations*

**J.** By affiliating workers in independent organizations through agreements which recognize the long history, unique needs and traditions, and successes of such organizations, and making every effort possible to provide such organizations the same types of services which have benefited our existing members;

*Empowering members*

**K.** By empowering SEIU members to lead and participate in all aspects of the Union's program to secure a better future for all, including organizing, bargaining, political work, direct action, and community partnerships.

*New forms of organization*

**L.** By creating new forms of worker organization to build collective economic and political power for working people; and

*Movement for justice*

**M.** By building a wider movement for justice.

## Article III
## JURISDICTION AND MEMBERSHIP

*Jurisdiction*

**Section 1.** The International Union shall be composed of and have jurisdiction over its affiliated bodies and all Local Unions composed of working men and women who are employed or engaged in any phase of private, nonprofit or public employment, including without limitation employees of colleges, schools or universities, public employers (including cities, counties, states, provinces, territories, commonwealths, governmental districts, federal agencies, and multiple agencies or authorities and any subdivisions thereof), institutions or agencies, hospitals, nursing homes or other health facilities, and private and public utilities, department stores, industrial plants, law enforcement agencies, insurance companies and all employees thereof, including clericals, technicians, professionals, paraprofessionals and paramedicals, or those who are engaged in maintenance, sales, servicing, protection or operation of all types of institutions, buildings or structures, commercial,

mercantile or other establishments, edifices and grounds, and their environs, whether private, public or nonprofit, and all categories of employees therein and thereabout, including places of assembly, amusement, recreation, entertainment, and the presentation of sporting events.

*Power to construe jurisdiction*

The International President is empowered to construe the jurisdiction above defined to embrace all classifications of workers within any establishment anywhere in the world.

*Authority of international union*

**Section 2(a)**. The International Union shall have jurisdiction over the Local Unions and their members and over all affiliated bodies.

*"Affiliated bodies" defined*

**(b).** The term "affiliated bodies" shall include State and Provincial Councils, Joint Councils, Service Councils, area, regional, or industry Conferences and Divisions, organizing committees, and provisional locals, and such other bodies on the local, national or international level as the International Union shall from time to time establish, but shall not include Local Unions. The term "Local Union" shall not include any other affiliated body.

*Eligibility for membership*

**Section 3(a).** Any person employed in any employment over which this International Union claims or exercises jurisdiction shall be eligible to be considered for membership in the International Union, a Local Union, organizing committee, provisional local, or other authorized body of this organization. A Local Union may adopt additional membership requirements in the Local Union's Constitution and Bylaws. Jurisdiction may also be construed as including service within a Local Union or affiliated body of the International Union but each Local Union shall have the option to determine whether a person with such service may be eligible for membership in the Local Union. The International Executive Board may set eligibility requirements and other criteria (including rates of dues) for associate members, retired members (who do not have a Local Union retired member program), and other special categories of membership in the International or in affiliated bodies established in accordance with this Constitution.

*Self-employed members*

**(b).** Self-employed individuals doing work within the jurisdiction of this International Union may be eligible for membership in Local Unions, subject to any additional requirements provided for in a Local Union's Constitution and Bylaws. The International President shall have the right to make all necessary rules and regulations respecting self-employed workers, under the jurisdiction of this International Union.

*Membership categories authorized*

**(c).** With the approval of the International Union, Local Unions may establish different categories of membership and rates of dues for persons represented and not represented by the Local Union for collective bargaining purposes including, but not limited to, life members, retired members, and associate members.

*Membership disputes*

**(d).** Any dispute respecting membership or eligibility for membership shall be decided by the International President, with the Local Union or the applicant having a right to appeal his or her decision to the

International Executive Board, in writing, within 10 days after notice of said decision is received.

*Discrimination forbidden*

**Section 4.** No member shall discriminate or advocate discrimination against any other member on the basis of race, creed, color, religion, sex, gender expression, sexual orientation, national origin, citizenship status, marital status, ancestry, age, or disability.

## Article IV
## CONVENTION—REPRESENTATION THEREIN

*International conventions*

**Section 1.** The Convention of this International Union shall meet every four years and shall convene at such time and place as the International Executive Board may determine upon the recommendation of the International President.

*Special conventions*

**Section 2.** Special Conventions may be called upon order of the International Executive Board to convene at such time and place as the Board may determine, and any and all business, including appeals from suspensions and decisions of the International Executive Board, may come before such Special Convention unless specifically limited by the call. Notice of such call shall be given to each Local Union at least 60 days prior to the date of the Special Convention along with the number of delegates to which said Local Union is entitled. All other provisions of this Article shall control all Special Conventions.

*Eligibility of delegates*

**Section 3.** The International Convention shall consist of duly elected delegates from their Local Unions, and none but delegates duly elected in accordance with all applicable statutes and the provisions of this Constitution and Bylaws shall be eligible to represent any Local Union at the International Convention or be entitled to vote except that all full-time International Officers shall by virtue of their office be delegates with a voice but no vote to any Convention which is held during their term of office. All officers of a Local Union elected in conformity with all applicable statutes shall by virtue of such election be considered to be eligible delegates to any International Convention which may take place during their term of office. 

*Additional delegates*

If at the time of the receipt of the Convention Call it shall appear that such number of elected officers is less than the number of delegates to which the Local Union will be entitled at an International Convention, then arrangements may be made at the option of the Local Executive Board for nomination and secret ballot election, if required, of an additional number of eligible members as Convention delegates. Nominees for such position, if unopposed, shall be deemed elected without necessity for further procedures. The Local Union must designate in its Constitution and Bylaws the order in which the officers would be designated as delegates and alternates if less than all the officers are entitled to go to the Convention as delegates, provided that the chief executive officer of the Local Union shall, if otherwise eligible, be deemed entitled even in the event the Local Union fails to so designate. Any Local Union may by provision in its Local Constitution and Bylaws dispense with the foregoing provision that officers of the

Local Union be ex officio delegates to the International Convention and may provide for nomination and, if required, secret ballot election of such delegates. Further, subject to applicable statutes, the International Executive Board may establish representation rules for delegates from groups of associate members or other special categories of membership or locals, which shall be set forth in the notice of Convention Call for the International or Special Convention. In no event shall the basis of representation for such groups be greater in numbers than the formula set forth in Section 4 below. Any voting rights extended to such delegates must comply with applicable law.

*Convention representation and voting rights*

**Section 4.** The basis of representation shall be one delegate for 500 members or less, and one additional delegate for every additional 500 members or major fraction thereof up to 5,000 members, and then one additional delegate for every additional 1,000 members or major fraction thereof. A determination to be represented by less than a full complement of delegates shall not affect the Local Union's eligible votes. The Executive Board of a Local Union shall determine the number of delegates which shall represent it at the Convention. For the purpose of voting, the computation of membership for a Local Union shall not include life members, retired members paying less than the full dues required for working members of their Local Union, associate members, or agency fee payers.

*Exclusions*

*Retired member delegates*

**Section 5.** In addition to the representation in Section 4, each Local Union with a retired members group of more than 500 members shall be entitled to one retired member delegate who shall serve with a voice and a vote at the Convention. Only retired members who have been members in good standing for 60 days prior to the Convention as either members, retired members, or life members of the Local Union shall serve as a retired member delegate. The retired member delegate shall be selected by the procedures provided for in the Local Union's Constitution and Bylaws for selecting such a retired member delegate or by the Local Union's Executive Board where no procedures are provided for in the Local Union's Constitution and Bylaws. The retired member delegate shall not be permitted to vote on dues or to nominate or vote for officers at the Convention.

*No dual representation*

**Section 6.** No delegate shall be permitted to represent more than one Local Union.

*One-month requirement*

**Section 7(a).** No Local Union that has not been chartered, affiliated, and in good standing for at least one month prior to the opening of the Convention shall be entitled to representation in the Convention, and each Local Union to be entitled to said representation must have paid into the International treasury at least one month's per capita tax prior to the opening of the Convention.

*Good standing requirement*

**(b).** For a Local Union to be entitled to representation at the Convention, all moneys (i) due the International Union, whether by per capita tax or otherwise, (ii) due to any affiliated bodies, whether by per

capita tax or otherwise, as determined or waived by the International Executive Board and (iii) all moneys due for any pension or welfare funds provided for in this Constitution, must be paid at least 15 days prior to the opening of the Convention.

*Convention call*

**Section 8.** The International Secretary-Treasurer shall issue a Call for the Convention and notify each Local Union at least 100 days prior to the date of the Convention of the number of delegates to which said Local Union is entitled, and shall furnish to the Local Union a certification of delegation form containing the names of registered delegates to the Local Union and spaces for the signatures of the President and Secretary of the Local Union.

*Credentials*

*Forwarding of credentials*

**Section 9.** The certification of delegation form containing the names of delegates to the International Convention and bearing the signatures of the President and Secretary of the Local Union must be in the hands of the International Secretary-Treasurer at least 30 days prior to the opening of the Convention. A delegate who is eligible to attend the Convention shall not be disqualified because of the failure of a Local Union officer to forward the delegate's name on a certification of delegation form.

*Alternate delegates*

**Section 10.** In addition to the delegates selected in the manner provided in Section 3 of this Article, a Local Union may provide for selection of such number of alternates as it may determine are reasonably required to serve if regularly elected delegates are unable to do so; such alternates shall be selected or elected in the manner provided in Section 3 of this Article. Each delegate or alternate must be a member of the Local Union employed in the jurisdiction of the Local Union. This requirement, however, shall not be construed to bar any member who is an officer or employee of the Local Union or of the International Union, or any affiliate thereof, or who is elected to public office or to a position with an organization with which this International Union is affiliated.

*Membership requirement*

*Exceptions*

*Protests of delegate elections*

**Section 11.** Any member who wishes to protest the election of any delegate or the right of any Local Union officer to serve as a delegate pursuant to Article IV, Section 3, must file a written protest with the International Secretary-Treasurer within 15 days after such election or after the decision by a Local Union that no election is required pursuant to Article IV, Section 3. Any such protest shall be referred to the Credentials Committee, in care of the International Secretary-Treasurer. The Credentials Committee may waive the time limit for filing protests upon a showing that the protesting member did not know of the basis for his or her protest within sufficient time to file a timely protest and he or she filed a protest immediately upon discovery of the basis for his or her protest. The Credentials Committee shall consider all timely protests and shall include its decision on all protests in its report to the Convention. It may, in its discretion, hold a hearing on any protest upon reasonable notice to all affected parties.

*Computation of voting strength*

**Section 12.** The number of votes which each Local Union shall be entitled to vote in the Convention shall be determined by averaging the

12 most recent regular monthly per capita tax payments for members which are received by the International Union on or before December 31 of the year immediately preceding the calendar year in which the Convention is held. In the case of a newly chartered local without a twelve month payment period before December 31, the number of votes shall be determined by averaging regular monthly per capita tax payments for members received by the International Union, up to a maximum of twelve months. The computation of voting strength shall not include associate members, life members, or agency fee payers. Where there are two or more delegates in attendance from one Local Union, the vote shall be divided equally between them. In the case of a newly chartered Local Union created as a result of a reorganization of members under Article XIV, the International Executive Board shall determine the computation of voting strength for the affected Local Unions in order that the members are included in the voting strength of only one Local Union.

*Committee on credentials*

**Section 13.** The International President shall, before each Convention, appoint from the delegates-elect a committee of at least seven to act as a committee on credentials. The International President and International Secretary-Treasurer shall be members of said committee. All credentials shall be referred to this committee. This committee shall submit its report in writing to the Convention.

*Convention resolutions*

**Section 14.** All Resolutions to be acted upon by the Convention proposed by a Local Union must be submitted in writing to the International Secretary-Treasurer at least 30 days prior to the Convention and unless so submitted may not be considered by the Convention except on unanimous consent of the delegates present. Resolutions may be presented to the Convention by the International Executive Board at any time during the Convention without requiring unanimous consent.

*Convention quorum*

**Section 15.** Delegates representing one-fourth of the votes entitled to be cast at the Convention shall constitute a quorum for the transaction of business.

*Interim rules*

**Section 16.** The rules and order of business governing the preceding Convention shall be enforced from the opening of any Convention of this International Union until new rules have been adopted by action of the Convention.

## Article V
## ELECTION OF OFFICERS

*Nomination and election of officers*

**Section 1.** All nominations for International Officers shall be made in open Convention and elections shall be by roll call where there is more than one candidate for any office. The roll call shall be conducted by voice and/or open written ballot, as set forth in the Rules of the Convention. Officers shall be elected by plurality vote.

*No nonmember support*

**Section 2.** No candidate (including a prospective candidate) for any International office or office in a Local Union or affiliated body or

supporter of a candidate may solicit or accept financial support or any other direct or indirect support of any kind from any nonmember of the International Union.

*Protests*

**Section 3.** Any member wishing to protest the election of any International Officer pertaining to candidate eligibility or the manner in which the election was conducted must lodge a protest in conformity with the requirements of the Rules of the Convention.

*Other election protests*

**Section 4.** Any member wishing to submit an election protest pertaining to any issue other than those governed by Section 11 of Article IV or Section 3 of this Article must file such protest within 15 days after the Convention. All such protests shall be filed with the International President. The International President shall endeavor to have a hearing held within 30 days of the filing of the protest, if the International President deems a hearing to be necessary, and shall attempt to render his or her decision within 30 days thereafter. Within 15 days after the final action of the International President, a petition for review may be filed with the International Executive Board. In the alternative, the International President may forward an election protest directly to the International Executive Board for decision.

## Article VI
## OFFICERS

*International Union officers*

*Retired member*

*Canadian officers*

**Section 1.** The officers of this International Union shall consist of an International President, an International Secretary-Treasurer, seven full-time Executive Vice Presidents, 25 Vice Presidents (at least two of whom shall be members of Canadian Local Unions), and 40 Executive Board Members (at least two of whom shall be members of Canadian Local Unions and one of whom shall be a Retired Member). The International President, the International Secretary-Treasurer, and the seven Executive Vice Presidents shall be elected at large by all delegates assembled at the International Convention. Two Canadian Vice Presidents and two Canadian Executive Board Members shall be elected on the following basis: a Vice President and Board Member shall be nominated and elected from all of the provinces other than the Province of Quebec. A Vice President and Board Member shall be nominated and elected from the Province of Quebec only, provided, however, that the Vice President from Quebec and the Executive Board Member from Quebec may not be members of the same Local Union. These Canadian Vice Presidents and Executive Board Members shall be elected by the Canadian Council at its Convention composed of delegates elected in accordance with this Constitution and applicable law and which shall be held within 90 days prior to the International Convention at which the International Union officers are elected. All other Vice Presidents and Executive Board Members (including the Retired Member) shall be nominated and elected at large.

*IEB term of office*

**Section 2.** These officers shall constitute the International Executive Board, and their term of office shall begin immediately following their

election and they shall hold office for four years or until their successors are duly elected and qualify.

*Duties*

**(a).** Each Vice President and Executive Board Member shall be responsible for such duties as assigned by the International President.

*Executive Committee*

**(b).** The International President may appoint an Executive Committee from among the members of the International Executive Board. The Executive Committee shall meet at the call of the International President. The Executive Committee shall be charged with advising the International President on how best to carry out the administrative duties of his or her office, and with making recommendations to the International Executive Board on policies and programs for the International Union. The Executive Committee also may be delegated specific functions and powers of the International Executive Board under the Board's authority in Article XI, Section 6(b). Minutes of all meetings of the Executive Committee shall be kept by the International Secretary-Treasurer, who shall render reports to the International Executive Board.

*Board of Auditors*

**Section 3.** Each regular Convention of this International Union shall also elect a Board of Auditors consisting of eight members. The Board of Auditors shall examine and review the books and accounts of the International Secretary-Treasurer at least once during each twelve-month period, utilizing the assistance of Certified Public Accountants designated by the International President. Such review of the books and accounts of the International Secretary-Treasurer shall include the books respecting all properties and facilities under the custodianship of the International Secretary-Treasurer. A copy of such annual reports of the Board of Auditors shall be submitted to the International Executive Board. The Board of Auditors shall also give a written report to the International Convention. In the event of the unavailability or temporary disability of an Auditor, the remaining Auditors shall perform the duties set forth herein. The Auditors shall receive such per diem compensation and expense allowance as may be fixed by the International Executive Board.

*Qualifications for officers*

**Section 4.** No person shall be eligible for office in this International Union who has not been a member in continuous good standing for at least two years immediately preceding his or her election in the International Union or Local Unions chartered by this International Union or in any labor organization which becomes affiliated with this International Union. This requirement may be reduced by the International Executive Board to no less than 60 days if necessary to expand eligibility for office to members of organizations newly associated with the International Union pursuant to Article XI, Section 6. In the case of the Retired Member position on the International Executive Board, only retired members who have been members in good standing for two years prior to the Convention as either members, retired members or life members of the Local Union shall be eligible to serve. No person who has been convicted of a felony as defined in Section 504 of the Landrum-Griffin Act (or an indictable offense in Canada) shall, in accordance

with the provisions of applicable law, be eligible to hold office in this International Union.

*Exclusions*

**Section 5.** Associate members, life members, or those retired members paying less than the full dues required for working members of their Local Union shall not be eligible for nomination as an International Officer, except that such retired members may be eligible for the Retired Member position on the International Executive Board.

*Multiple compensation barred*

**Section 6.** No full-time officer of the International Union may receive compensation of any kind, except for benefits paid by a pension plan, from any Local Union or from any entity owned or controlled by a Local Union. Notwithstanding the foregoing, the International President is authorized to approve a temporary transition plan (not to exceed six months) for other new full-time officers transitioning from a Local Union to the International Union, provided that any such individual does not receive compensation from the International Union and a Local Union for the same time period.

*Retired members advisory committee*

**Section 7.** The International President shall appoint a Retired Members Advisory Committee which shall consist of leaders of Local Union retired members groups and retired International Executive Board Members. It shall be chaired by a retired member appointed by the International President.

*Emeritus status*

**Section 8.** The future grant of emeritus status to an International Officer shall be limited to an individual who has been elected as International President at no fewer than three international conventions. Such status shall entitle the individual to be an honorary guest at the SEIU International Convention and he/she may be appointed by the International President as a delegate or alternate delegate on the SEIU delegation to a national or international federation convention. Additional assignments may be made by the International President, upon mutual agreement.

## Article VII
## FILLING VACANCIES

*Filling officer vacancies*

*President*

In the event of a vacancy in the office of International President by reason of death, resignation or otherwise, it shall be the duty of the International Secretary-Treasurer,in addition to his or her other duties, to assume the duties of International President. The International Secretary-Treasurer shall serve in this capacity for a period of not longer than 30 days during which time the International Executive Board shall be convened for the purpose of filling the vacancy for the unexpired term by majority vote. In the event of a vacancy in the office of International Secretary-Treasurer by reason of death, resignation or otherwise, it shall be the duty of the International President, in addition to his or her other duties, to assume the duties of International Secretary-Treasurer. The International President shall serve in this capacity for a period of not longer than 60 days during which time the International Executive Board shall be convened for the purpose of filling the vacancy for the

*Secretary-Treasurer*

unexpired term by majority vote. In the event of a vacancy among the Vice Presidents, or on the Board of Auditors, by reason of death, resignation or otherwise, the International Executive Board shall, within 90 days after such vacancy has occurred, fill the vacancy for the unexpired term by majority vote. In the event of a vacancy among the Executive Vice Presidents or International Executive Board Members, by reason of death, resignation or otherwise, the International Executive Board may in its discretion fill such vacancy for the unexpired term by a majority vote. In the event of a concurrent vacancy in both the office of the International President and the office of the International Secretary-Treasurer by reason of death, resignation or otherwise, the International Executive Board shall be convened in Washington, D.C., within 10 days upon the joint call of at least four International Vice Presidents for the purpose of filling the unexpired terms by majority vote. In the case of a vacancy in the office of International President, International Secretary-Treasurer or Executive Vice President, the vote of an Officer on the International Executive Board (except for the full-time Officers and the Retired Member) shall be proportionate to the numerical strength of his/her local, as determined by the Local's payment of per capita tax to the International Union, excluding associate members, life members, retired members paying less than the full dues required for working members of their Local Union, and agency fee payers. If more than one officer is from the same Local Union, the voting strength shall be divided equally among those officers for this purpose.

*Vice President, Auditor*

*Executive Vice President, Executive Board Members*

*Concurrent vacancies*

*Voting strength*

## Article VIII
## INTERNATIONAL PRESIDENT— DUTIES AND POWERS

**Section 1(a).** It shall be the duty of the International President to preside at the Convention of the International Union and at meetings of the International Executive Board, and conduct them in accordance with parliamentary rules and in conformity with this Constitution. The International President shall appoint all committees and boards and be a member ex officio of all committees and boards.

*Presiding officer*

*Appointment of committees, boards*

**(b).** The International President shall have the deciding vote in case of a tie on any question.

*Deciding vote*

**(c).** The International President shall act to the best of his or her ability in furthering the purposes and objects of the organization and the interests of its members.

*General responsibility*

**(d).** The International President shall have general supervision and direction over the affairs of the International Union. The International President shall be authorized to call and make arrangements for such meetings, seminars, and conferences as he or she may deem necessary; and shall direct all departments, functions and programs of the International Union.

*General authority*

**(e).** The International President shall have general supervision and direction of the organizing efforts of this International Union.

*Organizing authority*

The International President shall have power to appoint organizers, representatives, coordinators and organizing committees and to make such loans or grant such subsidies to Local Unions and affiliated bodies as he or she deems necessary.

*Authority for collective bargaining*

**(f).** Consistent with the programs and policies adopted by the SEIU Convention delegates, the International President shall be empowered to negotiate and enter into national, regional, or areawide collective bargaining agreements, including company wide or multi employer agreements, and to coordinate activities toward this end in consultation with the Local Unions involved, and is authorized to require and direct coordinated bargaining among Local Unions. An industry division of the International Union also may recommend to the International President situations in which coordinated bargaining is warranted or where a comprehensive union wide strategy of employer relations is needed for key strategic global, national or regional employers. Accordingly, the industry divisions shall develop a process to identify such circumstances and in each case, the proposed structure for carrying out the decision-making (including membership authorization for strike action and membership voting on contract ratification), and the financing of the bargaining process itself. The division's recommendation shall address whether there is a need for the delegation of bargaining authority to the International Union or to a national or regional bargaining committee, appointed by the International President. The affected locals shall pay for the expenses of their participation after their input into the elements of such financing.

*Coordinated bargaining process*

*Authority to employ staff*

**(g).** The International President shall be empowered to employ necessary staff and retain counsel, accountants and other professional personnel as he or she may require to assist in the duties of the office and to fix their compensation. He or she shall be empowered to fix the compensation of the International Executive Vice Presidents. With respect to the office of International Vice President and International Executive Board member, the International Executive Board has phased out salary entitlements and is authorized to adopt an alternative compensation policy that recognizes any financial hardship on locals by this change in policy, as well as additional responsibilities that may be assigned to particular individuals.

*Authority to set salaries*

*Salary entitlement phase out*

*Authority on questions of law*

**(h).** The International President shall have authority to interpret this Constitution and Bylaws and decide on all points of law submitted to him or her by Local Unions or the membership thereof, or by affiliated bodies, subject to appeal to the International Executive Board, and the next Convention.

*Right to petition International President*

**Section 2.** Any member or officer of a Local Union aggrieved by any action of his or her Local Union or affiliated body not covered by the provisions of Article XVII of this Constitution (including determinations of election protests) may petition the International President within 15 days after the act complained of, or may petition the International Executive Board, within 15 days after the action of the International

*Right of appeal*

President thereon, to review the action of the Local Union or affiliated body. The President will endeavor to have a hearing held within 30 days of the petition or protest, if the President deems a hearing to be necessary, and shall attempt to render his or her decision within 30 days thereafter.

*Representing international union at conventions*

**Section 3.** The International President shall, by virtue of his or her office, represent the International Union at the conventions of labor organizations with which this International Union is affiliated and shall appoint all other delegates to such conventions.

*Charters, audits, and vouchers*

**Section 4.** The International President shall sign all charters and other official documents of this International Union; shall have the authority to direct an examination of the books and records of any Local Union or affiliated body; and shall draw vouchers on the International Secretary-Treasurer for such sums of money as his or her activities require, and the same shall be paid by the International Secretary-Treasurer.

*Appointment of assistants*

**Section 5.** The International President shall have power to appoint upon recommendation of the International Secretary-Treasurer such office assistants as may from time to time be required.

*Monitoring finances*

*Investigation of finances*

**Section 6.** All vouchers of the International Union shall be submitted to the International President for approval. The International President may at any time appoint a member of the Board of Auditors or such other representative or accountant as he or she may designate to examine into any matter affecting the finances of the International Union.

*Authority to impose trusteeships*

**Section 7(a).** Whenever the International President has reason to believe that, in order to protect the interests of the membership, it is necessary to appoint a Trustee for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of this International Union, he or she may appoint such Trustee to take charge and control of the affairs of a Local Union or of an affiliated body and such appointment shall have the effect of removing the officers of the Local Union or affiliated body.

*Powers and duties of trustee*

**(b).** The Trustee shall be authorized and empowered to take full charge of the affairs of the Local Union or affiliated body and its related benefit funds, to remove any of its employees, agents and/or trustees of any funds selected by the Local Union or affiliated body and appoint such agents, employees or fund trustees during his or her trusteeship, and to take such other action as in his or her judgment is necessary for the preservation of the Local Union or affiliated body and for the protection of the interests of the membership. The Trustee shall report on the affairs/transactions of the Local Union or affiliated body to the International President. The Trustee and all of the acts of the Trustee shall be subject to the supervision and direction of the International President.

*Responsibility to president*

*Moneys, books, property*

**(c).** Upon the institution of the trusteeship, all moneys, books and property of the Local Union or affiliated body shall be turned over to the Trustee.

*Bonding required of trustee*

**(d).** The Trustee shall be bonded for the faithful discharge of his or her duties relating to the handling of funds or other property of the Local Union or affiliated body.

*Financial responsibilities of trustee*

**(e).** The Trustee shall take possession of all the funds, books, papers and other property of the Local Union or affiliated body. The Trustee shall pay all outstanding claims, properly proved, if funds are sufficient. When self-government is restored, the Trustee shall return all funds, books, papers and other property to the Local Union or affiliated body. If, however, the Local Union or affiliated body is dissolved by the revocation of its charter, then any balance remaining to the credit of the Local Union or affiliated body shall be forwarded to the International Secretary-Treasurer and shall become the property of the International Union.

*Procedure for imposing trusteeship*

*Appointment of hearing officer*

*Emergency trusteeship*

**(f).** In order to ensure that no trusteeship is imposed without an adequate right to be heard or without other appropriate safeguards, prior to the imposition of a trusteeship the International President shall appoint a hearing officer or officers (who need not be a member or members of this organization), and shall issue a notice, which shall be distributed in a timely fashion, setting a time and place for a hearing, for the purpose of determining whether a Trustee should be appointed. Said hearing officer or officers shall issue a report and recommendations, orally, or in writing, to the International President, who shall thereupon make his or her determination; provided that where in the judgment of the International President an emergency situation exists within the Local Union or affiliated body, a Trustee may be appointed prior to a hearing; provided further that in an emergency situation, the International Executive Board shall appoint a hearing officer or officers (who need not be a member or members of the organization) who shall conduct such a hearing within 30 days after imposition of the trusteeship, and a decision by the International Executive Board shall be made within 60 days after the appointment of such Trustee. These time limits may be extended by the International President for good cause which decision shall be final and binding. Pending the International Executive Board's decision, the trusteeship shall remain in full force and effect.

*President's personal representative*

*Internal needs hearing*

*Monitor*

**(g).** The International President may appoint a representative to meet with the officials of Local Unions or affiliated bodies and to attend any meetings of Local Unions or affiliated bodies where in the judgment of the International President there is a need to assist the Local Unions or affiliated bodies with respect to their internal needs. The International President may appoint a hearing officer to examine the internal needs of the Local Union or affiliated body, and to assist him/her in determining what remedial action(s), if any, should be implemented by the Local Union or affiliated body. At anytime, the International President also may designate his/her representative as a monitor with additional oversight responsibility to review compliance with the International

President's recommendations and/or otherwise assist in addressing the internal needs of the Local Union or affiliated body. Among the internal needs to be considered is whether a Local Union or affiliated body has met applicable standards endorsed by the International Convention or satisfied such procedures, rules and/or regulations duly adopted by the International Executive Board to carry out the goals set by the International Convention.

*Compliance with applicable standards*

**Section 8.** The International President shall have power to call upon any and all officers for assistance and advice when the occasion demands or requires it.

*President's authority to call for assistance*

**Section 9.** The International President shall make a full report to each International Convention and at Executive Board meetings.

*President's duty to report*

## Article IX
## DUTIES OF INTERNATIONAL SECRETARY-TREASURER

**Section 1.** The International Secretary-Treasurer shall keep a correct record of all the proceedings of the International Convention and of the International Executive Board.

*Proceedings of convention, executive board*

**Section 2.** The International Secretary-Treasurer shall receive and collect all moneys due to the International Union, which shall be deposited in such banks as may be designated by the International Executive Board.

*Safeguarding the moneys*

**Section 3.** The International Secretary-Treasurer shall conduct all official correspondence, receive all applications for charters, countersign and issue charters as may be granted, and have charge of the official seal.

*Charters, official seal*

**Section 4.** The International Secretary-Treasurer shall draw and sign or authorize the signing of all checks covering expenditures of the International Union, upon the co-signature or approval of the International President.

*Expenditures*

**Section 5.** The International Secretary-Treasurer shall maintain records of the membership of the International Union and shall report to the International President and the International Executive Board as required.

*Membership records*

**Section 6.** The International Secretary-Treasurer shall make a full report of all matters relating to his or her office to each International Convention.

*Convention reports*

**Section 7.** The International Secretary-Treasurer shall, at the end of his or her term of office, turn over to his or her successor in office all books, moneys, property and other belongings of the International Union.

*Obligation to successor*

**Section 8.** The books and records of the International Secretary-Treasurer shall be open for inspection by the officers of the International Union.

*Obligation to open books*

*Maintenance of union records*

**Section 9.** The International Secretary-Treasurer shall keep all records pertaining to income, disbursements, and financial transactions of any kind for a period of at least six years, or longer if required by applicable law.

## Article X
## DUTIES OF THE EXECUTIVE VICE PRESIDENTS

*Supervision by President*

**Section 1**. The International Executive Vice Presidents shall work under the supervision of the International President.

*Duties assigned by President*

**Section 2.** The International Executive Vice Presidents shall perform such duties as are assigned to him or her by the International President.

## Article XI
## DUTIES OF THE INTERNATIONAL EXECUTIVE BOARD

*Meeting requirement*

*Majority may initiate meeting*

*Quorum*

**Section 1.** The International Executive Board shall hold sessions at least two times within each year. The meetings of the International Executive Board shall be upon the call of the International President at times and places which, in his or her judgment, best serve the needs of the International Union. Whenever a majority of the International Executive Board requests the International President to call a meeting thereof, it shall be mandatory upon him or her to do so. A meeting of the International Executive Board may be held by telephone or video conference at the discretion of the International President. All necessary expenses for such meetings shall be paid by the International Union. The International Executive Board shall have power to transact all business of the International Union between Conventions. A majority of the members of the International Executive Board shall constitute a quorum for the transaction of its business.

*Notification to Local Unions*

*Right to present grievances*

**Section 2.** The International Secretary-Treasurer shall notify all Local Unions and affiliated bodies of the time and place of International Executive Board meetings. Any Local Union or affiliated body may present any grievance or matter which it deems to be for the welfare of the International Union or any of its Local Unions or affiliated bodies at any meeting of the International Executive Board.

*Right to decide appeals*

**Section 3**. The International Executive Board shall act upon and decide all appeals presented to it by Local Unions or individual members or by affiliated bodies.

*Bonding provisions*

**Section 4.** The International Executive Board shall provide for the bonding of officers and employees of the International Union in accordance with the requirements of applicable statutes or as the International Executive Board shall deem necessary.

*Polling by International President*

**Section 5.** When the International Executive Board is not in meeting and the International President deems it necessary for the International

Executive Board to act promptly, the International Secretary-Treasurer shall poll the International Executive Board and such action and vote may be taken by letter, telegram, teletype, facsimile, telephone or any other appropriate means of communication. Such action so taken on vote of the majority of the International Executive Board shall constitute official action of the International Executive Board.

*Executive Board is highest authority*

**Section 6.** The International Executive Board shall, subject to action of an International Convention, be the final authority and the highest governing body of this International Union.

*Duties and responsibilities*

The Board is hereby authorized and empowered to take any and all lawful action not inconsistent with this Constitution to safeguard and protect this International Union, the rights, duties and privileges of the officers and members of this International Union and its Local Unions or any of its affiliated bodies; to guide, manage, conduct, and direct the activities, affairs, and functions of this International Union and to, in every way, including but not limited to expenditure, investment, and management, utilize the property and funds of this International Union towards the fulfillment of the purposes and objects of this organization. In addition to the general and specific powers conferred upon the Board elsewhere in this Constitution, and in addition to any lawful powers appertaining thereto, the Board is specifically authorized to:

*Establishment of rules and regulations*

**A.** Establish, adopt, prescribe, and order such procedures, rules and regulations, consistent with this Constitution, as are required for the direction and management of the affairs of this International Union and its constituent subordinate bodies and to repeal or amend the same;

*Delegation of powers*

**B.** Delegate, consistent with this Constitution, to any of its officers or agents any of the functions and powers herein set forth, except the power to fill vacancies in office;

*Salaries and trusts*

**C.** Establish and/or approve the payment of salaries, wages, expenses, allowances, and disbursements for its officers, agents, and employees; and adopt, maintain or amend any pension or health and welfare trust agreement or plan which it deems to be in the interest of the officers and employees of the International Union or its Local Unions or other affiliated bodies or employees represented by the International Union or any of its Local Unions or other affiliated bodies and the families of said officers and employees, provided that no accrued rights of a participant shall be impaired;

*Authority to take legal action*

**D.** Take such legal action as it deems necessary to protect the interests of this International Union, its officers, representatives, agents, employees, members, or constituent Local Unions or its affiliated bodies, including the initiation, prosecution, and defense of lawsuits and arbitrations, the settlement or compromising of any claim whether defended or prosecuted, and the payment of expenses and costs of all such proceedings and actions; or abstain from enforcing any claim;

*Investment of funds*

**E.** Invest or reinvest the funds of this International Union in such property, real or personal, tangible or intangible, as it shall consider

desirable for the effectuation of the purposes and objects of this International Union and the interest of its members, or permit such funds to remain uninvested;

*Acquisition of property*

**F.** Lease, buy, and in every lawful manner acquire, on behalf of this International Union, all property, rights, and privileges, as it shall think desirable for the effectuation of the purposes and objects of this International Union and the interests of its members, at such prices, terms and conditions as this Board shall, in its discretion, determine;

*Disposal of property*

**G.** Sell, lease, rent, mortgage, pledge, exchange, or otherwise dispose of any property, real or personal, tangible or intangible, and any rights or privileges appertaining or belonging to or in the possession of this International Union or its membership, whenever in its discretion the Board considers that the purposes and objects of this International Union and the interests of its members will be thereby effectuated for such prices and upon such terms and conditions or for such consideration as the Board in its discretion determines;

*Authority to borrow*

**H.** Obtain loans from any banks, firms, corporations or institutions, upon such terms and conditions as the Board shall determine, and for the sums so borrowed, issue its promissory notes or other evidence of indebtedness;

*Mortgages and trusts*

**I.** Enter into, issue and create, effectuate and terminate such mortgages, deeds, trust agreements, and negotiable instruments, however secured, as the Board in its discretion believes will effectuate the objects and purposes of this International Union and the interests of its members;

*Affiliations*

**J.** Affiliate this International Union or otherwise enter into or discontinue a relationship with such organizations and bodies, local, national and international, as the Board believes will effectuate the objects and purposes of this International Union and the interests of its members;

*Terms of affiliation*

**K.** Affiliate to this International Union by merger, partnership, alliance, consolidation, charter or otherwise any existing labor organization or other organization as the Board may approve and in connection therewith may grant to such labor organization until the next International Convention such executive positions and/or representation on the International Executive Board in the form of additional Vice Presidents and Executive Board Members in excess of the total number provided in Article VI, Section 1. The terms and conditions of such relationships, including affiliations, partnerships, alliances, mergers, or consolidations may include waiver of other provisions of this Constitution for such periods of time as shall be set forth in the agreement;

*Authority to waive constitutional provisions*

*Jurisdictional questions and agreement*

**L.** Decide questions of jurisdiction relating to Local Unions and other bodies affiliated to the International Union, and conclude organizational and jurisdictional agreements with other labor organizations;

**M.** Make such loans, either direct or indirect, whether to individuals or organizations, as are lawful and not inconsistent with this Constitution, with such security and with such arrangement for repayment as the Board may deem appropriate, and as the Board considers will effectuate the purposes and objects of this International Union and the interests of its members;

*Authority to lend*

**N.** Establish, adopt, and order such procedures as it deems necessary for the International Union, Local Unions, and affiliated bodies pertaining to agency shop fees, fair share fees and similar fees, and repeal or amend the same; and

*Agency and other fee procedures*

**O.** In order to build strength for working women and men in the 21st century, the International Executive Board is authorized to enter into new types of arrangements including, but not limited to, partnerships, affiliations and/or alliances on a national or global scale, for expanding the Union's outreach to, and involvement with, organizations and people with common goals. Accordingly, the authority set forth in this Article should be broadly interpreted to carry out the intent and purpose of this mission as well as to take advantage of new opportunities available through advances in technology and the internet. In entering such arrangements, the International Executive Board may grant such waivers from the provisions of the Constitution until the next Convention as will advance this objective.

*New arrangements to expand outreach*

The International Executive Board shall be the final authority in fulfilling, interpreting and enforcing this Constitution, subject to review by an International Convention.

*Constitutional authority*

The opinion of any attorney, accountant, or other professional consultant or expert hired pursuant to this Constitution shall be full and complete authority and protection with respect to any action taken, suffered or omitted by this Board or any member thereof in good faith and in accordance with such opinion. The International Executive Board, or any member of it, shall not be liable to any person or organization, for any act, which is not willful misconduct or in bad faith, done by this Board or said member in effectuation of the purposes and objects of this Constitution and the interests of the members of this organization.

*Protection from liability*

## Article XII
## STRIKES AND LOCKOUTS

No Local Union or affiliated body shall strike without previous notification to the International President, or, where prior notice is not practicable, without notification as soon as possible after commencement of the strike, in which notice the Local Union or affiliated body has stated that it has complied with all applicable notice requirements. If the Local Union or the affiliated body fails to give such notice, the International President may withhold sanction for the strike called by the Local Union or affiliated body. Based on the recommendation of the industry divisions of the International Union, the International Executive Board may limit this strike notification to fewer situations.

*Strike notification requirement*

## Article XIII
## REVENUE

*Per capita taxes*

**Section 1(a).** The revenue of this International Union shall be derived from per capita tax, initiation fees, charter fees, assessments or from any other source that the International Executive Board may determine.

The per capita tax from Local Unions shall continue to be $7.65 per member per month on all dues received by the Local Union.

*Special membership categories*

For a retired member, associate member, or organizing committee member paying less than the full dues required for working members of his or her Local Union, the per capita shall be $1.00 per month.

The International Union shall not set aside any segregated funds from per capita tax payments received from Local Unions on behalf of retired, associate or organizing committee members.

*Authority to adjust tax*

Upon the recommendation of the International President, the International Executive Board shall have the authority to adjust the per capita tax required from Local Unions (i) for nonworking members, including retired members and associate members; provided, however, that not withstanding the provisions of Article XV, Life Members granted such status pursuant to this Constitution on or before May 1, 2000, shall have no continuing dues obligations, but they shall nonetheless be eligible to enjoy all the benefits and privileges of retired members in the International Union, including continued participation in the International Union's Death Gratuity Program if otherwise eligible; and (ii) that are affiliated with another international union.

*Political fund*

**(b).** An amount of money which shall be determined annually by the International Executive Board shall be set aside from the per capita tax and shall be expended by the International Union directly or indirectly for political education and political action purposes, but solely in accordance with the provisions of applicable law.

*Strike and defense fund*

**(c).** For 2012, the International Union shall continue to set aside out of the per capita tax, the sum of 40 cents per member per month on all monthly dues received by the Local Union as a Strike and Defense Fund to aid Local Unions engaged in authorized strikes, in defending against lockouts, and in defending the integrity and welfare of the Local Union, as defined under criteria established by the International Secretary-Treasurer, and shall credit each Local Union with the amount which such Local Union has paid into the Strike and Defense Fund. 25 cents of the 40 cents shall be used by the International Union to maintain current programs and support the implementation of the 2012 Convention program.

Beginning January 1, 2013, the International Union shall use from the per capita tax the sum of 40 cents per member per month on all monthly dues received by the Local Union in the Strike and Defense Fund for the purpose of maintaining a fund to support the International Union's program to elect and hold accountable national public officials for a pro-working family agenda.

Such moneys shall not be used from or set aside out of per capita tax payments received from Local Unions on behalf of retired, associate, or organizing committee members.

Prior to January 1, 2013, a local union may request approval from the International Secretary-Treasurer to substitute an alternative payment plan for the 25 cents. This plan may include the option for the International Union to retain funds that would otherwise be paid back to the local union under Article XV, Section 18.

*Withdrawals from strike and defense fund*

For any amounts accumulated in the Fund prior to January 1, 2013, subject to the criteria established by the International Secretary-Treasurer, a Local Union may after no less than one year of contributions draw on the Strike and Defense Fund, or from such other funds of the International Union as shall be determined by the International Executive Board, to the extent of the total unexpended funds remaining to its credit, plus an additional sum equal to the amount set aside out of its required payments in the preceding 12 months. Once such an additional payment has been drawn by the Local Union, no further payment shall be made to the Local Union pursuant to this Section. The International Executive Board is authorized to direct that a Local Union's 2012 contributions to the Strike and Defense Fund be used to satisfy the Local Union's outstanding financial liability to the International Union or, pursuant to a decision of the International Executive Board after appropriate proceedings, to another affiliated body or Local Union if such liability is at least 90 days past due. In such circumstances, the Local Union will receive 15 days notice before such action is initiated.

*Use of fund to satisfy outstanding liabilities*

*Application and interpretation*

Questions concerning the application or interpretation of this subsection shall be resolved by decision of the International Secretary-Treasurer, subject to appeal to the International Executive Board.

*Unity Fund (except Canada)*

**(d).** In addition to the per capita tax set forth in Section 1(a), each Local Union, except those based in Canada, shall pay to the International Union a per capita tax to finance the Unity Fund. Through the Unity Fund, all local unions will pool resources in order to have the new strength to win improved pay, benefits and security for members in the 21st century. This additional per capita tax per member per month shall be $5.00.

*Low-wage worker*

Notwithstanding the above, this additional per capita tax for the Unity Fund shall not be paid on dues from any member who is paid gross wages of less than $433 per month. The additional per capita tax for the Unity Fund shall also not be payable on dues from members who have not achieved a first collective bargaining agreement.

*Canadian Unity Fund*

**(e).** Based on the recommendation of the Canadian Council, the International Executive Board may require each Local Union based in Canada to pay to the International Union a per capita tax in addition to the per capita tax set forth in Section 1(a) to finance a Canadian Unity Fund. Through this Unity Fund, all Canadian local unions will pool resources in order to have the new strength to win improved pay, benefits and security for members in the 21st century. The amount of

the additional per capita tax shall be determined by the International Executive Board, based on the recommendation of the Canadian Council.

*"Member" and "dues" defined*

**(f).** For the purposes of this section, the term "member" shall include agency fee payer and Rand Formula payer and comparable fee payers, and the term"dues" shall include agency service fees, Rand Formula fees and comparable fees.

*Payment of dues*

**Section 2.** Dues of members are due and payable on or before the last day of the current month and in order for a member to be in good standing his or her dues must be paid on or before the last day of each month. All other financial obligations of the Local Union must likewise be paid on or before the last day of the month in which they fall due.

*Maintenance of good standing*

**Section 3.** For a Local Union to be considered in good standing, per capita tax and all other fees and payments must be paid by each Local Union to the International Union before the end of the month following the month in which the Local Union received dues or other payments on account of which per capita tax or fees are payable to the International Union. If the monthly per capita tax, or any part thereof, is not submitted by the end of the month following that in which it is due, the Local Union shall be deemed delinquent in its payment and shall be charged a late payment fee, at an interest rate to be determined periodically by the International Executive Board, on that portion of the per capita tax which has not been paid by the due date, except that the International President may waive this penalty charge for good cause shown. If a Local Union fails to make the payments herein required within 30 days of the date due, the International Secretary-Treasurer shall notify the Local Union that it is no longer in good standing and shall within 30 days thereafter refer the matter to the International President for such action as the International President shall deem appropriate, including without limitation, suspension of the Local Union, revocation of its charter, or the appointment of a Trustee as provided in Article VIII, Section 7 of this Constitution and Bylaws. The International President, and in the event of an appeal from his or her decision, the International Executive Board, may lift any suspension or stay revocation of the charter upon such terms and conditions as may be prescribed.

*Sanctions for nonpayment*

*Priority of per capita payment*

**Section 4.** No Local Union shall have any right to pay any bills before it pays its full obligation to the International Union each month.

*Reporting requirements of locals (membership lists)*

**Section 5(a).** The Local Union by its Secretary-Treasurer shall forward to the International Secretary-Treasurer the correct names and addresses (including email address and phone number, if available) of all its members, and other membership information as specified by the International Executive Board. Each month it shall submit all changes of addresses; the names and addresses of all members initiated or readmitted, of all other persons from whom revenue is derived, and of those suspended for nonpayment of dues or for any other cause; and a correct list of those who take transfer or withdrawal cards. In addition, the International Union must be notified of the names and addresses of

all officers elected to office within 15 days of such action. The proper ZIP code shall be included for each address. Each Local Union must provide the same membership list to the State Council with which it is affiliated. Based on the recommendation of the International Secretary-Treasurer, the International Executive Board may approve a modification to this section which limits the frequency and/or content of this requirement.

*Average gross wage rate*

**(b).** Upon request, each local shall forward to the International Secretary-Treasurer, by April 1 of each year, information and supporting documentation showing the average gross wage rate of its membership for the previous calendar year. The Secretary-Treasurer may issue specific guidance on the nature of the supporting documentation required.

*Examination of local books and records*

**Section 6(a).** Local Union officers or the officers of any other affiliated body shall furnish to any person designated by the International President to examine its books and records, all of its books, records, accounts, receipts, vouchers and financial data whenever requested. All Local Unions and other affiliated bodies shall promptly forward to the International Secretary-Treasurer copies of all annual audit reports and copies of all financial reports setting forth a statement of assets and liabilities and a statement of receipts and disbursements which are required by law.

*Annual audit reports*

*Maintenance of local records*

**(b).** All records of a Local Union or other affiliated body pertaining to income, disbursements and financial transactions of any kind whatsoever must be kept for a period of at least six years or longer if required by applicable law.

*Requirements on revocation of charter*

**Section 7.** When the charter of a Local Union or other affiliated body is revoked, the Local Union or other affiliated body and its officers shall return all books, documents, property and funds to the International Union.

*Canadian locals per capita*

**Section 8.** The revenue from per capita taxes paid by Canadian Local Unions shall be spent by International Union for activities that support Canadian Local Unions.

## Article XIV
## ISSUANCE OF CHARTERS

*Application for charter*

**Section 1.** Twenty-five or more persons within the jurisdiction of this International Union may apply to the International Secretary-Treasurer for the issuance of a charter. In any event, the International President or the International Executive Board may issue a charter whenever it is deemed advisable. The application for a charter shall be accompanied by the required initiation fees and charter fee.

*Chartering procedures and jurisdiction*

**Section 2.** The International Executive Board shall establish the policy and procedures governing the issuance of charters and shall determine all questions of jurisdiction between Local Unions. Local Unions in existence at the time of the formation of the International Union shall retain the jurisdiction which they held at that time. If there be any contested question in connection with the matters referred to in

*Contested questions*

this Section, action of the International Executive Board shall be after a hearing upon reasonable notice before it or a hearing officer or officers (who need not be a member or members of this organization) designated by the International Executive Board.

*Consolidation and merger*

**Section 3.** The International Executive Board may consolidate or merge existing Local Unions under such terms and conditions as the International Executive Board may determine when in the opinion of the International Executive Board the interests and welfare of the International Union and the membership thereof will be better served by such action.

*Merger hearings*

**Section 4.** Such merger or consolidation of existing Local Unions shall be conditioned upon the consent of the Local Unions or shall be effectuated after a hearing upon reasonable notice before the International Executive Board or a hearing officer or officers (who need not be a member or members of this organization) designated by the International Executive Board.

*Provisional organization*

**Section 5.** The International President may designate such coordinators and establish such organizing committees or provisional Local Unions for the purpose of organizing workers, and may establish other bodies for other purposes he or she deems appropriate, with or without requiring the payment of dues, initiation fees or per capita tax, as he or she may deem advisable, and the International President shall be authorized and empowered to name provisional officers for and to expend and control the finances of such organizing committees or provisional Local Unions or other bodies. The International President shall thereafter report such matters to the International Executive Board.

## Article XV
## DUTIES OF LOCAL UNIONS

*Bonding of locals*

**Section 1.** All Local Unions and affiliated bodies shall secure and maintain surety bonds in the amounts and the form required by applicable statutes. The International Secretary-Treasurer may direct an increase in the amount of any bond whenever he or she deems it necessary and advisable and may direct bonding by any Local Union not required by statute to secure a bond.

*Eligibility requirements for local officers*

**Section 2.** No person shall be eligible for nomination as an officer, member of the Executive Board, delegate, or any other office in a Local Union who has not been a member in continuous good standing in the Local Union for at least two years immediately preceding the nomination and has, during all of that time, paid the full dues required for working members of the Local Union within each month when due. Notwithstanding the above, a Local Union may adopt a local union bylaw that reduces this continuous good standing requirement from two years to no less than six months. No person who has been convicted of a felony as defined in Section 504 of the Landrum-Griffin Act (or indictable offense in Canada) shall in accordance with the provisions

of applicable law be eligible for nomination under the terms of this Section. If the Local Union has been chartered less than two years, the required period of continuous good standing shall be the entire time that the Local Union has been chartered. The International President may waive the foregoing requirements for good cause shown. Any Local Union may provide in its Constitution and Bylaws for further limitations upon eligibility for nomination, provided such provisions are approved by the International Union. Upon the request of a Local Union Executive Board, the International President may waive Local Union eligibility requirements for good cause shown. Associate members, life members, and those retired members paying less than the full dues required for working members of the Local Union shall not be eligible for nomination as an officer, member of the Executive Board, delegate, or any other office in the Local Union. Proxy voting shall not be permitted in any election for an officer, member of the Executive Board, delegate or any other office in the Local Union. Write-in candidates shall not be permitted in any election for an officer, member of the Executive Board, delegate or any other office in the Local Union, except if expressly approved by the International President upon request of the Local Union Executive Board.

*Waiver*

*Exclusions*

*Proxies, write-ins prohibited*

**Section 3.** The Constitution and Bylaws of all Local Unions and affiliated bodies and amendments thereto must be submitted to the International Union and be approved before they become valid; provided, however, that notwithstanding such approval, the Constitution and Bylaws of all Local Unions and affiliated bodies shall at all times be subordinate to the Constitution and Bylaws of the International Union as it may be amended from time to time. If a Local Union or an affiliated body shall not have secured the approval of a valid Constitution and Bylaws, the provisions contained in the Constitution and Bylaws of the International Union as it may be amended from time to time shall govern said Local Union and affiliated body insofar as applicable. Regardless of approval, if any conflict should arise between the Constitution and Bylaws of a Local Union and affiliated bodies or any amendments thereto, and the Constitution and Bylaws of the International Union as it may be amended from time to time, the provisions of the Constitution and Bylaws of the International Union shall govern.

*Approval of local constitutions*

*Priority of International Constitution*

**Section 4.** Each Local Union shall provide its members upon request with a copy of the Constitution and Bylaws of the International Union and the Local Union. Copies of the International Constitution and Bylaws will be provided by the International Union to the Local Unions at cost.

*Distribution of Constitution*

**Section 5.** All Local Unions must provide for meetings of the membership on a general, division, chapter or work site basis at least once every two months, except during the months of July and August. The Executive Board of each Local Union shall in any case meet at least once a month. However, if approved by the Local Union membership, the requirements of this section may be modified in the Local Union's Constitution and Bylaws.

*Local meeting requirements*

*Minimum dues*

**Section 6(a).** Effective January 1, 2016, for all members with annual earnings of $16,000 or more, the minimum dues shall be equal to $36.00 per month. Effective January 1, 2016, for all members with annual earnings between $5,500 and $16,000, the minimum dues shall be equal to $31.00 per month.

*Annual increase*

Effective January 1, 2017, through January 1, 2020, the minimum monthly dues for all members with annual earnings of $5,500 or above shall be increased by $1.00 annually, effective January 1 of each year.

*Special membership categories*

Notwithstanding the above, by action of the Local Union the minimum dues may be reduced for retired members, organizing committee members, and associate members. The Local Union may establish minimum dues for members with annual earnings which are less than $5,500.

Upon request, these requirements may be waived by the International President, as provided in subsection 6(d)below.

*Maximum dues cap*

**(b).** A Local Union's dues system shall not contain a maximum limitation on the dues amount per member otherwise applicable under the Local Union's dues formula. Upon request, this requirement may be waived by the International President, as provided in subsection 6(d) below provided that any maximum limitation permitted by the International President is indexed for inflation.

*Dues increases*

**(c).** Local Unions in which the Constitution and Bylaws provide for a dues system other than a flat rate system (e.g., a scale, hourly or percentage formula system) shall maintain the formula necessary to generate a dues minimum equal to the flat rates specified in this section.

*Percentage dues system*

Every Local Union shall strive to have a membership dues system based on a percentage of monthly gross earnings.

The percentage rate minimum required in converting to a percentage dues system shall be the rate that provides the Local Union with revenue equal to what it otherwise would have received under its prior dues system as of that date. The calculation of revenue otherwise receivable under the prior dues system shall be based on the Local Union's average monthly membership for the six month period ending one month prior to the date of conversion.

*Application and interpretation*

Questions concerning the application or interpretation of this subsection shall be resolved by decision of the International Secretary-Treasurer, subject to appeal to the Executive Board.

*Dues waivers*

**(d).** The International President, with ratification by the International Executive Board, may waive the requirements of this section for such period as he or she deems advisable upon a showing of good cause as set forth below so long as such waiver does not impair the ability of the Local Union to properly represent its members.

*Alternative dues structure*

A full waiver will be granted to any Local Union which has established, in accordance with its Constitution and Bylaws, an

alternative dues structure and/or dues increases which satisfy the goals of this Section.

*Waiver considerations*

Full or partial waivers of any of the requirements of this section may be granted taking into consideration the resources of the Local Union, the Local Union's dues rate, whether the Local Union has recently implemented a dues increase, the percentage of workers represented by the Local Union covered by a union security clause and the wage rate of the Local Union's members. A waiver also may be granted to Local Unions in right to work states that are engaged in active and strategic organizing efforts in accordance with approved industry division plans.

*Canada*

**(e).** Nothing in this Section shall apply to Local Unions based in Canada.

*Canadian local unions*

**Section 7(a).** The minimum dues of all members of any Canadian Local Union shall be $10.00 per month except that by action of a Local Union they may be reduced to not less than $2.50 per month for retired members and organizing committee members and $2.00 per month for associate members.

*Minimum dues*

For Canadian Local Unions employing a percentage dues system, the minimum dues of all members of any Local Union shall be 1 percent of gross monthly salary per month or $10.00 per month, whichever is greater, except that by action of a Local Union they may be reduced for retired members, organizing committee members and associate members.

*Waiver*

The International President, with the approval of the International Executive Board, may waive these requirements for such period as he or she deems advisable as long as such waiver does not, in his or her judgment, impair the ability of the Local Union to properly represent its members.

*Minimum dues*

**(b).** All dues in Canadian Local Unions may be increased by an amount to be set by the International Executive Board based on the recommendation of the Canadian Council.

*Dues payments, good standing*

**Section 8.** In order to be considered in good standing and to be eligible to participate in all of the gratuities and benefits of the Local Union and the International Union, members must pay on time the full dues and other payments prescribed by the Constitution of the Local Union.

*Dues credits*

**Section 9.** When a member is laid-off from employment or is absent from work due to employer lockout or union-authorized strike for more than 20 days in any calendar month, such member may be entitled, if so provided in the Local Union's Constitution and Bylaws, to credit for membership dues for the period of unemployment but not to exceed six months in any calendar year.

*Dues receipts*

**Section 10.** Each member shall be entitled to receive a proper receipt or acknowledgement for any payment of dues.

*Withdrawal cards*

**Section 11.** Any Local Union may order that withdrawal cards be taken out by members working outside the trade or jurisdiction of the Local Union.

*Notification of collective bargaining agreements*

**Section 12.** The International Union shall be notified in writing when any collective bargaining negotiations or memoranda of understanding have been concluded and be advised of the number of employees covered and the expiration date of the contract. For the purpose of maintaining a file, and for informational uses, copies of collective bargaining agreements and contracts entered into by a Local Union shall, after signing, be sent to the Research Department of the International Union. Such notification to or filing with the International Union shall not operate to impose any liability on the International Union or its officers or to make them parties to any such collective agreement or memorandum of understanding.

*No notification liability*

*Permission to conduct fundraising*

**Section 13.** No Local Union or affiliated body or any subdivision thereof, or member or group of members, including Councils, Conferences, leagues, clubs or any association composed of members of this International Union, or subdivision thereof, shall in any manner, directly or indirectly, use, exploit, or trade upon the name of this International Union, or Local Union or affiliated body or any similar name or designation, nor in the name of this International Union or Local Union, or affiliated body, levy or collect any tax, dues, or other moneys, nor in the name of this International Union or Local Union, or affiliated body, conduct any affair or other activity for the purpose of raising funds, including programs or soliciting advertisements in any publication, either directly or indirectly, without first obtaining written permission from the International President.

*International's authority to audit*

All of the aforesaid matters covered by this Section, including without limitation funds, solicitations, gifts, and donations collected in the name of this International Union, or Local Union, or affiliated body, shall at all times be subject to audit by this International Union, and all books, records and documents pertaining to matters covered by this Section shall be available for inspection, copying and audit by this International Union.

*Authority to prescribe rules*

The International President shall have authority to formulate such rules and regulations as he or she deems necessary and proper to carry out the purpose of this Section.

*Special committees*

**Section 14.** The Executive Board of each Local Union shall appoint such committees as it deems necessary to carry out the organizing, political action, social and economic justice and retiree programs and policies of this International Union. Where a committee(s) is not appointed for a specific purpose, the Local Union Executive Board shall serve in that capacity.

*PACs*

**Section 15.** No Local Union shall establish its own registered federal political committee or any political candidates fund for contributions in connection with federal elections, provided, however, that the International President may in his or her discretion waive this provision

or establish such conditions as the International President may deem necessary.

*New Strength Unity standard*

**Section 16(a).** Every Local Union shall continue to implement an annual local union organizing budget equivalent to 20 percent of the local's budget (after payment of all per capita tax obligations), to be spent consistent with the principles and plan of the applicable industry division of the International Union. Each industry division shall submit its principles and plan for approval by the International Executive Board on an annual basis.

*Separate accounting*

**(b).** Every Local Union shall establish a separate account or accounting for the money that comprises its annual organizing budget.

*Review of organizing account*

**(c).** In the event that the applicable industry division of the International Union believes that a Local Union has failed, without good cause, to implement this 20 percent organizing budget commitment or to spend the Local Union's organizing budget consistent with the union wide strategic unity plan and/or division plan, it may refer the matter to the International Secretary-Treasurer for a review of the Local Union's organizing account and expenditures. If view reveals that the Local Union is not implementing its organizing budget as obligated under this provision, the Secretary-Treasurer may direct that only certain planned expenditures may continue to be made by the Local Union from its organizing account until the division and Local Union mutually agree upon a broader resolution of the matter pursuant to an expedited procedure established by the International Secretary-Treasurer.

*Hearing*

**(d).** If no agreement is reached, the applicable division may refer the matter to the International President who may designate the matter for hearing before a hearing officer appointed by the International Executive Board. Based on the hearing officer's report, the International Executive Board may order the Local Union to pay all or a portion of the organizing account and the local union's next annual organizing budget to an organizing campaign(s) identified in the national plan for that particular division.

*Performance standards*

**Section 17.** Industry Divisions of the International Union may establish additional Local Union performance and accountability standards to ensure that local unions implement the democratically and lawfully established policies of the Industry Divisions, subject to their approval by the International Executive Board.

*C.O.P.E.*

**Section 18(a).** Every U.S. Local Union shall contribute an annual amount equivalent to at least $6.00 per member per year, or as determined annually by the International Executive Board, to support the overall SEIU political education and action program. This annual SEIU C.O.P.E. fund-raising obligation may be satisfied by voluntary member contributions to SEIU C.O.P.E. or a designated organization approved by the International President or a combination thereof. All contributions to SEIU C.O.P.E. collected by local unions shall be sent to SEIU C.O.P.E. Any contributions in excess of $6.00 per member per year or such other amount as determined by the International Executive Board shall be

returned to the local union for its political program. If a Local Union fails to meet its annual SEIU C.O.P.E. fund-raising obligation, it shall contribute an amount in local union funds equal to the deficiency plus 50 percent, or such other amount determined by the International Executive Board, to support the overall SEIU political education and action program.

*Enrollment goal*

**(b).** A goal of every Local Union shall be to enroll and maintain at least 20 percent of its members as voluntary participants in an employer check-off or regular deduction program assigned to SEIU C.O.P.E. or to an organization approved by the International President.

## Article XVI
## MEMBERS' INTERESTS AND TRANSFERS

*Members' interests safeguarded*

**Section 1.** No member of this International Union shall injure the interests of another member by undermining such member in connection with wages or financial status or by any other act, direct or indirect, which would wrongfully jeopardize a member's office or standing.

*Transfers from local union to local union*

**Section 2.** Any member may transfer from one Local Union to another within this International Union, subject to the approval of the Local Union into which such member seeks admission, provided there shall be no interruption of continuous payment of monthly dues if continuous good standing is to be maintained or upon presentation of a current withdrawal card.

## Article XVII
## TRIALS AND APPEALS

*Preamble*

**PREAMBLE.** In order to ensure members' protection from the filing of frivolous charges, the following procedures shall apply:

*Possible charges*

**Section 1.** Local Unions, their officers or members, and officers of any affiliated body, and officers of the International Union, as the case may be, may be charged with:

(Whenever used in this Article, the term "Local Union"shall include any affiliated body or Local Union chartered by this International Union.)

(1) Violation of any specific provision of this Constitution or of the Constitution and Bylaws of the Local Union;

(2) Violation of an oath of office;

(3) Gross disloyalty or conduct unbecoming a member;

(4) If an officer, gross inefficiency which might hinder and impair the interests of the International Union or the Local Union;

(5) Financial malpractice;

(6) Engaging in corrupt or unethical practices or racketeering;

(7) Advocating or engaging in dual unionism, including but not

limited to aiding a rival labor organization, or secession in violation of Article XXV;

(8) Violation of democratically and lawfully established rules, regulations, policies or practices of the International Union or of the Local Union, including democratically and lawfully established rules, regulations, policies and practices of the International Union's Industry Divisions, subject to their approval by the International Executive Board.

(9) The wrongful taking or retaining of any money, books,papers or any other property belonging to the International Union or Local Union; or the wrongful destruction, mutilation or erasure of any books, records, bills, receipts, vouchers, or other property of the International Union or the Local Union;

(10) Working as a strikebreaker or violating wage or work standards established by the International Union or a Local Union; and

(11) The bringing of false charges against a member or officer without good faith or with malicious intent.

Charges must be specific and in writing.

*Filing charges*

**Section 2(a).** Charges against any member or officer of a Local Union shall be filed in duplicate with the Secretary of the Local Union, who shall serve a copy thereof on the accused either personally or by registered or certified mail, directed to the last known address of the accused, at least 10 days before the hearing upon the charges. The charges must specify the events or acts which the charging party believes constitute a basis for charges and must state which subsection(s) of Section 1 of this Article the charging party believes has been violated. If the charges are not specific, the trial body may dismiss the charges either before or at the hearing, but the charging party shall have the right to refile more detailed charges which comply with this Section. No charges may be filed more than six months after the charging party learned, or could have reasonably learned,of the act or acts which are the bases of the charges.

*Specificity requirement*

*Six month deadline*

*Trial procedure*

**(b).** The Executive Board of the Local Union shall act as or appoint the trial body, unless the Constitution and Bylaws of the Local Union provide for another trial procedure. The accused may appear in person and with witnesses to answer the charges against him or her and shall be afforded a full and fair hearing. The accused may select a member of his or her Local Union, or an attorney if the Constitution and Bylaws of the Local Union so permit,to represent the accused in the presentation of a defense.

*Judgment and discipline*

**(c).** If the charges, or any portion thereof, are sustained, then the trial body shall render judgment and impose disciplinary action as provided for in this Constitution. If the charges are not sustained, the same shall be dismissed and the accused restored to full rights of membership or office in the Local Union.

*Reporting trial results*

**(d).** If the Constitution and Bylaws of the Local Union so provides, the decision of the trial body shall be reported to the next regular

membership meeting of the Local Union for such action as is provided for in the Constitution and Bylaws of the Local Union.

*Suspension*

**(e).** If the International President believes that charges filed against an officer of a Local Union involve a situation which may seriously jeopardize the interests of the Local Union or the International Union, the International President may suspend such officer from office in the Local Union until a decision has been reached.

*Basis for original jurisdiction*

**(f).** The International President may assume original jurisdiction:

**i.** If the Local Union, the Local Union Executive Board, a Local Union officer or a Local Union member, or members, believe that the charges filed against a member or officer of a Local Union involve a situation which may seriously jeopardize the interests of the Local Union or the International Union or that the hearing procedure of the Local Union will not completely protect the interests of a member, officer or Local Union and such party requests that the International President assume original jurisdiction.

*Procedures for original jurisdiction*

**ii.** If the International President as a result of an investigation believes that the charges filed against a member or officer involve a situation which may seriously jeopardize the interests of the Local Union or the International Union.

Upon the International President assuming original jurisdiction, the International President may remove the proceedings from the trial body of the Local Union and, upon at least 10 days notice, hold a hearing on the charges either personally or before a hearing officer or officers (who need not be a member or members of this organization) designated by the International President. The International President shall make the decision upon the record taken at the hearing and the report of the hearing officer or officers.

*Notice of charges*

**Section 3.** Charges against a Local Union or an officer of the International Union shall be filed in duplicate with the International Secretary-Treasurer, who shall serve a copy thereof upon the accused either personally or by registered or certified mail, directed to the last known address of the accused, at least 10 days before the hearing upon the charges. The International Executive Board may hold a hearing on the charges either itself or before a hearing officer or officers designated by it or it may determine to dismiss the charges without the need for a hearing to be conducted. If the hearing is conducted by a hearing officer or officers, the International Executive Board shall make its decision upon the record taken at the hearing and the report of the hearing officer or officers.

*Executive Board hearings*

*Conduct of hearings or trials*

**Section 4.** In all hearings or trials provided for herein, if the member filing charges is a member of the trial body, he or she may appear and be heard in support of the charges, but shall be ineligible to participate in the consideration of or the decision on such charges. If the accused is unable or unwilling to be present at any hearing provided for herein, a defense may be presented in writing. In default of appearance or defense,

the trial body shall proceed with the hearing regardless of the absence of the accused.

*Possibility of sanctions*

**Section 5.** The trial body, after requisite due process has been afforded, may impose such penalty as it deems appropriate and as the case requires.

*Hearings or trial appeals*

**Section 6.** An appeal to the International Executive Board may be taken by either the accused or the member filing the charges from any decision of a Local Union with respect to such charges, provided such decision is a final decision under the terms of the Constitution and Bylaws of the Local Union; or from a decision of the International President. Any such appeal shall be filed in writing with the International Secretary-Treasurer, by registered or certified mail, within 15 days after the decision. No specific form or formality shall be required, except that such appeal shall clearly set forth the decision being appealed and the grounds for the appeal. During the pendency of any appeal, the decision appealed from shall remain in full force, unless it is stayed by the International Executive Board. The International Executive Board may decide the appeal on the record made by the trial body or may in its discretion, upon at least 10 days notice, hear argument or hold a rehearing either itself or before a hearing officer or officers designated by it. The International Executive Board may affirm, reverse or modify the decision appealed from.

*Manner of filing appeals*

*Determination of appeals*

*Appeals to Convention*

**Section 7.** Appeals from any decision of the International Executive Board with respect to charges may be taken to the next Convention. Any such appeal shall be filed in the same manner and within the same time as appeals to the International Executive Board. During the pendency of such appeal, the decision appealed from shall remain in full force. The appellant shall have the right to appear before an appeals committee of the Convention and, if the appellant is a Local Union or a member appealing an expulsion from membership, shall have the right to appear before the Convention itself under such conditions and for the period of time fixed by the Convention. An individual appellant, other than one appealing an expulsion from membership, shall have the right to appear before the Convention itself only with the consent of the Convention. The action of the Convention on all appeals shall be final and binding.

*Obligation to exhaust remedies*

**Section 8.** Subject to the provisions of applicable statutes, every Local Union or member or officer thereof or officer of the International Union against whom charges have been preferred and disciplinary action taken as a result thereof or who claims to be aggrieved as a result of adverse rulings or decisions rendered, agrees, as a condition of membership or affiliation and the continuation of membership or affiliation, to exhaust all remedies provided for in the Constitution and Bylaws of the International Union and the Local Union and further agrees not to file or prosecute any action in any court, tribunal or other agency until those remedies have been exhausted.

*Member Bill of Rights and Responsibilities*

**Section 9.** The SEIU Member Bill of Rights and Responsibilities in the Union shall be enforced exclusively through the procedures provided

in this Article and any decision rendered pursuant to the procedures provided for herein, including any appeals, shall be final and binding on all parties and not subject to judicial review.

## Article XVIII
## AFFILIATIONS WITH INTERMEDIATE BODIES

*Obligation to affiliate*

**Section 1.** Local Unions shall affiliate with local, regional, national or international bodies, where such exist, under rules to be established by the International Executive Board. The International President may in his or her discretion waive this requirement for individual Locals for good cause.

*Establishment of intermediate bodies*

**Section 2.** The International Executive Board shall from time to time establish intermediate bodies including, but not limited to, State and Provincial Councils, and Canadian Regional Conferences as well as other bodies, when in its judgment such bodies are necessary to further the aims of the International Union and the interests of Local Unions. The International Executive Board shall establish the jurisdiction of such bodies, and shall issue rules prescribing the activities and financing of such bodies. For administrative purposes of collection and distribution, the International Executive Board may require Local Unions to forward to the International Union per capita tax payments or other financial obligations owed by the Local Union to affiliated bodies or entities. Upon receipt, the International Union shall forward such payments to the applicable affiliated body or entity.

*Local affiliation and per capita requirements*

**Section 3.** All Local Unions determined by the International Union to be within the jurisdiction of any intermediate body shall affiliate with such bodies and comply with their bylaws, including provisions in such bylaws requiring the payment of per capita taxes to the intermediate body, together with interest on late payment if so authorized by the intermediate body. The International Executive Board may in its discretion modify these requirements. Any proposal to set or change an intermediate body's per capita tax obligation or assessment shall be submitted to the International President for his/ her approval prior to its submission for approval by the intermediate body. In the case of State Councils, a Local Union shall affiliate with each State Council having jurisdiction over the primary worksite(s) of its members, and shall pay each such State Council per capita tax on those members whose primary work site is within that State Council's jurisdiction.

*Conformance to International Constitution*

**Section 4.** The bylaws of such intermediate bodies shall not conflict with the Constitution and Bylaws of the International Union. Such bylaws shall provide that the number of votes a Local has in such bodies shall be proportionate to its numerical strength as determined by the payment of per capita tax, excluding associate members, life members and agency fee payers, to the intermediate body. This requirement may be waived by the International President, subject to his/her approval of an alternative voting procedure. Such bylaws and any amendments must be submitted to and approved by the International President before

becoming valid. Notwithstanding such approval, each intermediate body shall resubmit its bylaws to the International President for consideration and approval within 120 days following the conclusion of each regular International Convention.

*Eligibility of local officers as delegates*

**Section 5.** The bylaws of the Regional Conferences and Joint and State Councils shall provide that all officers of a Local Union elected in conformity with all applicable statutes shall by virtue of such election be considered to be eligible delegates to any Convention of such body which may take place during their term of office. If under the rules of the particular intermediate body a Local Union is entitled to additional delegates at said Convention, then arrangements may be made at the option of the Local Union Executive Board for nomination and secret ballot election, if required, of an additional number of Convention delegates. The Local Union must designate in its own bylaws the order in which the officers would be designated as delegates if fewer than all the officers are entitled to go to the Convention as delegates, provided that the chief executive officer of the Local Union shall, if otherwise eligible, be deemed entitled even in the event the Local Union fails to so designate. Any Local Union may by provision in its Local Constitution and Bylaws dispense with the foregoing provision that officers of the Local Union be ex officio delegates to the Convention of such intermediate bodies and may provide for nomination and, if required, secret ballot election of such delegates.

*Additional delegates*

*Restrictions on compensation*

**Section 6.** No officer of an intermediate body may receive compensation of any kind from the intermediate body, except for a minimal stipend or expenses as appropriate. This limitation shall not apply to intermediate bodies in Canada.

## Article XIX
## PAYMENTS IN CONNECTION WITH DEATHS OF MEMBERS

*Death gratuities*

For members of any Local Union who were in good standing in connection with this Article XIX on September 1, 1984, the Service Employees International Union Death Gratuity Program, as amended effective September 1, 1984, shall be maintained in effect for those members who meet the eligibility and participation requirements set forth in such amended Program. When the International Executive Board in its discretion determines that it is necessary or advisable to abolish, curtail or limit any payments provided for in the Program or to amend or modify any provisions governing such payments, it shall have authority to do so. The International Union shall notify each Local Union 60 days before the effective date of any changes in the provisions of the Program.

## Article XX
## PENSION FUND FOR OFFICERS AND EMPLOYEES OF LOCAL UNIONS AND AFFILIATED BODIES

*Maintenance of pension fund*

**Section 1.** The Pension Fund known as the "SEIU Affiliates' Officers and Employees Pension Fund," heretofore established pursuant to mandate of this Constitution and existing by virtue of a Trust Agreement entered into between the International Executive Board and the Trustees shall continue to be maintained in accordance with the terms of said Trust Agreement. The SEIU Affiliates' Officers and Employees Pension Fund shall be divided into two distinct sections, the United States Section and the Canadian Section.

*Pension sponsor*

**Section 2.** The International Union shall be the "Plan Sponsor" as that term is defined in the Employee Retirement Income Security Act of 1974.

*Executive Board authority*

**Section 3.** The International Executive Board shall have the power to:

*Pension trustees*

**(a).** Designate the number and appoint all of the individual Trustees of the Pension Fund; and to remove any such Trustee and to fill any vacancy as may exist from time to time; provided, however, that at least two Trustees shall be officers or employees of Local Unions and at least two Trustees shall be members of the International Executive Board; and provided further that there shall be no less than the number of Canadian Trustees required by Canadian law.

*Agreements, amendments*

**(b).** On behalf of the International Union, enter into agreements with the Trustees to amend the Trust Agreement in such manner as it may deem necessary or desirable.

*Waiver*

**(c).** Upon recommendation of the Trustees of the Pension Fund, waive participation in, or payments in whole or in part to, the Pension Fund by any Local Union, or affiliated body, upon a finding that contributions are not advisable or are not necessary or required, and upon such terms as the International Executive Board may require, including directing that participating Local Unions remit the amount waived directly to the International for such purposes as the Board deems appropriate and

*Waivers upon merger or affiliation*

**(d).** Waive, in whole or in part, or increase the payments required by Section 8 of this Article XX, upon the merger or affiliation of any labor organization or Local Union with the International Union or any of its Local Unions, upon a finding that such action is necessary or required.

*Pension fiduciaries*

**Section 4.** The Trustees of the Pension Fund shall be the "Named Fiduciaries" as that term is defined in the Employee Retirement Income Security Act of 1974.

*Pension participation requirements*

**Section 5.** The Trustees shall be and the same are hereby empowered to adopt a Pension Plan or Plans and Rules and Regulations for the administration thereof which they deem appropriate, provided, however, that such Plan or Plans and Rules and Regulations shall, to the extent permitted by applicable law, provide that:

*Coverage*

**(a).** Only officers, full-time permanent employees who have gross compensation at an annual rate of $4,000 and part-time and temporary employees who work more than six months in any 12-month period and who have gross annual compensation of $4,000 or more in that period shall be eligible for coverage. Gross compensation shall include only the regular salary paid by a Local Union, or affiliated body, or if accepted for participation by the Trustees, any organization related to a Local Union or affiliated body which furthers the purposes of or benefits the membership of such Local Union or affiliated body. Gross compensation shall be defined so as to preclude the award of credits for what the Trustees may consider special or unusual compensation (as, for example, payment for attending meetings or participating in picket duty), including but not limited to part or all of any compensation as may be received from a second or additional employer. In the event that applicable law requires employee participation and/or the granting of pension credits for employment which would otherwise be precluded by the foregoing, then, in such event, the Trustees shall endeavor to limit such participation and granting of service credit in accordance with the foregoing to the extent permitted by law.

*Adjusting contribution requirements*

The Trustees shall be empowered to adjust the $4,000 and/or the six-month contribution requirements, should the Trustees determine that said change(s) would be actuarially sound.

*Employees of related organizations*

**(b).** Employees of related organizations may be eligible for participation in the Pension Fund subject to such Rules and Regulations as the Board of Trustees may adopt.

*Authority of pension trustees*

**Section 6.** The Board of Trustees shall have the following powers, in addition to those which may be granted to them by the Trust Agreement:

*Employees of advisers*

**(a).** To employ the services of any actuary, legal counsel and other professional advisers as they deem necessary to assist them with the formulation of the Pension Plan or Plans, the determination and monitoring of the contribution rate to support the Plan on a sound actuarial basis and maintenance of the Pension Fund, and to pay for such services from the Pension Fund.

*Access to records*

**(b).** To require the Secretary-Treasurer of any Local Union or affiliated body to furnish to them such records as they may deem necessary for the proper administration of the Pension Fund.

*Employment pension plan(s)*

**(c).** To make all necessary amendments to the Pension Plan or Plans as may be required to render the Pension Trust Fund qualified and tax exempt under applicable provisions of the Internal Revenue Code and the Income Tax Act (Canada) or which may be deemed by them to be necessary to conform the Pension Plan or Plans and Trust Fund to all other applicable laws.

*Exceptions from coverage*

**(d).** To provide exceptions from coverage in the case of officers or employees who are entitled to be covered under an employee pension benefit plan maintained by a public employer or public utility, under

such uniform and nondiscriminatory rules as the Board of Trustees may establish, for the purpose of preventing duplication of pension coverage or benefits for such persons, if such exceptions do not conflict with applicable law or adversely affect the tax exempt status of the Pension Plan or Trust.

*Increasing payments*

**(e).** To increase or decrease the payments required by Section 8 of Article XX as permitted by law.

*General authority*

**(f).** To take all such steps as they deem necessary to effectuate the purposes of this Article XX and to protect the rights and interests of the participants of the Pension Fund.

*Safeguarding of assets*

**Section 7.** The Trustees shall keep all assets of the Pension Fund separate and distinct from all other revenue and income received by the International Union; shall transfer said Pension Fund assets to Corporate Trustee(s) or Corporate Custodian(s) which they may appoint; may remove any such Corporate Trustee(s) or Corporate Custodian(s) and appoint a successor; and may pay the fees of such Corporate Trustee(s) or Corporate Custodian(s) from the Pension Fund.

*Pension contributions*

**Section 8(a).** Subject to any changes and amendments made by the International Executive Board or the Trustees pursuant to their authority set forth herein, each Local Union and affiliated body within the United States shall pay to the Pension Fund an amount equal to 14 percent of the gross monthly compensation of each eligible officer and employee, and each Local Union and affiliated body within Canada shall pay to the Pension Fund an amount equal to 14 percent of the gross monthly compensation of each eligible officer and employee.

*Time of contribution to pension fund*

**(b).** The contribution provided for above shall be paid to the Pension Fund before the end of the month following the month in which the eligible officer or employee receives any compensation on which a pension contribution is payable. Contributions shall commence from the first date of employment of the eligible officer or employee.

*Sanctions for nonpayment*

**(c).** If a Local Union or affiliated body required to contribute to the Pension Fund fails to make payments required herein, the provision of Article XIII, Section 3 of this Constitution and Bylaws shall be applicable.

*Limitation of liability*

**Section 9.** The International Union shall indemnify all Trustees, the Fund Coordinator and Fund office employees from and against any liability which they may incur while acting in their official capacities, except for liability resulting from their gross negligence, willful misconduct, fraud or criminal act, including the cost of all legal expenses incurred in connection with the defense against any such charge.

## Article XXI
## LOCAL ENFORCEMENT OF INTERNATIONAL CONSTITUTION

*Obligation to enforce Constitution*

Any Local Union or affiliated body willfully neglecting to enforce the provisions of this Constitution and Bylaws shall be subject to suspension or revocation of its charter or such other sanctions as may be determined by the International President.

## Article XXII
## NONLIABILITY OF INTERNATIONAL UNION

*Lack of authorization to obligate International*

Except as is otherwise specifically provided in this Constitution, no Local Union, or affiliated body, nor any officer, employee, organizer or representative of a Local Union or affiliated body or of this International Union shall be authorized to make contracts or incur liabilities for or in the name of the International Union unless authorized in writing by the International President and the International Secretary-Treasurer, or the International Executive Board.

## Article XXIII
## LITIGATION

*Obligation to exhaust procedural remedies*

**A.** Subject to applicable law, no member, Local Union or affiliated body shall bring any action against the International Union or any other Local Union or affiliated body or any officers thereof, with respect to any matter arising out of the affairs of the International Union or its Local Unions or affiliated bodies unless he or she has exhausted all procedures available under this Constitution and the laws promulgated thereunder. Any member, or Local Union or affiliated body, filing suit in violation of this provision may, in addition to other penalties, be ordered to reimburse the organization or officers sued for the costs and attorneys' fees expended, or a portion thereof.

*Authority to defend*

**B.** The International Union is authorized upon affirmative vote of the International Executive Board to pay all expenses for investigation services, employment of counsel and other necessary expenditures in any cause, matter, case or cases where an International Union officer, representative, employee, agent or one alleged to have acted on behalf of the International Union is charged with any violation or violations of any law or is sued in any civil actions with respect to any matter arising out of his or her official duties on behalf of the International Union, except if such officer, representative, employee or agent is charged with a breach of trust to the International Union, or any affiliate or member thereof, in which event he or she may be indemnified only if the action is terminated favorably to him or her.

*Limitation of liability*

**C.** Neither the International Union nor any of its officers shall be responsible or liable for the wrongful or unlawful acts of any Local Union or affiliated body or officers, members, or agents thereof, except where

the International Union or its officers have actually participated in or actually authorized such acts, or have ratified such acts after actual knowledge thereof.

*Service of process*

**D.** Only the elected officers of the International Union are authorized to be its agents for service of process. General organizers, staff members and employees of the International Union and the officers and employees of subordinate bodies are not authorized to be agents of the International Union for service of process under any circumstances.

## Article XXIV
## AMENDMENTS

*Amendment procedure*

This Constitution and Bylaws may be amended by action of any regular Convention of the International Union or Special Convention called for that purpose. Amendments may be proposed at such Convention in the same manner as is provided herein for the submission of Convention resolutions. A majority of the Convention votes cast on such amendment shall be necessary for adoption. Except as otherwise provided, all amendments shall be effective immediately upon adoption by the Convention.

## Article XXV
## DISSOLUTION

*Dissolution procedure*

*Membership vote and dissent*

*Reversion of property, funds*

**Section 1.** This International Union cannot dissolve while there are seven dissenting Locals. No Local Union, provisional local or organizing committee can dissolve, secede or disaffiliate while there are seven dissenting members; no other affiliated bodies can dissolve, secede or disaffiliate while there are two dissenting Local Unions. The International Union shall be notified by registered or certified mail of any meeting, scheduled by a Local Union or affiliated body for the purpose of taking a vote on disaffiliation from the International Union at least 60 days prior to the date of such scheduled meeting, and a representative of the International Union shall be afforded an opportunity to speak at such meeting. The International President shall direct whether the membership vote shall be conducted by secret ballot at a membership meeting and/or by mail referendum, and, if appropriate, a separate method by which dissenting Local Unions or members may assert their dissent. The vote shall be counted by an independent neutral party. In the event of secession, dissolution or disaffiliation, all properties, funds and assets, both real and personal, of such Local Union or affiliated body shall become the property of the International Union. Under no circumstances shall any Local Union or affiliated body distribute its funds, assets or properties individually among its membership.

*No officer support*

**Section 2.** Except as may be expressly permitted under an affiliation agreement or approved by the International Union, no officer of a local union or affiliated body shall support or assist any efforts to dissolve, secede or disaffiliate from the International Union. Except for these two limited circumstances, the International President or International

Executive Board may take any and all action provided under this Constitution to safeguard the members' and union's interests in the event of an attempt at a Local Union or affiliated body to dissolve, secede or disaffiliate, including but not limited to action under Article VIII, Section 7.

## Article XXVI
## SAVINGS PROVISION

*Savings provision*

If any provision of this Constitution shall be modified or declared invalid or inoperative by any competent authority of the executive, judicial or administrative branch of a state, provincial or federal government, including, but not limited to, any provision concerning dues or per capita tax, the Executive Board shall have the authority to suspend the operation of such provision during the period of its invalidity or modification and to substitute in its place and stead a provision which will meet the objections to its validity and which will be in accord with the intent and purposes of the invalid or modified provision. In the case of a challenge to a dues or per capita tax provision,this authority shall also apply in the event the Executive Board determines that such actions are necessary at an earlier stage of judicial or administrative proceedings in order to ensure the effective implementation of the intent of the Constitutional provision at issue. If any Article or Section of this Constitution should be modified or held invalid by operation of law or by any tribunal of competent jurisdiction, the remainder of this Constitution or the application of such Article or Section to persons or circumstances, other than those as to which it has been held invalid or modified, shall not be affected thereby.

## APPENDIX A: SEIU MEMBER BILL OF RIGHTS AND RESPONSIBILITIES IN THE UNION

*Rights*

The right to have opinions heard and respected, to be informed of union activity, to be educated in union values and union skills.

The right to choose the leaders of the union in a fair and democratic manner.

The right to a full accounting of union dues and the proper stewardship over union resources.

The right to participate in the union's bargaining efforts and to approve union contracts.

The right to have members' concerns resolved in a fair and expeditious manner.

The responsibility to help build a strong and more effective labor movement, to support the organizing of unorganized workers, to help build a political voice for working people, and to stand up for one's co-workers and all workers.

*Responsibilities*

The responsibility to be informed about the internal governance of the union and to participate in the conduct of the union's affairs.

The responsibility to contribute to the support of the union.

The responsibility to treat all workers and members fairly.

The responsibility to offer constructive criticism of the union.

## APPENDIX B: SEIU MEMBER BILL OF RIGHTS AND RESPONSIBILITIES ON THE JOB

*Rights*

The right to have work that is worthwhile to society, personally satisfying to the worker, and which provides a decent standard of living, a healthy and safe workplace, and the maximum possible employment security.

The right to have a meaningful and protected voice in the design and execution of one's work and in the longterm planning by one's employer as well as the training necessary to take part in such planning.

The right to fair and equitable treatment on the job.

The right to share fairly in the gains of the employer.

The right to participate fully in the work of the union on the scope, content and structure of one's job.

*Responsibilities*

The responsibility to participate in the union's efforts to establish and uphold collective principles and values for effective workplace participation.

The responsibility to recognize and respect the interests of all union members when making decisions about union goals.

The responsibility to be informed about the industry in which one works and about the forces that will affect the condition of workers in the industry.

The responsibility to participate fully in the union's efforts to expand the voice of workers on the job.

The responsibility to give fully and fairly of one's talents and efforts on the job and to recognize the legitimate goals of one's employer.

# APPENDIX C: SEIU CODE OF ETHICS AND CONFLICT OF INTEREST POLICY

Approved by the SEIU International Executive Board, June 13, 2009
Approved by the SEIU International Executive Board as revised, January 21, 2016

## PART A: PREAMBLE

*Preamble*

The Service Employees International Union (SEIU) believes in the dignity and worth of all workers. We have dedicated ourselves to improving the lives of workers and their families and to creating a more just and humane society. We are committed to pursuing justice for all, and in particular to bringing economic and social justice to those most exploited in our community. To achieve our mission, we must develop highly trained and motivated leaders at every level of the Union who reflect the membership in all of its diversity.

*Duty to members*

Union members place tremendous trust in their leaders. SEIU elected officers and managers owe not just fiduciary obligations to union members; given the moral purpose of our mission, SEIU leaders owe members the highest level of ethical behavior in the exercise of all leadership decisions and financial dealings on members' behalf. Members have a right to proper stewardship over union funds and transparency in the expenditure of union dues. Misuse and inappropriate use of resources or leadership authority undermine the confidence members have in the Union and weaken it. Corruption in all forms will not be tolerated in SEIU. This Code of Ethics and Conflict of Interest Policy (the "Code" or "SEIU Code") strengthens the Union's ethics rules of conduct, organizational practices and enforcement standards and thus enhances the Union's ability to accomplish its important mission.

*Accountability*

We recognize that no code of ethics can prevent some individuals from violating ethical standards of behavior. We also know that the SEIU Code is not sufficient in itself to sustain an ethical culture throughout the Union. To accomplish the goals for which this Code has been created, we must establish systems of accountability for all elected leaders and staff. These systems must include appropriate checks and balances and internal operating procedures that minimize the opportunity for misuse or abuse, as well as the perception of either, in spending union funds and exercising decision-making authority. The systems also must include adequate provision for training on understanding and implementing this Code. More broadly, we emphasize the importance of the range of standards, practices, and values described in "A Strong Ethical Culture," Section A of the SEIU Policies on Ethics and Standards that were enacted with the Code in 2009.

*Member protections, responsibilities*

In particular, SEIU is committed to providing meaningful paths for member involvement and participation in our Union. The SEIU Member Bill of Rights and Responsibilities in the Union is a significant source of SEIU members' rights and obligations. Its exclusive enforcement

through the procedures set forth in Article XVII of the SEIU Constitution and Bylaws reflects a commitment to the democratic principles that have always governed SEIU. Article XVII's numerous protections against arbitrary or unlawful discipline of members also form an essential ingredient of the democratic life of the Union. Similarly, the requirement that Affiliates provide for regular meetings of the membership, set forth in Article XV, Section 5 of the Constitution, is another important element in the democratic functioning of SEIU. Finally, the provisions against discrimination and harassment on the basis of race, creed, color, religion, sex, gender expression, sexual orientation, national origin, citizenship status, marital status, ancestry, age and disability contained in Article III, Section 4 of the SEIU Constitution and in the Constitutions and Bylaws of Affiliates, the SEIU Anti-Discrimination and Anti-Harassment Policy and Procedure, and similar policies of Affiliates forbid conduct in violation of SEIU's historic belief that our strength comes from our unity and diversity and that we must not be divided by forces of discrimination.

*Other sources of authority*

Individuals subject to this Code are expected to comply with State and Federal laws, the Constitution and Bylaws of SEIU and Affiliates, and the anti-discrimination and anti-harassment policies of SEIU and Affiliates as part and parcel of our commitment to sustaining an ethical culture and the highest standards of conduct throughout the Union. Violations of these laws and policies are ethical breaches; however, these violations should be addressed through avenues provided by the applicable laws and policies and not through the Code unless they also allege violations of this Code. In particular, the sole enforcement mechanism for matters covered by the SEIU or Affiliate Constitutions and Bylaws is that which is set forth in those documents, unless violations of this Code are also alleged. Finally, grievances that arise under collective bargaining agreements are excluded from enforcement under this Code unless they also allege violations of this Code.

The scope and standards of this Code are set forth in the following Sections.

*Applicability, International Union*

**Section 1. Applicability to International Union.** The SEIU Code is henceforth applicable in its entirety to all officers, executive board members and employees of SEIU. These individuals are referred to herein as "covered individuals." SEIU shall append or attach the Code in its entirety to its Constitution and Bylaws in its next and all future publications.

*Applicability, Affiliates*

**Section 2. Applicability to SEIU Affiliates.** By enactment of the SEIU International Executive Board, the SEIU Code is applicable in its entirety to all officers, executive board members and employees of all affiliated bodies and local unions chartered by SEIU ("Affiliates" herein). These individuals are referred to herein as "covered individuals."

*Affiliate responsibilities*

**(a)** Each Affiliate shall ensure that the Code extends to all employees as soon as practicable but in no event later than the end of 2020.

**(b)** Each Affiliate shall append or attach the Code in its entirety to its Constitution and Bylaws at its next and all future publications.

**(c)** Wherever reference herein is made to SEIU or an SEIU program, department or position, the corresponding reference is to the particular Affiliate or its equivalent program, department or position.

**(d)** Each Affiliate is responsible for enforcing the Code and educating its covered individuals on the Code in a manner consistent with the Code's terms, subject to assistance and oversight from SEIU.

**(e)** The Code is not intended to restrain any Affiliate from adopting higher standards and best practices, subject to the approval of the SEIU Ethics Ombudsperson.

## PART B: GENERAL OBLIGATIONS

### Section 3. Obligations of Covered Individuals.

*Covered individuals, obligations*

*Duties regarding Code*

**(a)** Commitment to the Code. SEIU and each Affiliate shall provide a copy of the Code to each covered individual. It is the duty and obligation of covered individuals to acknowledge annually that they have received a copy of this Code, that they have reviewed and understand it, and that they agree to comply with it.

*Duty of Disclosure*

**(b)** Duty of disclosure. Covered individuals shall disclose to the SEIU Ethics Ombudsperson or the Affiliate Ethics Liaison, described in Part F of this Code, any conflict of interest or appearance of a conflict, which arises when their paramount duty to the interest of members is potentially compromised by a competing interest, including but not limited to an interest, relationship or transaction referenced in this Code. Actual, perceived and potential conflicts should be disclosed at the time that covered individuals become aware of them.

*Disqualification*

**(c)** Disqualification from service to SEIU or Affiliate. No person shall serve as an officer or managerial employee of SEIU or any Affiliate who has been convicted of any felony involving the infliction of grievous bodily injury, or the abuse or misuse of such person's position or employment in a labor organization to seek or obtain illegal gain at the expense of the members, except for the limited exceptions set forth in applicable federal law.

## PART C: BUSINESS AND FINANCIAL ACTIVITIES

*Protection of member funds*

**Section 4. General Duty to Protect Members' Funds; Members' Right to Examine Records.**

**(a)** The assets and funds of a labor organization are held in trust for the benefit of the membership. Members are entitled to assurance that those assets and funds are expended for proper and appropriate purposes. The Union shall conduct its proprietary functions, including all contracts for purchase or sale or for the provision of significant services, in a manner consistent with this Code. All officers, executive board members and employees of SEIU and SEIU Affiliates, whether elected or appointed, have a trust and high fiduciary duty to honestly and faithfully serve the best interests of the membership.

*Fiduciary duty*

*Examination of records*

**(b)** Consistent with Section 201 of the Labor-Management Reporting and Disclosure Act, SEIU shall permit a member for just cause to examine any books, records and accounts necessary to verify SEIU's annual financial report under that section to the U.S. Department of Labor.

**(c)** Affiliates comprised solely of members employed by government bodies shall permit a member to examine its financial report submitted to a state agency and, consistent with state law and for just cause, to examine any books, records and accounts necessary to verify the Affiliate's financial report.

*Prohibited interests and transactions*

**Section 5. Prohibited Financial Interests and Transactions.** Covered individuals shall not, to the best of their knowledge, have a substantial ownership or financial interest that conflicts with their fiduciary duty.

*Definition*

**(a)** For purposes of these rules, a "substantial ownership or financial interest" is one which either contributes significantly to the individual's financial well-being or which enables the individual to significantly affect or influence the course of the business entity's decision-making.

**(b)** A "substantial ownership or financial interest" does not include stock in a purchase plan, profit-sharing plan, employee stock ownership plan (ESOP) or blind trust. Nor does it prohibit covered individuals from owning, through a mutual fund or other similar investment vehicle, the publicly traded shares of any employer with which SEIU or an Affiliate engages in collective bargaining or does business or which SEIU or an Affiliate seeks to organize, provided that all transactions affecting such interests are consistent with rates and terms established by the open market.

**(c)** It is not permissible for any covered individual to:

*Employers*

**(1)** Knowingly have a substantial ownership or financial interest in any entity that engages in collective bargaining with SEIU or any of its Affiliates;

**(2)** Make or attempt to influence or participate in any way in a decision concerning the relations of SEIU or an Affiliate with a vendor, firm or other entity or individual in which the covered individual or his or her relative, spouse or business partner has a substantial ownership or financial interest; or *Vendors*

**(3)** Engage in any self-dealing transactions with SEIU or any of its Affiliates, such as buying property from or selling property to SEIU, without the informed approval of the International Secretary-Treasurer (or Affiliate Secretary-Treasurer, as applicable), obtained after full disclosure, including an independent appraisal of the fair market value of the property to be bought or sold. *Self-dealing*

**(d)** To ensure compliance with this Section, covered individuals are required to disclose any interests, transactions or interests covered by this Section in accordance with Section 3(b) of this Code. *Disclosure*

**Section 6. Payments and Gifts from Employers, Vendors and Members.** *Payments and gifts*

**(a)** Covered individuals shall not knowingly accept any payments, benefits or gifts of more than minimal financial value under the circumstances presented from any employer that engages or seeks to engage in collective bargaining with SEIU or an Affiliate, or from any business or professional firm that does business or seeks to do business with SEIU or an Affiliate. *Prohibition*

**(1)** This Section does not extend to payments and benefits that are provided to covered individuals by prohibited employers as compensation for their primary and regular employment. *Regular employment*

**(2)** This Section does not extend to work and services that covered individuals perform for prohibited employers or businesses on a part-time basis, through an arm's length transaction and for normal and customary pay for such work or services. *Payment for services*

**(3)** This Section does not extend to participation in events hosted by public officials involving discussion of public policy matters. *Public policy events*

**(4)** With respect to perishable items that are more than minimal but that are impracticable to return, such as food, it shall be considered compliance with this Section to discard such an item or place it in a common area for members and office staff to enjoy. If the gift is discarded or enjoyed communally, it is recommended that the giver should be advised of this disposition to dispel the appearance of any conflict of interest on the part of any covered individual and to discourage recurrence. *Perishable items*

*Gifts from members*

**(b)** Covered individuals shall not knowingly accept personal payments or gifts from any member, absent a personal relationship independent of the relationship between the Union and the member, other than a gift of minimal financial value. This provision does not apply to contributions to campaigns for union office made in accordance with the SEIU Constitution and Bylaws.

*Conversion prohibited*

**Section 7. Conversion of Union Funds and Property.** Covered individuals shall not use, convert or divert any funds or other property belonging to SEIU to such individual's personal benefit or advantage.

*Third parties*

**Section 8. Applicability to Third Parties.** The principles of this Code apply to those investments and activities of third parties that amount to a subterfuge to conceal the financial interests of SEIU officers or employees or to circumvent the standards of this Code.

*Loans*

**Section 9. Certain Loans Prohibited.** SEIU shall not make loans to any officer or employee, or to any of their family members, that at any time exceed $2,000 in total indebtedness on the part of such officer, employee or family member.

## PART D: BENEFIT FUNDS AND RELATED ORGANIZATIONS

**Section 10. Obligations of Covered Individuals.**

*Benefit funds*

**(a)** Benefit Funds.

**(1)** For purposes of this Section:

*Definitions*

**a.** A "benefit fund or plan" means a retirement, health or welfare benefit fund or plan sponsored by SEIU or an Affiliate, or in which SEIU or an Affiliate participates.

**b.** The definition of "substantial ownership or financial interest" provided in Section 5 applies.

*Fund fiduciaries, prohibitions*

**(2)** Covered individuals who serve in a fiduciary position with respect to or exercise responsibilities or influence in the administration of a benefit fund or plan shall not:

*Interests and personal ties*

**a.** Have any substantial financial interest in, or any compromising personal ties to, any investment manager, insurance carrier, broker, consultant or other firm or individual doing business or seeking to do business with the fund or plan;

*Payment*

**b.** Accept any personal payment from any business or professional firm that does business or seeks to do business with the fund or plan, other than contractual payment for work performed; or

*Compensation*

**c.** Receive compensation of any kind for service as an employee representative or labor-designated trustee for a fund or plan, except for reimbursement of reasonable expenses properly and actually incurred and provided

uniformly to such representatives or trustees, with the proviso that it is not a violation of this provision for an officer or managerial employee who is not a full-time employee of SEIU or an Affiliate to be a lawfully paid employee of a fund or plan if such employment is consistent with applicable legal restrictions and fully disclosed through appropriate reports. *Exclusion, less than full-time*

**(3)** To ensure compliance with this Section, all covered individuals shall disclose any interests, transactions or relationships covered by this Section in accordance with Section 3(b) of this Code. *Disclosure*

**(4)** No person shall serve in a fiduciary capacity or exercise responsibilities in the administration of a benefit fund or plan who has been convicted of any felony involving the infliction of grievous bodily injury or the abuse or misuse of such person's position or employment in an employee benefit plan to seek or obtain an illegal gain at the expense of the beneficiaries of the employee benefit fund or plan, except for the limited exceptions set forth in applicable federal law. *Disqualification*

**(b) Related Organizations.** *Related organizations*

**(1)** For purposes of this Section, an organization "related to" SEIU or an Affiliate means an organization *Definition*

- in which 25 percent or more of the members of the governing board are officers or employees of SEIU or an Affiliate, or
- for which 50 percent or more of its funding is provided by SEIU or an Affiliate.

**(2)** Covered individuals who serve in a fiduciary position with respect to or exercise responsibilities or influence in the administration of an organization related to SEIU shall comply with the provisions and shall hold themselves to the standards of the SEIU Code while they are acting for or on behalf of the related organization. *Applicability of Ethics Code*

## PART E: FAMILY AND PERSONAL RELATIONSHIPS

*Personal Relationships*

*Purpose of rules*

**Section 11. Purpose of Rules Governing Family and Personal Relationships.** SEIU does not prohibit the employment of qualified relatives of current officers or employees, or of individuals with whom an officer or employee has a romantic or intimate personal relationship. SEIU also does not prohibit the retention of qualified vendors that employ relatives of current SEIU officers or employees or individuals with whom an officer or employee has a personal relationship.

However, SEIU recognizes that the existence of such relationships can lead to problems, including favoritism or the appearance of favoritism toward relatives or those who are involved in a personal relationship.

Giving these individuals special treatment – or creating the impression that they receive special treatment – is inconsistent with our principles of stewardship and accountability and with our duty to responsibly conduct the business of SEIU. The provisions of this part are designed to ensure that family or personal relationships do not influence professional interactions between the employees involved and other officers, employees and third parties.

*Definitions*

**Section 12. Definitions.** For purposes of this part:

**(a)** "Relative" means parent, spouse, spousal equivalent, daughter, son, grandparent, grandchild, brother, sister, aunt, uncle, niece, nephew, first or second cousin, corresponding in-law, "step" relation, foster parent, foster child, and any member of the employee's household. Domestic partner relatives are covered to the same extent as spousal relatives.

**(b)** "Personal relationship" means an ongoing romantic or intimate personal relationship that can include, but is not limited to, dating, living together or being a partner or significant other. This definition applies regardless of gender, gender identification, or sexual orientation of the individuals in the relationship. This restriction does not extend to friends, acquaintances or former colleagues who are not otherwise encompassed in the scope of "personal relationships."

*Prohibited conduct*

**Section 13. Prohibited Conduct.** The following general principles will apply:

*Application process*

**(a)** Applications for employment by relatives and those who have a personal relationship with a covered individual will be evaluated on the same qualification standards used to assess other applicants. Transmission to the appropriate hiring authority of applications on behalf of individuals who have a family or personal relationship shall not in itself constitute an attempt to influence hiring decisions. Further input into the application process, however, may be deemed improper.

*Hiring decisions*

**(b)** Covered individuals will not make hiring decisions about their relatives or persons with whom they have a personal relationship, or attempt to influence hiring decisions made by others.

*Supervisory relationship prohibited*

**(c)** Supervisory employees shall not directly supervise a relative or a person with whom they have a personal relationship. In the absence of a direct reporting or supervisor-to-subordinate relationship, relatives or employees who have a family or personal relationship generally are permitted to work in the same department, provided that there are no particular operational difficulties.

*Involvement in work-related decisions*

**(d)** Covered individuals shall not make work-related decisions, or participate in or provide input into work-related decisions made by others, involving relatives or employees with whom

they have a personal relationship, even if they do not directly supervise that individual. Prohibited decisions include, but are not limited to, decisions about hiring, wages, hours, benefits, assignments, evaluations, training, discipline, promotions, and transfers.

**(e)** To ensure compliance with this Section, all covered individuals must disclose to the Ethics Ombudsperson or the Affiliate Ethics Liaison, as appropriate, any relationships covered by this Section in accordance with Section 3(b) of this Code. *Disclosure*

## PART F: ENFORCEMENT

*Enforcement*

*Ethics Officer*

**Section 14. Ethics Officer.** The office of the Ethics Officer is established to provide independent assistance to SEIU in the implementation and enforcement of the Code. The Ethics Officer shall be an individual of unimpeachable integrity and reputation, preferably with experience in ethics, law enforcement and the workings of the labor movement. The Ethics Officer shall provide his or her services under contract and shall not be an employee of the International Union or any of its Affiliates. The Ethics Officer shall be appointed by the International President and confirmed by the International Executive Board. The International President, the International Secretary-Treasurer, and the SEIU International Executive Board may refer matters concerning the Code to the Ethics Officer for review and/or advice, consistent with Sections 22 and 23. *Review and advice*

*Ethics Ombudsperson*

**Section 15. Ethics Ombudsperson.** The office of SEIU Ethics Ombudsperson is established to oversee implementation and enforcement of the Code and ongoing efforts to strengthen the ethical culture throughout the Union. The Ethics Ombudsperson is responsible for providing assistance to the International Union and Affiliates on questions and concerns relating to the Code and ethical culture; directing the training of SEIU and Affiliate officers and staff concerning the Code and ethical culture; responding to ethics concerns and complaints consistent with Sections 17-23; receiving and resolving disclosures of conflicts of interest; assisting the Ethics Officer; and providing other support as necessary to the overall SEIU ethics program. *Annual report* The Ethics Ombudsperson, in consultation with the Ethics Officer, shall issue a report to the SEIU International Executive Board annually, summarizing compliance, training, enforcement, culture building and related activities, and making recommendations for modifications to the ethics program that he or she believes would enhance the program's effectiveness. *Periodic reviews* The Ethics Ombudsperson may also conduct periodic reviews for the purposes of monitoring compliance with this Code and determining whether partnerships, joint ventures, and arrangements with management organizations conform to this Code, are properly recorded, reflect reasonable investment or payment for goods and services, further SEIU's tax-exempt purposes, and do not result in inurement, impermissible private benefit, or excess benefit transactions. The Ethics Ombudsperson shall be employed in the SEIU Legal Department.

*Ethics Liaison*

**Section 16. Affiliate Ethics Liaison.** Each Affiliate shall appoint an Ethics Liaison who will be available for ethics advice or guidance, will serve as an Affiliate's key contact with the International's Ethics Ombudsperson, will assist in enforcement of the Code, will oversee the delivery of ethics-related training, will assist the Affiliate in strengthening its ethical culture, and will serve as an ethical leader in the Affiliate.

*Eligibility*

**(a)** Presidents, chief executive officers, secretary-treasurers, chief financial officers, chiefs of staff, and the equivalent of any of the foregoing are not eligible to serve as Ethics Liaisons.

*Rotation*

**(b)** Affiliates are encouraged to consider rotating the Ethics Liaison position periodically, barring operational difficulties, to develop ethical leadership broadly in the Affiliate. Affiliates shall advise the SEIU Ethics Ombudsperson as soon as practicable of the appointment of Ethics Liaisons and of any vacancy that occurs in the position.

*Training*

**(c)** Ethics Liaisons will regularly receive training from the International Union specific to the role. Affiliates should make every effort to ensure the participation of their Ethics Liaisons.

*Complaints*

**Section 17. Complaints.**

*Process for submission*

**(a)** Any covered individual or member may file a written complaint concerning alleged violations of the Code. Oral concerns and complaints shall be reduced to writing for further processing as a complaint. Complaints should be signed or contain the name of the complainant(s), and shall be kept confidential pursuant to Section 24. Complaints alleging violation of the Code shall not be enforced under SEIU or Affiliate constitutions and bylaws unless they also allege violations of the constitutions and bylaws.

*Enforcement under Constitution*

*Contact information*

**(b)** The International Union shall post contact information for submission of ethics complaints on the SEIU website and shall provide that information on request.

**(c)** Each Affiliate shall provide its staff and membership with contact information for its Ethics Liaison.

*Handling of complaints, International*

**Section 18. Complaints Handled by the International Union.** Complaints alleging violation of the Code that are submitted to the International Union or the Ethics Officer shall be referred initially to the SEIU Ethics Ombudsperson. The Ethics Ombudsperson shall review ethics complaints submitted to the International Union and shall respond to them in his or her discretion, including but not limited to providing advice or guidance, resolving them informally, directing them to resources outside the ethics office, and referring them to the Ethics Officer or Affiliate for further processing. The individual submitting the complaint shall be notified of the status of the complaint as appropriate in the discretion of the Ethics Ombudsperson but in all events upon its conclusion.

**Section 19. Complaints Handled by Affiliate; Notice to Ethics Ombudsperson.** Ethics complaints that are raised with or referred to an Affiliate shall be investigated by the affected Affiliate and, where appropriate, may form the basis of employee discipline or formal internal union charges to be processed before a trial body in accordance with the requirements set forth in the Affiliate's constitution and bylaws and/or the SEIU Constitution and Bylaws. The Ethics Ombudsperson may advise an Affiliate concerning matters related to the investigation and processing of complaints and charges alleging violation of the Code. Where a complaint involves an Affiliate's president, chief executive officer, chief of staff, secretary-treasurer, chief financial officer, or the equivalent, the Affiliate shall notify the Ethics Ombudsperson as soon as practicable. The Ethics Ombudsperson may consult with the Ethics Officer concerning any question referred by an Affiliate.

*Handling of complaints, Affiliate*

*Notice to Ombudsperson*

**Section 20. Failure to Cooperate; Bad Faith Complaints.** Unreasonable failure by a covered individual to fully cooperate with a proceeding or investigation involving an ethics complaint or alleged violation of this Code shall constitute an independent violation of this Code. SEIU reserves the right, subject to notice, investigation and due process, to discipline persons who make bad faith, knowingly false, harassing or malicious complaints, reports or inquiries.

*Failure to cooperate*

*Bad faith*

**Section 21. Original Jurisdiction.**

*Original Jurisdiction*

*Request by affiliate*

**(a)** Requests for Original Jurisdiction. If an Affiliate or an Affiliate executive board member, officer, or member believes that formal internal union charges against a covered individual that also allege violations of this Code involve a situation which may seriously jeopardize the interests of the Affiliate or the International Union, or that the hearing procedure of the Affiliate will not completely protect the interests of the Affiliate, an officer or member, that individual may request that the International President assume original jurisdiction under Article XVII, Section 2(f) of the SEIU Constitution and Bylaws.

*Assumption of jurisdiction*

**(b)** Assumption of Original Jurisdiction by International President. In accordance with Article XVII, Section 2(f) of the SEIU Constitution and Bylaws, the International President may in his or her discretion assume original jurisdiction of formal internal union charges also alleging violation of this Code if as a result of an investigation he or she believes that the charges filed against a covered individual involve a situation which may seriously jeopardize the interests of the Affiliate or the International Union. In his or her discretion, the International President may refer the matter to the Ethics Officer for a recommendation concerning the possible assumption of original jurisdiction.

*Referral to Ethics Officer*

**Section 22. Referral of Formal Charges to Ethics Officer.** If formal internal union charges filed with the International Union under Article XVII, Section 3 of the SEIU Constitution and Bylaws also allege violation of the Code by an officer or executive board member of the International Union or an Affiliate, such charges may be referred to the Ethics Officer for review and recommendations.

*Review by Ethics Officer*

**Section 23. Review of Claims by Ethics Officer.**

**(a)** If after review of the allegations of violations of the Code in a complaint or formal charge, the Ethics Officer finds that the allegations have merit and/or warrant further investigation, he shall recommend a response or course of action for the International Union to respond to the complaint or changes, including but not limited to the following:

*Possible recommendations*

**(1)** Further investigation by SEIU personnel and/or outside investigator(s);

**(2)** Filing of formal charges under Article XVII of the SEIU Constitution and Bylaws;

**(3)** Assumption of original jurisdiction by International President pursuant to Article XVII, Section 2(f) of the SEIU Constitution and Bylaws;

**(4)** Appointment of an outside hearing officer to conduct a trial under Article XVII, Section 3 of the SEIU Constitution and Bylaws;

**(5)** Discipline of covered employees;

**(6)** Sanction of covered officers or members accused in formal proceedings, and

**(7)** Other action deemed appropriate in the discretion of the Ethics Officer.

*No merit*

**(b)** If the Ethics Officer concludes, after review of allegations of violations of the Code, that the allegations are without merit or that further investigation is not necessary, he or she shall advise the International Union of his or her findings.

*Whistleblowers*

## PART G: PROTECTION OF WHISTLEBLOWERS

*Confidentiality*

**Section 24. Confidentiality.** SEIU will make all reasonable efforts to keep confidential the identity of any person(s) raising an ethics concern, inquiry, report or complaint under the Code unless disclosure is authorized by the complainant or is required for SEIU to carry out its fiduciary or legal duties. SEIU will also treat communications concerning ethics complaints or concerns with as much confidentiality and discretion as possible, provided that it remains able to conduct a complete and fair investigation, carry out its fiduciary and legal duties, and review its operations as necessary.

**Section 25. No Retaliation.** SEIU encourages all officers and

employees to bring ethics concerns and complaints that the Code has been violated to the attention of the Union, as set forth more fully in Part F above.

*Retaliation prohibited*

**(a)** SEIU expressly prohibits retaliation against covered individuals and members for:

**(1)** Making good faith complaints, reports or inquiries pursuant to this Code;

**(2)** Opposing any practice prohibited by the Code;

**(3)** Providing evidence, testimony or information relative to, or otherwise cooperating with, any investigation or enforcement process of the Code; and

**(4)** Otherwise participating in the enforcement process set forth in PART F above.

*Against Ethics Liaisons*

**(b)** In particular, SEIU will not tolerate any form of retaliation against Affiliate Ethics Liaisons for performing their responsibilities.

*Reporting*

**(c)** Any act of alleged retaliation should be reported to the SEIU Ethics Ombudsperson or the Affiliate Ethics Liaison immediately and will be responded to promptly.

## APPENDIX D: MANUAL OF COMMON PROCEDURE

### INITIATION RITUAL

PRESIDENT: "It is my duty to inform you that the Service Employees International Union requires perfect freedom of inclination in every candidate for membership. An obligation of fidelity is required; but let me assure you that in this obligation there is nothing contrary to your civil or religious duties. With this understanding are you willing to take an obligation?"

(Answer.)

PRESIDENT: "You will now, each of you, raise your right hand and recite the following obligation:

### MEMBERSHIP OBLIGATION:

"I, (name) ______________________________ , pledge upon my honor that I will faithfully observe the Constitution and Bylaws of this Union and of the Service Employees International Union.

"I agree to educate myself and other members in the history of the labor movement and to defend to the best of my ability the principles of trade unionism, and I will not knowingly wrong a member or see a member wronged if it is in my power to prevent it.

"As an SEIU member, I will take responsibility for helping to achieve

the Union's vision for a just society where all workers are valued and people respected, where all families and communities thrive, and where we leave a better and more equal world for generations to come."

PRESIDENT: "You are now members of the Service Employees International Union."

## OFFICERS' INSTALLATION OBLIGATION

"I, (name) ________________________________, accept my responsibility as an elected officer of the Service Employees International Union and I pledge that I will faithfully observe SEIU's Constitution and Bylaws. I will work tirelessly to unite working people to achieve our members' vision for a just society. I have carefully read and signed the Officers' Installation Obligation, and I hereby commit to abide by it."

Officers' Installation Obligation:

I accept my responsibility as an elected officer of the Service Employees International Union and I pledge that I will faithfully observe the Constitution and Bylaws of the Service Employees International Union.

I pledge that I will provide ethical, responsible leadership, representing our members and organizing new workers to build power to win for all.

I pledge to make the growing gap between the rich and everyone else the problem of our time, to inspire and support workers everywhere who are ready to take collective action to lift wages and create family-sustaining jobs, to elect political leaders on the side of the 99%, and to hold them accountable when they support policies that benefit the 1%.

I agree to defend the principles of trade unionism.

I will not knowingly wrong a member or see a member wronged if it is in my power to prevent it.

I pledge to exercise leadership based on the SEIU standards of:

- Shared unity of purpose;
- Openness to questions and willingness to learn;
- Acting with the courage of our convictions;
- Working together with accountability; and
- Commitment to inclusion.

I believe in and will fight for the SEIU vision of a just society where all workers are valued and people respected, where all families and communities thrive, and where we leave a better and more equal world for generations to come.

I will work to dismantle structural anti-Black racism as part of my

leadership commitments, which is necessary for building a fair and just economy for our members, their families and communities and for all working people. We can only achieve economic justice for working people when we achieve racial equality and justice for all.

I commit to the highest level of ethical behavior in exercising leadership decisions on our members' behalf.

I hereby certify that I have read and signed the Officers' Installation Obligation and I hereby commit to abide by it.

Signature of Officer: ______________________________

## DEBATE

The following rules shall be used to govern debate unless the Local Union has adopted its own rules or regulations:

**Rule 1.** The regular order of business may be suspended by a vote of the meeting at any time to dispose of urgent business.

**Rule 2.** All motions (if required by the chair) or resignations must be submitted in writing.

**Rule 3.** Any conversation, by whispering or otherwise, or any other activity which is calculated to disturb or may have the effect of disturbing a member while speaking or disturb the conduct of the meeting or hinder the transaction of business shall be deemed a violation of order.

**Rule 4.** Sectarian discussion shall not be permitted in the meetings.

**Rule 5.** A motion to be entertained by the presiding officer must be seconded, and the mover as well as seconder must rise and be recognized by the chair.

**Rule 6.** Any member having made a motion can withdraw it with consent of the seconder, but a motion once debated cannot be withdrawn except by a majority vote.

**Rule 7.** A motion to amend an amendment shall be in order, but no motion to amend an amendment to an amendment shall be permitted.

**Rule 8.** A motion shall not be subject to debate until it has been stated by the chair.

**Rule 9.** A member wishing to speak shall rise and respectfully address the chair, and if recognized by the chair, he or she shall be entitled to proceed.

**Rule 10.** If two or more members rise to speak, the chair shall decide which is entitled to the floor.

**Rule 11.** Any member speaking shall be confined to the question under debate and avoid all personal, indecorous or sarcastic language.

**Rule 12.** Attending meetings under the influence of liquor or any

controlled substance not lawfully prescribed is basis for removal.

**Rule 13.** No member shall interrupt another while speaking, except to a point of order, and the member shall definitely state the point, and the chair shall decide the same without debate.

**Rule 14.** Any member who is called to order while speaking shall be seated until the point of order is decided,after which, if decided in order, such member may proceed.

**Rule 15.** Any member who feels personally aggrieved by a decision of the chair may appeal such decision to the body.

**Rule 16.** When an appeal is made from the decision of the chair, the Vice President shall act as chairperson; the appeal shall be stated by the chair to the meeting in these words: "Shall the decision of the chair be sustained as the decision of this Union?" The member will then have the right to state the grounds of appeal and the chair will give reasons for its decision; thereupon the members will proceed to vote on the appeal without further debate, and it shall require a majority vote to overrule the chair.

**Rule 17.** No member shall speak more than once on the same subject until all who wish to speak have spoken, nor more than twice without unanimous consent, nor more than five minutes at any one time without consent of a two-thirds vote of all members present.

**Rule 18.** The presiding officer shall not speak on any subject unless such officer retires from the chair, except on a point of order or to make an official report or give such advice and counsel as the interests of the organization warrant. In case of a tie the presiding officer shall have the deciding vote.

**Rule 19.** When a question is before the meeting, no motion shall be in order except:

1. To adjourn;
2. To lay the question on the table;
3. For the previous question;
4. To postpone to a given time;
5. To refer or commit;
6. To amend.

These motions shall have precedence in the above order. The first three of these motions are not debatable.

**Rule 20.** If a question has been amended, the question on the amendment shall be put first; if more than one amendment has been offered, the question shall be put as follows:

1. Amendment to the amendment.
2. Amendment.
3. Original proposition.

**Rule 21.** When a question is postponed indefinitely, it shall not come up again except by a two-thirds vote.

**Rule 22.** A motion to adjourn shall always be in order, except:

1. When a member has the floor;

2. When members are voting.

**Rule 23.** Before putting a question to vote, the presiding officer shall ask, "Are you ready for the question?" Then it shall be open for debate. If no member rises to speak or the debate is concluded, the presiding officer shall then put the question in this form: "All in favor of this motion say `aye'"; and after the affirmative vote is expressed, "Those of the contrary opinion, say `no'." After the vote is taken, the presiding officer shall announce the result in this manner: "It is carried [or lost] and so ordered."

**Rule 24.** Before the presiding officer declares the vote on a question, any member may ask for a division of the house. The chair is required to comply with this request. A standing vote shall thereupon be taken.

**Rule 25.** When a question has been decided it can be reconsidered only by two-thirds vote of those present.

**Rule 26.** A motion to reconsider must be made and seconded by two members who voted with the majority.

**Rule 27.** A member ordered to be seated three times by the chair without complying shall be debarred from participating in any further business at that session.

**Rule 28.** All questions, unless otherwise provided, shall be decided by a majority vote.

**Rule 29.** The presiding officer of the meeting shall enforce these rules and regulations and may direct that members be removed from the meeting for violation of these rules.

## ORDER OF BUSINESS

1. Opening.
2. Roll call of officers.
3. Reading of minutes of the previous meeting.
4. Applications for membership.
5. Initiation of new members.
6. Communications and bills.
7. Reports of officers, executive board and committees.
8. Unfinished business.
9. New business.
10. Good and welfare.
11. Adjournment.

# INDEX

Agreements, national, regional, 18
Affiliated bodies, 3, 7, 8-9, 13, 16, 18-21, 22-27, 29-31, 34, 36, 40, 42-47, 50
Affiliates Officers and Employees Pension Fund, 42-44
- Contributions, 44
- International Executive Board, 42
- Liability, 44
- Participants, 42-44
- Plan sponsor, 42
- Trustees, 42-44

Affiliations, 7, 20, 36-37, 40, 41
Agency and other fee procedures, 25
Amendments, to Constitution, 46
Appeals, 5, 6, 9-10, 14, 18, 22, 23, 24, 27-28, 32, 36, 39-40, 47, 54
Audit, authority to, 34
Auditors, Board of, 15, 17, 19
- Duties, 15
- Election, 15
- Vacancies, 16

Bill of Rights and Responsibilities in the Union, 39, 48, 50
- Enforcement, 39-40

Bill of Rights and Responsibilities on the Job, 48
Bonding, 22, 26, 30
- Local unions, 30
- Trusteeship, 19

Campaign funds for elections of International and local officers,14
- Canadian officers, 14
- Canadian Dues, 27
- Canadian Unity Fund, 27

Charges and violations, 36-39
Charters, 11, 13, 19, 20, 21, 24, 26-29
- Eligibility, 29
- Issuance, 29-30
- Provisional locals, 30
- Revocation of charters, 28

Collective Bargaining, 7, 9, 18, 19, 23, 27, 34, 50, 52-53
Conferences and seminars, 17
Constitution
- Amendments, 46
- Distribution, 31
- Enforcement, 25, 45
- International, 18, 24-25, 31, 36, 39-40, 45-47, 50, 58, 61-62
- Local union, 9-11, 31-33, 36-37, 39, 41, 51, 58
- Priority of International, 31

Convention, International, 10-13, 14, 15, 16, 17, 19, 21, 23, 24, 25, 26, 39, 41, 46

Alternate delegates, 12
Appeals, 39
Convention call, 12
Credentials, 10-11
Credentials Committee, 13
Delegates, 10-13
Dual representation barred, 11
Eligibility of delegates, 10
Eligibility of Local Unions, 11
Exclusions, 11
Frequency of, 10
Officers, full-time International officers, 10-11, 13, 14
Order of business, 13, 65
Protests, election of delegates, 12
Quorum, 13
Representation, 10-11
Retired members, 11
Rules, interim, 13
Resolutions, 13
Special, 10
Votes, 11, 12, 13
Coordinated bargaining process, 18
C.O.P.E., 26, 35-36

Death gratuity payments, 26, 41
Debate, rules of, 63-65
Delegates, *See convention, International*
Discrimination forbidden, 10
Dispute, membership, 9
Dissolution, 29, 46-47
International Union, 46-47
Local Union, 29
Dues, 9, 11, 26-28, 30, 31, 32-33, 47
Definition, 28
Due date, 28
Good standing, 11-12, 28, 30-31, 36
Life members, 26
Local, 32-33
Minimum, 32, 33
Canadian, 33
U.S., 32
Percentage, 32
Retired members, 26-27, 31, 32-33
Schedule for increases, 32
Waiver, 32-33

Elections, 13-16, 30-31
Canadian Board Members, 14
Financial, in-kind support, 13-14

Eligibility of candidates, *see Eligibility*
Exclusions, 16
International Officers, 13-14
Limitations on running for office, 15-16
Local officers, 30-31
Proxy and write-in ballots, 15-16
Waivers of eligibility, 31
Nomination procedures, 13
Protests, 14
Qualifications, 15-16
Eligibility, 9, 10, 15-16, 30-31, 41, 58
For delegates, 10, 41
For Ethics liaisions, 58
For membership, 9
For International Union office, 15-16
For Local Union office, 30-31
Ethical behavior, 49, 62, 63
Ethical culture , 49–50, 57, 58
Ethics, 49
Accountability, 49, 56
Annual Report, 57
Benefit Funds, 54-55
Code, 49
Applicability of, 50–51, 54, 55
Complaints, 58-60
Bad faith, 59
Failure to cooperate, 59
Handling of, 58-59
Jurisdiction over, 59-60
Submission of, 58
Confidentiality, 58, 60
Covered Individuals, 50
Disclosure, 51, 53, 55, 57, 60
Disqualification, 51, 55
Duty, 49, 51, 52, 56
To members, 49
Fiduciary, 49, 52
Enforcement, 50, 57-60
Ethics Liaison, 58, 61
Ethics Officer, 57, 58-60
Referral to, 60
Review by, 60
Ethics Ombudsperson, 57, 58 -59
Loans, 54
Other Sources of Authority, 50
Payment and Gifts, 53-54
Perishable item, 53
Prohibited Interests and Transactions, 52-53
Self-dealing, 53

Relationships, Family and Personal, 55-57
Supervisory, 56
Related Organizations, 54-55
Retaliation, 61
Stewardship, 49, 56
Third Parties, 54
Whistleblower, 60-61

Executive Board, International, 9-10, 11, 12, 13-17, 18, 20, 21, 22-25, 26, 27, 28, 29, 30, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42-44, 45, 57
Affiliates Officers and Employees Pension Fund, 42-40
Affiliations, 24, 40
Agency and other fee procedures, 22
Appeals, 9-10, 14, 22
Authority, 22-25
Bonding, 22
Charters, 29-30
Constitutional authority, 25
Delegation of powers, 23
Duties, 10-11, 22-25
Eligibility for office, 15-16
Executive Committee, 15
Expenses, 22-23
Financial matters, 23-24
Grievances, right to present, 22
Initiation of meetings, 22
Jurisdiction, 24, 29
Legal action, 23
Liability, 25
Meetings, 22
Mergers, 30
Notification of Local Unions, 22
Polling by International President, 22-23
Quorum, 22
Reports, 15
Retired Board Member, 15-16
Retired Members Advisory Committee, 16
Self-employed individuals, 9
Term of office, 14-15
Trials and appeals, 36-40
Vacancies, 16-17
Executive Committee, 15
Executive Vice Presidents, International, 14, 17, 18, 22

Four-year political fund, 26
Fundraising, permission to conduct, 24

Hearing officers, 20, 30, 35, 38, 39

Initiation fee, 26, 29, 30
Initiation ritual, 61
Installation obligation, officers, 62-63
Interests of members safeguarded, 8, 17, 19, 30, 36, 38, 48, 49, 51, 52
Intermediate bodies, 7, 8, 40-41
  Affiliations, 7, 8, 40-41
  Bylaws, 40-41
  Compensation, 41
  Councils, area, regional, or industry, 7, 8, 40-41
  Delegates for conventions, 41
  Dissolution, 46-47
  Enforcement of International Constitution, 40-41
  Executive Board functions, 14, 40
  Finances, 40-41
  Local central bodies, 40-41
  Voting by Local Unions, 40-41
Internal Needs Hearing, 20
International Union, 5-10, 26-30, 45-46
  Activities of, 7-8
  Authority of, 8
  Goals, 5-8
  Jurisdiction, 8-10,
  Litigation, 45-46
  Name, 7
  Non-liability, 45-46
  Organization of, 7
  Objects and purposes, 7-8
  Revenue, 26-29
Jurisdiction, 8-10
Justice, 5, 6, 7, 8, 34, 49, 63
  Economic, 5, 6, 7, 34, 49, 63
  Environmental, 6
  Immigrant, 6
  Racial, 6, 63
  Social, 5, 6, 34, 49

Litigation and liability, 25, 27, 34, 44, 45-46
  Authority to defend, 45
  Limitation of liability, 44, 45-46
  Non-liability, 45-46
  Service of process, 46
Local Unions, 7-10, 26-29, 30-36, 36-40, 42-44, 45, 46-47
  Affiliates Officers and Employees Pension Fund, 42-44
  Audit, 29, 34
  Bonding, 30
  Collective bargaining agreements, 34
  Constitution, *see also Constitution, Local Union*
    Approval by International Union, 31
    International Constitution prevails in dispute, 31

Delegates to Convention, 10-13
Alternate delegates, 12
Eligibility, 10-11
Protests of election, 12
Dissolution, 46-47
Dues, *see Dues*
Duties, 30-36
Average Wage Reporting, 29
C.O.P.E., 35-36
New Strength Unity Standard, 35
Reporting, 28-29
Election of officers, *see Elections*
Eligibility for membership, *see Eligibility*
Enforcement of International Constitution, 45
Executive Board, 10-11
Good standing, 11-12, 28, 30
Litigation, 45-46
Meetings, 31
Names and addresses, of members and officers, 28-29
Per capita tax, 26
Political Education and Action Program, *see C.O.P.E.*
Records, 29
Retired members, 11, 26, 31, 32, 33
Self-employed individuals, 9
Transfers, 36
Use of International Union name for fundraising, 34
Withdrawal cards, 34
Manual of Common Procedures, 61-65
Debate 63-65
Initation ritual, 61
Membership obligation, 61-62
Officers' obligation, 62-63
Order of business, 65
Member Bill of Rights, *see Bill of Rights*
Membership, 8-10
Categories authorized, 9
Disputes, 9-10
Eligibility, 9
Obligations, 39, 47-48, 61
Transfers to another local, 36
Mergers, 24, 30, 42
Local Unions, 30, 42
Other labor organizations, 24, 42
Mission statement, 5-7
Monitor, 20-21

Name, International Union, 7, 34
Non liability of International Union, 45-46

Objects and purposes, 7-8
Officers, International Union, 13-16, 17-22, *see also President, Secretary-Treasurer, Vice Presidents*
  Compensation, 18
  Duties, 14-15
  Election, 13-14
  Eligibility, 15-16
  Emeritus status, 16
  Executive Board, 14
  Executive Committee, 15
  Term of office, 14-15
  Vacancies, 16-17
Order of business, 13, 65
Organizing, 7-9, 17-18, 26-27, 30, 32-35, 46-47, 62
  Account, 35
  Budget, 35
  Committee, 9, 18, 26-27, 30, 32-33, 46
  New forms of, 7, 8
Original jurisdiction, 38, 59, 60
Outreach, 25

PACs, 34-35
Payments in connection with deaths of members, 41
Pension fund, *see Affiliates Officers and Employees Pension Fund*
Per capita tax, 26-28, 29
  Canada, 29
  Canadian Unity Fund, 27-28
  Due date, 28
  Good standing, Local Union, 28
  Local obligations, 28-29
  Priority of, 28
  Retired members, 26
  Unity Fund, 27
Political Education and Action Program, *see C.O.P.E.*
President, International, 9, 10, 12, 13, 14-21, 21-22, 25, 26, 28, 29, 30, 31, 32, 33, 34, 35-36, 38, 40-41, 45, 46, 57, 59, 60
  Agreements, 18
  Appeals to, 18-19
  Appointment of delegates to other labor organization functions, 19
  Assistance to Local Unions, 20
  Authority, responsibility,17-21
  Conventions, 10-13, 17, 21
  Coordinated bargaining process, 18
  Deciding vote, 17
  Disputes, 9-10, 18, 19-20, 38-39
  Duties, 17-21
  Election protests, Local Unions, 14
  Eligibility for office, 15-16

Emeritus status, 16
Finances, 19, 30
Judicial powers, 18-19
Lockouts, 25
Master agreements, 17-18
Member complaints, 18
Organizing, 17-18, 30
Original jurisdiction, 38
Powers, 17-21
Questions of law, 18
Staff, 18
Strikes, 25-26
Subsidies, 18
Term of office, 14-15
Trials and appeals, 38-39
Trusteeships, 19-20
Vice Presidents' salaries, 18
Waivers, 28, 31, 32, 33, 40, 42

Racism, 5, 6, 7, 63
Anti-Black, 7, 63
Structural, 5, 6, 7
Equality, 63
Records, books, maintenance of, 15, 19, 21-22, 29, 34, 35, 43
Retired Board Member, 14
Retired Members Advisory Committee, 16
Retired Members, 9, 11, 14, 15, 16, 17, 26, 31, 32, 33
Revenue of International Union, 26-29
Authority to adjust per capita, 26
Definitions of "member" and "dues," 28
Dues, 26, 27, 28, 29, 32
Per capita tax, 26-29
Priority of per capita payment, 28
Reporting requirements and examination of Local Union records, 29
Special funds, 26-27 (see individual listings)

Savings provision, 47
Secretary-Treasurer, International, 12, 13, 14, 15, 16, 19, 20, 21-22, 23, 27, 28, 29, 30, 32, 35, 37, 38, 39, 45, 53, 57
Charters, seal, 21, 29
Convention proceedings, 12, 13, 21
Duties, 21-22
Eligibility for office, 15
Expenditures, 21
Records, 21
Report to convention, 21
Safeguarding of moneys, 21
Trials and appeals, 36-37, 38, 39

Self-employed individuals, 9
Strike and Defense Fund, International, 26-27
Strikes and lockouts, 25

Temporary Transition Plan, 16
Transfers, 36
Trials and appeals, 36-40
  Against a Local Union or officer of International Union, 36-37, 38
  Appeals, 39-40
  Charges, 36-37, 38
  Charge must be specific, 37
  Decisions, 37-38, 39
  Exhaustion of remedies, 39
  Filing of charges, 37
  Hearing held by International Executive Board, 38
  Original jurisdiction, 38
  Penalties, sanctions, 37, 39
  Presidential authority, 33, 34
  Procedures, 37, 38-39
  Suspension of local union officers, 38
  Time period for filing charges, 37
  Trial body, 37, 38
Trusteeship, 19-20
  Emergency, 20
  Hearing prior to, 20
  Power of trustee, 19
  Procedure, 20

Unity Fund, 27
  Canadian, 27-28

Vacancies, filling of, 16-17
Vice Presidents, International, 14-15, 17, 18, 22, 24
  Compensation, 18
  Duties, 15, 22
  Election, 14
  Executive Committee, 14-15
  Vacancies, 17

Withdrawal cards, 28, 34, 36




**MARY KAY HENRY**
International President

**GERRY HUDSON**
International Secretary-Treasurer

**NEAL BISNO**
International Executive Vice President

**LUISA BLUE**
International Executive Vice President

**HEATHER CONROY**
International Executive Vice President

**SCOTT COURTNEY**
International Executive Vice President

**LESLIE FRANE**
International Executive Vice President

**VALARIE LONG**
International Executive Vice President

**ROCIO SÁENZ**
International Executive Vice President

28093ml9.6.16

# EXHIBIT 7(a)

## (Nevada Service Employee Union Member Alfredo Serrano Statement)

Gmail Michael Mcavoyamaya <michael.mcavoyamaya@gmail.com>

# Fwd: Trusteeship Statement

3 messages

[redacted]@gmail.com> Sun, May 7, 2017 at 5:47 PM
To: Michael Mcavoyamaya <michael.mcavoyamaya@gmail.com>

---------- Forwarded message ----------
From: **Cherie Mancini** <hellcat66@att.net>
Date: Sun, May 7, 2017 at 12:11 PM
Subject: Fwd: Trusteeship Statement
To: [redacted]@gmail.com>

Here you go Steve

Sent from my iPhone

Begin forwarded message:

> **From:** tfjas@aol.com
> **Date:** May 7, 2017 at 9:12:18 AM PDT
> **To:** Cherie Mancini <Hellcat66@att.net>
> **Subject: Trusteeship**
>
> Cherie,
> I'm reaching out to you to let you know that I am truly disappointed with the locals decision to remove you from office. I have seen many charges filed in this local which held worse consequences where the penalty was not anywhere as severe as this. The actions you took at UMC were completely understandable with the language that was being put in the contract. Perhaps you could have done things differently but in every case, intent should hold high consideration. Even in the words of the hearing officer, the consequences to the chapter were your true concern. My inclination was that they felt they needed to wipe out the slate and start over and removing you was the start of it.
> I felt that the hearing officers statements regarding the members and leaders of the locals requests for trusteeship was not complete. I attended the hearing and my feeling at the time was that the majority who spoke admitted we had issues but said that they did not feel a trusteeship was in order nor was it what they wanted. She only placed two examples in her recommendations and these were from members who have been swayed far to one side. My statement certainly was not in support of Trusteeship.
> I had no idea that our association agreement did not allow for the international to trustee us. My understanding was that we had never been threatened with trusteeship because in order to trustee, there had to be some egregious act of financial corruption, embezzlement or something of this nature. I was certain going into this meeting that this was not going to be the case.
> The fact that we were going to vote on this never occurred to me and I was quite unprepared for it. The internationals reasoning for an emergency trustee ship were issues that have been going on in our local for ages. It was simply a matter of different players in this instant. How is this now an emergent nature and something that we needed to decide immediately?
> There was opportunity for questions but the answers were given by the same people who's intention was to come here and accomplish the task of taking over the local. Of course the answers will be formulated in favor of their desire. I felt that I did not even know enough about

trusteeship to even know what questions I should ask. One member requested that we hold off the vote as she wanted to do more research. I was not certain that this would make a difference but when it came down to voting, I abstained. Not so much because more information was needed but also because I did not feel I clearly understood the intent of the international at this point without more non prejudice information about how trusteeship works. I specifically asked for other options if we did not feel a trusteeship was in order and I was not given any other options. The vote itself was rushed in the end as there were two members of the board who needed to leave.
A statement was made that the reason nothing has worked in the past was because when the international sent people in to help in the past, they had no say as there was a president in place who had the final say. This makes it clear to me that they had moved to take you out of your position with this trusteeship in mind. I'm truly sorry it worked out this way.
I have to tell you, as unsure as I am about the international's intent and the fact that I also had my authority as a Trustee removed, I will continue to work to do all in my power to assure that our members are represented by a union who's priority is to protect the workers. I wish you the best and I'm truly sorry for how things turned out.

Sincerely,

Alfredo Serrano
Steward SEIU Sunrise Chapter.
Past VP Sunrise Chapter
Past Trustee SEIUNV 1107

Sent from my iPad

---

**Michael Mcavoyamaya** <michael.mcavoyamaya@gmail.com> Sun, May 7, 2017 at 7:32 PM
To: [redacted]@gmail.com>

[Quoted text hidden]

**RETAINER AGREEMENT.docx**
15K

---

**Michael Mcavoyamaya** <michael.mcavoyamaya@gmail.com> Sun, May 7, 2017 at 10:14 PM
To: [redacted]@gmail.com>

[Quoted text hidden]

**Affidavit in support.doc**
48K

# EXHIBIT 7(b)

## (Nevada Service Employee Union Member Debbie Springer Statement)

Gmail Michael Mcavoyamaya <michael.mcavoyamaya@gmail.com>

# Fwd: Statement

1 message

[redacted]@gmail.com> Sat, May 6, 2017 at 10:55 PM
To: Michael Mcavoyamaya <michael.mcavoyamaya@gmail.com>

Here's a witness statement. More to come.

---------- Forwarded message ----------
From: **Cherie Mancini** <hellcat66@att.net>
Date: Sat, May 6, 2017 at 7:07 PM
Subject: Fwd: Statement
To: [redacted]@gmail.com

Sent from my iPad

Begin forwarded message:

**From:** DSpringLV@aol.com
**Date:** May 6, 2017 at 7:05:00 PM PDT
**To:** hellcat66@att.net
**Subject: Statement**

Statement of Debbie Springer

I attended the Executive Board meeting on April 26, 2017. I felt blindsided at the E-Board meeting, even though the representatives for the International did an adequate summation of the reasons and there was opportunity for the E-Board to ask questions. There seemed to be only one solution that was put forward. That was Trusteeship of the Local union. Members of the E-Board expressed the issues with trust of the International. Someone mentioned that we needed time to digest this information. I believe the phrase was “you just cut off our head”, we need time to process this. Other individuals asked if there were any other solutions (i.e. plan b or plan c). Basically, the International was not forthcoming on any other solution. It felt like there was only ONE solution that night. Did the Local have some internal problems? Yes. Were they insurmountable? No. I remember the last Administration (under Martin Basick) the International came in and had a retreat for the whole E-Board to “work out the problems” and right the ship. Makes me wonder why that approach was taken. I just think that other solutions could have been tried months ago. I think we went to the most drastic solution without going through the steps.

# EXHIBIT 7(c)

## (Nevada Service Employee Union Board Member Sharon Durisseau Statement)

Gmail Michael Mcavoyamaya <michael.mcavoyamaya@gmail.com>

# Fwd: International SEIU

1 message

[redacted]@gmail.com> Mon, May 8, 2017 at 11:08 AM
To: Michael Mcavoyamaya <michael.mcavoyamaya@gmail.com>

Here is a statement from a board member who voted in favor of the Trusteeship.

Sent from my iPhone

Begin forwarded message:

**From:** Cherie Mancini <hellcat66@att.net>
**Date:** May 8, 2017 at 11:01:28 AM PDT
**To:** [redacted]@gmail.com>
**Subject: Fwd: International SEIU**

Here is another and she votes yes

Sent from my iPhone

Begin forwarded message:

**From:** Sharon Durisseau <sharondurisseau@yahoo.com>
**Date:** May 8, 2017 at 10:37:46 AM PDT
**To:** Hellcat66@att.net
**Subject: International SEIU**

Sent from my iPhone

Hi Cheri I'm still in shock how things were handled at our last E-Board meeting. I ask myself is this what a union is all about? Because I thought a union always makes sure that employees are treated fairly and not mistreated. In my opinion I thought the process was handled very poorly on the International part. What ever happened to steps that an employer suppose to take before removing someone from their jobs? As a union I thought even the local Union was supposed to do the same also. I was very disappointed at what happened. Basically they didn't give you a chance. They literally threw you out with no questions asked and didn't even ask us as members how we would like to have handled it. I feel like as a member of the board and as active dues paying members we also have rights but that was shut off. On that night we basically was told what to do without a choice and that's scary. I know things could be fixed but how can you if people are shutting you down and now us all like we don't make up the union. I feel like on that night at the meeting I was pressured into something that was not right basically saying that we didn't have a choice at the time, we could not leave that night without voting for the International to take over. I felt like if I didn't we would not have a union anymore. So now our members are scared and don't know who to trust. I know I can't trust them

because look at what they did to you and if anyone was strong for our local it was you. Please lets take a stand and join together and show what togetherness really is.

Stand Strong Together

Sharon Savoy-Durisseau
VP St. Rose Chapter

**MOT**

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiffs

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * * *

| | |
|---|---|
| RAYMOND GARCIA, as a member, and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka SEIU 1107, a non-profit cooperative corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; MARY K. HENRY, in her official capacity as Union President; EXECUTIVE BOARD OF THE NEVADA SERVICE EMPLOYEES UNION, in official capacity; STEVE URY, individually; DOES; and ROE CORPORATIONS 1-20, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION ON ORDER SHORTENING TIME** |

COMES NOW,, RAYMOND GARCIA, as a member and representative of the CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYES UNION aka SEIU 1107, by and through his attorney of record, MICHAEL MCAVOYAMAYA, ESQ., hereby moves this Court for a permanent injunction, pursuant to NRCP 65, NRS 33.010 et seq., granting the following relief against Defendants SERVICE EMPLOYEES INTERNATIONAL UNION, CTW, CLC/MARY K. HENRY, as well as their officers, agents, servants and employees, and all persons in active concert or participation with them:

- Enjoining and restraining Defendants from further directing, managing, and controlling the affairs of the Nevada Service Employees Union, or interfering with the Local Union's right of self-governance, and for an order mandating that the trustee immediately restore all property, rights, powers and control of the Local Union to the Board.

This motion is made and based upon the complaint on file herein, the memorandum of points and authorities submitted herewith, and the affidavits and exhibits attached hereto.

Dated this 9th day of May, 2017.

/s/ Michael Mcavoyamaya, Esq.

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray,
Las Vegas, Nevada, 89121
(702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiff

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the undersigned will bring the foregoing **PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION** on for hearing on the day of ___ day of May, 2017, at the hour of _______, or as soon thereafter as counsel may be heard in Department ____.

DATED this ___ day of May, 2017.

/s/ Michael J. Mcavoyamaya, Esq.

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No. 014082
4539 Paseo Del Ray,
Las Vegas, Nevada, 89121
(702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiff

**ORDER SHORTENING TIME**

Based on the above Declaration of Counsel, and finding that good cause exists to shorten the time of the hearing of the above Motion,

IT IS HEREBY ORDERED, that the hearing of Plaintiffs' Motion for Preliminary Injunction be shortened and scheduled for hearing before the above-entitled Court on the ___ day of May, 2017, at the hour of _______ a.m./p.m. of said day, or as soon thereafter as counsel may be heard.

DATED this ____ day of May, 2017.

_________________________________
DISTRICT COURT JUDGE

**DECLARATION OF MICHAEL J. MCAVOYAMAYA, ESQ. REGARDING NOTICE, AND IN SUPPORT OF PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF ON AN ORDER SHORTENING TIME**

STATE OF N EVADA )
) ss
COUNTY OF CLARK )

I, MICHAEL J. MCAVOYAMAYA, ESQ. do hereby swear, under penalty of perjury, that the following assertions are true to the best of my knowledge and belief:

1. I am an attorney licensed to practice law in the State of Nevada and am counsel for Plaintiff, RAYMOND GARCIA, and the NEVADA SERVICE EMPLOYEES UNION (hereinafter, the "Local Union").

2. This Declaration is offered pursuant to EDCR 2.26, and NRCP 65 in support of Plaintiffs' Application for Temporary Restraining Order With Notice and Motion for Preliminary Injunction and Order Shortening Time.

3. I declare and certify that on May 8, 2017, I contacted the offices of the Nevada Service Employees Union to attempt to give notice to Trustee Louisa Blue and Deputy Trustee Martin Manteca of the filing of the above Temporary Restraining Order. I left a message with the receptionist and was told that one of the trustees would get back to me.

4. On May 9, 2017, I sent a copy of the Verified Complaint and Application for Temporary Restraining Order and a copy of the Motion for Permanent Injunction on an Order Shortening Time the International Union's retained counsel, Glenn Rothner, Esq., of Rothner Segall, & Greenstone and informed them of Plaintiffs' intent to seek temporary restraining order and preliminary and permanent injunction against Defendants.

5. Mr. Rothner requested that I wait to file the Complaint until they could speak with local counsel, which they later informed me was Evan James, Esq., of Christensen James & Martin. I spoke with Mr. James and provided notice of Plaintiffs' intent to seek temporary restraining order against Trustee Luisa Blue, and the other Defendants.

6. As such, Plaintiffs' Ex Parte Application for Temporary Restraining Order is made with notice to Defendants' counsel in this matter.

7. Plaintiff seeks a temporary restraining order enjoining and restraining Defendants from terminating the employment of Peter Nguyen, the lead negotiator on the pending collective bargaining agreement, and replacing him with Michael Urban, Esq.

8. Plaintiff further seeks this Court's order enjoining Defendants from further directing, managing and controlling the Local Union's affairs, making hiring and appointment decisions, or participating in negotiations on behalf of the Local Union in violation of the Contract and the Local Union's Constitution.

9. Plaintiff further seeks an order mandating that Defendants restore all property, rights, powers, and control of the Local Union to the Board to permit the Board to reinstate democratic self-governance in accordance with the Contract, the Local Union's Constitution, and Nevada law.

10. In order to mitigate irreparable harm to Plaintiffs, pursuant to Defendants' unlawful, fraudulent conduct, Plaintiffs respectfully request that this Court grant an Order Shortening Time for hearing on the instant motion.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 9th day of May, 2017.

/s/: Michael J. Mcavoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray,
Las Vegas, Nevada, 89121
(702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

On July 1, 1987, the Local Union entered into a valid, binding "Affiliation Agreement" (hereinafter the "Contract") with the International Union setting out the terms of association. Under Paragraph 18 of the Contract, the International Union expressly waived "[t]he provisions of Article VIII, Section 7(a-f) and Article XII, Section 3 of the SEIU Constitution regarding trusteeship . . . except for the purpose of enforcing this agreement pursuant to Paragraph 21 below or with the approval of the PEA Board of Representatives." See Affiliation Agreement, attached as **Exhibit "1,"** at 9.

On October 29, 2016, the President of the International Union, Mary K. Henry ("Ms. Henry"), upon receipt of numerous complaints from members of the Local Union, ordered a hearing to determine the validity of charges against members of the Board. International Vice President, Carol Nieters, was appointed as hearing officer.

On April 26, 2017, Ms. Neiters submitted a Report and Recommendation that Cherie Mancini and Sharon Kisling be removed from their respective positions as President and Vice President of the Local Union for charges stemming from the complaints of Local members. Ms. Neiters also recommended that, based on circumstances presented at the hearing, the imposition of an emergency trusteeship was justified. See Neiters Report and Recommendation, attached as **Exhibit "2,"** at 2. That same day, Ms. Henry sent out a letter to the Local Union's members informing them that she was invoking her power as the International Union's President to remove Ms. Mancini and Ms. Kisling from their positions as President and Vice President of the Local Union pursuant to the International Union Constitution Article XVII, Section 2(f). Ms. Henry further informed the members that she was sending "International Executive Vice President Neal Bisno and Deputy Chief of Staff Deedee Fitzpatrick to attend the Local Union's Executive Board meeting" scheduled that evening, April 26, 2017, and that she would be taking Ms. Neiters's

recommendation that the Local Union be placed into emergency trusteeship "under advisement." See Henry Letter, attached as **Exhibit "3,"** at 2.

That evening, the Board of the Local Union met in a closed session meeting with Mr. Bisno, Mr. Fitzpatrick, and the International's Associate General Counsel Steve Ury (collectively as the "International Officers") at the request of the International Officers. Due to the lack of notice of the hearing, only twenty-nine (29) of the forty (40) active Board members were able to attend the meeting. Mr. Ury and the other International Officers advised the Board that because the Local Union's Constitution did not contain provisions for what to do in the event that the President and Vice President positions were simultaneously vacant, they had no choice other than to request the International Union place them into a Trusteeship. See Board Member Statements, attached as **Exhibits "7(a-c)."** Believing there was no other option to move forward, based on the representations Mr. Ury and the other International Officers in their official capacity as agents and representatives of the International Union, the Board voted to request that the International Union place the Local Union into Trusteeship. Id. The vote passed with seventeen (17) voting "yes," seven (7) voting "no," and five (5) abstaining. Id.

On April 28, 2017, Ms. Henry entered and disseminated an "Order of Emergency Trusteeship" to the Local Union "[p]ursuant to [her] authority under Article VIII, Sections 7(a) and 2(f), of the SEIU Constitution and Bylaws." See Trusteeship Order, attached as **Exhibit "4,"** at 1; see also International Constitution, attached as **Exhibit "6,"** at 19-21. The managing staff of the Local Union were told by the Trustee, Lousia Blue, to stay home that day. The Local Union's operations have ceased since the date of the trusteeship.

On May 1, 2017, the Trustee canceled a contract for employment of a staff member who was scheduled to start work that day. On May 4, 2017, the Trustee terminated the employment of the Local Union's finance and communications directors. On May 8, 2017, the Trustee announced that the lead negotiator for the pending collective bargaining agreement with the County would be replaced by Michael Urban, Esq., the Local Union's prior negotiator whose

services were terminated due to excessive fees in excess of $500,000, and inability to negotiate agreements in a satisfactory time period, taking two (2) years to negotiate the existing contract.

The Local Union's current collective bargaining agreement expires on June 30, 2017, and if negotiations are not finalized by that date, the Local Union's current collective bargaining agreement will expire, and the members of the Local Union will have their employment contracts terminated. If the new agreement is not finalized in time, the County is barred by law from providing any members of the Local Union with compensation or benefits. See Senate Bill 241 (2015), at 6. The members of the Local Union involved in the negotiations have since expressed concern over the Trustee's ability to effectively negotiate the new agreement before the June 30, 2017 deadline, as it has yet to be finalized and must still go through the approval process of the Clark County Labor Board. Further, illegality of the International Union's coercive tactics, lack of notice regarding the trusteeship hearing, and misrepresentations made to the Board regarding the necessity of the emergency trusteeship, which relinquished all control of the Local Union to the International Union, necessitates this temporary restraining order and preliminary and permanent injunction.

Without granting Plaintiffs' instant request for a Preliminary Injunction, Defendant will continue to control the Local Union's property affairs in violation of the Contract and the Local Union Constitution, refuse to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, violating local union law, and dissipating local union funds without accounting, and will continue make hasty, uniformed decisions that pose immediate and irreparable harm to the Local Union's members. This Motion for Permanent Injunction follows.

## II.

## ARGUMENT

This Court should issue a Temporary Restraining Order and Preliminary Injunction enjoining Defendants from breaching the terms of this Employment Agreement because: (1) Plaintiffs are likely to succeed on the merits of this case; (2) Plaintiffs are currently and will continue to suffer irreparable harm if Defendants are not enjoined from further controlling and

directing the Local Union; (3) the Plaintiffs' interests outweigh the Defendants; and (4) Plaintiffs' request for injunctive relief is in the public's interest. Each will be discussed in detail below.

**A. Standard Of Review.**

> NRS 33.010, injunctions may be granted:
> 1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.
>
> 2. When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.
>
> 3. When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

Nev. Rev. Stat. 33.010.

The Nevada Supreme Court has long held that injunctive relief is available to prevent irreparable injury to a business or proprietary interest. See Sobol v. Capital Management Consultants, Inc., 102 Nev. 444, 446,726 P.2d 335, 337 (1986) (holding that plaintiff was entitled to preliminary injunction to enjoin conduct that caused damage to business and profits); Guion v. Terra Marketing of Nerada, Inc., 90 Nev. 237, 240, 523 P.2d 847, 848 (1974) (affirming order granting preliminary injunction to protect business and proprietary interests).

This Court is vested with the power to issue injunctive relief pursuant to NRCP 65, NRS 33.010, and NRS 600A.040. Interpreting NRS 33.010, the legislative authority for injunctive relief, the Nevada Supreme Court has held that "[a] preliminary injunction is available if an applicant can show a likelihood of success on the merits and a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damage is an inadequate remedy." Dangberg Holdings Nevada, L.L.C. v. Douglas County, 115 Nev. 129, 142, 978 P.2d 311, 319 (1999) (affirming order granting a preliminary injunction); Pickett v. Comanche Construction, Inc., 108 Nev. 422, 426, 836 P,2d 42, 44 (1992) (holding that district court abused its discretion in denying injunctive relief). Importantly, the mere availability of a legal remedy

does not bar injunctive relief. See Nevada Escrow Service, Inc. v. Crockett, 91 Nev. 201, 203, 533 P.2d 471, 472 (1975) (reversing the district court and holding that plaintiff was entitled to a preliminary injunction). The legal remedy must be sufficient and must not be rendered inadequate by a far superior equitable remedy. Id.

The Nevada Supreme Court has long held that "if the injury is likely to be irreparable, or if the defendant be insolvent equity will always interpose its powers to protect a person from a threatened injury." Champion v. Sessions, 1 Nev. 478, 483 (1865) (emphasis added). Moreover, injunctive relief may be of either a mandatory or prohibitive nature and is properly issued where "it is essential to preserve a business or property interest." Guion v. Terra Marketing of Nevada, Inc., 90 Nev. at 240, 523 P.2d 420; City of Reno v. Matley, 79 Nev. 49, 60, 378 P.2d 256 (1963).

Finally, "[t]he decision whether to grant a preliminary injunction is within the sound discretion of the district court whose decision will not be disturbed on appeal absent an abuse of discretion." See Dangberg v. Holdings, 115 Nev. at 142-43, 978 P.2d at 319.

Moreover, NRCP 65(c) requires that security be provided before the issuance of an injunctive relief. The amount of the security is left to the discretion of the district court. In this matter, Plaintiff requests this court order a modest security because Defendant will not suffer any harm of any nature if they are enjoined from continuing to engage in the wrongful actions set forth herein.

As demonstrated below, Plaintiff has satisfied each of the pre-requisites for injunctive relief; therefore, Plaintiffs' motion for preliminary injunction should be granted.

**B. Plaintiff Possesses a Reasonable Likelihood of Success on the Merits of its Claims.**

The Nevada Supreme Court held a "preliminary injunction is available if an applicant can show a likelihood of success on the merits and a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damages is an inadequate remedy." Dangberg Holdings Nevada, L.L.C. v. Douglas County, 115 Nev. 129, 142, 978 P.2d 311, 319, (1999), citing N.R.S. 33.010. Here, Defendants have breached the Contract of affiliation with the Local Union, made fraudulent/negligent misrepresentations of fact to the Local Union's Board to usurp control of the Local Union, engaged in attorney malpractice

and the unauthorized practice of law in Nevada, and clearly breached the fiduciary duty owed to the Local Union. The language of the Contract and the Local Constitution is clear and unambiguous, which is why the International Union resorted to deception to usurp power and independent democratic control of the Local Union from the Board. Because there is a high likelihood of success of Plaintiffs' case on merits, a permanent injunction is warranted.

**C. Plaintiffs Have Suffered And Will Continue To Suffer Irreparable Injury If Defendant Is Allowed To Continue To Exercise Control Over The Local Union.**

The Nevada Supreme Court concluded that "acts committed without just cause which unreasonably interfere with the business or destroy its credits or profits, may do an irreparable injury and thus, justify the issuance of an injunction." Guion v. Terra Marketing of Nevada Inc., 90 Nev. 237, 240, 523 P.2d 847 (1974) citing Tappan Motors, Inc. v. Waterbury, 65 Misc.2d 514, 318 N.Y.S.2d 125 (1971). Judicial intervention to prevent irreparable injury is warranted where "**the management in control of a labor union refuses to obey the laws of the union requiring that elections be held, or where it arbitrarily expels members from the union roster in violation of union law, or where it dissipates union funds without accounting, and where redress for any of these irregularities cannot be obtained through constituted local or international officials.**" Hickman v. Kline, 71 Nev. 55, 68, 279 P.2d 662, 669 (Nev. 1955) (emphasis added).

Here, Defendants' acts to gain unfettered control over the Local Union were in breach of the Contract, and the Local Union Constitution was without just cause. The Local Union Constitution provides for a special election for Executive Vice President who would then take the position of President and hold a second special election. See Local Constitution, attached as **Exhibit "5,"** at 40. Defendants' misrepresented facts regarding the Local Union Constitution, and failed to apprise the Board of the express waiver of the involuntary trusteeship Provisions of the Local Union. The Defendants' misrepresentations induced the Board to request the International Union impose a trusteeship over the Local Union in a closed Board meeting in contravention of the Local Union Constitution and the Contract of affiliation. The Trustee, Louisa Blue, is now in control of the union and **refuses to obey the laws of the union requiring that elections be held,**

**has arbitrarily expelled staff members from the union, and has dissipated union funds without accounting from the Board, and redress for these irregularities cannot be obtained through constituted local or international officials**. Further, Defendants' acts have unreasonably interfered with the Local Union's business, i.e.: collective bargaining negotiations between the Local Union and Clark County, posing risk of an immediate and irreparable injury to the Local Union's members. As such, a permanent injunction is warranted.

**D. Plaintiffs' Interests Outweigh Defendants' Interests.**

In determining whether injunctive relief should be granted to prevent a multiplicity of suits, the court should consider the facts and circumstances of the particular case and not overlook the "balance of convenience" rule. See, Home Fin. Co. v. Balcom, 61 Nev. 301, 127 P.2d 389, 396, (1942). Pursuant to Clark County School Dist. v. Buchanan, 112 Nev. 1146, 924 P.2d 716, (1996), "The district court may also weigh the public interest and the relative hardships of the parties in deciding whether to grant a preliminary injunction." (Internal cites omitted.) Id. Further, "the right of local self-government in a [collective bargaining] association such an association as this, then, is one in which the public has interest." Hickman v. Kline, 71 Nev. 55, 68, 279 P.2d 662, 669 (Nev. 1955)

Here, the hardship to Plaintiff is far greater than the hardship to Defendants. The International Union's actions were supposedly to be for the benefit of the Local Union. Removing the Local Union from trusteeship and granting democratic control of the Local Union back to the democratically elected Board does no harm to the International Union. Because the Local Union represents Clark County employees, this matter is of significant public interest, as is the right of a nonprofit collective bargaining organization's right to local democratic governance. Id. As such, injunctive relief is warranted.

**E. Plaintiffs' Request For Injunctive Relief Is In The Public's Best Interest.**

Generally, the public will have an interest in the outcome of private litigation and the court may consider that interest in granting or in refusing to grant injunctive relief. Ellis v. McDaniel, 95 Nev. 455, 596 P.2d 222 (1979). "The right of local self-government in [a employee collective

bargaining] association as this, then, is one in which the public has interest." Hickman v. Kline, 71 Nev. 55, 68, 279 P.2d 662, 669 (Nev. 1955).

In Hickman, an international union imposed a trusteeship on a local union pursuant to authority of a section of the international union's constitution that provided for involuntary trusteeship in the event of Local Union officer misconduct. Id. at 644. The president of the international union sent out a notice of trusteeship, and the appointment of Hickman as the special trustee. Id. "The nature of the improper conduct of the executive board was not specified." Id. After the notice of trusteeship was sent, a hearing was held in Las Vegas; however, no notice was give as to the facts or information on the improper acts of the president of the local union. Id. At the hearing, no evidence was presented as to the factual basis for the trusteeship. Id. Thus, "the members were left to guess as to the reasons for the president's actions, and without guidance of any character, to attempt to meet and refute the implication that the affairs of the local justified such action." Id. at 665. "Constantly throughout the proceedings, the members' rebellion at this procedure manifested itself. In this respect the transcript constitutes as powerful prose in proof of the American instinct for democratic due process as one is likely often to read." Id.

The Hickman Court held that the notice to the members was insufficient to inform the members of the factual basis for the trusteeship, and that the international constitution barred continuation of the trusteeship beyond a period of ten days because the members were not apprised of the factual basis for the trusteeship. Id. The Court further held that the local union was entitled to judicial protection "[w]here **the management in control of a labor union refuses to obey the laws of the union requiring that elections be held, or where it arbitrarily expels members from the union roster in violation of union law, or where it dissipates union funds without accounting, and where redress for any of these irregularities cannot be obtained through constituted local or international officials**, the court will intervene to grant relief." Id. Thus, the Hickman Court vacated the trusteeship and ordered the immediate transfer of all property, and rights, powers, and control of the local union to the executive board.

Like in Hickman, here, it is in the public's interest that the Nevada Service Employees Union be permitted to local democratic self-governance. Similar to Hickman, the International

Union failed to properly notice the membership of the factual basis of the trusteeship, and violated both the International and Local Constitutions by placing the Local Union in trusteeship when the trusteeship provisions of the International Constitution had been expressly waived in the Contract of affiliation. However, the situation before this Court is far more egregious than the situation addressed by the Hickman Court. Here, the International Union conspired to usurp control of the Local Union by misrepresenting facts and giving false legal counsel to the Board, inducing them to grant control of the Local Union under false pretenses.

The International Union's trustee is managing and controlling the Local Union and refusing to obey the laws of the local union requiring that elections be held, arbitrarily expelling staff members, violating local union law, and dissipating local union funds without accounting, and redress for any of these irregularities cannot be obtained through constituted local or international officials. As such, the public's interests, and the public policy of the State of Nevada warrant judicial intervention permanently enjoining the International Union from interfering with the Local Union's right to democratic self-governance.

## IV.

## CONCLUSION

Without injunctive relief, Defendants will continue exercise unlawful control over the Local Union, dispense of property and funds without accounting by the Local Union's Board, terminate staff members, cancel and enter into contract with third parties, and refuse to hold elections mandated by the Local Union Constitution. Therefore, based on the foregoing, Plaintiff respectfully requests this Motion for Preliminary Injunction be granted. Specifically, Plaintiffs respectfully requests the following order:

//

//

//

//

//

- Enjoining and restraining Defendants from further directing, managing, and controlling the affairs of the Nevada Service Employees Union aka SEIU 1107, or interfering with the Local Union's right of democratic self-governance, and for an order mandating that the trustee immediately restore control of all property, rights, powers and control of the Local Union to the Board.

Dated this 9th day of May, 2017

/s/ Michael J. Mcavoyamaya, Esq.

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 014082
4539 Paseo Del Ray,
Las Vegas, Nevada, 89121
(702) 299-5083
Michael.mcavoyamaya@gmail.com
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that I am an employee of MICHAEL J. MCAVOYAMAYA, ESQ., and that on May 9, 2017, I caused the foregoing documents entitled **PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION** to be served upon those persons designated by the parties in the E-Service Master List for the above-referenced matter in the Eighth Judicial District Court efiling System in accordance with the mandatory electronic service requirements of Administrative Order 14-2 and the Nevada Electronic Filing and Conversation Rules.

EVAN JAMES, ESQ.
Nevada Bar No. 007760
CHRISTENSEN JAMES & MARTIN
7440 W. Sahara Ave.,
Las Vegas, NV 89117
Telephone: (702) 255-1718
Email: elj@jmlv.com
Attorneys for Defendants

/s/ Michael J. Mcavoyamaya
_______________________________
MICHAEL J. MCAVOYAMAYA, ESQ