**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| RAYMOND GARCIA, et al., | Case No. 2:17-cv-01340-APG-NJK |
| Plaintiffs, | **ORDER (1) DENYING MOTION FOR RECONSIDERATION, (2) DENYING MOTION TO REMAND, AND (3) GRANTING MOTION TO SUPPLEMENT** |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, et al., | |
| Defendants. | (ECF Nos. 32, 38, 57) |

This lawsuit originally was brought by plaintiff Raymond Garcia, who is a member of the Clark County Public Employees Association, also known as SEIU 1107 (Local 1107). Local 1107 is a union for private and public sector employees in Clark County, Nevada. Garcia brought this lawsuit on Local 1107's behalf in Nevada state court against defendants Service Employees International Union (SEIU), Luisa Blue (the trustee appointed over Local 1107), Mary Henry (president of the SEIU), the Executive Board of Local 1107 (who voted in favor of the trusteeship), and Steve Ury (SEIU counsel who allegedly gave advice to the Executive Board of Local 1107).

In brief, Local 1107 is affiliated with the international union, SEIU. When Local 1107 experienced internal management issues that resulted in the removal of the Local's president and vice president, the Local's executive board voted in favor of SEIU placing the local union in a trusteeship, and the SEIU did so. Garcia contends this action violated the affiliation agreement between Local 1107 and the SEIU, breached Local 1107's constitution, was achieved through misrepresentations and legal malpractice, and constitutes a breach of fiduciary duties.

The defendants removed the case to federal court on the basis that Garcia's claims are completely preempted by section 301 of the Labor Management Relations Act (LMRA) and thus are removable under federal question jurisdiction. Garcia moved to remand. I denied that

1    motion, finding that Garcia's claim that the SEIU breached the parties' affiliation agreement was

2    preempted under section 301 as a claim asserting a breach of a contract between labor

3    organizations. ECF No. 39.  After I denied remand, Garcia amended his complaint to add new

4    plaintiffs who are Local 1107 members and are also public sector employees. ECF No. 29.

5        The plaintiffs now move for reconsideration of my ruling that federal question jurisdiction

6    exists and move to remand to state court.  They also request leave to supplement their arguments

7    on the motion to remand.  The defendants oppose all motions.

8        I deny the motion for reconsideration and the motion to remand.  I stand by my original

9    ruling that in the context of this case, the plaintiffs' claim that the SEIU breached the affiliation

10   agreement is completely preempted by section 301, thus giving rise to federal question

11   jurisdiction supporting removal.  I decline to adopt the plaintiffs' position that complete

12   preemption under section 301 applies only when interpretation of a collective bargaining

13   agreement is at issue.  Finally, I grant the motion to supplement.  However, the supplemental

14   arguments do not alter my rulings.

15   **I. BACKGROUND**

16       Local 1107 entered into an affiliation agreement with the SEIU in 1987. ECF No. 1-1 at

17   28-39.  Paragraph 18 of the affiliation agreement waives Article VIII, Section 7(a)-(f) of the

18   SEIU's constitution, which governs when the SEIU can place a local union into trusteeship.

19   Under paragraph 18 of the affiliation agreement, the SEIU cannot place Local 1107 into a

20   trusteeship "except . . . with the approval of the [Local 1107] Board of Representatives." *Id.* at 36.

21       In the fall of 2016, in response to complaints from local union members, defendant

22   Henry—as president of the SEIU—ordered a hearing to determine the validity of charges against

23   the Local's president, Cherie Mancini, and executive vice president, Sharon Kisling. *Id.* at 41,

24   180 (Article XVII, Section 2(f) of the SEIU constitution granting the SEIU president the power to

25   assume jurisdiction over charges against a local member or officer in certain circumstances).

26   Henry appointed Carol Nieters as hearing master. *Id.*  Following a hearing, Nieters recommended

27

28

2

1    that Mancini and Kisling be removed from their positions and that the SEIU impose a trusteeship

2    over Local 1107 due to deteriorating conditions there. *Id.* at 42, 52-54.

3         Based on these recommendations, Henry issued a letter to Local 1107 members informing

4    them she was invoking her power as SEIU president to remove Mancini and Kisling from their

5    positions. *Id.* at 56-58.  Henry took the trusteeship recommendation under advisement and

6    dispatched SEIU vice president Neal Bisno, deputy chief of staff Deedee Fitzpatrick, and

7    associate general counsel Steve Ury to attend Local 1107's already-scheduled executive board

8    meeting "to discuss how the Local can move forward in the way that best serves its members." *Id.*

9    at 57.

10        Local 1107's board met on April 26, 2017, which included a closed session with the SEIU

11   officials.  According to the complaint, Ury told the board members that because Local 1107's

12   constitution did not contain provisions for what to do if the president and vice president positions

13   were simultaneously vacant, the board had no choice but to request the SEIU place the Local into

14   trusteeship. *Id.* at 6.  A majority of the board voted to do so, with 17 voting in favor of the

15   trusteeship, 7 against, and 5 abstaining. *Id.* at 6, 59, 61; ECF No. 11 at 6.  Henry then entered an

16   order of trusteeship invoking her powers under Article VIII, Sections 7(a) and (f) of the SEIU

17   constitution and appointed defendant Luisa Blue as Trustee. ECF No. 1-1 at 59, 61.

18        Based on these allegations, Garcia brought suit in Nevada state court as a member of

19   Local 1107.  Among his claims was that the SEIU breached the affiliation agreement between the

20   two unions. *Id.* at 9-10.

21        The defendants removed the case to this court on the basis of federal question jurisdiction,

22   arguing that although Garcia's claims were styled as state law claims, section 301 of the LMRA

23   completely preempts the breach of contract claims.  Garcia moved to remand, arguing that

24   because both the Local and the SEIU have public sector employees to which the LMRA does not

25   apply, his claims were not preempted.

26        I held a hearing on the motion to remand (along with a pending motion for a temporary

27   restraining order). ECF No. 39.  At that hearing, I denied Garcia's motion to remand. *Id.* at 90.  I

28

ruled that based on section 301's plain language, this lawsuit fell within that section's complete preemptive force for lawsuits involving a "violation of contracts between . . . labor organizations." *Id.* I rejected Garcia's attempt to rely on the public employee exemption in the LMRA, which essentially defines public sector employers and employees out of the LMRA's scope. *Id.*; *see also* 29 U.S.C. §§ 152(2), (3), (5). I concluded that the cases on which Garcia relied were distinguishable because here, "the unions are labor organizations in the context of a breach of [the] two unions' Affiliation Agreement that has no specific relation to public employees, a public employer, or a public Collective Bargaining Agreement." ECF No. 39 at 91.

At the end of the hearing, Garcia's counsel asked for clarification about whether my ruling hinged on the fact that Garcia was not a public sector employee. *Id.* at 96. I stated that my ruling did not rely on that fact and that I did not deny the motion to remand "just because the plaintiff is a private employee . . . ." *Id.* I also advised Garcia's counsel that I was aware he could simply amend to add a public sector employee, but that would not result in a different ruling on jurisdiction. *Id.* at 96-97 ("It's bigger than just that issue.").

Garcia then amended his complaint to add three public sector employees as plaintiffs. ECF No. 29. The plaintiffs move for reconsideration of my prior order on the jurisdictional question, asserting that now that public sector employees are plaintiffs, section 301 does not apply. They also move for remand, arguing that section 301's preemptive force applies only when the plaintiff's claim requires interpreting a collective bargaining agreement. Because that would not be required to resolve the plaintiffs' claims in this case, they contend their claims are not completely preempted so there is no federal question jurisdiction. Finally, they request leave to supplement their remand motion with arguments involving a related case filed in this district. The defendants oppose all motions.

## II. MOTION FOR RECONSIDERATION (ECF No. 32)

The plaintiffs move for reconsideration of my prior ruling that the claim that the SEIU breached the two unions' affiliation agreement is completely preempted by section 301 of the LMRA. The plaintiffs argue reconsideration is warranted due to new facts, specifically, that three

4

public sector employees are now plaintiffs.  They also contend my ruling is contrary to the

LMRA's plain language and caselaw holding that when a public sector employer or employee is

involved, the LMRA does not apply.  Finally, they contend I erred by importing the "mixed

union" exception in the Labor Management Reporting and Disclosure Act (LMRDA) context into

the LMRA complete preemption analysis.

A district court "possesses the inherent procedural power to reconsider, rescind, or modify

an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction. *City of

L.A., Harbor Div. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and

emphasis omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

12 (1983) (citing Fed. R. Civ. P. 54(b)).  "Reconsideration is appropriate if the district court (1) is

presented with newly discovered evidence, (2) committed clear error or the initial decision was

manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J,

Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A court also may

reconsider its decision if "other, highly unusual, circumstances" warrant it. *Id.*

I find no basis to reconsider my prior ruling.  Although the plaintiffs contend I ignored

section 301's text, my ruling was based on a plain language analysis of the statute.

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  An "agreement of affiliation between unions is a contract between labor

organizations." *United Bhd. of Carpenters & Joiners of Am., Lathers Local 42-L v. United Bhd.

of Carpenters & Joiners of Am.*, 73 F.3d 958, 961 (9th Cir. 1996).  In count two of the second

amended complaint, the plaintiffs allege the SEIU breached the affiliation agreement between the

two unions.  The parties dispute whether the SEIU and the Local qualify as "labor organizations"

under the LMRA.

1    The LMRA defines "labor organization" as "any organization of any kind, or any agency

2    or employee representation committee or plan, in which employees participate and which exists

3    for the purpose, in whole or in part, of dealing with employers concerning grievances, labor

4    disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

5    The definition thus turns on the definitions of employers and employees.  The statute expressly

6    excludes as employers "any State or political subdivision thereof." *Id.* § 152(2) (defining

7    employer and stating that term "shall not include the United States or any wholly owned

8    Government corporation . . . or any State or political subdivision thereof . . . .").  The definition of

9    an employee turns on the definition of an employer, so it likewise excludes public sector

10   employees. *Id.* § 152(3) (defining employee to exclude a person employed "by any other person

11   who is not an employer as herein defined").

12         Here, both unions have public sector employees. ECF No. 1-1 at 70-71, 150.  However,

13   both also have private sector employees. *See id.*  The labor organization definition states that it

14   applies to an organization in which "employees" participate and that exists for the purpose, "in

15   whole or in part," to bargain with "employers."  Because Local 1107 and SEIU have members

16   who are private sector employees, both unions have "employee" participants and these unions

17   exist at least "in part" to bargain with "employers."  Thus, under a plain language reading, they

18   qualify as "labor organizations" under section 301.  The plaintiffs' motion elides the statutory

19   language's reference to the organization existing for the purpose "in whole or in part" to bargain

20   with employers. *See* ECF No. 32 at 7.  But I cannot ignore that statutory language.

21         The cases on which the plaintiffs rely are distinguishable.  All involve scenarios where the

22   union represents only public sector employees or the plaintiff's claim relates to some aspect of a

23   dispute or collective bargaining agreement with a public sector employer. *See, e.g.*, *Pac. Maritime*

24   *Ass'n v. Local 63, Int'l Longshoremen's & Warehousemen's Union*, 198 F.3d 1078 (9th Cir.

25   1999) (local union which represented only public sector employees dismissed for lack of

26   jurisdiction; other two local unions remained in the case and went to arbitration); *Richards v.*

27   *Ohio Civil Serv. Emps. Ass'n*, 205 F. App'x 347, 354 (6th Cir. 2006) (union was "mixed,"

28

meaning it represented both public and private sector employees; section 301 held not to apply to lawsuit filed by only public sector employees who sued union in relation to a bargaining agreement with the State of Ohio); *Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F. Supp. 2d 383, 385 (S.D.N.Y. 2002) (similar scenario of mixed union and lawsuit involving only public sector employees suing over negotiation of a specific contract with city employer).[1] The cases the plaintiffs cite in their reconsideration motion fall into similar factual scenarios.[2] In

_____

[1] The *Cunningham* court stated that "[i]f plaintiffs were private employees, there is no doubt that this court would have subject matter jurisdiction under Section 301(a) to consider the claim that Local 30 violated the IUOE Constitution." 234 F. Supp. 2d at 394. The *Cunningham* court made this pronouncement even though Local 30 was a "mixed" union. *Id.* at 391. *Cunningham* thus does not support the plaintiffs' position that even one public sector employee automatically takes a union out of section 301's preemptive force regardless of the circumstances of the case before the court.

[2] *See Paulsen v. Local No. 856 of Int'l Bhd. of Teamster*s, 377 F. App'x 706 (9th Cir. 2010) (public employees sued union over terms in collective bargaining agreement with public employer); *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351 (7th Cir. 1998) (public employee sued union for breach of duty of fair representation in grievance against employer); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266 (6th Cir. 1990) (state employee sued state employer and union related to dispute with employer); *Manfredi v. Hazleton City Auth., Water Dep't*, 793 F.2d 101 (3d Cir. 1986) (city employee sued city employer and union over dispute with employer); *Crilly v. Se. Penn. Transp. Auth.*, 529 F.2d 1355 (3d Cir. 1976) (public employee sued public employer and union over dispute with public employer); *Vaught v. Bi-State Dev. Agency*, No. 4:15 CV 1499 CDP, 2016 U.S. Dist. LEXIS 45095 (E.D. Mo. Apr. 4, 2016) (public employee sued public employer and union related to grievance with employer); *Cingo v. Teamsters Local Union No. 25*, No. 15-13451-GAO, 2016 U.S. Dist. LEXIS 27873 (D. Mass. Mar. 4, 2016) (state employee sued union based on "issues concerning the Union's relationship with the plaintiff at Massport"); *Adams v. Am. Fed'n of State*, 167 F. Supp. 3d 730 (D. Md. 2016) (local union represented only state employees); *Williams v. Durham Sch. Servs.*, EDCV 13-740-JST (SPx), 2013 U.S. Dist. LEXIS 65910 (C.D. Cal. May 8, 2013) (public employee sued public employer); *McClair v. AFSCME Local #2415*, 3:11-CV-01313, 2012 U.S. Dist. LEXIS 50661 (N.D. Ohio Mar. 22, 2012) (state employee sued state employer and union over dispute with employer); *Snead v. Bd. of Educ. of Prince George's Cty.*, 815 F. Supp. 2d 889 (D. Md. 2011) (public employee sued union over dispute with public employer); *Ford v. D.C. 37 Union Local 1549*, No. 07 CIV. 1875 (DC), 2008 WL 1055765 (S.D.N.Y. Apr. 10, 2008) (city employee in union representing only city employees); *Johnson v. City of Monroe*, No. CIV A 06-0635, 2007 WL 1791211 (W.D. La. June 18, 2007) (suit by municipal employee against his "municipal union" for breach of duty of fair representation); *Hadley v. Haw. Gov't Emples. Ass'n, AFSCME, Local 152*, 05-00660 ACK/KSC, 2006 U.S. Dist. LEXIS 14803 (D. Haw. Mar. 13, 2006) (state employee against state employer and union over dispute with employer); *Williams v. United Transp. Union*, No. 96-1422, 1996 U.S. Dist. LEXIS 8828 (E.D. Pa. June 18, 1996) (public employee sued public employee union for breach of fiduciary duty related to grievance with employer); *Zeller v. Reading Sch. Dist.*, No. CIV. A. 92-CV-1943, 1992 WL 160466 (E.D. Pa. June 25, 1992) (public employee sued employer and public employee union); *Sampson v. United States Fed'n of Teachers*, No. 89 Civ. 5357 (JFK), 1990 U.S. Dist. LEXIS 3952 (S.D.N.Y. Apr. 10, 1990) (public school teacher sued union for failure to represent her in grievance against her employer).

contrast, count two of the amended complaint alleges the SEIU breached the affiliation agreement between the two labor organizations.  The alleged breach of the affiliation agreement has nothing to do with public versus private sector employees, a particular collective bargaining agreement with a public employer, a particular dispute between a public sector employee and his or her public employer, or negotiations with a public employer.[3]

In sum, under a plain reading of the LMRA's definition sections, and in the context of the plaintiffs' claim in this case, Local 1107 and SEIU are "labor organizations" because they are organizations in which "employees" participate and they exist for the purpose, at least "in part," of bargaining with "employers."  This interpretation is consistent with Congress's goal of making union agreements subject to uniform federal law. *See United Association of Journeymen & Apprentices of Plumbing & Pipefitting Industry of U.S. & Canada, AFL CIO v. Local 334, United Association of Journeymen & Apprentices of Plumbing & Pipefitting Industry of U.S. & Canada*, 452 U.S. 615, 624-27 (1981) (stating that "Congress could conclude that the enforcement of the terms of union constitutions—documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals—would contribute to the achievement of labor stability"; that Congress chose to have "contracts between labor organizations enforced by the federal courts"; and that the "substantive law to apply is federal law, which the courts must fashion from the policy of our national labor laws" (quotation omitted)).  Consequently, the claim for breach of the affiliation agreement falls within section 301, is completely preempted,[4] and

---

[3] The plaintiffs mischaracterize my ruling by stating I held that the LMRDA's "mixed union" exception applies to claims removed under the LMRA. ECF No. 32 at 5.  I made no such ruling. As discussed above, my ruling is based on section 301's plain language that preempts claims over lawsuits asserting a breach of a contract between labor organizations, and in the context of this case the SEIU and the Local are labor organizations because they are organizations in which employees participate and which exist, in part, to bargain with employers.

[4] "Complete preemption applies to cases raising claims preempted by § 301." *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 (9th Cir. 1999); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) (stating "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization'"). Consequently, a state cause of action "that comes within the scope of the federal cause of action necessarily 'arises under' federal law" and thus is removable. *Franchise Tax Bd.*, 463 U.S. at 23; *see also Audette*, 195 F.3d at 1111 ("Once an area of state law has been completely pre-empted,

1   thus is a federal claim supporting removal jurisdiction.  I therefore deny the plaintiffs' motion for

2   reconsideration.

3   **III.  MOTION TO REMAND (ECF No. 38)**

4          In their motion to remand, the plaintiffs argue that section 301's preemptive force does not

5   apply unless resolution of the plaintiffs' state law claims requires analysis of a collective

6   bargaining agreement.  The defendants respond that section 301 preempts claims involving

7   contracts between unions even without reference to a collective bargaining agreement.

8          This question has already been answered by the Supreme Court.  A claim that a contract

9   between two unions has been breached falls within section 301's complete preemptive ambit and

10  is therefore removable.  In *United Association of Journeymen & Apprentices of Plumbing &*

11  *Pipefitting Industry of U.S. & Canada, AFL CIO*, a local union sued the international union with

12  which it was affiliated after the international union declared it was consolidating several local

13  unions. 452 U.S. at 616-17.  The local sued in state court and asserted the international had

14  violated its own constitution in declaring the consolidation. *Id.* at 617-18.  The international

15  removed the case to federal court. *Id.* at 618.  The district court found it had subject matter

16  jurisdiction under section 301, but the Third Circuit reversed with instructions to remand to state

17  court. *Id.* at 619.

18         The Supreme Court reversed the Third Circuit and ruled that because the international

19  constitution was a contract between labor organizations, "the plain meaning of the 'contracts

20  between labor organizations' clause of section 301(a) supports jurisdiction . . . ." *Id.* at 622.  The

21  Supreme Court stated that "Congress chose in section 301(a) to have contracts between labor

22  organizations enforced by the federal courts," and that Congress "intended the federal courts to

23  enjoy wide ranging authority to enforce labor contracts under section 301." *Id.* at 626-27.  The

24  Supreme Court thus ruled that the case was properly removed to federal court under § 301(a) as a

25  lawsuit alleging a breach of a contract between labor organizations. *Id.* at 627.  Likewise, here,

26

27  ─────────────────────

28  any claim purportedly based on that pre-empted state law is considered, from its inception, a
    federal claim, and therefore arises under federal law." (quotation omitted)).

9

1  the plaintiffs' claim that the SEIU breached the affiliation agreement is a claim that a contract

2  between labor organizations was breached.  That claim is completely preempted by section 301,

3  so removal was proper.

4      The plaintiffs' argument that a collective bargaining agreement must be at issue to support

5  section 301 complete preemption ignores that section 301 creates federal court jurisdiction for

6  two types of suits alleging breach of contract: one for contracts "between an employer and a labor

7  organization," and the other for contracts "between any such labor organizations." *See* 29 U.S.C.

8  § 185(a).  There is no support in the statutory language for the plaintiffs' position that the statute

9  has complete preemptive force over only one type of suit.  The plaintiffs cite no case that has held

10  section 301's complete preemptive force does not apply to a claim alleging a breach of a contract

11  between labor organizations.  Other courts have rejected the plaintiffs' argument.[5]  I do as well,

12  and I therefore deny the plaintiffs' motion to remand.

13  **IV.  MOTION TO SUPPLEMENT (ECF No. 57)**

14      The plaintiffs move for leave to supplement their motion to remand.  They seek to make

15  new arguments about a related case recently filed in this district: *Mancini, et al. v. SEIU, et al.*,

16  2:17-cv-02137-APG-NJK.  The plaintiffs in that case sue under the LMRDA to challenge the

17  SEIU's imposition of the trusteeship on Local 1107.  The plaintiffs in this case assert that the

18  LMRDA claims in that case show section 301 cannot completely preempt their own state law

19  claims challenging the same trusteeship.  The plaintiffs argue that because they could have

20  brought their claims under the LMRDA, the defendants cannot choose on removal that the LMRA

21  is the applicable statute (not the LMRDA).  They contend that would undermine the doctrines of

22  complete preemption, the well-pleaded complaint rule, and the presumption against removal

23  jurisdiction.  The defendants respond that the availability of another federal remedy does not

24

25

26  ---
   [5] *See DeSantiago v. Laborers Int'l Union of N. Am., Local No. 1140*, 914 F.2d 125, 128-29 (8th Cir. 1990); *Pruitt v. Carpenters' Local Union No. 225 of United Bhd. of Carpenters & Joiners of*

27  *Am.*, 893 F.2d 1216, 1219 (11th Cir. 1990); *Kitzmann v. Local 619-M Graphic Commc'ns Conference of Int'l Bhd. of Teamsters*, 415 F. App'x 714, 719-20 (6th Cir. 2011); *Ramos v. Dist.*

28  *Council 16*, No. C 13-03025 WHA, 2013 WL 5442291, at *2 (N.D. Cal. Sept. 30, 2013).

1   negate their argument that the LMRA preempts state law breach of contract claims if those claims

2   fall within section 301's scope.

3       I grant the plaintiffs' motion to supplement, but their arguments do not persuade me to

4   change my jurisdictional ruling.  Complete preemption applies only to state law claims. *See, e.g.*,

5   *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) ("The artful pleading doctrine allows

6   removal where federal law completely preempts a plaintiff's state-law claim."); *Franchise Tax*

7   *Bd.*, 463 U.S. at 23 (stating "the preemptive force of § 301 is so powerful as to displace entirely

8   any state cause of action for violation of contracts between an employer and a labor organization"

9   (quotation omitted)).  "Once an area of state law has been completely pre-empted, any claim

10  purportedly based on that pre-empted state law is considered, from its inception, a federal claim,

11  and therefore arises under federal law." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners*

12  *of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quotation omitted).  "Complete preemption is really a

13  jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in

14  certain instances where Congress intended the scope of federal law to be so broad as to entirely

15  replace any state-law claim." *Id.*

16      In contrast, a claim brought under the LMRDA is a federal cause of action governed by

17  federal law, even if it can be pursued in state court.  The fact that Congress has chosen to give

18  litigants another federal remedy to challenge particular conduct related to union trusteeships does

19  not mean that section 301 no longer has complete preemptive force over state law breach of

20  contract claims that fall within its scope.

21      The plaintiffs contend this analysis deprives them of the ability to be the masters of their

22  complaint because the defendants have been able to choose which federal law, the LMRA as

23  opposed to the LMRDA, should apply to the plaintiffs' claim.  But the plaintiffs were the masters

24  of their complaint.[6]  If they had wanted to assert an LMRDA claim, they could have done so.

25

26  [6] When Garcia was the only plaintiff in this case, he disputed that the LMRDA should apply to
    his claims because that statute would be concerned "solely with the imposition of a trusteeship in
27  accordance with the international union's Constitution," whereas he was asserting the SEIU
    breached the affiliation agreement between the two unions. ECF No. 39 at 6.  Garcia thus
28  disclaimed any interest in an LMRDA claim.

1  And if they wanted to avoid section 301's preemptive force, they could have declined to also

2  plead a state law claim for the breach of a contract between labor organizations.  Instead, they

3  chose to assert a state law breach of contract claim that is completely preempted by section 301.

4  There is no choice to be made about which federal statute preempts the state law claim.

5  The parties agree the LMRDA does not have complete preemptive force in the context of the

6  plaintiffs' claims. ECF Nos. 39 at 12-14; 59 at 3 (citing 29 U.S.C. § 523(a), which provides that

7  "[e]xcept as explicitly provided to the contrary, nothing in this chapter shall reduce or limit the

8  responsibilities of any labor organization . . . under any other Federal law or under the laws of any

9  State, and . . . nothing in this chapter shall take away any right or bar any remedy to which

10 members of a labor organization are entitled under such other Federal law or law of any State").[7]

11 Consequently, the defendants are not being allowed to make a choice that belongs to the

12 plaintiffs.  The plaintiffs made their choice when they pleaded their claims as they did.

13 **V.  CONCLUSION**

14 IT IS THEREFORE ORDERED that the plaintiffs' motion for reconsideration **(ECF No.**

15 **32) is DENIED**.

16 IT IS FURTHER ORDERED that the plaintiffs' motion to remand **(ECF No. 38) is**

17 **DENIED**.

18 IT IS FURTHER ORDERED that the plaintiffs' motion for leave to supplement **(ECF**

19 **No. 57) is GRANTED** in that I have considered the plaintiffs' supplemental arguments.

20 Dated: October 25, 2017

21 _____

22 ANDREW P. GORDON
   UNITED STATES DISTRICT JUDGE

23

24

25

26 [7] The LMRDA has an exclusive jurisdiction provision requiring any challenge to a completed
   union election to be brought under the LMRDA. *See* 29 U.S.C. § 483 (providing that the "remedy

27 provided by this subchapter for challenging an election already conducted shall be exclusive").
   The plaintiffs do not seek to challenge a previously concluded election, so this provision does not

28 apply.