**ROTHNER, SEGALL & GREENSTONE**
GLENN ROTHNER (*pro hac vice*)
JONATHAN COHEN (NSB 10551)
ELI NADURIS-WEISSMAN (*pro hac vice*)
510 South Marengo Avenue
Pasadena, California 91101-3115
Telephone: (626) 796-7555
Facsimile: (626) 577-0124
Email: grothner@rsglabor.com; jcohen@rsglabor.com;
enadurisweissman@rsglabor.com

**CHRISTENSEN JAMES & MARTIN**
EVAN L. JAMES, ESQ. (7760)
KEVIN B. ARCHIBALD, ESQ. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: elj@cjmlv.com, kba@cjmlv.com

*Attorneys for Defendants Service Employees International Union; Luisa Blue; Mary Kay Henry; And Nevada Service Employees Union*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RAYMOND GARCIA, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, *et al.*,<br><br>Defendants. | CASE NO.: 2:17-cv-01340-APG-NJK<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF CLAIMS; SUPPORTING POINTS AND AUTHORITIES**<br><br>**(*MANCINI, et al. v. SERV. EMPLOYEES INT'L UNION, et al.)***<br><br>**ORAL ARGUMENT REQUESTED** |
| CHERIE MANCINI, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, *et al.*,<br><br>Defendants. | CASE NO.: 2:17-cv-02137-APG-NJK |

# TABLE OF CONTENTS

Page


I. Introduction ..... 2

II. Statement of Undisputed Facts ..... 2

A. Background and Relevant Provisions of SEIU Constitution ..... 2

1. The SEIU Constitution Authorizes an Emergency Trusteeship Over Affiliated Local Unions ..... 3

2. The SEIU Constitution Authorizes SEIU's President to Hold a Hearing to Assess the Internal Needs of a Local Union, and to Assume Jurisdiction Over Disciplinary Charges ..... 4

B. SEIU Holds Hearings on Internal Disciplinary Charges and the Internal Needs of Local 1107 ..... 4

C. SEIU Adopts the Hearing Officers' Reports, Removes Mancini From Office, and, Following the 17-7 Vote of Local 1107's Executive Board, Imposes an Emergency Trusteeship ..... 5

1. The Internal Charges Report ..... 5

2. The Internal Needs Report ..... 7

3. President Henry Adopts Nieters' Reports and Recommendations, and the Local 1107 Executive Board Votes 17-7 to Accept a Voluntary Trusteeship ..... 8

4. President Henry Imposes an Emergency Trusteeship Over Local 1107 ..... 8

D. Following a Trusteeship Hearing, SEIU's Executive Board Ratifies the Trusteeship Over Local 1107 ..... 9

1. SEIU Issues a Notice of Hearing for July 2017 ..... 9

2. Local 1107 Does Not Oppose the Trusteeship at the Hearing ..... 10

3. SEIU's Executive Board Adopts the Decision of the Hearing Officer to Ratify the Trusteeship ..... 10

E. The Department of Labor Dismisses Trusteeship Complaint ..... 12

III. Argument ..... 12

A. Summary Judgment Standard ..... 12

B. Count I: Mancini's Claim is Moot; In Any Event, She Was Afforded a Full and Fair Hearing ..... 13

C. Count II: Mancini's Speech Impaired the Union's Institutional Interests ..... 15

**TABLE OF CONTENTS**
(continued)

Page

D. Count III: Defendants Did Not Breach the SEIU Constitution or the LMRDA In Connection with the Internal Needs Hearing .... 17

E. Count IV: President Henry Imposed the Emergency Trusteeship for Proper Purposes .... 18

F. Count V: President Henry Did Not Impose the Trusteeship in Bad Faith .... 20

G. Counts VI & VII: President Henry Had Good Cause to Continue the Date of the Trusteeship Hearing and the Decision Thereon .... 22

H. Count VIII: SEIU Provided Sufficient Notice of the Trusteeship Hearing .... 24

I. Count IX: There is No Evidence that Trusteeship Hearing Officer April Verrett Was Biased .... 27

IV. Conclusion .... 30

## TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .......... 12

*Busch v. Givens*, 627 F.2d 978 (9th Cir. 1980) .......... 24

*Carpenters and Joiners of Am.*, 673 F. Supp. 441 (N.D. Ga. 1987) .......... 21

*Castaneda v. Dura-Vent Corp.*, 648 F.2d 612 (9th Cir. 1981) .......... 12

*Casumpang v. Int'l Longshore & Warehouse Union Local 142*, 297 F. Supp. 2d 1238 (D. Haw. 2003) .......... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 12

*Ferguson v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 854 F.2d 1169 (9th Cir. 1988) .......... 16

*Green v. Brigham*, Case No. 03CV5190(JG), 2005 WL 280327 (2d Cir. 2005) .......... 14

*International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233 (1971) .......... 14

*Int'l Bhd. of Elec. Workers Local 1186 v. Eli*, 307 F. Supp. 495 (D. Haw. 1969) .......... 24, 27, 30

*Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786 (2d Cir. 1994) .......... 19, 21

*Johnson v. Holway* No. CIV.A.03-2513 ESH, 2005 WL 3307296 (D.D.C. Dec. 6, 2005) .......... 28, 29, 30

*Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071 (9th Cir. 1999) .......... 15

*Kofoed v. Int'l Bhd. of Elec. Workers, Local 48*, 237 F.3d 1001 (9th Cir. 2001) .......... 16, 17

*Mandaglio v. United Bhd. of Carpenters & Joiners of Am.*, 575 F. Supp. 646 (E.D.N.Y. 1983) .......... 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 13

*McCann v. United Union of Roofers, Waterproofers, and Allied Workers*, Case No. Civ-A-04-3328, 2004 WL 2958434 (E.D. Penn. Dec. 20, 2004) .......... 20

## TABLE OF AUTHORITIES
(continued)

Page


*McKee v. Sales Drivers & Dairy Employees, Local Union No. 166*, No. 72-3034-EC, 1973 WL 1094 (C.D. Cal. Apr. 4, 1973) ............ 14

*Morris v. Hoffa*, 361 F.3d 177 (3d Cir. 2004) ............ 20

*Motion Picture & Videotape Editors Guild, Local 776, I.A.T.S.E. v. Int'l Sound Technicians, Local 695*, 800 F.2d 973, 975 (9th Cir. 1986) *opinion amended on denial of reh'g*, 806 F.2d 1410 (9th Cir. 1986) ............ 24

*Newman v. Local 1101, Commc'ns Workers of Am.*, 570 F.2d 439 (2d Cir. 1978) ............ 16

*Pape v. Local 390 of Int'l Bhd. of Teamsters*, 315 F. Supp. 2d 1297 (S.D. Fla. 2004) ............ 20, 21, 22

*Pruitt v. United Bhd. Of Carpenters and Joiners of Am.*, 673 F. Supp. 441 (N.D. Ga. 1987) ............ 20

*Pygatt v. Painters Local No. 77*, 763 F. Supp. 1301 (D.N.J. 1991) ............ 13

*Retail Clerks Union, Local 770 v. Retail Clerks Int'l Ass'n*, 479 F.2d 54 (9th Cir. 1973) ............ 19

*Robins v. Schonfeld*, 326 F. Supp. 525 (S.D.N.Y. 1971) ............ 13

*Sawyers v. Int'l Ass'n of Machinists*, 279 F. Supp. 747 (E.D. Mo. 1967) ............ 19, 22

*Serv. Employees Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013) ............ 16

*Serv. Employees Int'l Union Local 87 v. Serv. Employees Int'l Union Local No. 1877*, 230 F. Supp. 2d 1099 (N.D. Cal. 2002) ............ 20, 21

*Tam v. Rutledge*, 475 F. Supp. 559 (D. Hawai'i 1979) ............ 19, 22, 27

*Teamsters Local No. 406 v. Crane*, 848 F.2d 709 (6th Cir. 1988) ............ 19, 22

*Teamsters Local Union No. 2000 v. Hoffa*, 284 F. Supp. 2d 684 (E.D. Mich. 2003) ............ 18, 19, 21, 24

*Tisza v. Commc'ns Workers of Am.*, 953 F.2d 298 (7th Cir. 1992) ............ 25

**TABLE OF AUTHORITIES**
(continued)

Page

*United Steelworkers of Am. v. Sadlowski*,
457 U.S. 102 (1982) .......... 16

*United Steel Workers Local 12-369 v. United Steel Workers Int'l*,
728 F.3d 1107 (9th Cir. 2013) .......... 14

*Wellman v. Int'l Union of Operating Eng'rs Local 501*,
812 F.2d 1204 (9th Cir. 1987) .......... 13

*Wildberger v. Am. Fed. of Gov't Employees*,
86 F.3d 1188 (D.C. Cir. 1996) .......... 28

*Yager v. Carey*,
910 F. Supp. 704 (D.D.C. 1995) .......... 29

**Statutes and Rules**

Labor Management Reporting and Disclosure Act, 29 U.S.C.
§ 401 .......... 2
§ 411(a)(2) .......... 1, 16
§ 411(a)(4) .......... 15
§ 411(a)(5) .......... 1, 13, 14, 15
§ 462 .......... 1, 18
§ 464 .......... 1, 17, 20
§ 464(c) .......... 20, 24, 28

Fed. R. Civ. P. 56(c) .......... 12
Local Rule 56-1 .......... 12

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED** that Defendants Service Employees International Union ("SEIU"), Luisa Blue, and Mary Kay Henry (collectively, "Defendants"), hereby move for summary judgment on all claims, or in the alternative, summary adjudication of claims, in *Mancini, et al. v. Service Employees Int'l Union, et al.*, Case No. 2:17-cv-02137-APG-NJK.

Summary judgment, or in the alternative summary adjudication, is proper because Plaintiffs have failed to raise a genuine issue of material fact that (1) Defendant SEIU disciplined Plaintiff Cherie Mancini in violation of 29 U.S.C. §§ 411(a)(2) or (a)(5) (Counts I and II); or that (2) Defendant SEIU imposed a trusteeship over SEIU Local 1107 in violation of 29 U.S.C. §§ 462 or 464 (Counts III through IX).

This motion is based on the following memorandum of points and authorities, the Declarations of Mary Kay Henry and Jonathan Cohen filed herewith, the pleadings and papers filed in this action, and upon such other matters that may be presented to the Court in connection with this motion.

DATED: January 29, 2019

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHNER (*pro hac vice*)
JONATHAN COHEN
ELI NADURIS-WEISSMAN (*pro hac vice*)

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES

By /s/ Jonathan Cohen
Jonathan Cohen
510 South Marengo Avenue
Pasadena, CA 91101
Tel.: (626) 769-7555; Fax: (626) 577-0124
*Attorneys for Defendants*
*Service Employees International Union; Luisa Blue; Mary Kay Henry; and Nevada Service Employees Union*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

For the reasons discussed below, defendants Service Employees International Union ("SEIU"), Luisa Blue, and Mary Kay Henry (collectively, "Defendants"), are entitled to summary judgment, or in the alternative, summary adjudication.

Ruling on Plaintiffs' several motions for preliminary injunction, this Court has already ruled (twice) that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims that SEIU violated the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"), when it disciplined Plaintiff Cherie Mancini ("Mancini"), the former President of SEIU Local 1107 ("Local 1107"). The first such ruling was affirmed by the Ninth Circuit, and with good reason. Put simply, Plaintiffs cannot establish a genuine issue of material fact in support of their claims regarding SEIU's discipline of Mancini.

Likewise, this Court has already ruled (twice) that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims that SEIU imposed a trusteeship over Local 1107 in violation of the LMRDA. The first such ruling was similarly affirmed by the Ninth Circuit. Indeed, Plaintiffs cannot establish a genuine issue of material fact to support their claims that the trusteeship was imposed for an improper purpose, in bad faith, or in violation of any procedural requirements.

Importantly, democratic governance of Local 1107 will resume in March 2019, when officer elections are scheduled to occur. Plaintiffs should use that opportunity, instead of repeatedly seeking judicial intervention, if they want to effect change at their local union.

## II. Statement of Undisputed Facts.

### A. Background and Relevant Provisions of SEIU Constitution.

SEIU is an international labor union representing more than 2 million public and private sector employees in various industries. Declaration of Mary Kay Henry ("Henry Decl."), ¶ 2. Mary Kay Henry has been President of SEIU since 2010. *Id.*, ¶ 2. SEIU and its affiliates are governed by SEIU's Constitution and Bylaws. *Id.*, ¶ 3.

Local 1107, an SEIU affiliate in Nevada, is a labor union representing over 17,000 public

and private sector employees. *Id.*, ¶ 4. SEIU and Local 1107 are parties to an affiliation agreement addressing various terms and conditions of their affiliation. *Id.*, ¶ 4, Ex. B.

**1. The SEIU Constitution Authorizes an Emergency Trusteeship Over Affiliated Local Unions.**

Several provisions of SEIU's Constitution and Bylaws are relevant here. Article VIII, § 7(a) authorizes SEIU's President to appoint a trustee over an affiliated union "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of this International Union . . . ." Henry Decl. ¶ 3, Ex. A at 19. The appointment of such a trustee "shall have the effect of removing the officers of the Local Union or affiliated body." *Id.*

Under Article VIII, § 7(f), "prior to the imposition of a trusteeship the International President shall appoint a hearing officer . . . and shall issue a notice, which shall be distributed in a timely fashion, setting a time and place for a hearing, for the purpose of determining whether a Trustee should be appointed." *Id.* The hearing officer thereafter must make a recommendation to SEIU's President, "who shall thereupon make his or her determination . . . ." *Id.*

However, the same provision authorizes SEIU's President to place an affiliated union in trusteeship without first holding a hearing "where in the judgment of the International President an emergency exists within the Local Union . . . . ." *Id.* In that case, SEIU's Executive Board "shall appoint a hearing officer . . . who shall conduct such a hearing within 30 days after imposition of the trusteeship, and a decision by the International Executive Board shall be made within 60 days after the appointment of such Trustee." *Id.* The same provision also authorizes the International President to extend these timelines "for good cause which decision shall be final and binding." *Id.*

The affiliation agreement between SEIU and Local 1107 waived the provisions of Article VIII, §§ 7(a) - (f) of the SEIU Constitution "except for the purpose of enforcing [the affiliation agreement] or with the approval of the [Local 1107] Board of Representatives." *Id.*, ¶ 4, Ex. B.

/ / /

/ / /

/ / /

**2. The SEIU Constitution Authorizes SEIU's President to Hold a Hearing to Assess the Internal Needs of a Local Union, and to Assume Jurisdiction Over Disciplinary Charges.**

Two additional provisions of the SEIU Constitution are relevant here. Under Article VIII, § 7(g), SEIU's President "may appoint a hearing officer to examine the internal needs of the Local Union or affiliated body, and to assist him/her in determining what remedial action(s), if any, should be implemented by the Local Union . . . ." Henry Decl. ¶ 3, Ex. A at 20.

Under Article XVII, § 2(f), SEIU's President may assume original jurisdiction over internal disciplinary charges where "a Local Union officer or a Local Union member . . . believe that the charges filed against a member or officer of a Local Union involve a situation which may seriously jeopardize the interests of the Local Union or the International Union," or "that the hearing procedure of the Local Union will not completely protect the interests of a member . . . and such party requests that the International President assume original jurisdiction." *Id.*, Ex. A at 38.

**B. SEIU Holds Hearings on Internal Disciplinary Charges and the Internal Needs of Local 1107.**

Between April and October 2016, various Local 1107 members and officers filed internal disciplinary charges against former Local 1107 President Cherie Mancini, former Local 1107 Executive Vice President Sharon Kisling, and others. Henry Decl. ¶ 5. On October 17, 2016, at the request of some of the charging parties, President Henry assumed jurisdiction over the charges pursuant to Article XVII, § 2(f) of the SEIU Constitution, and issued a notice of hearing on the charges. *Id.*, ¶ 5, Ex. C; *see also id.*, Ex. D (amended hearing notice). Henry appointed Carol Nieters, then-Executive Director of an SEIU affiliate in Minnesota and then-SEIU Executive Board Member, as a hearing officer to preside over a hearing and to make a report and recommendations to President Henry on the disciplinary charges. *Id.*, ¶ 5. The same day, SEIU issued a notice of hearing to the charging and charged parties, which attached the disciplinary charges and described the applicable rules of procedure for the hearing. *Id.*

Pursuant to her authority under Article VIII, § 7(g) of the SEIU Constitution, on October 17, 2016, Henry also appointed Nieters as a hearing office to preside over a hearing and to make a report and recommendations to President Henry on the internal needs of Local 1107. *Id.*, ¶ 7.

Henry did so because she had received numerous communications from members of Local 1107 complaining that democratic governance had broken down at the union, that its executive board was not capable of functioning, and that divisions between various factions at the union were impeding the work of the union. *Id*. That same day, Henry issued a notice of the internal needs hearing. *Id*., ¶ 5, Ex. E.

Nieters held a consolidated hearing on the charges and internal needs on October 29 and 30, 2016, in Las Vegas, Nevada. *Id*., ¶ 8; *see also Mancini* ECF[1] No. 12-2, ¶ 9 (Fitzpatrick declaration). With respect to the internal charges hearing, all charged parties, including Mancini, had the opportunity to make opening and closing statements, testify, introduce evidence, call and cross-examine witnesses, and make closing statements. *Mancini* ECF No. 12-2, ¶ 10. Nieters kept the record open until November 7, 2016, to allow parties to submit post-hearing responses. *Id*., ¶ 12. Mancini did not submit such a response. *Id*.

Following that October 2016 hearing, President Henry continued to receive complaints from Local 1107 members concerning continued discord at the union. Henry Decl. ¶ 9. Hence, President Henry and her team actively monitored the situation and continued to consider various options to fix the problems at Local 1107. *Id*.

### C. SEIU Adopts the Hearing Officers' Reports, Removes Mancini From Office, and, Following the 17-7 Vote of Local 1107's Executive Board, Imposes an Emergency Trusteeship.

#### 1. The Internal Charges Report.

On April 26, 2017, Nieters issued her report and recommendations related to the internal charges. Henry Decl. ¶ 9. Nieters dismissed some charges, sustained others, and recommended various discipline for both Mancini and Kisling, including their removal from office. *See id*., ¶ 10, Ex. H. Relevant here, Nieters found that Mancini had unilaterally cancelled a scheduled membership vote to ratify a tentative collective bargaining agreement between the union and University Medical Center ("UMC"), contrary to the desires of the union's UMC bargaining team. *See id*., Ex. H at 13-16. Nieters further found that, in conjunction with cancelling the ratification

[1] Defendants cite "ECF" to refer to the electronic case file in the consolidated action, followed by the docket number. Defendants cite "*Mancini* ECF" to refer to the electronic case file in 2:17-cv-02137, followed by the docket number.

vote, Mancini publicly broadcast to UMC and union members various allegations of wrongdoing by the UMC bargaining team, including "[v]iolation of fiduciary duty" and "[a]cting against the best interest of members." *See id.*, Ex. H at 14; *see also id.*, Ex. F at SEIU 0774 (letter from Mancini accusing negotiating committee of, *inter alia*, "violation of fiduciary duty").

Nieters found that UMC promptly objected to Mancini's cancellation notice, and threatened to bring a bad faith bargaining charge against the union. *Id.*, Ex. H at 15; *see also id.*, Ex. F at SEIU 0777 (letter from UMC CEO to Mancini notifying her of "intent . . . to take this matter to the [NV] Employee Management Relations Board"). Similarly, Nieters found that within hours of Mancini's public broadcast of wrongdoing by the UMC bargaining committee, the UMC bargaining committee "gathered 400 signatures for a petition to advise SEIU International President Mary Kay Henry that Sister Mancini had 'done great and unforgivable damage to the SEIU-UMC bargaining team by making false allegations' against them via official SEIU communications and social media." *Id.*, Ex. H at 16; *see also id.*, Ex. F at SEIU 0850-884 (petition with signatures).

Nieters concluded that Mancini's "precipitous cancelation of the ratification vote directly through the employer, without even communicating with the bargaining committee, effectively circumvented the democratic process set in place by the [Local 1107] Constitution, which vests the authority to negotiate in the bargaining committee . . . ." *Id.*, Ex. H at 15. Nieters further concluded that Mancini's "rash unilateral action . . . jeopardized the interests of the members, caused at least temporary loss of faith in their leaders, and impaired the Local's relationship with the employer." *Id.* Additionally, Nieters found that Mancini's accusation against the UMC bargaining team "impugned the integrity of the bargaining committee members and their loyalty to their members, and put the Local and its entire membership in a terrible light with the employer and the community." *Id.*, ¶ 9, Ex. H at 16. Nieters also concluded that "[d]espite the wide broadcast of those accusations, there was no evidence presented that any investigation was ever undertaken or that any breach of duty by the bargaining team was found." *Id.*

Based on her findings, Nieters recommended Mancini be removed from office, barred from holding office for one year, and suspended from membership for one year. *Id.*, Ex. H at 26.

**2. The Internal Needs Report.**

On April 26, 2017, Nieters also issued her report and recommendations related to the internal needs of Local 1107. Henry Decl. ¶ 10, Ex. I. In her report, Nieters found that there was a serious breakdown in internal governance at the union, citing evidence that Executive Board meetings "regularly deteriorate into chaotic, bitter confrontations" where "name calling and shouting matches appear to be commonplace." *Id.*, Ex. I at 2. Nieters cited testimony of one former Local 1107 Executive Board member that their meetings "have become abusive" and there "[t]here is profanity, name calling across the table, interruptions throughout each report and such a tug-of-war on each item that what should be a simple discussion and vote turns into a 30-minute war." *Id.*, Ex. I at 3. Nieters found that the former Treasurer testified that "meetings deteriorate to the point of shouting and emotionally charged interactions between Board members." *Id*. Another former Board member testified that board meetings were "totally unprofessional" where "[y]ou have people wanting to fight each other, cussing each other out, in each other's faces . . . ." *Id*.

Nieters further found, relying again on the UMC bargaining debacle, that the union's leadership conflicts "are at the root of a pattern of instability and uncertainty that interferes with Local 1107's ability to carry out its most basic collective bargaining responsibilities properly and effectively." *Id.*, Ex. I at 4. Additionally, Nieters found that the same leadership conflicts led to a "wider communication breakdown" that "interfered with the ability of members and leaders to carry out their collective bargaining duties properly," and "has caused confusion and impeded staff oversight." *Id.*, Ex. I at 5, 7. Nieters highlighted one incident in particular where Kisling seized on an opportunity while Mancini was on vacation to terminate the union's Director of Organizing "with whom . . . Kisling had long been at odds." *See id.*, Ex. I at 10. According to Nieters' findings, Kisling acted "so belligerently that local law enforcement was called to the office to restore the peace." *Id*. Kisling later called an emergency Executive Board meeting – one Nieters described as "a contentious and chaotic meeting [where] no agenda was presented, no business conducted, and no minutes taken" – in a failed effort to authorize her termination of the Director of Organizing. *Id.*, Ex. I at 10-11. The Director of Organizing later obtained a restraining order against Kisling. *See id.*, Ex. I at 22 n.10.

Last, Nieters found that "the often conflicting provisions of the Local's Constitution and Bylaws concerning exactly what authority is held by the various Local officers and Executive Board members significantly contribute to the confusion around governance and democratic procedures." *Id.*, Ex. I at 11.

Based on her findings, Nieters concluded that "immediate intervention in the Local – ideally in the form of an International Union trusteeship – is necessary to assure the performance of Local Union collective bargaining duties and functions, restore effective democratic procedures in the Local, protect the interests of the Local and the membership, and otherwise carry out the legitimate objects of the International Union." *Id.*, Ex. I at 12-13.

**3. President Henry Adopts Nieters' Reports and Recommendations, and the Local 1107 Executive Board Votes 17-7 to Accept a Voluntary Trusteeship.**

On April 26, 2017, Henry was briefed on Nieters' reports. That same day, Henry adopted in full Nieters' report and recommendation regarding the internal charges, and so notified Mancini, Kisling and the other parties to the disciplinary proceedings. Henry Decl. ¶ 10, Ex. J. As a result, Mancini and Kisling were removed from office that same day. *See id.*

Henry also took under advisement Nieters' report and recommendation regarding the internal needs of Local 1107. *See id*. In the same letter notifying the parties of the internal discipline, Henry advised them that she had asked SEIU Executive Vice President Neal Bisno and Deputy Chief of Staff Deirdre Fitzpatrick to attend the Local 1107 Executive Board meeting scheduled for that same evening to discuss how best to move the union forward, and requested that they be permitted to address the union's Executive Board in executive session. *See id.*, Ex. J.

Later that same evening, the Local 1107 Executive Board voted 17-7, with 5 members abstaining, in favor of a voluntary trusteeship. *Id.*, ¶ 11; *see* Declaration of Patricia Armstrong (filed contemporaneously in support of summary judgment motion in *Garcia*), Ex. A.

**4. President Henry Imposes an Emergency Trusteeship Over Local 1107.**

On April 28, 2017, pursuant to her authority under Article VIII, §§ 7(a) and (f) of the SEIU Constitution, President Henry issued an order imposing an emergency trusteeship over Local 1107. Henry Decl. ¶ 12. In her order, President Henry cited the findings in Nieters' internal needs report and recommendations, as well as the vote by the Local 1107 Executive Board. *See id.*, ¶ 12,

Ex. K. Among other things, President Henry's order cited the following: an "on-going and serious breakdown in internal union governance and democratic procedures at Local 1107, stemming from warring factions on the Local Executive Board"; "[l]eadership conflicts and in-fighting in Local 1107 [which] have caused great instability in the Local and interfered with its carrying out its collective bargaining responsibilities properly and effectively"; the union's "failure to communicate adequately with the Local membership interferes with its collective bargaining responsibilities"; "the communication breakdown in the Local impeded staff oversight, leaving Local staff without clear direction on the work they are required to perform . . . ."; "Local 1107's former Executive Vice President usurped the former President's constitutional authority to hire and fire Local staff by attempting to terminate a staff member while the former President was on vacation . . . ."; and "several conflicting provisions in Local 1107's Constitution and Bylaws pertaining to the authority of the Local's officers and Executive Board members contribute to the conflict and confusion in the Local." *Id.*, Ex. K.

In addition, President Henry appointed a Trustee and Deputy Trustee, suspended Local 1107's Constitution, and removed the union's officers and Executive Board members. *Id.* Last, President Henry made clear that she would "request that the International Executive Board appoint a hearing officer and that a notice of hearing be issued in the near future" regarding the imposition of the emergency trusteeship. *Id.*

### D. Following a Trusteeship Hearing, SEIU's Executive Board Ratifies the Trusteeship Over Local 1107.

#### 1. SEIU Issues a Notice of Hearing for July 2017.

Pursuant to her authority under Article VIII, § 7(f) of the SEIU Constitution, on May 25, 2017, President Henry, having been advised by her staff that scheduling conflicts prevented holding the hearing within 30 days of the imposition of the trusteeship, extended these time periods "in light of SEIU Local 1107's pending commitments and the schedules of the individuals whose attendance at the hearing is necessary." Henry Decl. ¶ 14, Ex. M.

On June 30, 2017, SEIU issued a notice of hearing, setting the trusteeship hearing for July 13, 2017, in Las Vegas, Nevada. *Id.*, ¶ 15, Ex. N. The notice identified April Verrett, Vice President of SEIU Local 2015 in Los Angeles, California, and an SEIU Executive Board member,

as hearing officer, identified the reasons that President Henry imposed the emergency trusteeship, and described the applicable rules of procedure. *Id*. On July 3, 2017, SEIU issued the notice to former Local 1107 officers and Executive Board members. *Id.*, ¶ 15.

The notice identified Local 1107 and SEIU as the official parties in the hearing, and provided that if Local 1107's former Executive Board intended to participate in the hearing and oppose the trusteeship, it could, by majority vote of its former Executive Board, designate a spokesperson to represent it at the hearing. *Id.*, Ex. N ("Rules of Procedure," ¶ 2). The rules also provided that former President Mancini and former Executive Vice President Kisling would be given 30 minutes to make statements concerning the trusteeship at the hearing, to be extended at the discretion of the hearing officer. *Id.*, Ex. N, ¶¶ 5-6.

**2. Local 1107 Does Not Oppose the Trusteeship at the Hearing.**

The trusteeship hearing was held on July 13, 2017, in Las Vegas, Nevada. Henry Decl. ¶ 16, Ex. O. Local 1107's former Executive Board did not designate a spokesperson to oppose the trusteeship at the hearing. *See id*., Ex. O at 9:22-10:4 (RG0333-34). Hence, SEIU was the only formal party at the hearing. *Id*. at 10:5-10. Nonetheless, the rules of procedure explicitly provided for, and the hearing officer allowed, both Mancini and Kisling to attend and make statements on the record, even though they were no longer members of the union; only Mancini did so, however. *See id*. at 6:25-7:15; 121:11-129:16. The hearing officer also permitted other Local 1107 members to make statements on the record regarding the trusteeship. *See id*. at 9:2-4; 129:21-23. The hearing officer also left the hearing record open until August 21, 2017, in order to permit post-hearing written submissions. Henry Decl. ¶ 16 & Ex. Q at 6 (SEIU 0009).

**3. SEIU's Executive Board Adopts the Decision of the Hearing Officer to Ratify the Trusteeship.**

On October 16, 2017, Verrett issued her report and recommendations regarding the trusteeship. Henry Decl. ¶ 17, Ex. Q. Verrett ultimately concluded that that the trusteeship was properly imposed for the purposes of "restoring democratic procedures," "assuring the performance of collective bargaining agreements or other duties of a bargaining representative," and "carrying out the legitimate object[] of [SEIU]." *See id*., Ex Q at 19-20.

In her report, Verrett cited substantial evidence presented at the hearing of "on-going and

serious breakdowns in internal union governance and basic democratic procedures in the Local, stemming from bitter rivalries between warring factions on the Local Executive Board that substantially interfered with the Local's ability to function in an orderly and democratic manner." *Id*., Ex. Q at 7. Among other things, Verrett cited the testimony of a former Executive Board member who testified that Executive Board meetings "had become '[d]isruptive, unprofessional' and routinely descended into people 'screaming and yelling and pounding on tables,' 'foul language' and 'name calling.'" *Id.* Verrett also cited the minutes of the union's Executive Board meetings, which corroborated Marzan's testimony. *Id*., Ex Q at 8.

Verrett also found that "the continuing leadership conflicts and in-fighting among Local 1107 Executive Board members" caused "great instability in the Local's bargaining teams and [led] employers and members to view the union as weak and vulnerable . . . ." *Id*., Ex. Q at 10. Verrett cited the 2016 UMC bargaining incident described earlier, as well as a dispute between Mancini and Kisling which led to Mancini asking UMC to audit the use of union paid leave time. *See id*., Ex. Q at 11.

Citing the testimony of several members at both the internal needs and trusteeship hearings, Verrett also found that "members and stewards had difficulty obtaining the information and assistance that they needed from the Local to properly carry out their representational and collective bargaining responsibilities." *Id*., Ex. Q at 11. As had Nieters, Verrett also concluded that the communication breakdown in the union impeded effective staff oversight. *See id*., Ex. Q at 14-15. Among other things, Verrett cited Kisling's attempt to terminate the Director of Organizing while Mancini was on vacation. *See id*., Ex. Q at 15. Like Nieters, Verrett further found that various conflicting provisions in the Local 1107 Constitution "contributed to the conflict and confusion in the Local." *Id*., Ex. Q at 16.

Verrett emphasized two additional points in her report. First, she noted that Local 1107's former Executive Board voted 17-7 in favor of a trusteeship. *Id*., Ex. Q at 17. Second, she found that an investigation following the trusteeship "revealed serious financial malpractice," including "no internal policies or procedures in place for the use of staff credit cards, the maintenance of membership lists and dues records, or for a variety of other financial and legal practices at the

local." *Id.*, Ex. Q at 18. Among other things, Verrett cited the failure to file required reports related to the union's political action committee, failure to report grievance settlements with staff on W-2 forms; and failure to comply with a Department of Labor subpoena for over a year. *See id*.

On October 23, 2017, SEIU informed the Trustee and former Local 1107 officers and Executive Board members that its Executive Board had adopted Verrett's report and recommendations in their entirety. Henry Decl. ¶ 17, Ex. R.

### E. The Department of Labor Dismisses Trusteeship Complaint.

On August 15, 2018, the U.S. Department of Labor ("DOL"), the federal agency responsible for enforcement of the LMRDA, conducted an investigation based on a member complaint and concluded that SEIU "imposed the trusteeship [over Local 1107] for an allowable purpose," did so "in accordance with the [SEIU] constitution and bylaws," and that the "trusteeship was ratified after a fair hearing." Declaration of Jonathan Cohen, Ex. A (SEIU 13229-29).

## III. Argument

As discussed below, Defendants are entitled to summary judgment because there is no genuine issue of material fact related to any of the claims in the complaint.

### A. Summary Judgment Standard.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also* Local Rule 56-1. The burden initially lies on the moving party to show there is no genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). The moving party, here Defendants, may show a lack of genuine issue by showing the non-moving party's evidence is insufficient to establish a material element of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Where, as here, the non-moving party Plaintiffs bear the burden of proof at trial, the moving party need not disprove the non-moving party's case. *Id.*

In ruling on a motion for summary judgment, all justifiable inferences from the record are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Castaneda v. Dura-Vent*

*Corp.*, 648 F.2d 612, 617 (9th Cir. 1981). However, if the record could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Count I: Mancini's Claim is Moot; In Any Event, She Was Afforded a Full and Fair Hearing.**

The LMRDA prohibits a union from disciplining a member "unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5); *See Wellman v. Int'l Union of Operating Eng'rs Local 501*, 812 F.2d 1204, 1205 (9th Cir. 1987). Count I of the complaint alleges various violations of § 411(a)(5), but the Court dismissed several of the allegations already. *See Mancini* ECF No. 32 at 1-4. As the Court summarized them, the remaining allegations are that Defendants denied Mancini a full and fair hearing because the charges and evidence in the internal disciplinary proceeding were contradictory, Mancini acted in good faith, and the UMC ratification vote took place after collective bargaining ended so she should not have been disciplined for interfering with collective bargaining. *See Mancini* ECF No. 1 at 8-14; *see also Mancini* ECF No. 32 at 4 (summarizing allegations). Plaintiffs ask the Court to reinstate Mancini to membership, and to restore her as President of Local 1107. *See Mancini* ECF No. 32 at 37.

There are several reasons to grant Defendants summary judgment on Count I. First, insofar as Plaintiffs seek an injunction restoring Mancini's membership rights, that aspect of their claim is moot because Mancini's membership rights have already been restored. *See* ECF No. 220-7 at 5 (Declaration of Brian Shepherd, ¶ 11: "Those periods have expired and [Mancini] is currently a regular member of Local 1107 and also serves as a steward."); *see Pygatt v. Painters Local No. 77*, 763 F. Supp. 1301, 1308-09 (D.N.J. 1991) (holding that LMRDA claim for denial of full and fair hearing was moot where disciplinary charges and fines "no longer exist"); *Robins v. Schonfeld*, 326 F. Supp. 525, 526 (S.D.N.Y. 1971) ("By reason of the restoration to membership of plaintiff any equitable relief sought is now moot.").

The remaining relief Plaintiffs seek, Mancini's restoration to her former office, is unavailable under § 411(a)(5). The "prohibition [in § 101(a)(5)] on suspension without observing certain safeguards applies only to suspension of membership in the union; it does not refer to

suspension of a member's status as an officer of the union." *United Steel Workers Local 12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1117 (9th Cir. 2013) (brackets in original); *see also Green v. Brigham*, Case No. 03CV5190(JG), 2005 WL 280327, at *4 (2d Cir. 2005). Thus, even if Plaintiffs could show that Mancini was denied a fair hearing under § 411(a)(5), she would not be entitled to the relief she seeks, namely, her return to office at Local 1107.

Last, Mancini's discipline is supported by "some evidence," which is sufficient under *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245 (1971). There, the Supreme Court made clear that "§ 101(a)(5) was not intended to authorize courts to determine the scope of offenses for which a union may discipline its members." *Id.* at 244. Instead, what "remains [is] only the question whether the evidence in the union disciplinary proceeding was sufficient to support the finding of guilt." *Id.* at 245. Thus, the LMRDA's guarantee of a "full and fair" hearing only "requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. *This is the proper standard of judicial review*." *Id.* at 246 (emphasis added). Following *Hardeman*, a court "may not reweigh the evidence nor judge the credibility of the witnesses." *Mandaglio v. United Bhd. of Carpenters & Joiners of Am.*, 575 F. Supp. 646, 652 (E.D.N.Y. 1983); *see also McKee v. Sales Drivers & Dairy Employees, Local Union No. 166*, No. 72-3034-EC, 1973 WL 1094, at *3 (C.D. Cal. Apr. 4, 1973).

In rejecting Plaintiffs' first preliminary injunction motion, this Court applied the *Hardeman* standard and concluded there was no likelihood of success on Count I because "some evidence" supported Mancini's discipline. *See* Tr. of Proceedings, Oct. 18 2017, 45:1-15. The Ninth Circuit affirmed that conclusion, ECF No. 175 at 3, and it remains valid. There is no dispute that, as Nieters found, in July 2016 Mancini unilaterally cancelled the UMC ratification vote contrary to the desires of the UMC bargaining committee, and broadcast allegations of wrongdoing by the bargaining committee to members and UMC. Nor is there any dispute that, as Nieters found, UMC responded by threatening to pursue a bad faith bargaining charge against the union, and hundreds of members signed a petition condemning Mancini's conduct. This was decidedly "some evidence" to sustain Mancini's discipline. As a result, there is no genuine issue of material fact regarding Count I.

The remaining allegations in Count I do not affect this conclusion.[2] Nothing in § 411(a)(5) of the LMRDA compelled SEIU to credit Mancini's good faith over the undemocratic actions she took or the impact those actions had on the union's reputation with members or employers. Moreover, Mancini herself admits that ratification is "the final stage of the collective bargaining process." Cohen Decl., Ex. B, Tr. 22:1-8. Thus, the claim that Mancini did not interfere with collective bargaining by unilaterally cancelling the UMC ratification vote is unavailing. Last, regardless of any alleged contradiction between the charges and evidence, this Court has already held that Mancini had adequate notice of the charges against her. *See Mancini* ECF No. 32 at 3 ("The notice of charges sets forth a sufficient statement of facts describing the UMC bargaining incident, including Mancini's public communication about the alleged malfeasance of the bargaining committee."); *see Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1075 (9th Cir. 1999) ("The level of detail required [under the LMRDA] is that needed to notify the accused of the incidents that form the basis of the charge so that . . . she may prepare a defense."). Thus, Mancini cannot plausibly argue that she was denied a fair opportunity to defend against the charges. *See id.*

**C. Count II: Mancini's Speech Impaired the Union's Institutional Interests.**

Section 101(a)(2) of the LMRDA provides union members "the right to express any views, arguments, or opinions," subject to the proviso that "nothing herein shall impair the right of a

---

[2] None of the remaining allegations of Count I was raised in Mancini's internal appeal of her discipline to SEIU's Executive Board. *See* Henry Decl. ¶ 13, Ex. L. Because, in effect, Mancini made *no effort* to exhaust these claims, the Court may grant summary judgment to Defendants as to Count I on this basis. *See Casumpang v. Int'l Longshore & Warehouse Union Local 142*, 297 F. Supp. 2d 1238, 1250-51 (D. Haw. 2003) (denying Title I claim on basis of 29 U.S.C. § 411(a)(4), which states "any such member may be required to exhaust reasonable hearing procedures . . . within such organization, before instituting a legal or administrative proceeding against such organization or any officer thereof . . . ."). The SEIU Constitution has an exhaustion requirement. Henry Decl., Ex. A at 39 (Art. XVII, § 8) & 45 (Art. XXIII.A.). Mancini cannot show that any of the three exceptions to exhaustion apply here: (1) there is no evidence union officials were so hostile to her that she could not hope to get a fair hearing on the charges against her; (2) the internal union appeals procedures was adequate to reverse the underlying hearing officer decision, *see id.*, Ex. A at 39 (Art. XVII § 6) ("The International Executive Board may affirm, reverse or modify the decision appealed from."); and (3) exhaustion of internal procedures would not unreasonably delay Mancini's opportunity to obtain a judicial hearing on the merits, as indeed, the IEB rendered its decision on January 19, 2018, *see* Henry Decl. Ex. S, and one year later this case is ongoing. As such, Mancini clearly could have sought to exhaust as to the claims she now presents to this court, but the evidence shows she made no effort to do so.

labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2); *see United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 111 (1982) (holding that even where a union rule "interferes with an interest protected by the first part of § 101(a)(2)," it may still be valid if it is "is 'reasonable' and thus sheltered by the proviso to § 101(a)(2)"). Count II of the complaint alleges that Mancini's LMRDA free speech rights were infringed because her discipline was based in part on her "broadcast of unfounded, disloyal, and derogatory accusations against the members" of the UMC bargaining committee. *Mancini* ECF No. 1 at 15-18.

In rejecting Plaintiffs' first preliminary injunction motion, this Court found that there was not a likelihood of success on the merits of Count II because even if Mancini's speech was protected, "[t]he union's decision to discipline her was reasonably related to protecting the union as an institution."[3] Tr. of Proceedings, Oct. 18, 2017, at 47:14-16 (citing *Kofoed v. Int'l Bhd. of Elec. Workers, Local 48*, 237 F.3d 1001, 1005 (9th Cir. 2001)). That conclusion remains valid. As the Ninth Circuit has made clear, section 101(a)(2) "does not provide blanket protection for all union activities a member wishes to characterize as free speech." *Serv. Employees Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1048 (9th Cir. 2013). Thus, the Ninth Circuit's "case law distinguishes between speech critical of a union – which [§ 101] protects – and 'conduct designed to impair the union's ability to function' – which [§ 101] does not protect." *Id.* (quoting *Ferguson v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 854 F.2d 1169, 1174 (9th Cir. 1988)). Furthermore, a union officer, unlike a union member, "is also under a duty as a representative of the union's management to cooperate with it and implement its directives. He may not, while acting as the union's agent, sabotage or subvert its policies in the name of free speech." *Newman v. Local 1101, Commc'ns Workers of Am.*, 570 F.2d 439, 445 (2d Cir. 1978).

---

[3] The evidence is clear that Mancini was disciplined for her *conduct*—cancelling the ratification vote and sending a letter to UMC with allegations against the bargaining committee—rather than simply her speech. *See* Henry Decl., Ex. H. However, even assuming for the sake of argument the speech aspect of her conduct was protected, her actions lost protection as described herein.

As Nieters correctly found, Mancini's conduct impaired the union's institutional interests: Her "rash unilateral action demonstrated a fundamental misunderstanding of the democratic process, jeopardized the interests of the members, caused at least temporary loss of faith in their leaders, and impaired the Local's relationship with the employer." Henry Decl. ¶ 10, Ex H at 15. As noted already, UMC responded to Mancini's conduct by threatening to file a bad faith bargaining charge against the union, and the UMC bargaining committee gathered 400 signatures on a petition advising President Henry that Mancini had done "great and unforgivable damage to the SEIU-UMC bargaining team . . . ." *Id.*, Ex. H at 16; *id.*, Ex. F at SEIU 0777. Those undisputed facts amply support the conclusion that Mancini's conduct impaired the union's institutional interests and therefore was not protected by § 411(a)(2). *See Kofoed*, 237 F.3d at 1005. Thus, there is no genuine issue of material fact concerning the allegations in Count II.

### D. Count III: Defendants Did Not Breach the SEIU Constitution or the LMRDA In Connection with the Internal Needs Hearing.

Count III of the complaint is confusing, but it appears to allege that SEIU violated its Constitution by failing to provide notice to Local 1107 of the internal needs hearing, and by failing to notify Local 1107 that trusteeship "would be discussed and could be recommended as an internal need of Local 1107." *Mancini* ECF No. 1 at 19, ¶¶ 75-76. According to Count III, SEIU also violated its Constitution by improperly using the internal needs hearing to avoid a pre-trusteeship hearing, and instead using it to justify an emergency trusteeship. *Id.*, ¶ 78. Count III alleges that these purported failures to follow the SEIU Constitution violated 29 U.S.C. § 462, and eliminated the presumption of validity of the trusteeship under 29 U.S.C. § 464.

Count III fails for several reasons. First, Plaintiffs incorrectly allege that SEIU failed to provide notice to Local 1107 of the internal needs hearing. As noted above, on October 17, 2016, SEIU sent notice to Local 1107 officers and Executive board members that the internal needs hearing would be held on October 29, 2016. Henry Decl. ¶ 7, Ex. E.

Second, nothing required SEIU to notify Local 1107 that Nieters could recommend trusteeship as a possible remedy to address Local 1107's state of affairs. Article VIII, § 7(g) of the SEIU Constitution plainly states that the purpose of an internal needs hearing is to "examine the internal needs of the Local Union . . . and to assist [the International President] in determining

what remedial action(s), if any, should be implemented by the Local Union . . . ." *Id.*, Ex. A at 20. Additionally, the notice of hearing itself identified that the hearing was to determine what remedial steps were necessary to address complaints received by President Henry "that the democratic governance of Local 1107 has broken down, that the Executive Board is incapable of functioning and that divisions between various factions are impeding the work of the local." *Id.*, Ex. E. Together, Article VIII, § 7(g) of the SEIU Constitution and the notice of hearing clearly notified Local 1107 of the purpose of the hearing. Nothing more was required.

Notably, even if the SEIU Constitution and notice of hearing failed to explicitly state that Nieters could recommend a trusteeship, during the internal needs hearing several members pleaded with Nieters to recommend a trusteeship. *See* Henry Decl. ¶ 8, Ex. F, Tr. 15:14-18; 23:12; 25:22-24. Thus, by then, it should have been abundantly clear that Nieters could consider trusteeship as a remedial suggestion.

Third, both the SEIU Constitution and the LMRDA authorize an emergency trusteeship without a pre-trusteeship hearing. *See* Henry Decl., Ex. A at 20 (Art. VII, § 7(f)); *Teamsters Local Union No. 2000 v. Hoffa*, 284 F. Supp. 2d 684, 690 (E.D. Mich. 2003). Thus, contrary to the allegations in Count III, there was no reason for SEIU to devise an end-run around a pre-trusteeship hearing, and no evidence supports that claim. Instead, the undisputed evidence is that President Henry held the internal needs hearing because of the complaints of Local 1107 members that the union was in shambles. *See* Henry Decl. ¶ 7.

**E. Count IV: President Henry Imposed the Emergency Trusteeship for Proper Purposes.**

Section 302 of the LMRDA, like Article VIII, § 7(a) of the SEIU Constitution, provides that trusteeships shall be established "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties or a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. Count IV of the complaint alleges that President Henry lacked an allowable basis for imposing an emergency trusteeship over Local 1107. *See Mancini* ECF No. 1 at 21-24.

In rejecting Plaintiffs' preliminary injunction motions, this Court has twice concluded that

there was no likelihood of success on Count IV because President Henry imposed the emergency trusteeship for a proper purpose. *See* Tr. of Proceedings, Oct. 18, 2017, at 39:15-40:13; ECF No. 232 at 2. On appeal from this Court's denial of Plaintiffs' first preliminary injunction motion, the Ninth Circuit agreed. *See* ECF No. 175 at 3 (holding that this Court "correctly noted that the breakdown in union governance was a proper reason for the trusteeship"). Not surprisingly, other courts have also sustained emergency trusteeships where, as here, a local union is hobbled by political infighting. *See, e.g., Teamsters Local No. 406 v. Crane*, 848 F.2d 709 (6th Cir. 1988); *Tam v. Rutledge*, 475 F. Supp. 559 (D. Hawai'i 1979); *Sawyers v. Int'l Ass'n of Machinists*, 279 F. Supp. 747 (E.D. Mo. 1967).

There is no genuine issue of material fact that President Henry imposed the trusteeship for an allowable purpose. Nieters' reports detailed a widespread breakdown in basic democratic governance at Local 1107, ranging from dysfunctional and chaotic Executive Board meetings to internecine, and sometimes public, disputes between officers. Those reports likewise described how that same failure of democratic governance led to the union's further failure to carry out its basic collective bargaining and representational functions. Nieters' reports thus amply support the conclusion that the emergency trusteeship was imposed for a proper purpose under the LMRDA.[4] Indeed, the Department of Labor ("DOL") similarly concluded, in response to a complaint, that SEIU imposed the trusteeship for a permissible purpose. Cohen Decl., Ex. A at SEIU 13228-29.

---

[4] To be sure, the allegations in Count IV invite the Court to second-guess President Henry's determination that an emergency trusteeship was necessary in light of Nieters' findings. But the Court need not conclude that an actual emergency existed; it was sufficient that President Henry reasonably believed an emergency trusteeship was necessary. *See Retail Clerks Union, Local 770 v. Retail Clerks Int'l Ass'n*, 479 F.2d 54, 56 (9th Cir. 1973) (requiring "initial deference . . . to the International's finding that an emergency exists" to justify an immediate trusteeship); *see also Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 793 (2d Cir. 1994) ("So long as the reasons for implementing the temporary trusteeship implicated any of these concerns [including undemocratic procedures], it is not up to the courts to invalidate [the international president's] view that the situation constituted an emergency."); *Teamsters Local Union No. 2000*, 284 F. Supp. 2d at 691 ("A parent organization is not obligated to prove that an actual emergency existed, if the General President had a reasonable belief that there was an emergency."). Given Henry's reliance on Nieters' findings, there is no genuine issue of material fact that President Henry reasonably believed an immediate trusteeship was necessary to address the ongoing dysfunction at Local 1107.

**F. Count V: President Henry Did Not Impose the Trusteeship in Bad Faith.**

A plaintiff "may overcome the presumption of validity provided by 29 U.S.C. § 464 by demonstrating through clear and convincing evidence that the trusteeship was not imposed for a statutorily permissible purpose or was imposed in bad faith." *Pape v. Local 390 of Int'l Bhd. of Teamsters*, 315 F. Supp. 2d 1297, 1313 (S.D. Fla. 2004). Count V alleges that President Henry imposed the emergency trusteeship in bad faith. *Mancini* ECF No. 1 at 24-29. Because Plaintiffs' lawsuit was filed four months into the trusteeship and attacks its *establishment*, rather than its current *continuation*, the clear and convincing standard of evidence continues to apply to Plaintiffs' claim. *See* 29 U.S.C. § 464(c) ("In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and . . . ratified after a fair hearing . . . shall be presumed valid for a period of eighteen months from the date of its establishment *and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.*") (emphasis added).[5]

Because President Henry imposed the trusteeship for a proper purpose, Defendants are entitled to summary judgment on Count V. "As long as the trusteeship is supported by at least one proper purpose, it is immaterial that the labor union which imposed the trusteeship also may have had an impermissible motive." *Serv. Employees Int'l Union Local 87 v. Serv. Employees Int'l Union Local No. 1877*, 230 F. Supp. 2d 1099, 1105 (N.D. Cal. 2002); *see also Morris v. Hoffa*, 361 F.3d 177, 189 (3d Cir. 2004); *Pape*, 315 F. Supp. 2d at 1317; *Pruitt v. United Bhd. Of*

---

[5] The statutory presumption of invalidity and shifting burden of proof that apply to the trusteeship after eighteen months address "the *continuation* of the trusteeship . . . ." 29 U.S.C. § 464(c) (emphasis added); *see McCann v. United Union of Roofers, Waterproofers, and Allied Workers*, Case No. Civ-A-04-3328, 2004 WL 2958434, at *8 (E.D. Penn. Dec. 20, 2004) (noting that 29 U.S.C. § 464(c) "establishes a burden of proof that must be satisfied by an international union when, upon challenge, an issue is raised *concerning whether a Trusteeship should be continued after the eighteen month period of presumed validity*.") (emphasis added). Nothing in the statute suggests that after eighteen months the original imposition of the trusteeship, as opposed to continuance of the trusteeship, is suddenly exposed to a searching judicial review regarding whether it was initially imposed for a proper purpose. In any event, whatever standard is applied, the evidence of SEIU's proper purpose, and good faith imposition, is clear.

*Carpenters and Joiners of Am.*, 673 F. Supp. 441, 444-45 (N.D. Ga. 1987). "In other words, an improper motive will only invalidate the trusteeship if no other valid motive was present." *Pape*, 315 F. Supp. 2d at 1314 (internal quotation marks and citations omitted). As both this Court and the Ninth Circuit have already concluded in the context of earlier preliminary injunction motions, and for the reasons described earlier, President Henry imposed the trusteeship for a proper purpose. Hence, whether President Henry also had an improper motive does not create a genuine issue of material fact concerning the lawfulness of the trusteeship.[6] *See Serv. Employees Int'l Union Local 87*, 230 F. Supp. 2d at 1105.

In any event, there is no genuine issue of material fact regarding President Henry's alleged bad faith. To prevail on their claim, Plaintiffs must show that President Henry "acted contrary to the union's best interests, acted in [her] own self interest, or that [her] actions were so outrageous or unconscionable that even if they were in the best interests of the union, they would constitute bad faith." *Local Union No. 810*, 19 F.3d at 794 (internal quotation marks and citations omitted); *see also Teamsters Local Union No. 2000*, 284 F. Supp. 2d at 91 ("[T]o constitute bad faith, the General President's actions must be prompted by some interested or sinister motive, rather than an honest mistake as to his duty as General President.").

The thrust of Plaintiffs' bad faith allegations is that "Defendants can provide no explanation for why they waited six (6) months to impose an emergency trusteeship when the supposed emergency situation existed on October 30, 2016," and that the failure to impose the trusteeship until April 2017 is evidence of bad faith.[7] *See Mancini* ECF No. 1, ¶¶ 101-107. Those allegations fall well short of establishing that President Henry had an interested or sinister motive

---

[6] That is especially so since the trusteeship was subsequently ratified by SEIU's Executive Board following issuance of Verrett's report and recommendation. "Once an emergency trusteeship has been ratified following a fair hearing, however, the facts underlying the initial decision to impose the emergency trusteeship only are material to whether plaintiffs are entitled to retroactive relief for the period between the defective imposition of an emergency trusteeship and the subsequent 'curative hearing and vote.'" *Serv. Employees Int'l Union Local 87*, 230 F. Supp. 2d at 1104. As such, "any disputes concerning the facts underlying SEIU's President [Henry's April 28, 2017] decision to place Local [1107] in an emergency trusteeship are not 'material.'" *Id.*

[7] In support of their bad faith claim, Plaintiffs also cite SEIU's decision to hold the trusteeship hearing more than 30 days after imposition of the trusteeship. *See Mancini* ECF No. 1, ¶¶ 109-115. That argument is addressed in Section III.G of this brief.

in imposing the trusteeship. Indeed, there was a good reason for the timing of the trusteeship. As a result of the parties' affiliation agreement, SEIU was unable to impose a trusteeship without the affirmative vote of Local 1107's Executive Board, which did not occur until the union's April 26, 2017 Executive Board meeting. President Henry imposed the trusteeship two days after that vote. Moreover, that SEIU waited to request a voluntary trusteeship until Nieters issued her final report and recommendation hardly evinces that the emergency trusteeship was prompted by a sinister or interested motive. To the contrary, it supports the conclusion that—in addition to the Executive Board vote—President Henry relied in good faith on Nieters' final report and recommendation.

Plaintiffs also allege that President's Henry's trusteeship order failed to "assert a good faith emergency situation necessitating the imposition of an emergency trusteeship before a hearing could be held." *Mancini* ECF No. 1, ¶ 108. Again, the caustic political infighting among officers and the utter disarray at the Executive Board, and the impact of those problems on the union's ability to carry out its basic collective bargaining and representational functions, all described in President Henry's trusteeship order, were sufficient cause to impose an emergency trusteeship. *See, e.g., Crane*, 848 F.2d at 715; *Tam*, 475 F. Supp. at 567-68; *Sawyers*, 279 F. Supp. at 754. Those same problems, described in detail by Verrett's post-trusteeship hearing report which was ratified by the SEIU Executive Board, likewise provided sufficient cause to ratify and continue the trusteeship following the post-trusteeship hearing.[8]

### G. Counts VI & VII: President Henry Had Good Cause to Continue the Date of the Trusteeship Hearing and the Decision Thereon.

Article VIII, Section 7(f) of the SEIU Constitution states that in the event of an emergency trusteeship, while the appointed hearing officer "shall conduct such a hearing within 30 days after imposition of the trusteeship, and a decision by the International Executive Board shall be made

---

[8] To the extent the allegations in the Complaint invite the Court to reweigh the evidence before Verrett in the trusteeship hearing, that is not this Court's role. *See Pape*, 315 F. Supp. 2d at 1314 ("It is not the role of this Court, however, to review the trusteeship panel's decision de novo and weigh the disputed evidence."). Because substantial evidence supports Verrett's report, ratified by the SEIU Executive Board, the ratification and continuation of the trusteeship was lawful. *See id.* at 1314-15 ("Thus, even if Plaintiff's suggested inferences drawn from the same evidence are reasonable, they do not serve to create a factual issue concerning whether General President Hoffa's decision was supported by substantial evidence and is therefore entitled to deference."). *See* Henry Decl., Ex. O (trusteeship hearing transcript); *id.*, Ex. P (selected exhibits).

within 60 days after the appointment of such Trustee," both timelines may be extended. *See* Henry Decl., Ex. A at 20. ("These time limits may be extended by the International President for good cause which decision shall be final and binding.").

Count VI alleges that SEIU breached this provision of the constitution because the trusteeship hearing was not conducted within 30 days of its imposition, and SEIU failed to establish good cause for postponing the hearing. *Mancini* ECF No. 1, ¶¶ 121-122. Count VII similarly alleges that SEIU breached its constitution because the SEIU Executive Board did not issue a decision on the merits of the emergency trusteeship within sixty days of the appointment of the Trustee, and that the reason asserted in the Notice of Trusteeship hearing did not establish sufficient cause. *Id.*, ¶¶ 128-130.

The undisputed evidence in this case shows that on March 25, 2017, President Henry issued a memorandum to Trustees Blue and Manteca, copying hearing officer Verrett, exercising her authority under Article VIII, Section 7(f) of the SEIU Constitution to extend both dates. The memorandum states that "in light of Local 1107's pending commitments and the schedules of the individuals whose attendance at the hearing is necessary, I find that good cause exists to hold the above-referenced hearing more than 30 days after the emergency trusteeship was imposed on Local 1107, and for the International Executive Board's decision on the trusteeship to be made more than 60 days after the trusteeship was imposed." Henry Decl. ¶ 14 & Ex. M.

President Henry properly exercised her constitutional authority to extend the timing of the post-emergency trusteeship hearing. The cited reasons—pending commitments of Local 1107 and schedules of the individuals whose attendance at the trusteeship hearing is necessary—sufficiently establish good cause to hold the hearing more than 30 days after the trusteeship was imposed. And logically, if the initial hearing is postponed, there is good cause to postpone an ultimate decision as well, which must be rendered after an evidentiary hearing. Plaintiffs cannot point to any evidence undermining President Henry's determination of good cause to extend both timelines.

Moreover, the President's determination of good cause may not be lightly set aside. The SEIU constitution makes clear that the decision regarding good cause is one for the SEIU President to make, and that her decision on this score shall be "final and binding." In the absence

of evidence showing President Henry did not in fact believe good cause existed, this determination should not be disturbed. *See Motion Picture & Videotape Editors Guild, Local 776, I.A.T.S.E. v. Int'l Sound Technicians, Local 695*, 800 F.2d 973, 975 (9th Cir. 1986), *opinion amended on denial of reh'g*, 806 F.2d 1410 (9th Cir. 1986) ("There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions. . . . As such, absent bad faith or special circumstances, an interpretation of a union constitution by union officials, as well as interpretations of the union's rules and regulations, should not be disturbed by the court." (internal citations omitted)); *Busch v. Givens*, 627 F.2d 978, 980 (9th Cir. 1980).[9]

**H. Count VIII: SEIU Provided Sufficient Notice of the Trusteeship Hearing.**

Under LMRDA Section 304(c), 29 U.S.C. § 464(c), a trusteeship must be "authorized or ratified after a fair hearing." "A fair hearing has three minimum requirements; (1) notice of the charges; (2) presentation of evidence and witnesses; and (3) an opportunity for cross-examination." *Teamsters Local Union No. 2000*, 284 F. Supp. 2d at 690 (internal quotations marks and citations omitted). The function of the notice requirement is to inform the local union "in written charges of the acts which the international asserts invoke the right to impose a trusteeship, and a reasonable opportunity to prepare its defenses." *Id.* The LMRDA does not "mandate that hearing notices be sent in a certain form or by a certain means." *Id.* at 692.

Count VIII alleges that the notice of the trusteeship hearing violated the SEIU Constitution, and the LMRDA because it (1) was not sent to all members of Local 1107 [*Mancini* ECF No. 1, ¶ 140]; (2) was not sent to "all the former Local 1107 Executive Board members who were suing to invalidate the trusteeship" [*id.* ¶ 143; *see also id.*, ¶ 154]; and (3) was untimely because circulated on July 3, 2017, which did not allow time for the Local's former board to secure a majority vote to designate a spokesperson to represent it at the hearing. *Id.*, ¶¶ 144, 146.

---

[9] Even if a genuine dispute of material fact could be raised, summary judgment should be granted because the appropriate remedy for either Counts VI and VII would be the holding of an expedited hearing. Because it is undisputed that a hearing was held and the IEB issued a decision ratifying the trusteeship, the claims for such relief are now moot. *Cf. Int'l Bhd. of Elec. Workers Local 1186 v. Eli*, 307 F. Supp. 495, 508 (D. Haw. 1969) (rejecting injunction petition alleging trusteeship hearing was delayed, because "[p]laintiffs have made no showing that this delay made the hearing any less fair than an earlier hearing might have been").

The Court already dismissed the first of these claims, because nothing in the SEIU Constitution or the LMRDA require that notice of a trusteeship be sent to the entire union membership, or even specify to whom such notice must be provided. *Mancini* ECF No. 32 at 5-6.

The second claim in Count VIII also fails. The plaintiffs in the *Mancini* action are Mancini, who was removed from office (and thus the Executive Board) on April 26, 2017, *see* Henry Decl. ¶ 10 & Ex. J, and Frederick Gustafson, who is alleged to be a Local 1107 member but not a member of the Executive Board. *Mancini* ECF No. 1, ¶ 6; Declaration of Brenda Marzan, ¶ 20 (filed contemporaneously in support of summary judgment motion in *Garcia*). Neither were "former executive board members," therefore, who were displaced due to the trusteeship. In any event, as Mancini testified in her deposition, she received notice of the hearing both by UPS and by e-mail from a former board member, Debbie Springer. Cohen Decl., Ex. B, Tr. 122:10-22, 126:2-5 & Ex. 25 (hearing notice). The hearing transcript also shows that both she and Gustafson appeared and made statements at the hearing. *See* Henry Decl., Ex. O at 120–129 (Mancini); *id.* at 52–53 (Gustafson). Therefore, it is undisputed that all former Local 1107 Executive Board members who are part of the *Mancini* lawsuit received notice of the trusteeship hearing.[10]

As such, Plaintiffs do not have standing to complain on behalf of other, absent former executive board members about whether the notice provided was sufficient. *See Tisza v Commc'ns Workers of Am.*, 953 F.2d 298, 300 (7th Cir. 1992) (Easterbrook, J.) (finding no basis for third-party standing because union members of locals who did not have their votes counted by the international union in an election concerning an amendment to the union's pension plan with a nationwide employer "can protect their own interests" and "do not need [plaintiff] members of Local 4250 as their champions"). Moreover, as explained below, though Mancini received the notice she took no action to speak with other executive board members to seek official representation for Local 1107.

---

[10] At one point, there were two former Executive Board members pursuing the consolidated *Garcia* lawsuit: Miles Rodela and Raitis "Ray" Liepens. ECF No. 29, ¶¶ 3-4. However, they have decided not to pursue the lawsuit (*see* ECF No. 261), and as of this date only Raymond Garcia, who was not a member of the executive board, remains as a plaintiff in that case. Marzan Decl. ¶ 20.

The third claim in Count VIII, regarding the requirement that the former executive board select a spokesperson by a majority vote in order to represent itself at the hearing, raises no issues of material fact. As this Court has found, the SEIU constitution does not require a specific number of days of notice; Article VIII, Section 7(f) of the SEIU constitution only states that the notice must be sent "in a timely fashion." *Mancini* ECF No. 32 at 6; Henry Decl., Ex. A at 20. Moreover, this Court has also found that the majority-spokesperson requirement did not in itself violate the SEIU Constitution or the LMRDA, neither of which specify who must be allowed to participate in a trusteeship hearing. *Mancini* ECF No. 32 at 6 n.1; ECF No. 12-2, ¶ 6 (Fitzpatrick declaration stating SEIU has consistently interpreted its constitution to provide that the parties to the trusteeship hearing are the SEIU president and the local's executive board, which may appear by majority vote through a spokesperson to contest the trusteeship).

What remains is the claim that the spokesperson requirement violated the "timely fashion" language in the SEIU Constitution based on the specific timing in this case, where it was issued on July 3, 2017, ten days before the hearing on July 13, 2017.[11] Henry Decl. ¶ 15. However, the evidence on this score shows that any failure of the former board to designate a spokesperson was based on lack of interest rather than timing. Mancini testified that after receiving the notice, she could only recall speaking to one former board member about it, Ms. Springer. Mancini Depo at 123:1-9. Mancini's deposition testimony further shows that even though she was aware of the opportunity to appoint a spokesperson as spelled out in the notice [Cohen Decl., Ex. B, Tr. 124:4-6 ("Q. So you reviewed it, and you knew that that opportunity existed? A. Yes")], she did not even attempt to gather a majority:

> Q. Did you and Deb Springer discuss trying to see if there would be a majority of the executive board interested in taking a position opposing the trusteeship?
> A. No.
> Q. Why not?
> A. I don't know.

[11] In their complaint, Plaintiffs allege that this required the former board "to secure a majority vote in less than (10) days, and over a holiday weekend." *Mancini* ECF No. 1, ¶ 144. Notably, July 4 holiday occurred on a Tuesday, and the notice was distributed electronically on Monday, July 3, 2018, which is not "over a holiday weekend"; typically in such instance the only day off would be the Tuesday itself.

Cohen Decl., Ex. B., Tr. 123:10-16. This was confirmed by the following further colloquy:

> Q. Okay. You didn't discuss it, but you knew it was an opportunity? Whether it was a realistic opportunity or not, you knew it was an opportunity?
> . . . .
> THE WITNESS: To tell you truthfully, I don't remember if I even thought about it or not.

*Id.*, Tr. 124:25 & 125:1-7. And in the deposition of former executive board member Liepins (also a former *Garcia* plaintiff), he testified that although he received the notice, he had no interest in attending the trusteeship hearing. *See* Cohen Decl., Ex. C. Tr. 46:15–17 ("Q. Following the trustee – did you attend the trusteeship hearing on July 13th, 2017? A. I saw no reason to."); *see also id.* Tr. 43:10-20 (confirming Liepens received the trusteeship hearing notice). Given this testimony by Plaintiff Mancini and Liepens, and the absence of any former board members pursuing this lawsuit, Plaintiffs are unable to show that the majority spokesperson requirement, combined with the 10-day notice, violated the SEIU Constitution's "timely fashion" requirement or the LMRDA.

Moreover, the evidence shows that a number of former board members besides Mancini attended and spoke at the hearing. *See* Henry Decl., Ex. O at 94-99 (testimony of Patricia Armstrong), 129-38 (Debbie Springer, Sheila Grain, Brenda Marzan, Victoria Harding, Patricia Greaux, Marea "Rosie" Salinas), 142-49 (Regena Ellis, Michelle Maese, Claire Thomas, Keishe Caruthers); *cf.* Armstrong Decl., Ex. A (list of Board members at time of April 26, 2017 meeting). Therefore, the evidence shows that the notice was sufficient for former board members to attend, and there is no evidence that the former executive board would have designated a spokesperson but for the nature of the trusteeship notice. The DOL also concluded that the notice and the trusteeship hearing itself were fair. *See* Cohen Decl., Ex. A at SEIU 13229-30.

### I. Count IX: There is No Evidence that Trusteeship Hearing Officer April Verrett Was Biased.

"The test of the adequacy of a fair hearing is not whether it meets the requirements of an error free trial but whether it was conducted in reasonable good faith as an approximate effort to achieve its objective." *Tam*, 475 F. Supp. at 569. When analyzing claims of bias in trusteeship hearings, "[c]ourts, federal courts especially, are justified in ruling a union tribunal biased only upon a demonstration that it has been substantially actuated by improper motives— in other words, only upon a showing of specific prejudice." *Int'l Bhd. of Elec. Workers Local 1186 v. Eli*,

307 F. Supp. 495, 509 (D. Haw. 1969). In *Johnson v. Holway*, the court looked to caselaw developed under Title I of the LMRDA to similarly hold that "a union tribunal may be found to be biased only when the plaintiff has offered specific allegations demonstrating 'actual bias' or a 'significant risk of actual bias.'" No. CIV.A.03-2513 ESH, 2005 WL 3307296, at *13 (D.D.C. Dec. 6, 2005) (quoting *Wildberger v. Am. Fed. of Gov't Employees*, 86 F.3d 1188, 1196 (D.C. Cir. 1996)).[12]

Count IX alleges that SEIU failed to hold a fair hearing because the hearing officer, April Verrett, was "not a neutral party and was biased in favor of the trusteeship," specifically alleging as the source of bias "[t]hat SEIU President Henry appointed a former SEIU Executive Board Member." *Mancini* ECF No. 1, ¶ 163.[13] While Count IX generally cites Article VIII, Section 7(f) of the SEIU Constitution ("In order to ensure that no trusteeship is imposed without an adequate right to be heard or without other appropriate safeguards . . ."), paragraph 163 also cites the requirement in Title III of the LMRDA that a trusteeship be "authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws." 29 U.S.C. § 464(c).

Paragraph 163 is factually incorrect: Verrett was not appointed to be the hearing officer by

---

[12] The district court applied the Title I standards while noting that, because Title I addresses individual union discipline and thus can bear on an employee's livelihood, its due process standards are likely more stringent than the Title III requirement for a "fair hearing" in the trusteeship context. *See Johnson*, 2005 WL 3307296, at *13 n. 3.

[13] Count IX also contains additional allegations that can be dispatched with summarily. First, paragraphs 153-158 reallege the same claims discussed in connection with Count 8, regarding whether the majority-spokesperson requirement and timing of the trusteeship hearing notice were unlawful. No new argument regarding these claims is necessary.

Count IX goes on to allege that the hearing was not fair because if did not address (1) the emergency basis for the trusteeship [*Mancini* ECF No. 1, ¶¶ 160]; (2) the good cause for not holding hearing within 30 days of trusteeship [*id.*, ¶ 161]; nor (3) "the necessity for the trusteeship, nor the need to continue it." *Id.*, ¶ 162. To the contrary, the evidence is clear that the trusteeship hearing addressed the emergency and the necessity for the trusteeship and the need to continue it. This is plain from Verrett's report. *See* Henry Decl., Ex. Q at 1 ("I was appointed by the SEIU International Executive Board to serve as hearing officer on the question of whether the emergency trusteeship imposed on SEIU Local 1107 . . . was justified and should continue."); *see id.*, Ex. Q at 19-23 (summarizing "multiple justifications for the imposition of the emergency trusteeship" and also discussing why it should continue, based on the testimony of Deputy Trustee Manteca). There was no requirement that the hearing address whether there was good cause to extend the hearing deadline, which, as previously argued, is a determination vested with the SEIU President, not an appointed hearing officer.

President Henry, but, as the SEIU Constitution requires, by the International Executive Board. *See* Henry Decl. ¶¶ 13, 15 & Ex. N. At her deposition, Mancini testified that the only reason she suspected Verrett was biased was that President Henry previously appointed her to a position at SEIU Local 2015 in California, and that she was on the International Executive Board:

> Q. Okay. Do you have any reason to believe April Verrett, the hearing officer, was biased?
> A. Yes.
> Q. And what's the reason?
> A. Based upon her history with SEIU.
> Q. What history are you talking about?
> A. Her history with SEIU in the local in California and that she's — and that she's been promoted up onto the executive board.
> . . . .
> Q. Okay. So what is it about the fact that she was appointed to the International's executive board that causes you to believe she's biased?
> A. She was appointed to an office in the local in California, I believe, by Mary Kay Henry.
> Q. And what is it about that that causes you to believe she's biased?
> A. That -- that in my opinion, is that if Mary Kay Henry is imposing a trusteeship, how can she be unbiased if Mary Kay Henry is the one who's bringing her up into a position that's increasing her salary significantly? I find that to be biased.
> Q. Huh. Okay. Do you believe that she had, April Verrett had, any bias in regard to the issues at play in Local 1107 in the trusteeship hearing other than what you just described?
> A. I don't believe so. I don't know.

Cohen Decl., Ex. B. Tr 127:8 - 128:22.

However, neither Verrett's status as a member of SEIU's executive board (to which she was elected, not appointed, in 2012, Henry Decl. ¶ 15), nor her prior appointment to a position by President Henry is sufficient to establish that Verrett was biased in a way that made a fair hearing impossible. As multiple courts have found, the mere fact that a hearing officer is on the executive board or, as is common, has worked with the union president in the past, is not enough to show bias. *See Johnson*, 2005 WL 3307296, at *13 (finding that allegations that the hearing officer and a member of the executive board who adopted the decision "receive 'substantial salaries [from the International Union]' and fall 'under the direction and control of [the International President]' also fail to provide a basis for any inference of bias."), *citing Yager v. Carey*, 910 F. Supp. 704, 715 (D.D.C. 1995) (no impermissible bias found where plaintiff alleged hearing panel members were "loyal" to charging president and had received strike benefits or committee appointments from him). Similarly, the fact that President Henry appointed Verret to a prior position at an SEIU local prior to her appointment *by the International Executive Board* as a hearing officer—and even the fact that Verret received a salary increase when she became the Vice President of SEIU Local

2015—does not establish she was biased in the trusteeship hearing. Nor can Plaintiffs point to any evidence of a "history of conflict" between Verrett and Mancini or Local 1107. *See Johnson*, 2005 WL 3307296, at *13 (citing cases raising "significant risk of bias" because member of hearing panel had direct prior personal or political conflict with accused); *cf. Int'l Bhd. of Elec. Workers Local 1186*, 307 F. Supp. at 509 (denying claim of bias even where union vice president was hearing officer and "largely responsible for the establishment of the trusteeship," and thus had "a direct personal interest" in upholding its validity).

Finally, any claims of bias fail because Verrett was not the final decision-maker; as required by the SEIU Constitution, her recommendation and report were submitted to a separate body, the SEIU International Executive Board, which separately reviewed and adopted her recommendations. *See* Henry Decl., Ex. R.

**IV. Conclusion**

In light of the foregoing, Defendants request that the court grant their motion for summary judgment in full.

DATED: January 29, 2019

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHNER (*pro hac vice*)
JONATHAN COHEN
ELI NADURIS-WEISSMAN (*pro hac vice*)

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES

By /s/ Jonathan Cohen
Jonathan Cohen
510 South Marengo Avenue
Pasadena, CA 91101
Tel.: (626) 769-7555; Fax: (626) 577-0124
*Attorneys for Defendants*
*Service Employees International Union; Luisa Blue; Mary Kay Henry; and Nevada Service Employees Union*

## CERTIFICATE OF SERVICE

I am a member of Rothner, Segall & Greenstone. On this 30th day of January, 2018, I caused a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF CLAIMS; SUPPORTING POINTS AND AUTHORITIES (MANCINI, et al. v. SERV. EMPLOYEES INT'L UNION, et al.)** to be served in the following manner:

✓ ELECTRONIC SERVICE: Pursuant to LR IC 4-1 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served through the Notice of Electronic Filing automatically generated by the Court.

ROTHNER, SEGALL & GREENSTONE

By: /s/ Jonathan Cohen
Jonathan Cohen