# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND GARCIA, et al., | Case No.: 2:17-cv-01340-APG-NJK |
| Plaintiffs | **Order (1) Granting the Defendants' Motion for Summary Judgment and (2) Denying the Plaintiffs' Motions for Reconsideration** |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, et al., | [ECF Nos. 266, 271, 276] |
| Defendants | |

Plaintiff Cherie Mancini filed suit to challenge discipline imposed on her as a member of the Local 1107 union (Local) that removed her from office as the Local's president and stripped her of union membership for six months. She and fellow plaintiff Frederick Gustafson also challenge defendant Service Employees International Union's (SEIU) imposition of an emergency trusteeship on the local union. I granted in part the defendants' motion to dismiss some of the plaintiffs' allegations. *Mancini*, ECF No. 32.[1] The defendants now move for summary judgment on the remaining claims. The plaintiffs oppose the motion, move for reconsideration related to a prior motion to amend the complaint, and move for reconsideration of my dismissal order.

The parties are familiar with the facts, and I set them forth here only where necessary to resolve the motions. I grant the defendants' motion for summary judgment. I deny the plaintiffs' motions for reconsideration.

////

---

[1] Reference to ECF Nos. in *Mancini v. SEIU*, 2:17-cv-02137-APG-NJK, before consolidation are cited as *Mancini*, ECF No. _. Reference to ECF Nos. in *Garcia v. SEIU*, 2:17-cv-1340-APG-NJK, are cited as *Garcia*, ECF No. _.

# I.  ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

## A.  Count One

Count one of the complaint alleges the defendants violated the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5), by (1) not serving Mancini personally or by registered or certified mail as required by the SEIU constitution, (2) not adequately identifying the charges against Mancini so she could prepare a defense, and (3) not providing her a full and fair hearing. *Mancini*, ECF No. 1 at 8-14.  I previously granted the defendants' motion to dismiss the allegations related to service and adequate identification of the

charges. *Mancini*, ECF No. 32 at 2-4. But I read count one to also contain an allegation that Mancini did not receive a full and fair hearing because the charges and evidence were contradictory, she acted in good faith, and the University Medical Center (UMC) ratification vote took place after collective bargaining ended so she should not have been disciplined for interfering in collective bargaining. *Id.* at 4. Because the defendants did not move to dismiss count one in relation to these allegations, the full and fair hearing portion of count one survived dismissal. *Id.*

The defendants move for judgment on the remainder of this claim, arguing that Mancini sought only injunctive relief in her complaint and, to the extent Mancini seeks to restore her membership rights, that is moot because Mancini's membership rights have been restored. They also argue that to the extent Mancini seeks to be restored as president, that is not an available remedy under § 411(a)(5). Finally, the defendants argue that even if the claim is not moot, Mancini received a full and fair hearing because the discipline was supported by some evidence, which is the applicable standard for reviewing the union's disciplinary decision. They also argue that nothing in the LMRDA requires the SEIU to refrain from disciplining Mancini even if she acted in good faith; the ratification vote is part of the collective bargaining process; and regardless of whether there was some contradiction between the charges and the evidence, Mancini had adequate notice of the charges against her.

Mancini responds that her claim is not moot because she previously moved to amend to add a request for damages. She contends that when I denied her motion to amend, I did not address her request to add damages and that I should do so now.[2] Mancini further contends that

---

[2] Mancini also contends she moved to amend during the time period when she could amend her complaint as of right. However, she filed her motion to amend more than 21 days after service of the defendants' motion to dismiss. *Mancini*, ECF Nos. 14; 24. She therefore lost her

even if she cannot amend, she still has an interest in having her discipline declared unlawful because her suspension from union membership cost her a reduction in pay, which will affect her future raises, pension, and other benefits.

On the merits, Mancini argues that the disciplinary report is based on an erroneous factual finding that she admitted at the disciplinary hearing that she did not keep apprised of the bargaining with employer UMC. Next, she argues the decision to place the local in a trusteeship was predetermined, and she was removed as president as part of this plan. She contends a proceeding with a predetermined result is not a full and fair hearing. She also asserts that SEIU President Mary Kay Henry had investigatory, prosecutorial, and adjudicative power, and reposing all of these functions in a single person raises due process concerns. Additionally, Mancini argues the defendants applied the rules differently to charges brought against her as opposed to charges brought against other Local members. Specifically, she contends Henry assumed jurisdiction over the charges against Mancini even though those charges were filed initially with the SEIU instead of through the Local and there was no specific request that the SEIU take jurisdiction over those charges. She claims that in contrast, when Mancini brought charges against other members, she was required to first file them with the Local and then request the SEIU to take jurisdiction. Finally, she contends all of her allegations must be viewed collectively to determine if she received a full and fair hearing.

---

opportunity to amend as of right. *See* Fed. R. Civ. P. 15(a)(1)(B) (stating that a party may amend "once as a matter of course . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier"). Mancini's attempt to run her time to amend from the defendants' answer ignores that the defendants first moved to dismiss, and the Rule runs the 21 days from the earlier of a motion or answer.

Section 411(a)(5) provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . by such organization . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing."  The LMRDA provides a private right of action for a person whose LMRDA rights have been infringed. 29 U.S.C. § 412.

### 1.  Restoration as a Member and President of the Local

Mancini's complaint sought only injunctive relief for this claim in the form of being restored to her office as president and having her suspension from union membership lifted. *Mancini*, ECF No. 1 at 14.  But § 411(a)(5) cannot provide relief for removal from office in the union. *United Steel Workers Local 12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1117 (9th Cir. 2013) (stating § 411(a)(5) applies only to discipline as a member, not as an officer, of a union).  And because Mancini's suspension as a member of the Local has been lifted, that requested relief is moot. *See Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014) (stating a case may become moot "if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief" (quotation omitted)). Consequently, the defendants are entitled to summary judgment on Mancini's first claim unless she can amend to add a request for damages.

Mancini moves for reconsideration of her prior motion to amend her complaint to add a request for damages and to add new allegations as to why she did not receive a full and fair hearing. *Garcia*, ECF No. 266.  As discussed below, even considering the new allegations, Mancini has failed to raise a genuine dispute that the defendants denied her a full and fair disciplinary hearing.  I therefore deny Mancini's motion for reconsideration because amending the complaint would be futile. *Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992)

("[A] district court does not err in denying leave to amend where the amendment would be futile." (quotation omitted)).

2.  Original Allegations

Section 411(a)(5) "guarantees union members a 'full and fair' disciplinary hearing, and . . . this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made." *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245-46 (1971).  Thus, judicial review is deferential and evaluates only whether there was "some evidence" to support the decision. *Id.*

The allegations in the complaint that survived dismissal were that Mancini did not receive a full and fair hearing because the charges and evidence were contradictory, she acted in good faith, and the UMC ratification vote took place after collective bargaining ended so she should not have been disciplined for interfering in collective bargaining.  Mancini has not pointed to evidence raising a genuine dispute on any of these grounds.  As to the charges and evidence being contradictory, it is unclear what Mancini means by this, but in any event I have already held that Mancini had adequate notice of the charges against her. *Mancini*, ECF No. 32 at 3-4; *see also Garcia*, ECF No. 80 at 43.  I also concluded, and the Ninth Circuit affirmed, that there was "some evidence" at the evidentiary hearing to support the discipline imposed on Mancini. *Garcia*, ECF Nos. 80 at 45; 175 at 3.  The evidentiary record at summary judgment only bolsters these conclusions. *See Garcia*, ECF No. 271-14 (transcript of disciplinary hearing).

As for Mancini's good faith, disciplinary hearing officer Carol Nieters recognized that Mancini was motivated by a legitimate concern but that discipline nevertheless was warranted. *Garcia*, ECF No. 271-18 at 16-17.  Mancini cites no law for the proposition that a union member

who acts in good faith cannot be disciplined or that her good faith somehow rendered the hearing unfair.  Finally, Mancini admitted at her deposition that the Local's ratification vote is part of the collective bargaining process and she presents no evidence that it is not. *Garcia*, ECF No. 271-3 at 12; *see also Mancini*, ECF No. 4-8 at 50.

In her opposition to the defendants' motion for summary judgment, Mancini does not respond to the defendants' arguments with respect to any of these allegations and does not point to evidence that would raise a genuine dispute.  The defendants therefore are entitled to summary judgment on the full and fair hearing claim based on the complaint's allegations.

### 3. Proposed New Grounds

Mancini offers several new grounds for why she contends she did not receive a full and fair hearing.  Those can be broken into four general areas.  First, Mancini identifies various alleged flaws in Nieters' decision.  Second, she contends that her due process rights were violated because all relevant fair hearing functions resided in Henry.  Third, she contends different procedural rules were applied to her charges against fellow local union members Sharon Kisling and Patricia Greaux versus Kisling's and Brenda Marzan's charges against her.  Finally, Mancini argues that all of her allegations must be considered as a whole to determine if she received a full and fair hearing.  As set forth below, Mancini fails to raise a genuine dispute about whether she received a full and fair hearing on any of these grounds.

#### a. Nieters' Decision

Mancini contends Nieters' decision was flawed because (i) the result was predetermined; (ii) Nieters relied on biased witness testimony; (iii) Nieters relied on an erroneous statement of the evidence; and (iv) Nieters ignored the UMC bargaining team's misconduct.  As discussed below, Mancini does not raise a genuine dispute on any of these grounds.

i.  Predetermined Result

2       Mancini has not presented sufficient evidence to get to trial on her allegation that Nieters'

3   decision about Mancini's discipline was predetermined.  Even if I considered unauthenticated

4   hearsay-upon-hearsay evidence that (1) SEIU representative Mary Grillo coached Local

5   members on how to bring charges against Mancini and what charges to bring and (2) Local

6   members were working with the SEIU to place the Local into a trusteeship,[3] there is no evidence

7   that Nieters was involved in a conspiracy to reach the predetermined result of removing Mancini

8   from office.

9       Mancini contends that the predetermined result is shown by the fact that some SEIU

10  officials had discussions about placing the Local in a trusteeship long before Nieters issued her

11  decision, some SEIU officials knew what Nieters' decision was going to be approximately eight

12  days before Nieters issued it, and those officials planned to approach the Local's board to vote

13  for a trusteeship after Kisling and Mancini were removed from office.  But Mancini does not

14  point to any evidence that Nieters was engaged in discussions about a predetermined result on

15  either trusteeship or Mancini's discipline.

16

---

17  [3] *See Garcia*, ECF Nos. 292-19 at 6 (unauthenticated text message string between Mancini and
    Kisling in which Kisling states that Marzan told Kisling that Marzan was in daily contact with
18  Grillo and that Grillo told Marzan what charges to file); 292-20 at 6 (affidavit of Vicki
    Hedderman containing hearsay statement that Local members Greaux and Gwen Stevens told her
19  they were working with the SEIU to place the Local in a trusteeship).  Grillo stated under oath
    that she told Marzan how to file charges, not what charges to bring. *Garcia*, ECF No. 296-2 at 9-
20  12.  There is no testimony from Marzan that Grillo told her what charges to bring and there is no
    testimony from Kisling that Marzan made the statements set forth in the text message string.
21  Nor is there testimony from Greaux or Stevens that they were working with anyone at the SEIU
    to place the Local in a trusteeship.  There is no independent evidence, such as emails, to
22  corroborate the hearsay statements.  Nor does there appear to be a means for those hearsay
    statements to be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2); *Garcia*, ECF No. 296 at 2-3 (the
23  defendants' objections of lack of authentication and hearsay).  Finally, even if these statements
    were admissible, none of this evidence suggests that Nieters was involved in a scheme to reach a
    predetermined outcome on Mancini's discipline.

Further, the evidence shows that Local members (not the defendants) started a petition for a trusteeship, filed the charges against Mancini, asked for a trusteeship at the internal needs hearing, and pleaded for the SEIU to intervene after the internal needs hearing. *See, e.g.*, *Garcia*, ECF Nos. 271-10; 271-14; 271-17; 271-27; 292-6. The conditions at the Local continued to deteriorate after the internal needs hearing. *See, e.g.*, *Garcia*, ECF Nos. 271-17; 291-1; 292-5. And the SEIU was considering trusteeship as one of several possible options for addressing the dysfunction at the Local. *Garcia*, ECF No. 149 at 21-22. None of those options discussed removing Mancini from office. *Id.* And Mancini does not point to any evidence that Nieters was involved in the SEIU's internal discussions about a trusteeship or how Mancini's discipline would impact a potential trusteeship vote.

Thus, even if some individuals at the SEIU were contemplating an attempt to persuade the Local's executive board to vote for a trusteeship, that does not raise a genuine dispute that Nieters' recommendation regarding Mancini's discipline was a foregone conclusion. And the fact that some SEIU officials knew what Nieters was going to recommend a few days before she issued her final decision also does not raise a genuine dispute that the outcome of that decision was predetermined.

ii. Biased Witnesses

Mancini next contends Nieters relied on witnesses who were biased against Mancini and in favor of the trusteeship. But it is not up to me to weigh the credibility of the witnesses at the disciplinary hearing. *Hardeman*, 401 U.S. at 246. The question is whether some evidence supported Nieters' decision, and the record provided ample evidence that Mancini was subject to discipline for her actions in publicly disparaging the bargaining team members and subjecting

the Local to a potential unfair practices charge by UMC. *See id.*; *Garcia*, ECF Nos. 271-1; 271-18 at 16-17.

### iii.  Erroneous Statement of the Evidence

Mancini contends Nieters relied on an erroneous statement of the testimony when she wrote in her disciplinary report that Mancini admitted that the no access provision was inserted in the proposed UMC collective bargaining agreement early in the bargaining process.  In her report, Nieters wrote that "[a]lthough the evidence did not establish clearly the point in time when Sister Mancini became aware of that term in the tentative agreement, it appears that the provision was negotiated in the first days of bargaining." *Garcia*, ECF No. 271-18 at 16.  Nieters cited page 80 of the transcript for the second day of the hearing. *Id.*; *see also Garcia*, ECF No. 271-14 at 350 (page 80 of the transcript of day two).

Nieters was citing to a portion of the transcript in which Mancini states, in a question to a witness, that the no access term was changed "on the very first day of bargaining." *Garcia*, ECF No. 271-14 at 350.  Mancini also stated during her closing argument that the change to the no access term was proposed "on the very first day of bargaining." *Id.* at 97.  Nieters' statement in her report therefore was not groundless.  Mancini does not point to evidence that the no access term was in fact proposed or changed later in the bargaining process, nor does she identify where in the record such evidence was presented to Nieters.  She thus has not presented any basis for why Nieters should have rejected Mancini's own representation of when the no access provision was proposed or changed during bargaining.  Nor does she explain how her own statements somehow rendered her hearing unfair.

////

////

iv. Bargaining Team Misconduct

Mancini has not sufficiently demonstrated that Nieters ignored evidence that the UMC collective bargaining team had allegedly engaged in misconduct. Nieters mentioned in her report that she understood Mancini's concerns about the no access provision. *Garcia*, ECF No. 271-18 at 16. But even if the bargaining team members engaged in misconduct (a point which Greaux and other bargaining team members disputed),[4] that does not absolve Mancini of her own actions. Nieters' failure to make affirmative findings that the bargaining team members engaged in misconduct thus does not raise a genuine dispute about whether Mancini received a full and fair hearing on the charges against her.

*b. Due Process*

Mancini relies on *Wildberger v. American Federation of Government Employees*, 86 F.3d 1188 (D.C. Cir. 1996) to argue that she was denied due process. In *Wildberger*, the union's international president filed disciplinary charges against the local union president, appointed a trial committee to hear the charges, and adopted the trial committee's recommendation to remove the local president from office and suspend his membership. *Id.* at 1196. There was evidence that the local president was a frequent critic and political opponent of the international president. *Id.* The *Wildberger* court stated that "the union constitution's combination of investigative, prosecutorial, and adjudicatory functions in the President does not, by itself, violate the LMRDA." *Id.* at 1195. But where the "evidence casts doubt on the partiality of the President, the combination of prosecutorial and adjudicatory functions in a single person can present due process concerns." *Id.*

---

[4] *See, e.g.*, *Garcia*, ECF Nos. 271-14 at 350-53; 271-16 at 8-9.

Mancini has not presented evidence she was denied due process under *Wildberger*. The charges were initiated by Mancini's fellow Local members. *Garcia*, ECF No. 271-10. Nieters conducted the investigatory hearing and recommended what discipline to impose, and Henry decided whether to adopt Nieters' recommendation. Mancini has presented no evidence that either Nieters or Henry was biased against Mancini or that Mancini criticized them or was their political rival. *See Ferguson v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 854 F.2d 1169, 1177 (9th Cir. 1988) (affirming summary judgment on a bias claim where there was no evidence that the union members facing disciplinary charges personally criticized the tribunal members).

### c. Different Procedures

Mancini contends that her due process rights were violated because the SEIU used less stringent rules related to Kisling's and Marzan's charges against Mancini than it did when Mancini filed charges against Kisling and Greaux.[5] Specifically, Mancini contends that when she first attempted to file charges against Kisling and Greaux, she was told she had to (1) identify the specific constitutional provisions Kisling and Greaux violated, (2) file the charges with the Local's secretary, and (3) forward the charges to Henry with a request that Henry assume

---

[5] In a separate motion, Mancini moves for "reconsideration" of my dismissal order, contending that I inappropriately broke up her allegations in her full and fair hearing claim and that all allegations should be considered as a whole to determine whether Mancini received a full and fair hearing. *Garcia*, ECF No. 276 at 9. She contends that dismissal was inappropriate because discovery has shown that Mancini was treated differently.

Mancini did not allege in the complaint that she was treated differently than other members, so there is nothing to "reconsider" from my dismissal order in relation to the alleged disparate treatment. Moreover, my prior order dismissed the allegations as independent violations. I did not rule that Mancini cannot present evidence at summary judgment or trial regarding the content of the charges or the manner of service. *See Mancini*, ECF No. 32. Mancini's motion to "reconsider" is a motion to amend in disguise, and I deny it as untimely and futile. *See Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

original jurisdiction over the charges. But she contends that when Kisling and Marzan filed charges against her, they did not have to specify the constitutional provisions at issue, they filed directly with the SEIU and not the Local's secretary, and Henry assumed jurisdiction over the charges even though Mancini did not request it. Mancini contends this shows Henry wanted to assume jurisdiction over the charges against Mancini so she could remove Mancini from office.

On October 17, 2016, Henry assumed jurisdiction over multiple charges against multiple Local members and consolidated them for hearing with the internal needs hearing. *Garcia*, ECF No. 271-10 at 1-3. Specifically, Local member James Kirkpatrick filed charges with the Local against fellow Local member Richard Hodgson. *Id.* at 2. Hodgson requested Henry assume jurisdiction over the charges. *Id.* Similarly, Local executive board member Amelia Gayton filed charges with the Local against Kisling, and Kisling asked Henry to assume jurisdiction. *Id.*

In contrast, Kisling and Local member Clara Thomas filed charges directly with the SEIU against Mancini and Local members Alfred Serrano and Deb Springer, and Marzan separately filed charges directly with the SEIU against Mancini. *Id.* at 2-3. However, the Local's secretary was given a copy of Kisling and Thomas's charges. *Id.* at 14. Marzan addressed her charges to the Local's executive board as well as to Henry. *Garcia*, ECF No. 271-11 at 32. The Local's secretary is part of the executive board. *Garcia*, ECF No. 5-3 at 12, 20. There is no evidence anyone asked Henry to assume jurisdiction over the charges against Mancini. Henry nevertheless assumed jurisdiction over all the charges under Article XVII, Section 2(f) of the SEIU constitution. *Garcia*, ECF No. 271-10 at 3.

On October 19, 2016, SEIU associate general counsel Alma Henderson advised Mancini that if she wanted to file charges against Kisling and Greaux and to have those charges heard at the previously scheduled hearing on charges filed against other Local members, then Mancini

would have to specify the acts alleged and the sections of the constitution Mancini believed the two charged parties violated. *Garcia*, ECF No. 292. Henderson also advised Mancini that she would have to first file the charge with the Local's secretary and then forward the charges to Henry with a request that Henry assume jurisdiction over the charges. *Id.* Mancini filed charges against Kisling and Greaux that same day. *Garcia*, ECF No. 271-12. Henry assumed jurisdiction over those charges as well and consolidated them with all of the other charges for hearing. *Id.*

Although it appears the charges against Mancini did not exactly follow the procedural steps Henderson advised Mancini to take when filing charges against others, Mancini has not raised a genuine dispute that she was denied a full and fair hearing as a result. The charges against Mancini were provided to the Local's secretary, and although there was not an explicit request for Henry to assume jurisdiction, both charges were directed to the SEIU. The SEIU's president can decide to take original jurisdiction over internal union charges without a request that she do so if she believes the charges "involve a situation which may seriously jeopardize the interests" of the Local or the SEIU. *Garcia*, ECF No. 271-7 at 13 (SEIU Constitution, Art. XVII, § 2(f)(ii)). As the SEIU executive board stated in rejecting Mancini's internal appeal,

> several Local 1107 officers alleged that Sister Mancini had failed to participate in and remain informed about the on-going negotiations of one of the Local's largest bargaining units, despite her constitutional obligations to do so, and that she had unilaterally cancelled the unit's ratification vote and publicly accused the bargaining team members of violating their fiduciary duty in a letter sent to their employer. The allegations made against Sister Mancini could have had far-reaching consequences for the Local's (and for the International Union's) reputation and ability to effectively represent SEIU members. It was therefore reasonable, following the receipt and review of documentation supporting the allegations made against Sister Mancini, for President Henry to have concluded that the charges "involve[d] a situation which may seriously jeopardize the interests of the Local Union or the International Union."

14

*Garcia*, ECF No. 271-31 at 9. As discussed below, Mancini received a full and fair hearing after Henry assumed jurisdiction over the charges.

### d. Full and Fair Hearing Considering All Circumstances

Mancini contends the allegations of her full and fair hearing claim must be viewed as a whole and in the context of her theory that her discipline was part of a scheme to place the Local in a trusteeship.[6] But whether viewed separately or as a whole, Mancini fails to raise a genuine dispute about whether she received a full and fair hearing. Mancini was given fair notice of the charges against her, adequate time to prepare a defense, and an opportunity to appear at the hearing, where she was able to present witnesses and evidence, cross examine witnesses against her, and present closing arguments. *See Garcia*, ECF No. 271-14. The disciplinary decision was supported by some evidence. That is all the LMRDA requires. I therefore grant the defendants' motion for summary judgment on count one.

### B. Count Two

Count two alleges that the defendants disciplined Mancini for engaging in protected speech in violation of the LMRDA, 29 U.S.C. § 411(a)(2). *Mancini*, ECF No. 1 at 15.

---

[6] Mancini's theory is sometimes internally inconsistent. For example, she contends she and Kisling were targets of the scheme. Yet Mancini is the one who filed charges against Kisling, and it was those charges that Henderson told Mancini she would have to revise and follow the proper procedure to submit. If the goal was to remove both Kisling and Mancini, presumably Henry simply would have assumed jurisdiction over those as well. Additionally, when Kisling sought to file additional charges against Mancini, Kisling received the same procedural instructions as Mancini did regarding how to file those charges. *Garcia*, ECF No. 292. Finally, the SEIU could not unilaterally impose a trusteeship on the Local. Pursuant to the affiliation agreement, the Local's executive board had to approve a trusteeship. *Garcia*, ECF No. 271-9 at 10. There is no evidence that a majority of the Local's executive board (1) would have used different procedures or reached a different result if it had adjudicated Mancini's discipline or (2) would not have voted for a trusteeship if Mancini had not been removed as president.

Specifically, Mancini contends she was opposed to SEIU officials meddling in the Local's affairs and was opposed to a trusteeship, so the defendants disciplined her in retaliation for her speech.

The defendants move for judgment on this claim, arguing there is no genuine dispute that Mancini was disciplined for her conduct in unilaterally cancelling the UMC ratification vote, publicly accusing the bargaining team members of misconduct, and impairing the Local's relationship with an employer. The defendants note that because of Mancini's conduct, UMC threatened to file a bad faith bargaining charge against the Local and the Local's bargaining committee gathered 400 signatures on a petition stating that Mancini had harmed the members employed at UMC.

Mancini responds that the evidence shows the UMC bargaining team violated their duties to the membership, failed to disclose what they had negotiated, and then pushed decertification campaigns. She thus contends that there was no basis to discipline her for calling out the bargaining team's misconduct. She also argues the fact that UMC threatened a bad faith charge against the Local does not support the discipline because after the ratification vote, the provision that caused Mancini to cancel the vote was invalidated, thus showing she was correct in her opposition to the proposed contract term.

Section 411(a)(2) provides:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

This provision is enforceable under 29 U.S.C. § 412, both by members as members, and by members in their roles as elected officers of the union. *See United Steel Workers Local 12-369*, 728 F.3d at 1116 (stating "an elected officer can bring suit under § 102 [29 U.S.C. § 412] when faced with . . . retaliation" based on free speech rights) (emphasis omitted, citing *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989)).

Despite § 411(a)(2)'s broad language, it "does not provide blanket protection for all union activities a member wishes to characterize as free speech." *Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1047-48 (9th Cir. 2013). The statute itself "preserves the union's right to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and . . . conduct that would interfere with its performance of its legal or contractual obligations.'" *Id.* (emphasis and quotation omitted).

Courts generally employ a two-step test to determine if a union's disciplinary action is challengeable under § 411(a)(2). First, the court considers "whether the rule interferes with an interest protected by the first part of § [411](a)(2)." *United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski*, 457 U.S. 102, 111 (1982). "If it does, [the court] then determine[s] whether the rule is 'reasonable' and thus sheltered by the proviso to § [411](a)(2)." *Id.* "The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." *Id.* at 111-12. "In determining reasonableness, [the court] balance[s] the undemocratic effects of the rule against the interests of protecting the union organization as an institution." *Zamora v. Local 11, Hotel Employees & Rest. Employees Int'l Union (AFL-CIO)*, 817 F.2d 566, 570 (9th Cir. 1987); *see also Ferguson*, 854 F.2d at 1176 (stating "the rights of the union member under this statute must be balanced against the right preserved to the union to make rules as to the responsibility of the member

toward the union as an institution, and this balancing process must rest on the facts" (quotation omitted)). Additionally, the Ninth Circuit has added a third consideration: whether the union took disciplinary action "as part of a scheme to suppress dissent within the union, in retaliation for any union-related speech, or for any other improper purpose such that otherwise lawful charges might violate the LMRDA." *Kofoed v. Int'l Bhd. of Elec. Workers, Local 48*, 237 F.3d 1001, 1005 (9th Cir. 2001).

The complaint requested injunctive relief in the form of restoring Mancini's membership and her position as president. Because Mancini's membership has been restored, that requested relief is moot. However, because Mancini also seeks restoration to her office as president, and her removal from that office allegedly was done in derogation of her free speech rights, this claim is not moot. To the extent Mancini seeks to amend to add a damages request for this claim, I deny amendment as futile because, as discussed below, Mancini has not sufficiently shown that she was disciplined for her speech.

Although a close call, Mancini has presented sufficient evidence for a reasonable jury to conclude she engaged in protected speech. Ninth Circuit "case law distinguishes between speech critical of a union—which § 411 protects—and 'conduct designed to impair the union's ability to function'—which § 411 does not protect." *Servs. Employees Int'l Union*, 718 F.3d at 1048 (quoting *Ferguson*, 854 F.2d at 1174). Mancini's email was critical of the bargaining committee, and thus is at least arguably protected. Mancini sent the email to the employer and threatened to stop the vote, leading the employer to threaten the Local with taking the matter to the Employee-Management Relations Board. She thus engaged in conduct which impaired the Local's ability to engage in collective bargaining and impaired the union's relationship with the employer. But Nieters found Mancini acted in good faith. Thus, her conduct was not "designed" to impair the

18

union's function, even if that was the effect.  Consequently, a reasonable jury could find

Mancini's speech was protected under § 411(a)(2).

But even if Mancini's speech is protected, there is no genuine dispute that the union's

decision to discipline her was reasonably related to protecting the Local as an institution.

"Congress adopted the freedom of speech and assembly provision in order to promote union

democracy." *Sadlowski*, 457 U.S. at 112.  Thus, in some respects, any union discipline of speech

will have some undemocratic effects.  As a union member, Mancini had a right to criticize the

bargaining committee.  But in this case, Mancini's conduct also had an undemocratic effect.  She

unilaterally disrupted the bargaining process and undermined the democratic process of having

the bargaining committee negotiate and the members then vote on the proposed agreement.

And the union had an interest in protecting the organization as an institution.  Mancini, as

the Local's president, unilaterally terminated the vote and publicly accused the bargaining

committee of malfeasance to not only the membership but also to the employer.  This resulted in

the employer threatening to take the matter to the Employer-Management Relations Board and

the Local members gathering 400 signatures in four hours on a petition stating that Mancini

harmed the UMC employees by unilaterally cancelling the ratification vote. *See Garcia*, ECF

Nos. 271-14; 271-16; 292-6.  Balancing the potential undemocratic effects of Mancini's

discipline against the interests in protecting the union as an institution, the SEIU's discipline

against Mancini was reasonable as a matter of law.

Finally, Mancini has not shown that the discipline was part of a scheme to suppress

dissent within the union, in retaliation for any union-related speech, or for any other improper

purpose such that otherwise lawful charges might violate the LMRDA.  Mancini contends that

she and Kisling were removed from office as part of a scheme to force the Local executive board

to vote for a trusteeship, and she and Kisling were disciplined because (1) Mancini promoted the Local's interest over the SEIU's and (2) both Mancini and Kisling opposed trusteeship. But Mancini and Kisling filed disciplinary charges against each other. Presumably, Mancini was not part of the alleged scheme and there is no evidence Kisling was either. Further, there is no evidence Nieters was involved in the alleged scheme. In sum, there is no evidence that Mancini was disciplined for her speech, as opposed to her conduct that resulted in deleterious effects on the union, its members, and its relationship with an employer. I therefore grant the defendants' motion for summary judgment on this claim.

## C. Count Three

Count three of the complaint alleges the defendants breached Article VIII, Section 7(f) of the SEIU constitution and the LMRDA (29 U.S.C. §§ 462 and 464) by failing to notify the Local that the internal needs hearing would be consolidated with the hearing on the internal charges against the Local members. *Mancini*, ECF No. 1 at 18-21. It also asserts that the SEIU used the internal needs hearing to circumvent Article VIII, Section 7(f)'s requirement of a pre-trusteeship hearing. *Id.*[7]

The defendants argue the SEIU provided notice to the Local of the internal needs hearing. Additionally, they contend nothing in the SEIU constitution required the defendants to notify the

---

[7] For the remaining claims, the complaint sought as relief an injunction ending the trusteeship. *Mancini*, ECF No. 1 at 21, 24, 28-30, 32, 34, 36-37. Because the trusteeship has terminated, this requested relief is moot. *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." (quotation omitted)). I previously stated at the January 7, 2019 hearing that if the plaintiffs prevailed, I have the inherent equitable power to unwind the new elections if they were the result of a trusteeship that was improperly imposed. *Garcia*, ECF No. 284 at 9, 26-27. The remaining claims therefore are not moot. But to the extent the plaintiffs are seeking to amend to request damages for these claims, amendment would be futile for the reasons discussed below.

Local that a trusteeship was a possible recommendation, but in any event the notice stated that the hearing was to address complaints that the Local was dysfunctional. Additionally, they note that during the internal needs hearing, several members requested the hearing officer to recommend a trusteeship, so that possible recommendation could not have come as a surprise. Finally, they argue the SEIU constitution and the LMRDA authorize emergency trusteeships without a hearing ahead of time. The plaintiffs respond that the SEIU did not notify the Local that a trusteeship could result from the internal needs hearing and, to the contrary, SEIU representative Mary Grillo told the Local's executive board that the SEIU would have to hold a trusteeship hearing before it could impose a trusteeship.

Pursuant to the LMRDA, a trusteeship may be established "only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body . . . ." 29 U.S.C. § 462. If the trusteeship is established in conformity with the union's constitution and bylaws, then the trusteeship is "presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith" for a purpose allowed under the LMRDA. *Id.* § 464(c). After the eighteen-month period expires, the trusteeship is "presumed invalid . . . and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462 of this title." *Id.*

Article VIII, Section 7(f) of the SEIU constitution requires a hearing on the need for imposing a trusteeship before appointing a trustee except in an emergency. *Mancini*, ECF No. 1-9 at 21. If an emergency trusteeship is imposed without a hearing, then the trusteeship hearing must be held within 30 days and the SEIU's executive board must make a decision about

whether the trusteeship should be maintained within 60 days. *Id.* But under the affiliation agreement between the SEIU and the Local, no trusteeship could be imposed without the Local's executive board first voting to allow it. *Garcia*, ECF No. 271-9 at 10.

Article VIII, Section 7(g) of the SEIU constitution discusses the internal needs provisions. Under that section, the SEIU president could send representatives to meet with Local officials or appoint a hearing officer to examine the Local's internal needs and recommend remedial action. *Mancini*, ECF No. 1-9 at 21. Nothing in the SEIU constitution requires the SEIU to notify a local union that one of the remedies that may be recommended following an internal needs hearing is a trusteeship.

There is no dispute that the SEIU notified the Local of the internal needs hearing. *Garcia*, ECF Nos. 271-5 at 3; 271-13. That notice advised the Local that the SEIU had received numerous complaints from Local members that "the democratic governance of Local 1107 has broken down, that the Executive Board is incapable of functioning and that divisions between various factions are impeding the work of the local." *Garcia*, ECF No. 271-13 at 2. The notice of the internal needs hearing stated that in light of the members' "concerns and requests for assistance," there would be a hearing on the Local's "internal needs." *Id.* At the internal needs hearing, several members expressed a desire for a trusteeship while others opposed it. *Garcia*, ECF No. 271-14.

The plaintiffs contend that the internal needs hearing was a way to do an end run around a pre-trusteeship hearing. The only evidence they cite in support of this theory is the October 26, 2016 executive board meeting minutes. *Garcia*, ECF No. 292-3 at 42-46. At that meeting, someone asked Grillo if the Local could be placed in a trusteeship. *Id.* at 46. Grillo responded "No not from this meeting, you would have to have a Trusteeship hearing." *Id.* The plaintiffs

argue Grillo's statement promised the Local executive board that a trusteeship hearing would have to be held before a trusteeship could be imposed. But that is not what Grillo said, at least by the meeting minutes, and there is no testimony indicating that is what she told the board.

To the contrary, the LMRDA and the SEIU constitution provide a means for an emergency trusteeship with a post-trusteeship hearing. *Garcia*, ECF Nos. 271-6 through 271-8; 29 U.S.C. § 464(c) (referring to a trusteeship being "ratified after a fair hearing"). Consistent with the SEIU constitution's internal needs provisions, evidence was presented at the internal needs hearing regarding the chaos and dysfunction at the Local. Nieters recommended a trusteeship as a remedy. Consistent with the affiliation agreement, the Local executive board voted to approve a trusteeship. And consistent with the SEIU constitution, Henry thereafter imposed an emergency trusteeship with a post-trusteeship hearing. Mancini has not presented an issue of fact that the procedures violated either the SEIU constitution or the LMRDA. I therefore grant the defendants' motion as to this count.

**D. Counts Four and Five**

Count four alleges that the defendants imposed and maintained the emergency trusteeship for an improper purpose, in violation of the LMRDA, 29 U.S.C. § 462. *Mancini*, ECF No. 1 at 21-24. Count five alleges that the defendants imposed and maintained an emergency trusteeship in bad faith, in violation of the LMRDA, 29 U.S.C. §§ 462 and 464. *Id.* at 24-29. These claims are based on allegations that no emergency existed to justify the failure to hold a pre-trusteeship hearing and that the defendants failed to hold a hearing within 30 days after the imposition of the emergency trusteeship as the SEIU constitution required. *Id.* at 27-28. The plaintiffs further allege that the evidence at the post-trusteeship hearing did not establish a good faith basis to continue the trusteeship. *Id.* at 28.

The defendants argue count four fails because the evidence shows Henry imposed the trusteeship for a proper purpose and did not act in bad faith because basic democratic governance of the Local had broken down and that led to the Local failing to carry out its representational duties to members.  They contend the timing of the emergency trusteeship was based on when the hearing officer issued her internal needs report and the emergency was predicated by the chaotic conditions at the Local.  They argue those same conditions supported the decision to maintain the trusteeship.

The plaintiffs respond that the evidence shows the defendants did not believe there was an emergency, as they let six months pass after the internal needs hearing before seeking to impose the trusteeship even though they discussed the possibility of a trusteeship immediately after the hearing.  They contend the evidence shows the defendants manufactured an emergency by removing Mancini and Kisling from office.  According to the plaintiffs, the evidence shows the Local's executive board was functioning because it was able to obtain quorums and conduct business at the board meetings.

Through the LMRDA, "Congress limited in various ways the purposes for which and the procedures by which a trusteeship may be imposed upon a local union." *Retail Clerks Union, Local 770 v. Retail Clerks Int'l Ass'n*, 479 F.2d 54, 55 (9th Cir. 1973).  "The trusteeship must be imposed in accordance with the constitution and bylaws of the international; it can only be imposed for certain defined purposes; [and] it must be authorized or ratified by a fair hearing." *Id.*

A trusteeship can be imposed only for: (1) "correcting corruption or financial malpractice," (2) "assuring the performance of collective bargaining agreements or other duties of a bargaining representative," (3) "restoring democratic procedures," or (4) "otherwise carrying

out the legitimate objects of such labor organization." 29 U.S.C. § 462.  Although a pre-trusteeship hearing is the preferred norm, a trusteeship may be imposed without first holding a hearing in cases of emergency. *Hotel & Rest. Employees & Bartenders Int'l Union v. Rollison*, 615 F.2d 788, 792 (9th Cir. 1980) ("Although a trusteeship must be authorized or ratified by a fair hearing, Congress did not provide that the hearing must be held in all cases before a trusteeship can be imposed.  This court has held that the district court has the discretion to determine whether it can reasonably be said that an emergency exists, thus justifying imposition of the trusteeship prior to a hearing.").

The plaintiffs have failed to demonstrate that Henry lacked a proper purpose in imposing the trusteeship or that she imposed it in bad faith.  They contend there was no need for a trusteeship because the Local's executive board was able to obtain a quorum and conduct some business at its board meetings.  But that does not mean there was no proper purpose for a trusteeship.  Those same board meetings were marked by yelling and near physical confrontations that impacted the board's ability to function. *See, e.g.*, *Garcia*, ECF Nos. 271-14; 291 at 10; 291-1.  Several members testified that the Local was not meeting its obligations to members, including timely resolving grievances and responding to members' inquiries, and several witnesses described the situation at the Local as chaotic and dysfunctional. *See, e.g.*, *Garcia*, 271-14; 271-25; 292-5; 292-17; 292-23.  Members and staff were filing charges against each other, calling the police on each other, and taking out temporary protective orders against each other.  In one such instance, a temporary protective order was obtained against Kisling, which impacted whether both she and the other individual could remain on a bargaining team, and whether Kisling, who was the Local's vice president, could come to the Local's office without potentially violating a temporary protective order. *See Garcia*, ECF Nos. 292-5 at 11;

292-21 at 15, 26; 292-23 at 5-6.  I have already concluded, and the Ninth Circuit affirmed, that the trusteeship was imposed for a proper purpose. *Garcia*, ECF Nos. 80 at 39-40; 175 at 3.  The record on summary judgment only strengthens that conclusion.

As to the timing and whether an "emergency" existed, the fact that the Local was in dire straights all along does not negate that an emergency existed when Henry imposed the trusteeship.  To the contrary, the evidence shows that conditions at the Local deteriorated while Nieters prepared her report. *See, e.g.*, *Garcia*, ECF Nos. 271-17; 271-27; 292-23 at 30.  The Local's executive board voted in favor of a trusteeship and there is no genuine dispute that Henry reasonably determined that an emergency situation existed at that time.

The plaintiffs have failed to demonstrate a factual question whether the trusteeship was imposed for an improper purpose or that Henry acted in bad faith in either the purpose or timing of the trusteeship.  I therefore grant the defendants' motion for summary judgment on this claim.

### E.  Counts Six and Seven

Count six alleges that the defendants breached Article VIII, Section 7(f) of the SEIU constitution by failing to hold the trusteeship hearing within 30 days of imposing an emergency trusteeship and by failing to establish good cause to extend this 30-day deadline. *Mancini*, ECF No. 1 at 29.  Count seven alleges that the defendants breached the SEIU constitution by failing to issue a decision regarding the trusteeship within 60 days after the appointment of the trustee. *Id.* at 30-32.

The defendants argue the evidence shows Henry had good cause to extend the deadline to hold the hearing because the Local had pending commitments and the schedules of key individuals necessitated setting the hearing beyond the 30-day deadline, which also required extending the deadline to make a decision following the evidentiary hearing.  Finally, they

contend that even if there was a violation, the remedy would be to hold an expedited hearing, which is moot because the hearing has been held and a final decision was made.

The plaintiffs respond that Henry lacked good cause to extend the deadline because there is evidence that the trusteeship hearing officer, April Verrett, was available for the hearing over a month before it was actually held. The plaintiffs contend the defendants have not presented evidence that other necessary individuals were also not available.

It is undisputed the Local was engaged in end-stage bargaining with Clark County and there is evidence that the hearing was delayed to accommodate various individuals' schedules. *See Garcia*, ECF No. 292-28. Mancini presents no evidence that coordinating different individuals' schedules does not constitute good cause to extend the deadlines. I therefore grant the defendants' motion for summary judgment on this claim.

**F. Count Eight**

Count eight of the complaint alleges the defendants breached the SEIU constitution, and thereby violated the LMRDA's trusteeship provisions, by (1) not giving notice of the trusteeship hearing to all Local members, (2) not notifying all former members of the Local's executive board about the hearing, and (3) circulating the notice only nine days before the hearing, which did not allow time for the Local's former board to secure a majority vote to designate a spokesperson to represent it at the hearing. *Mancini*, ECF No. 1 at 32-34.

The SEIU has interpreted its constitution to mean that notice will be sent to the local union's executive board (either the one in place or the one that was in place at the time an emergency trusteeship was imposed). *Mancini*, ECF No. 12-2 at 3. I previously ruled that there is nothing unreasonable about that interpretation. *See Mancini*, ECF No. 32 at 5 (citing *Busch v. Givens*, 627 F.2d 978, 980 (9th Cir. 1980)). The notice of the trusteeship hearing in this case

was addressed to "members," but nothing in the LMRDA or the SEIU constitution requires notice be sent to all members. I therefore held that the plaintiffs did not state a plausible claim for either an LMRDA violation or a breach of the SEIU constitution and dismissed this part of count eight. *Mancini*, ECF No. 32 at 5-6. I also dismissed this claim to the extent it was based on allegations that the notice for the trusteeship hearing had to be sent more than 10 days prior to the hearing and that the procedural requirement that the former executive board appear through a spokesperson violated the SEIU constitution or the LMRDA. *Id.* at 6 & n.1.

However, I held that the plaintiffs had plausibly alleged that the short timeframe impaired the former executive board's ability to secure a spokesperson to represent it at the hearing, and because the board could appear only through a spokesperson the short notice may have deprived the board of due process by impairing its ability to appear at the hearing. *Id.* at 6-7. Additionally, the plaintiffs alleged the defendants did not provide notice to all former members of the Local's executive board. *Mancini*, ECF No. 1 at 33. The defendants did not move to dismiss that portion of count eight, so it survived dismissal. *Mancini*, ECF No. 32 at 6.

The defendants argue the plaintiffs were not former board members who were displaced due to the trusteeship (Mancini having been already removed as president via the discipline imposed on her and Gustafson having never been a board member), and thus they lack standing to complain that not every member of the board received notice. Moreover, the defendants note that both Mancini and Gustafson had notice of the trusteeship hearing and both made statements at the hearing. Additionally, they contend Mancini took no action to speak with other board members to seek a spokesperson for the Local. Finally, they contend no genuine dispute remains that the reason no spokesperson was appointed was due to a lack of interest by the Local's executive board and not because of the timing of the notice of the hearing.

The plaintiffs respond that not all Local executive board members received notice of the trusteeship hearing, and they contend there is an issue of fact regarding whether the timing of the notice gave the Local's executive board time to select a spokesperson. Moreover, they argue the spokesperson requirement was a change in policy and thus was not the standard procedure for a trusteeship hearing.

Neither the LMRDA nor Article VIII, Section 7(f) of the SEIU constitution specifies to whom a notice of trusteeship hearing must be sent. *Mancini*, ECF No. 1-9 at 21. As to timeliness, Article VIII, Section 7(f) of the SEIU constitution states the notice of trusteeship hearing must be sent "in a timely fashion." *Id.*

I grant the defendants' motion for summary judgment on this claim because there is no evidence that the timing or recipients of the notice had any effect on whether the Local's executive board voted for a spokesperson to represent it at the hearing. Even assuming Mancini and Gustafson have standing to complain about other board members not receiving notice, they present no evidence that those board members would have acted to appoint a spokesperson if they had received notice of the trusteeship hearing. And there is no evidence that a majority of the board would have appointed a spokesperson if given more time. Mancini herself apparently took no action to secure a spokesperson for the Local. *See Garcia*, ECF No. 271-3 at 14.

Finally, Mancini and Gustafson have failed to demonstrate that the SEIU imposed different procedures for the Local than it did in another situation. In both cases, the SEIU took the position that there are two parties in trusteeship hearings: the SEIU and the local's executive board. *Garcia*, ECF No. 296-7. In both cases, the local's executive board could appoint a

spokesperson to represent it and members were permitted to make statements at the hearing. *Id.* Consequently, even if I considered this new argument,[8] it fails as a matter of law.

### G. Count Nine

Count nine alleges that the defendants breached the SEIU constitution by failing to hold a fair hearing on the merits and the necessity of the trusteeship. *Mancini*, ECF No. 1 at 34-37. The plaintiffs allege that the hearing did not address the need for imposition of the trusteeship on an emergency basis or on the need for the imposition and maintenance of the trusteeship, and that the trusteeship hearing officer, defendant April Verrett, was biased. *Id.* at 35-36.

The defendants argue there is no evidence Verrett was biased. In any event, they argue the SEIU executive board ratified Verrett's decision, so any bias she had is irrelevant. Finally, they contend the evidence shows the trusteeship hearing addressed the emergency need to impose the trusteeship as well as whether it was necessary to impose and maintain it. The plaintiffs respond that the evidence shows that Verrett ignored the evidence and relied on Marzan's biased testimony despite contradicting evidence.

Article VIII, section 7(f) of the SEIU constitution provides that in the case of an emergency trusteeship, the International Executive Board appoints a hearing officer to conduct the trusteeship hearing. *Garcia*, ECF No. 271-6 at 21. The purpose of the trusteeship hearing is "to ensure that no trusteeship is imposed without an adequate right to be heard or without other appropriate safeguards." *Id.* Given this stated purpose, this contractual provision contemplates that a trusteeship hearing officer would not be biased for or against imposition or maintenance of the trusteeship. Additionally, § 464(c) of the LMRDA refers to a "fair" trusteeship hearing for the trusteeship to enjoy the presumption of validity. Although the Ninth Circuit has not

---

[8] This allegation was not in the complaint.

1  addressed the issue of bias in terms of a trusteeship hearing, it has stated in the context of a

2  disciplinary hearing under the LMRDA that "[a]n unbiased or untainted finder of fact is

3  fundamental to a full and fair hearing and procedural due process." *Myers v. Affiliated Prop.*

4  *Craftsmen Local No. 44 of Int'l All. of Theatrical Stage Emp. & Moving Picture Mach.*

5  *Operators of U. S. & Canada*, 667 F.2d 817, 820 (9th Cir. 1982).

6           In response to the defendants' motion, the plaintiffs have not pointed to evidence from

7  which a reasonable jury could find Verrett was biased. They merely state, in conclusory fashion,

8  that Verrett ignored the evidence and relied on biased testimony. *Garcia*, ECF No. 289 at 31.

9  But their disagreement with Verrett's credibility determinations does not mean Verrett was

10 biased.

11          The plaintiffs apparently abandon their original allegation that Verrett was biased

12 because Henry appointed her. *Mancini*, ECF No. 1 at 36. That allegation was factually incorrect

13 because the SEIU executive board appointed Verrett, as required by the SEIU constitution. *See*

14 *Garcia*, ECF Nos. 271-6 at 21; 271-24 at 2.

15          At her deposition, Mancini testified that she believed Verrett was biased because Verrett

16 was "promoted" to the SEIU executive board and because Henry appointed Verrett to a position

17 with a local union in California. *Garcia*, ECF No. 271-3 at 18-19. However, Verrett was elected

18 to the SEIU executive board, not "promoted." *Garcia*, ECF No. 271-5 at 6. As for Henry

19 appointing Verrett as vice president of SEIU Local 2015 in California, no reasonable jury could

20 conclude that this appointment caused Verrett to be biased about whether a trusteeship should

21 have been imposed or maintained on the Local in Las Vegas. *See, e.g.*, *Johnson v. Holway*, No.

22 CIV.A.03-2513 ESH, 2005 WL 3307296, at *13 (D.D.C. Dec. 6, 2005) (rejecting similar claims

23

of bias); *Yager v. Carey*, 910 F. Supp. 704, 715-16 (D.D.C. 1995) (rejecting similar claims of bias).

Finally, the trusteeship hearing transcript belies the plaintiffs' allegation that the trusteeship hearing did not address the need for imposition of the trusteeship on an emergency basis or the need to maintain the trusteeship. *Garcia*, ECF No. 271-25. I therefore grant the defendants' motion for summary judgment on this claim.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion for reconsideration **(ECF No. 266) is DENIED**.

IT IS FURTHER ORDERED that the plaintiffs' motion for reconsideration **(ECF No. 276) is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **(ECF No. 271) is GRANTED**. The clerk of court is instructed to enter judgment in favor of the defendants and against plaintiffs Cherie Mancini and Frederick Gustafson.

DATED this 10th day of September, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE