|   |   |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **DISTRICT OF NEVADA** |

| | |
|---|---|
| RAYMOND GARCIA, | Case No.: 2:17-cv-01340-APG-NJK |
| Plaintiff | **Order (1) Granting in Part the Defendants' Motion for Summary Judgment and (2) Remanding Count One to State Court** |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, et al., | [ECF No. 272] |
| Defendants | |

Plaintiff Raymond Garcia, a member of the Local 1107 union (Local), brought suit to challenge defendant Service Employees International Union's (SEIU) imposition of a trusteeship on the Local. I previously ruled that count one, which alleges that the Local's executive board breached the Local's constitution, is not preempted by section 301 of the Labor Management Relations Act (LMRA), so that claim remains pending as a state law breach of contract claim. ECF No. 78 at 5-6. I ruled that counts two (breach of the affiliation agreement), three (breach of the covenant of good faith and fair dealing), five (negligent misrepresentation), six (malpractice), and seven (breach of fiduciary duty), are preempted by § 301 and thus are treated as claims under that section. *Id.* at 6-9. I dismissed count four and a portion of count six. *Id.* at 7, 9. I also dismissed the claims against the individual defendants. *Id.* at 10.

The defendants now move for summary judgment, arguing that Garcia lacks standing to assert the § 301 claims because he has not suffered a particularized injury, as he was a Local union member at large and not a member of the Local's executive board. They contend he thus has at most a generalized injury in common with all fellow union members, so he lacks Article III standing. They also argue that because Garcia's claims depend on representations the

defendants allegedly made to the Local's executive board, he also lacks prudential standing because he was not a member of the board and cannot sue to vindicate a third party's rights. They also argue any injury Garcia suffered is not traceable to the defendants' alleged actions because there is no evidence that members of the Local's executive board voted the way they did because they relied on the alleged misrepresentations. Alternatively, the defendants argue Garcia's claims fail on the merits.

Garcia responds that he has standing as a union member to bring suit against the union under § 301 because he has been deprived of his right to select union leaders and otherwise engage in the democratic process in the union. On the merits, Garcia argues that he has presented evidence that some board members would have changed their vote if the defendants had not made misrepresentations to the Local's board. He also argues the Local's board breached the Local constitution by voting for a trusteeship instead of holding elections to fill the vacant president and vice president positions.

The parties are familiar with the facts, so I do not repeat them here except where necessary to resolve the motion. I grant in part the defendants' motion for summary judgment. Garcia lacks Article III standing to assert his claims under § 301, so I dismiss those claims for lack of subject matter jurisdiction. Garcia also lacks Article III standing to bring his state law breach of contract claim in federal court, so I remand it to state court.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law."

/ / / /

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (quotation omitted). The "irreducible constitutional minimum" of Article III standing consists of three elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at

the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because this is summary judgment, the parties "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts . . ., which for purposes of the summary judgment motion will be taken to be true." *Id.* (quotation omitted).

As the party invoking this court's jurisdiction on removal, the defendants ordinarily would bear the burden of establishing these elements. *Spokeo, Inc*, 136 S. Ct. at 1547. However, this case presents the unusual circumstance of the removing defendants contending Garcia lacks standing, while Garcia contends he has it. If the defendants bear the burden of establishing standing, they have not done so because they contend that Garcia lacks it and they present argument and evidence in support of that contention. Alternatively, if Garcia bears the burden because he is effectively invoking this court's jurisdiction by asserting he has standing, he has not sufficiently shown he has it under a summary judgment standard. Either way, Garcia lacks standing for all of his claims, as discussed below.

**A. Section 301 Claims**

Garcia's claims in counts two, three, five, six, and seven are contractual claims under § 301 of the LMRA.[1] For these claims, Garcia fails to sufficiently demonstrate at summary judgment that his injury is "fairly . . . trace[able] to the challenged action of the defendant."

---

[1] To clear up any confusion about Garcia's tort claims, I previously ruled that these claims are preempted by § 301, and instead of dismissing them, I ruled these claims would be treated as § 301 claims. ECF No. 78. To the extent my prior order was unclear, I did not rule that these are federal torts under § 301. Rather, I ruled they would be treated as § 301 claims. *See Thompson v. Johnson Grp.*, 5 F.3d 540, 1993 WL 339831, at *3 (9th Cir. 1993) (stating that the district court "correctly construed" claims for breach of the implied covenant of good faith and fair dealing and wrongful discharge "as claims under section 301" after finding those claims preempted). In other words, those allegations would be considered as the means through which the defendants allegedly breached the affiliation agreement.

4

*Lujan*, 504 U.S. at 560 (quotation omitted). Traceability means "there must be a causal connection between the injury and the conduct" about which the plaintiff complains. *Id.*

All of these claims rest on allegations that the defendants breached the affiliation agreement (or the contractual implied covenant of good faith and fair dealing) because they (1) failed to advise the Local of its rights under the affiliation agreement and (2) told the Local's executive board that they had no choice but to vote for trusteeship after the president and vice president were removed from office. ECF No. 29 at 9-12, 13-17. But Garcia has failed to present evidence that the defendants' conduct caused a majority of the Local's executive board to vote to approve the trusteeship.

The Local board had a copy of the affiliation agreement before the April 26, 2017 board meeting at which it voted for voluntary trusteeship. ECF Nos. 272-2 at 11-24; 272-3 through 272-6; 272-12 at 2. Although Garcia argues the defendants knew the Local did not have a copy of the affiliation agreement, he presents no evidence to contradict the defendants' evidence that in fact the Local had a copy. He also presents no evidence that any board members would have changed their votes if they had seen a copy earlier.

That is likely because the defendants explained to the board members at the April 26 meeting that they had a right to vote against the trusteeship and did not have to vote on the trusteeship question that night. ECF Nos. 272-8; 272-11; 272-12 at 3; 272-13 at 2; 291 at 11. Consistent with this information, seven board members voted against trusteeship and five abstained. ECF Nos. 272-8; 272-11 at 5-6; 272-12 at 3. Additionally, at least one board member discussed the option of postponing the vote. ECF Nos. 272-8; 290-1 at 4; 291 at 12. The board thus knew of this option as well.

5

Because the vote was seventeen for the trusteeship, seven against, with five abstentions, Garcia must present evidence from which a reasonable jury could find the votes would have changed such that the outcome would have been different.[2] And to establish causation, he must show that board members who would change their vote initially voted as they did because they relied on the defendants' alleged misrepresentations. He has not done so.

Garcia presents an email from Alfredo Serrano to Cherie Mancini in which Serrano expressed regret that Mancini was removed from office. ECF No. 290-1 at 2-3. Serrano stated he was dissatisfied with how the April 26 board meeting was conducted, that he had "no idea" that the affiliation agreement did not allow for the SEIU to impose a trusteeship on the Local, and that he was unprepared to address trusteeship because he was not expecting it to be discussed at that meeting. *Id.* Serrano also expressed his opinion that the problems at the Local had been going on for some time, so it was not an emergency situation. *Id.* Serrano stated that "[t]here was opportunity for questions but the answers were given by the same people [whose] intention was" to propose the trusteeship. *Id.* Serrano stated that he abstained. *Id.* at 4. He did not state that he would have voted no if given more time or information.

Next, Garcia presents an email from Debbie Springer, who stated that she "felt blindsided" at the board meeting, "even though the representatives for the International did an adequate summation of the reasons and there was opportunity for the E-board to ask questions." *Id.* at 6. Springer expressed disappointment that the defendants did not propose other options beyond trusteeship that would have kept the Local's board in place. *Id.* But Springer did not

---

[2] The defendants object to most of Garcia's exhibits on authentication and hearsay grounds. ECF No. 297 at 6-8. Garcia has not explained how the hearsay statements in these documents would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2). But even if the evidence could be presented in admissible form, it is insufficient to raise a genuine dispute as to standing.

6

state she would change her vote. *Id.* And there is no evidence as to what Springer's original vote was or that she cast that vote because of the defendants' alleged misrepresentations.[3] Likewise, Sharon Savoy-Durisseau expressed disappointment at how the meeting was handled, that the board "basically was told what to do without notice," and that she was pressured and essentially made to feel the board had no choice. *Id.* at 8-9. But there is no evidence as to what her original vote was, that she cast her original vote because of the defendants' representations, or that if given more time or information, she would have changed that vote.

Garcia also presents the statements of Dolores Rivera and Syed Hyder. *Id.* at 11-13. These statements say nothing about the executive board meeting. Instead, they express concern about the SEIU's post-trusteeship action in replacing the chief negotiator on the Clark County bargaining team. *Id.* There is no evidence these two individuals were board members, how they voted, or if they voted a certain way because of what the defendants said to them. Likewise, Sheila Grain's email complains about the trusteeship hearing, not about anything that happened at the April 26 board meeting. ECF No. 290-2. Moreover, Grain does not state what her vote was, that she cast her vote because of the defendants' representations to her, or that she would have changed her vote if given more time or information. *Id.*

Finally, Garcia presents testimony that Raitis Liepens and Maureen Allred were unhappy with how things were handled at the board meeting. ECF No. 291 at 8-11. But they both voted against the trusteeship, so that testimony does not change the vote count and they apparently did not rely on the defendants' alleged misrepresentations because they voted against trusteeship. *Id.* at 11.

---

[3] Garcia cites to ECF No. 290-3 at 9-10, but that does not identify Springer, Savoy-Durisseau, Dolores Rivera, or Syed Hyder as "yes" votes.

7

In sum, Garcia has not presented evidence sufficient to satisfy his burden at summary judgment that his alleged injury is traceable to the defendants' alleged breaches of the affiliation agreement. There is not sufficient evidence from which a reasonable jury could find that the defendants' conduct caused the executive board members who either voted in favor of trusteeship or abstained to vote the way they did. There is no evidence these board members would have changed their vote if they had not relied on the defendants' alleged misrepresentations or had been given more time or information before the vote.

Garcia states in his opposition that he "must be given the opportunity to call those board members, show them the evidence, and see if they would have still given up control of Local 1107 absent Defendants' misrepresentations." ECF No. 290 at 8. But Garcia "may not merely state that [he] will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support [his] claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, to defeat the defendants' summary judgment motion, Garcia was required to "produce evidence of a genuine dispute of material fact that could satisfy [his] burden at trial." *Sonner*, 911 F.3d at 992. He has not done so. I therefore grant the defendants' motion for summary judgment on Garcia's claims under § 301 and dismiss those claims for lack of standing.[4]

**B. State Law Breach of Contract**

That leaves count one, which is a state law breach of contract claim. That claim alleges the Local executive board violated the Local's constitution by voting for a trusteeship instead of holding elections to fill the vacant president and vice president positions. ECF No. 29 at 7-9.

---

[4] To the extent I am incorrect on standing, that same evidence shows Garcia's § 301 claims fail on the merits.

8

The Local's constitution is a contract between the Local and its members. *Frederickson v. Sys. Fed'n No. 114 of Ry. Emp. Dep't, AFL-CIO*, 436 F.2d 764, 769 (9th Cir. 1970); *see also Johnson v. Int'l of United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 288 P. 170, 173 (Nev. 1930) (Sanders, J., concurring) (stating "the constitution, laws, and regulations of the brotherhood are in the nature of a contract between its members, and they, as well as the brotherhood, are bound thereby"). Garcia, as a Local member, is a party to this contract. Thus, it may appear at first blush that Garcia must have Article III standing to sue for a breach of a contract to which he is a party.

But "simply being a party to the contract does not alone establish Article III standing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). The plaintiff still must meet Article III's requirements. *See id.* I therefore consider whether Garcia has Article III standing to bring the state law breach of contract claim he asserts in this case. *See Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) (stating that "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted" (quotation and emphasis omitted)).

Garcia has not met his burden of presenting sufficient evidence for a reasonable jury to find he suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quotation omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quotation omitted).

Garcia has presented no evidence that he has a personal stake in the outcome of this claim.  He alleges the board violated the Local's constitution by voting for the trusteeship instead of holding elections for the vacant positions.  His claim for the Local's executive board to follow its own constitution is a generalized one he shares in common with every other member of the Local. *Cf. Raines v. Byrd*, 521 U.S. 811, 821, 830 (1997) (holding that individual members of Congress did "not have a sufficient personal stake" in a challenge to the Line Item Veto Act because their claim of a "diminution of legislative power . . . necessarily damages all Members of Congress and both Houses of Congress equally").  Because his alleged injury is not particularized, he lacks Article III standing to assert this claim in federal court.

So what to do with this claim?  The defendants have not prevailed on the merits because I have ruled only that Garcia lacks Article III standing to litigate this claim in federal court.  Ordinarily, that would require dismissing for lack of subject matter jurisdiction.  But Garcia originally asserted this claim in state court, and the defendants removed it to this court. ECF Nos. 1, 1-1 at 7-9.  Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Because I lack subject matter jurisdiction over the only remaining claim, I remand count one to state court.[5]  Remand is not futile because Garcia's "lack of Article III standing would not necessarily defeat [his] standing in state court." *Int'l Primate Prot. League*, 500 U.S. at 88-89.

////

---

[5] I previously denied Garcia's motion to sever and remand count one. ECF No. 139 at 2.  I did so because "[s]evering and remanding that claim would be a waste of judicial resources where the overall dispute about the propriety of the imposition of the trusteeship is being adjudicated here." *Id.*  While that was true at the time of my prior order, that is no longer the case.  Moreover, the question of Garcia's ability to establish standing under a summary judgment standard was not previously at issue.

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 272) is GRANTED in part**. I grant summary judgment in the defendants' favor on counts two, three, five, six, and seven. Consistent with this order and my prior order dismissing count four with prejudice (ECF No. 78), the clerk of court is instructed to enter judgment in favor of the defendants and against plaintiff Raymond Garcia on count four and part of count six, and to dismiss counts two through seven for lack of subject matter jurisdiction.

I FURTHER ORDER that count one is remanded to the state court from which it was removed for all further proceedings. The Clerk of the Court is instructed to close this case.

DATED this 10th day of September, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE